30(b)(6) Luv N' Care (Joseph Hakim) - Vol. I                    May 20, 2009
Monroe, LA

160

1    exhibits B, C, and E of the complaint, is the

2    first use of the design or the product.

3          A.    Okay.

4          Q.    Okay?

5          A.    Well, I can tell you that is was before

6    a particular date.  I can't tell you the exact

7    date.  I just don't have that information.

8          Q.    Well, let's start with what you do

9    have.

10         A.    And we don't have it in our system,

11   that's why they were never provided in the –

12         Q.    So, you can't tell us exactly –

13         A.    I can't tell you the exact date of the

14   very first use.

15         Q.    Of any accused – I'm sorry, of any

16   asserted design?

17         A.    I can't.  I mean, I'm sure it's in our

18   – if we – I just don't know.  I don't have it

19   from my stuff.  The gripper style –

20         Q.    That's exhibit B product?  Soft spout?

21         A.    Yeah.  That is – that was prior to

22   2004.  The sport sipper, which I think is C –

161

1      Q.    I think it's no spill.

2            MR. GUERRIERO:  No spill is the –

3      **A.    Oh, what am I looking at?**

4      Q.    Oh, you've still got a couple of –

5      **A.    I still have more down here.  I thought**

6      **I got rid of them all.  I must have got more**

7      **documents from somebody else.**

8      Q.    I don't think we pulled them out.

9      **A.    Oh, okay.  I had them pulled out of my**

10     **stack.  The no spill?  That was also – the first**

11     **sale was prior to 2004. And the hard and soft**

12     **comb and brush was prior to 2004.**

13     Q.    So, sitting here today then, the only

14     evidence that you have for when the first use of

15     any asserted design, any asserted Luv 'N Care

16     design, was 2004?

17     **A.    That's prior to 2004.  That's all that**

18     **I have.  That's all I have.**

19     Q.    Okay, I'm sorry, but you – as I

20     understand it, the information in front of you

21     shows that you were using it in 2004, and from

22     that, you conclude that you were using it prior

162

1    to that time?

2        **A.    Let me make sure that's in here.**

3        Q.    I was using 2004 for all three, but if

4    we have to break them up, we can.

5        **A.    That's okay.  Let me look again and**

6    **see, so I don't  — yeah, it was at least in 2004.**

7    **Now, maybe I should rephrase that and say not**

8    **before 2004.**

9        Q.    And I want to make sure, my question is

10   not when did you start, because you already

11   established that you only know it was sometime

12   prior to 2004.  My question is about evidence.

13   Sitting here today, the only evidence that you

14   have shows that you used the asserted Luv 'N Care

15   designs in 2004?

16       **A.    That's all I have.  I know it's at**

17   **least 2004 back. When we changed — we changed our**

18   **systems over, we don't have that data, that I**

19   **could go back before that.**

20       Q.    Can you get it?

21       **A.    No, I wasn't able to get it.  That was**

22   **my problem.  I could only go back to 2004.**

163

1          Q.    And no one at Luv 'N Care can get

2     information for –

3          **A.    No, I'm not the one that got this.  I**

4     **had it got from anybody that could get it for me.**

5          Q.    But I want to know, is there anyone who

6     can get anything from earlier than 2004?

7          **A.    Not that I'm aware of.**

8          Q.    Okay.

9          **A.    Not at this time.**

10         Q.    So, then let's talk about – go back to

11    where we were before, which – was the email

12    conversion prior to 2004?

13         **A.    Yes, it was.**

14         Q.    And were the – I'm sorry, were the

15    graphics computers searched in connection with

16    this lawsuit?

17         **A.    Yes.**

18         Q.    What were they searched for?

19         **A.    Catalog sheets.**

20         Q.    Anything else?

21         **A.    In the graphics department?**

22         Q.    In the graphics computers you said.

164

1      **A.    Yeah, as well.**

2      Q.    Same thing?

3      **A.    Yeah, I think it was just catalog**

4  **sheets or any prior art for these products.**

5      Q.    What do you mean by prior art?

6      **A.    Packaging.**

7      Q.    Oh, prior art.  Its got a specific

8  meaning  - any previous art that was done?

9      **A.    There you go.**

10      Q.    All right, does Luv 'N Care keep

11  historical, previously done art that's associated

12  with the asserted products?

13      **A.    I don't think so.  I don't think we're**

14  **able to find any.  It would have been given to**

15  **the attorneys.  It wouldn't have been given to**

16  **me, so -**

17      Q.    But you don't think that they were able

18  to find any?

19      **A.    I don't know.**

20      Q.    You don't know?

21      **A.    Because that would have been given to**

22  **the attorneys, and they would supplied it to you.**

This page intentionally left blank.

1

UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF NEW YORK

--------------------------x

LUV N' CARE, LTD. and        )

ADMAR INTERNATIONAL, INC.,)

                             ) CIVIL ACTION NO:

        Plaintiffs,          )   08-CIV 4457 (DC/HP)

vs.                          )

                             )

WALGREEN CO. and             )

KMART CORP.,                 )

        Defendants.          ) VOLUME II

--------------------------x  2:29 PM

        CONTINUED VIDEOTAPED 30(b)(6) DEPOSITION OF

LUV N' CARE, INC., THROUGH ITS DESIGNEE

JOSEPH HERMAN HAKIM. Taken before Joanne DeVito,

Shorthand Reporter and Notary Public in and for the

State of Florida at Large, pursuant to Notice of

Taking Deposition filed in the above cause.

30(b)(6) Luv N' Care (Joseph Hakim) - Vol. II                    May 29, 2009
Fort Lauderdale, FL

2

1    APPEARANCES:

2

3        JOE D. GUERRIERO, ESQ.

4        Luv N' Care General Counsel

5        3030 Aurora Avenue

6        Monroe, Louisiana  71201

7        Attorney for Plaintiffs

8

9        JASON R. BURATTI, ESQ.

10       Christopher & Weisberg

11       200 E. Las Olas Blvd.

12       Suite 2040

13       Fort Lauderdale, Florida  33301

14       Attorney for Defendant Walgreen Co.

15

16   ALSO PRESENT:

17

18       Nouri Edward Hakim

19       Jason Stapleton, Videographer

20

21

22                    I N D E X

3

1

2     JOSEPH HERMAN HAKIM                              PAGE

3      Direct Examination by Mr. Buratti                4

4

5                    E X H I B I T S

6

7     DEFENDANTS'                                       PAGE

8

9     Exhibit 55   1 page document bate nos. 203296     8

10    Exhibit 56   Document                             8

11    Exhibit 57   Document                            28

12

13           * Exhibits retained by counsel

14

15

16

17

18

19

20

21

22

5

```
 1   what's previously been marked as Exhibit 14.  Do you

 2   know what Exhibit 14 is?

 3       A    Yeah.  This is a list of sales by customer

 4   for the year 2003 and -- let's see what the other

 5   pages are.  Yes, this one is only for 2003.

 6       Q    Is it specific to what products were sold

 7   by the customer?

 8       A    This particular report is not.

 9       Q    And is it specific -- so I can't tell from

10   that report if there's gripper cups sales?

11       A    Well, gripper sup -- gripper cup sales are

12   in this number --

13       Q    But --

14       A    -- it's not just gripper cup sales.  Those

15   are in other reports that I gave.

16       Q    And can I tell what portion of sales in

17   Exhibit 14 are repeat versus initial sales?

18       A    This particular report only gives you the

19   total sales per customer in sales volume order for

20   the year of 2003.

21       Q    For all Luv N' Care products supplied to

22   that company?
```

30(b)(6) Luv N' Care (Joseph Hakim) - Vol. II                    May 29, 2009
Fort Lauderdale, FL

6

1          A     For all Luv N' Care products supplied to

2     that company.  That's what this particular report

3     gives.

4          Q     Okay.  I'm also going to hand you what's

5     previously been marked as Exhibit 15.  There are

6     actually two documents in here together, but since

7     it's been previously marked, I'm going to leave it

8     this way for recordkeeping purposes.  The documents

9     are LNC 190782 through 190828 and 190829 through

10    874.  And I'm only going to ask you about the first

11    portion that I read, which is earmarked here.

12              In that first portion, what kind of

13    information is given?

14         A     Okay.  Well, on the portion that you're

15    not asking me to look at has the heading of what it

16    is.

17         Q     Right.

18         A     So it took me a second to figure out what

19    you had actually handed me.  This is a breakdown of

20    advertising allowance deductions taken by customers

21    against Luv N' Care.

22         Q     The second portion?

30(b)(6) Luv N' Care (Joseph Hakim) - Vol. II                         May 29, 2009
Fort Lauderdale, FL

7

1       **A       The portion that you give -- the portion**
2   **that you asked me about, the first portion.**
3       Q    The first portion is also advertising
4   allowance information?
5       **A       It appears to me to be that, yes.**
6       Q    It's not sales information?
7       **A       No.   This would be -- this would be**
8   **advertising.   I wouldn't have run sales like this.**
9       Q    Then I don't have any questions about that
10  document.
11      **A       Good.**
12      Q    I'm going to hand you exhibits labeled
13  Hakim 10, 11 and 13 that are part of Defendants'
14  Exhibit 30 in this case.   My questions probably can
15  be answered generally, so I'm going to ask that
16  first and see if you can answer generally.
17      **A       Okay.**
18      Q    Can you identify in exhibits Hakim 10, 11
19  or 13 what sales are repeat sales?
20      **A       Which sales are repeat sales?**
21      Q    Yes.
22      **A       Talking about at a consumer level?**

Henderson Legal Services, Inc.
202-220-4158                          www.hendersonlegalservices.com

30(b)(6) Luv N' Care (Joseph Hakim) - Vol. II                May 29, 2009
Fort Lauderdale, FL

8

1       Q    Yes.

2       **A    No.**

3       Q    Does Luv N' Care have any information that

4    would show an initial versus a repeat sale for an

5    easy grip, hard and soft comb and brush?

6       **A    These documents as you see them cannot**

7    **give whether or not a consumer is buying a**

8    **repetitive product or not.**

9       Q    Can the McQuillen database generate such a

10   report?

11      **A    No, because the consumer doesn't buy**

12   **directly from Luv N' Care.**

13      Q    So then Luv N' Care has no -- no

14   information itself about what it -- what percentage

15   of the asserted products are sold in the initial

16   versus the repeat stage?

17      **A    Not from reports.**

18      Q    What about from other sources?

19      **A    Maybe personal knowledge, you know, maybe**

20   **by salespeople or talking with buyers or some**

21   **information that our buyers or our customers might**

22   **actually have with regards to their sales.  That I**

9

1  can't answer, but I know that we do not have data in

2  our systems that differentiate between initial sale

3  and rebuy.

4      Q    Has Luv N' Care documented its development

5  costs?

6      A    Its direct development cost?

7      Q    Yes.

8      A    We have some expenses that may be itemized

9  out in our general ledger, but can I actually give

10  it to you by a specific item?  Answer would be no.

11      Q    Are you familiar with your brother Jack's

12  testimony that millions of dollars were spent

13  developing the asserted products in this case?

14      A    I have not seen Jack's deposition nor was

15  I present for his deposition, so therefore, I do not

16  know what he's testified to.

17      Q    Is it accurate to say that Luv N' Care has

18  spent millions of dollars designing the accused --

19  asserted products in this case?

20      A    It's -- it's quite possible when you take

21  into account all of the -- the development time of

22  the engineers, the development time of the product

10

1    designers who worked with Ed trying to put Ed's

2    ideas onto paper.  When you talk about mold cost and

3    test shots and SLA prototypes and things of that

4    nature, could you be over a million dollars?  Yes.

5        Q    Millions?

6        A    Yes.

7        Q    And that's just for the accused products

8    let alone the other products that Luv --

9        A    I don't have a breakdown per item.

10       Q    I'm going to mark Exhibits 55 --

11       A    Are we through with these?

12       Q    Probably.  Which is a one-page production

13   document bearing production number LNC 203289.

14       A    Okay.

15       Q    And 56 which is a one-page document

16   production page bearing production number LNC

17   203296.  Mr. Hakim, have you seen Exhibits 55 and 56

18   before?

19       A    Yes.

20       Q    What are they?

21       A    They are schedules of our operating

22   expenses from our financial department.

30(b)(6) Luv N' Care (Joseph Hakim) - Vol. II                    May 29, 2009
Fort Lauderdale, FL

11

1        Q        Were they generated for this litigation?

2        **A        No.**

3        Q        They're normal documents reported at Luv

4    N' Care?

5        **A        That is correct.**

6        Q        Who -- who made these documents?

7        **A        These are prepared by our -- one of our --**

8    **by our outside CPA via associates.**

9        Q        Where does the information that's in these

10   Exhibits 55 and 66 come from?

11       **A        I'm sorry.  Again.**

12       Q        Where does the information that's in

13   Exhibit 55 and 56 come from?

14       **A        From corporate records.**

15       Q        Is this information available for a time

16   period before 2004?

17       **A        This is 2009.  I don't know.  I don't**

18   **think so.**

19       Q        When would the information from prior to

20   2004 have become unavailable?

21       **A        I would have to look at our retention**

22   **policy and then check back with our accounting**

12

1    department.  It may be available and there again it

2    may not be available.  I just don't know.

3         Q    What does the advertising line mean in

4    Exhibits 55 and 56?

5         A    That is direct advertising numbers that

6    the CPAs pulled off of checks.

7         Q    And is that the only money -- is that --

8    is that advertising inside the United States?

9         A    I would say all of this would be inside

10   the United States.

11        Q    All these numbers?

12        A    Now, I can't -- let me -- let me go back

13   on that.  I'm not sure, but I think that it is only

14   inside the United States.

15        Q    How would you find out or confirm that it

16   was only U.S. advertising?

17        A    I would have to go back and look at the

18   trial balances.

19        Q    How was the money spent that's identified

20   in this line, the lines for advertising, Exhibits 55

21   and 56?

22        A    From this document I can't tell you.

13

1      Q      What information would you need to know

2  how that money was spent?

3      **A      I would have to go back and look at the**

4  **trial balances.**

5      Q      At the checks?

6      **A      Excuse me.  Checks or -- I would have to**

7  **look at the trial balances to find out what the**

8  **checks were.**

9      Q      And would that information also tell you

10  whether or not the money was spent on U.S.

11  advertising?

12      **A      That should tell me where the advertising**

13  **was done, yes.**

14      Q      And is this all of the money that Luv N'

15  Care directly spent on advertising from the years

16  2004 to 2007?

17      **A      Directly?  I would -- I would have to -- I**

18  **would have to assume that this is correct, yes, as**

19  **being direct advertising.**

20      Q      And you're not sure if it was in the U.S.

21  or not?

22      **A      I feel quite confident that it is in the**

30(b)(6) Luv N' Care (Joseph Hakim) - Vol. II                    May 29, 2009
Fort Lauderdale, FL

14

1    **U.S.**

2        Q    Is there any information at Luv N' Care

3    about the amount of direct advertising monies spent

4    prior to 2004?

5        **A    I don't know.  I pulled what I thought was**

6    **relevant.  I don't even remember how far back I**

7    **went.  Did I go back to 2004 in what I supplied you?**

8        Q    This is 2004, 55 and --

9        **A    No, no.  I mean on the advertising**

10   **breakdown sheets that I gave you.  That's what we**

11   **were looking at a second ago was part of a document**

12   **I supplied.**

13       Q    I can't say with any affirmative

14   certainty, but I don't think we've seen anything in

15   the case that predated 2004.  It wasn't like a real

16   e-mail or something.  But as far as reports

17   generated and documents retained by the company, it

18   appears that there's kind of a cut-off or a change

19   in 2003, 2004 time frame.  So from that perspective,

20   I'm asking you if you know, you know, as a

21   custodian, a person knowledgeable about custodial

22   records and the like --

30(b)(6) Luv N' Care (Joseph Hakim) - Vol. II                    May 29, 2009
Fort Lauderdale, FL

15

1       **A      Right.**

2       Q      -- are there any records of advertising or

3       any other monetary expense recorded here in Exhibits

4       55 and 56 that predate 2004?

5       **A      I'm sure we have some records that predate**

6       **2004.**

7       Q      Would -- was that information searched for

8       relevant information in connection with this

9       lawsuit?

10      **A      I don't truthfully remember if we searched**

11      **before 2004.  It's my understanding 2004 forward was**

12      **the relevant term.**

13      Q      Is that still your understanding today?

14      **A      That's my understanding.  I may be wrong,**

15      **but that's my understanding.**

16      Q      But that was primarily what was searched

17      was information that postdated 2003?

18      **A      Yes.  A lot of our records didn't go back**

19      **pre 2004 because of the computer systems.**

20      Q      So you're not aware of any evidence then

21      that supports that there were dollars spent, direct

22      advertising on the accused -- on the asserted

16

1    designs prior to 2004?

2        A    Prior to 2004?  I'm not sure.  I'll have

3    to look.  I've given you what I had which was a, I

4    believe, a larger number than these for these

5    periods on another sheet.

6        Q    There's a lot of different costs here in

7    Exhibits 55 and 56.  Are they apportionable to a

8    byproduct basis?

9        A    How?

10        Q    Can I -- can I apportion these costs --

11        A    To a specific item?

12        Q    Yes.

13        A    No.

14        Q    How would I go about figuring out which

15    portion of these costs is attributable to a sale of

16    an asserted product in this case?

17        A    Well, a lot of these are general overhead

18    numbers, so those numbers are direct expenses.  I

19    mean, they're indirect expenses.  Direct expenses

20    we -- I think I provided that information showing

21    what the cost of the product was, what the cost was

22    to land the product, the duty, the brokerage fees,

30(b)(6) Luv N' Care (Joseph Hakim) - Vol. II                    May 29, 2009
Fort Lauderdale, FL

17

1     the inland freight, the ocean freight, that type of

2     thing.

3          Q    By provided, you mean to counsel?

4          A    To counsel and I'm sure it was provided to

5     you.  I would hope so.

6          Q    Wasn't part of what you had at the

7     deposition the other day?

8          A    No, I didn't bring it with me.  Or did I?

9     If I brought it with me, you have it.

10         Q    So then if I understand you correctly that

11    the information that's in Exhibits 55 and 56 is not

12    in other cost information that's been provided --

13         A    Say it again now.

14         Q    I'm just trying to figure out is, and

15    maybe you can help me --

16         A    That's okay.

17         Q    -- is is the cost information -- is the

18    direct operating expenses a -- that are in Exhibit

19    55 and 56 a portion of costs attributable to all of

20    Luv N' Care's product sales?

21         A    Direct cost is a part of this schedule.

22    Is that what you're asking?

30(b)(6) Luv N' Care (Joseph Hakim) - Vol. II                    May 29, 2009
## Fort Lauderdale, FL

18

1       Q    Part of the schedule in Exhibits 55 and

2    56?

3       **A    Yes.  Is that what you're asking me?**

4       Q    Show me that.

5       **A    Show you what?**

6       Q    Direct costs.  These are all direct costs,

7    right?

8       **A    No.  I didn't say these were all direct**

9    **costs.**

10      Q    Okay.

11      **A    Advertising is not a direct cost.  Auto is**

12   **not a direct cost.**

13      Q    What kind of information is in Exhibits 55

14   and 56?

15      **A    It's a schedule of our operating expenses.**

16      Q    And are operating expenses part of Luv N'

17   Care's regular business activities?

18      **A    Yes.**

19      Q    Are they paid out of profits from Luv N'

20   Care's sales of product?

21      **A    They're paid out -- paid out of proceeds.**

22      Q    Paid out of proceeds?  So it's fair to say

Henderson Legal Services, Inc.

30(b)(6) Luv N' Care (Joseph Hakim) - Vol. II                        May 29, 2009
Fort Lauderdale, FL

19

1    that the information in Exhibits 55 and 56 is in

2    part a cost associated with the asserted products in

3    this?

4        **A    That is correct.**

5        Q    How can I go about figuring out what of

6    the costs in Exhibits 55 and 56 are apportionable to

7    the products in suit?

8        **A    You have to do it by percentages.**

9        Q    What percentage of products were gripper

10   cups in 2005, products sold by Luv N' Care were

11   gripper cups in 2005?

12       **A    We're going to have to -- these are the**

13   **documents that I brought actually.  They're here if**

14   **you want me to calculate them, but I mean --**

15       Q    That's how you would do it?

16       **A    -- it's a waste of time.  Yes.**

17       Q    Okay.  And for 2006, 2007, the same thing?

18       **A    Yes.**

19       Q    From the -- and you're referring to the

20   exhibits that are Hakim 11 and 13?

21       **A    Ten, 11 and 13.**

22       Q    Ten, 11 and 13, right.

20

1      **A**      As well as the other one that you gave me

2   that had the total sales of all product.   You would

3   take and get a percentage of these against the total

4   sales.

5      Q     For year-by-year basis?

6      **A**     **Right.**

7      Q     So I would need a 2004 -- on any given

8   year I need the sales document that's Hakim 11, 13

9   or 10 from Exhibit 30 and a total year's sales of

10  all Luv N' Care products of all of its customers to

11  figure out the relative percentage of product?

12     **A**     **Yes.**

13        MR. BURATTI:   Okay.   Let's go off the

14     record for a minute.

15        THE VIDEOGRAPHER:   2:49.   Off the record.

16        (Informal discussion off the record.)

17        THE VIDEOGRAPHER:   2:54.   Back on the

18     record.

19  BY MR. BURATTI:

20     Q     Earlier we were discussing some 200,000

21  blogs that apparently are out there about Nuby's

22  asserted products in this case?

21

1      A    Yes.

2      Q    Is that right, that information?

3      A    Actually, it's not necessarily 200,000

4  blogs.  It's 2 million 100 and some-odd thousand

5  contacts -- or not contacts.  I'm trying to use the

6  right term here because blogs were not the right

7  term.  Blogs is a portion of that.  But different

8  people talking about, or different individuals,

9  eBay, whatever, selling Nuby products, talking about

10  Nuby products.  Even saw one video where a

11  consumer -- never heard of her or seen of her

12  before -- she actually did a video on a sippy cup,

13  on a Nuby sippy cup.  So that's how much

14  communication is out there.  I ran -- it was done on

15  a Google search and what I did was to try to get as

16  close to the pure Nuby products as I could, I

17  excluded, you know, you did Nuby but exclude --

18  there was a -- there's some kind of painting out

19  there that refers to Nuby, or an artist.  There's a

20  couple different things.  So I tried to exclude all

21  those to get as close to all Nuby stuff as I could

22  get.  So I came up with a million 100 and some-odd

22

1    thou -- 2 million 100 and some-odd thousand

2    references.  I mean, even if it's, you know, has a

3    hundred thousand incorrect ones, then you're still

4    around a couple of million.

5        Q    And that's what we were talking about by

6    the blogs that -- that Ed was referring to?

7        A    Yeah.  Eddie -- Eddie used the word blog,

8    but like he said, he's not really that computer

9    savvy.  He just made a mistake on the term.

10       Q    That's what I just wanted to clear up --

11       A    Yeah.

12       Q    -- and that's what --

13       A    There are -- there may be a couple hundred

14   thousand blogs.  I couldn't go through and count.

15   That's just too much to do.  But, I mean, there's a

16   lot out there.  I mean, it's, you know, a lot of

17   blogs, a lot of -- I guess they're blogs.  People

18   like ZRecs and things like that.  Z Recommends.  You

19   know, people like that out there who look at

20   different people's products and make recommendations

21   and things of that nature.

22       Q    Anything else?  That's meant by the blogs

30(b)(6) Luv N' Care (Joseph Hakim) - Vol. II                    May 29, 2009
Fort Lauderdale, FL

23

1    as we were discussing --

2         **A    I think that's generally it.**

3         Q    Do you have any person knowledge about any

4    actual blogs that talk about, or tout the overall

5    appearance of the asserted products in this case?

6         **A    I don't know of any IP sites that would do**

7    **that, no.**

8         Q    Any sites at all.

9         **A    Well, I mean, who else would do it but an**

10   **IP site?  I don't know of a consumer in the world**

11   **who concerns themselves with the secondary meaning**

12   **of a product or anything.**

13        Q    I am waiting for one more page that I want

14   to ask you about.  I'm going to try to describe it

15   and see if you can answer the question --

16        **A    Okay.**

17        Q    -- without having to wait.

18        **A    Okay.**

19        Q    There's a printout that I've seen that

20   shows Wal-Mart sales by a geographic region.  Are

21   you familiar with that document?

22        **A    Yeah.  I got it prepared.**

This page intentionally left blank.