IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUV N' CARE, LTD. and ADMAR INTERNATIONAL, INC.  )<br>  )<br>   Plaintiffs,  )<br>v.  )<br>   )<br>WALGREEN CO. and  )<br>KMART CORP.  )<br>   )<br>   Defendants.  )<br>_____) | CIVIL ACTION NO.<br><br>08 CIV 4457 (DC/HP)<br><br>JURY TRIAL DEMANDED |

DECLARATION OF NOURI EDWARD HAKIM IN
OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

I, NOURI EDWARD HAKIM, being of full age, hereby certify and declare as follows:

1.  I am the CEO and founder of Luv n' care, Ltd., a closely-held family company. Since the early 1970s, I have specialized in creating products for infants and young children, and marketing those products to consumers. I have reviewed and conducted consumer research in this field. I am experienced in designing and packaging baby products, and know my competitor's products. I have personal knowledge of the facts contained in this Declaration.

2.  Plaintiffs Luv n' care and Admar International, Inc. (collectively, "Plaintiffs") filed a lawsuit against Royal King Baby Products Co. ("Royal King") in the Eastern District of Texas (CA No. 2:08-cv-163) (the "Texas Action"). The Texas Action included claims against Royal King under the Lanham Act for selling knockoff products, including hard-spout and soft-spout cups and a comb and brush set that infringed upon Plaintiffs' rights in Luv n' care's hard-spout and soft-spout cups and comb and brush set (the "Accused Products.").

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

3. Royal King, a well-known intellectual property pirate located in Thailand, was ordered by the District Court in the Texas Action to produce a witness with knowledge of the facts relating to Royal King's sales of the Accused Products at Walgreen.

4. Based on the merits of the case and considering that the Principal of Royal King did not want to appear for the court-ordered deposition in the Texas Action, Royal King settled. It agreed to pay Plaintiffs $500,000 plus 12% royalties on world-wide sales (based upon Royal King's representation of said sales in said Settlement Agreement) of its infringing products, including the very products that Walgreen now claims are not protectable. Royal King also agreed to a permanent cease and desist order that it would not manufacture or sell any confusingly similar products to those of Luv n' care, Ltd. anywhere in the world. This consent order is not contingent on the outcome of any litigation. During a telephone conference with Royal King's Principal, he admitted to me that Walgreen had approached Royal King to manufacture cups and other products that looked like Luv n' care's best-selling baby sundry items.

5. I have read my deposition testimony and the testimony of other witnesses in this case, including Walgreen's Rule 30(b)(6) witness. No one testified that any cup or comb and brush set, other than Royal King's knockoff cups and comb and brush set, and a knockoff cup sold by Munchkin, looks like Luv n' care's best-selling cups or comb and brush set, such that a consumer would likely be confused as to the source or origin of the products.

6. When these Luv n' care baby products were first sold in 2003, no other cups or comb and brush set looked like them in the market. Each design was unique and distinctive

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

when first released into the market and remain unique and distinctive today, but for Royal King's knockoff products (and a few other knockoffs). Each product was designed to convey a commercial impression to consumers separate and a part from any words or packaging.

7. Walgreen copied the look of Luv n' care's two best-selling cups and Luv n' care's comb and brush set. Despite all the shapes, designs, styles and colors available to the creative mind, Walgreen commissioned and approved look-a-like copies of Luv n' care's products.

8. Luv n' care's hard and soft spout cups were already America's best selling sippy or no-spill cups in America. After Luv n' care, Ltd. had initially contacted Walgreen about the cups, Walgreen later approached Luv n' care to sell its cups as "WOW" items. I have sold and purchased products at Walgreens for over thirty years. Walgreen wanted to sell Luv n' care cups as "WOW" items because of their special appeal to consumers. Because of the high level of demand for and consumer awareness of Luv n' care's soft-spout cup, Walgreen wanted to sell this item in a 2-pack. Walgreen had to approve the packaging of "WOW" items. I was asked by Walgreen to design a special 2-pack shrink wrap packaging to for Luv n' care's soft-spout cup, which I did, and which Walgreen approved.

9. Luv n' care cups were excellent "WOW" items. They are quality products, at good prices, that have special appeal to consumers, as born out by the success of these cups. I am not aware of any occasion where Walgreen made a product a "WOW" item, for which there was no pre-existing consumer awareness of and demand for that product.

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

10. Walgreen made an extremely large order in 2006, after being notified of a proposed price increase due to an increase in oil prices, and it was the first time that Walgreen had requested that much inventory since it first began purchasing Luv n' care cups.

11. Given that no sippy cup had ever sold well at Walgreen until Luv n' care began selling cups at Walgreen, it is apparent why Walgreen choose to copy the look of Luv n' care's two best-selling cups. Luv n' care's cups were the cups customers were buying at Wal-Mart, Kmart and other large retain chains. Walgreen did not want to risk a huge drop in sales.

12. As a product manufacturer with over forty years of experience, I have a lot of experience in advertising products. At different periods of time, I have placed ads directly in magazines, newspapers and other print media, as well as having purchased radio spots, some of which advertising has taken place outside of the United States. Based on my experience in connection with baby sundry items like no-spill cups, the best form of advertising in terms of generating product awareness and consumer demand is through cooperative advertising with large retain stores.

13. As compared to other forms of advertising for baby sundry items like no-spill cups, cooperative advertising through large retail stores not only is cost effective, in that the manufacture only has to subsidies the cost of the ads, but also tends to provide the best return and generate better response rates. That is because of the large circulation cooperative advertising by large retain stores have among targeted consumers. Stores like Wal-Mart and Walgreen reach the target audience for baby sundry items with their advertisements and promotions far more effectively than other forms of advertising for these types of products.

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

14. Based on my experience, cooperative advertising is not available for every brand item. Large retail stores have limits on the number of products, and the number of products in any category that they will advertise and promote. A product has to be selected and approved. Among factors considered is the ability of a product to draw consumers into the retail stores to purchase that item, which will translate into other business at the store.

15. Large retail stores look for products that have special appeal to consumers to advertise and promote through their cooperative advertising program. The more consumers are aware of a product, and the higher the demand for the product, the better the chance the product will be a successful promotional item for the large retail store.

16. In 2004, after sales at Wal-Mart made Luv n' care's hard-spout cup one of the best selling sippy cups in America, Walgreen ultimately asked Luv n' care to make its hard-spout cups one of Walgreen's promotional "WOW" items. Walgreen liked the product so much that it agreed to advertise and promote Luv n' care's hard-spout cup free of charge.

17. That same year, after Wal-Mart experienced overwhelming success with its initial release of Luv n' care's soft-spout cup, as evidenced by the flood of email correspondence received by Luv n' care asking where consumers could get more cups, as their local Wal-Mart had sold out, Wal-Mart made a corporate decision to get behind and promote Luv n' care's soft-spout cup. In my thirty plus years of experience, I have not seen Wal-Mart advertise and promote a baby sundry item they way Wal-Mart got behind Luv n' care's soft-spout cup.

18. Wal-Mart and Walgreen were not the only large retail stores that were advertising Luv n' care's cups. Other stores like Target and CVS were promoting the cups.

*Luv n' care, Ltd. v. Walgreen Co.*<br>Civil Action No. 08 CIV 4457 (DC/HP)

19. I could not have purchased advertising that would have been as effective in creating awareness of Luv n' care cups, particularly by the way they looked. A picture of Luv n' care's cups were included in the ads ran by Wal-Mart, Walgreens and other large retail stores. Luv n' care would provide art work of its cups for the ads run by these stores.

20. There is no question that consumers in the target market know Luv n' care cups by the way they look. Perhaps the only thing a mother holds more than her child is her child's sippy cups, which she refills five to ten times a day, which she routinely picks up off the floor, and which she notices other parents using with their children.

21. Luv n' care discreetly places its NUBY® trademark on its cups. It does so because I want consumers to first see and remember the look of the cup, and then associate that look with a single source (NUBY®). Based on my experience, the look of a cup is one of the most important factors in terms of initial cup sales and brand loyalty.

22. I chose not to spend resources on consumer survey evidence because I believe there is no question that consumers know Luv n' care's two best-selling cups by the way they look. In addition, I learned that Royal King had retained an expert to perform a consumer survey to disprove that consumers believe that Luv n' care's cups had secondary meaning.

23. For this reason, I retained an expert to review the consumer survey data obtained by Royal King. I did not think it made sense for me to duplicate Royal King's survey, at least until after I had an expert review and consider it and convey what it means.

24. Two things about Royal King's survey jumped out at me. First, Royal King's expert chose to conduct the survey in locations where Luv n' care does not typically sell cups (at

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

large malls, instead of stores such as Wal-Mart, Target, CVS, *etc.*) and in states where Luv n' care, relatively speaking, has a less of a market presence (as compared to other states). I assumed this was done in an effort to water down the results obtained from consumers. Secondly, Royal King chose not to conduct a survey on Luv n' care's best-selling, inherently distinctive, soft-spout cup; rather, it chose to test two other Luv n' care cups knocked off by Royal King, *i.e.*, Luv n' care's second-best selling, hard-spout cup, and a relatively new flip-top cup with a straw.

25. The results of Royal King's survey were not inconsistent with my expectations (although I do believe the data is watered down). With respect to Luv n' care's hard-spout cup, over 30% of the consumers, including consumers in locations where Luv n' care has less of a market presence as compared to other brands, consumers still knew that this cup came from a single source, even if they did not know the source or were mistaken as to the source of the cup.

26. Attached hereto as Exhibit "1" is a copy of the Expert Report of Bruce Isaacson obtained by Luv n' care and the survey questionnaire and data obtained by Royal King.

27. The result of Royal King's survey confirmed my belief that there was no need to spend the resources necessary to duplicate and obtain additional survey evidence. Having survey data which showed that Luv n' care's soft-spout cup has acquired secondary meaning, there was no question in my mind that Luv n' care's soft-spout cup would easily qualify as being famous, *i.e.*, extremely well-known by mothers with toddlers and young children

28. Even though I have received utility patents on this cup, the patent examiner, to my knowledge, has never raised functionality as an objection. The combination of a soft-top, bell-

7

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

shape cap, hooded front/back look with an insert wave-like appearance, with a cup that has a bulbous bottom and shoulders, is non-functional. It is more expensive to manufacture and there is no need to copy this look to compete in the market.

29. Because Walgreen knocked off Luv n' care's hard-spout cup before I decided to file for trade-dress protection with the USPTO, I opted to bring an infringement action against Royal King and Walgreen, and chose not to file a redundant application with the USPTO.

I hereby certify and affirm that all of the facts herein are true based upon my personal knowledge, or are believed to be true to the best of my knowledge, and certifying the truth of these statements under penalty of perjury.

Dated: June 29, 2009

NOURI EDWARD HAKIM
Founder & President for
Luv n' Care, Ltd.

8

*Luv N' Care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 29th day of June 2009, I electronically filed the foregoing document with the Clerk of the Court using its CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified either via transmission of Notices of Electronic Filing generated by this Court's CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

/s  *Susan J. Latham*
SUSAN J. LATHAM

## SERVICE LIST

*Luv N' Care, Ltd., et al. v. Walgreen Co., et al.*
Case No. 08-civ-4457 (DC)
United States District Court, Southern District of New York

Alan Weisberg
aweisberg@cwiplaw.com
Jason Buratti
jburatti@cwiplaw.com
Jeffrey H. Kamenetsky
jkamenetsky@cwiplaw.com
Christopher & Weisberg, P.A.
200 East Las Olas Blvd., Suite 2040
Ft. Lauderdale, FL 33301
Phone: 954-828-1488
Facsimile: 954-828-9122
*Via CM/ECF.*