## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **LUV N' CARE, LTD. and** | ) | |
| **ADMAR INTERNATIONAL, INC.** | ) | |
| | ) | CIVIL ACTION NO. |
| **Plaintiffs,** | ) | |
| **v.** | ) | 08 CIV 4457 (DC/HP) |
| | ) | |
| **WALGREEN CO. and** | ) | |
| **KMART CORP.** | ) | JURY TRIAL DEMANDED |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S SEPARATE STATEMENT, AND STATEMENT OF ADDITIONAL <u>MATERIAL FACTS IN DISPUTE</u>

Pursuant to Fed. R. Civ. Proc. 56 and Local Rule 56.1, plaintiffs Luv n' Care, Ltd. and

Admar International, Inc. (collectively, "Plaintiffs") submit this Response to Defendant's

Separate Statement, and Statement of Additional Material Facts in Dispute.  Plaintiffs' response

is submitted in opposition of Defendant's Motion for Summary Judgment, which addressed two

inherently factual issues: whether the designs of the Luv n' care brand hard-spout and the Luv n'

care brand soft-spout no-spill cups have acquired *secondary meaning* and are *primarily non-

functional*.  These two issues pertain to whether there is *federal protection* under the Lanham Act

for the unregistered trade dress of these two products.  Plaintiffs' motion does not seek to resolve

any other issues or claim that is raised in Plaintiffs' Complaint, such as issues arising under

Plaintiffs' claims pursuant to New York law.

Plaintiffs' response includes objections, citations to evidence, and a response to

Walgreen's alleged material facts, including a response of "disputed" when an alleged

*evidentiary fact* is proffered, <u>not</u> for what it allegedly says, but for *an inference* Defendant is

asking this Court. rather than the trier-of-fact, to draw when the inference is plainly disputed. Plaintiffs also object where an alleged fact is immaterial, including where Defendant claims there is an absence of evidence, when evidence of the particular thing claimed is customarily not kept. Plaintiffs' response also includes additional material facts and citations to evidence, annexed hereto, which plainly show that summary judgment in favor of Defendant is impermissible.  It is the trier-of-fact's role to weigh consider and balance the facts, and to render a decision based thereon.

### Plaintiffs' Products

1.     Plaintiffs sell sippy cups designed for use by babies and toddlers.  **Objection:**  Not supported by evidence cited.

2.     Luv N' Care's ("LNC") CEO testified "a sippy cup is – it's a cup an infant or young child can sip from.  That's why it's called a sippy cup."  **Objections:**  Unsupported (deposition transcript not provided), immaterial, and incomplete/out of context.  **Disputed:**  Mr. N. Edward Hakim, Luv n' care's CEO, testified that "sippy cup" is a general term that can refer to any cup a child or infant can sip from, including the category of goods at issue, which is no-spill or spill-proof cups – cups that come in all shapes, designs, colors and styles.

3.     Plaintiffs have sold their asserted designs since 2004, but have no evidence of sales prior to that date.  **Objection:**  Unsupported/misstates evidence cited.  **Disputed:**  Plaintiffs have sold both the Luv n' care brand hard-spout and the Luv n' care brand soft-spout no-spill cups prior to 2004, and have submitted evidence of sales prior to 2004.  **Disputed:**  *See* Plaintiffs' Statement of Additional Material Facts in Opposition to Defendant's Motion for Partial Summary Judgment (hereinafter, "AMF") at ¶¶ 15, 118.

4.     On May 20, 2009, LNC's President Joseph Hakim testified:

> Q.   And I want to make sure, my question is
> not when did you start, because you already
> established that you only know it was sometime
> prior to 2004.  My question is about evidence.
> Sitting here today, the only evidence that you
> have shows that you used the asserted Luv 'N Care
> designs in 2004?
> A.   That's all I have.  I know it's at
> least 2004 back. When we changed - we changed our
> systems over, we don't have that data, that I
> could go back before that.

*Objection:*  Incomplete/out of context.  *Disputed:*  It is clear from the testimony in the cited transcript that Mr. Joseph Hakim was referring to sales data stored in Luv n' care's computer system, for which he was responsible.  Mr. Hakim is not in sales, was not responsible for sales, was not designated as a Rule 30(b)(6) deponent for sales, and has no personal knowledge of that side of the business.  He testified that, due to a change in Luv n' care's computer system, Luv n' care's computer did not have sales data prior to 2004.  Mr. Hakim was not testifying as to what other individuals at Luv n' care know or about any other evidence of sales prior to 2004.

*Disputed:*

    5.      The Gripper Cup is sold in a "variety of colors."  Ex. A at II:66:7-11; Ex D.

*Objection:*  Incomplete/out of context.  *Disputed:*  The Luv n' care brand soft-spout cup is sold in a handful of certain custom colors, specially mixed for the Luv n' care brand soft-spout cup.

*Disputed:*  *See* AMF ¶16.

    6.      On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.   The overall - sorry, the trade dress.
>  The naked trade dress that's on the right side of
> exhibit B.
> A.   It comes in a variety of colors.  You
> could make it in any color.

*Objection:* Unsupported/misstates record. *Disputed.* This quoted excerpt was in response to an inquiry by defense counsel as to whether Plaintiffs were claiming trade dress protection in a color, alone, or in the overall look of the product. Neither defense counsel nor the deponent, in this excerpt, was attempting to quantify the number of colors used, or speak to the nature of the colors (stock or custom) used in the trade dress of the Luv n' care cups.

7.    LNC markets each of the asserted designs under Admar's registered trademark NUBY®. DE. 1 at ¶11. *Objection:* Unsupported/misstates record, which refers to the sales of goods, not product marketing. *See* Complaint ¶ 11 ("Luv n' care sells goods under the NUBY® mark throughout the United States under exclusive rights from Admar."). *Objection:* Immaterial to issues raised by Defendant's motion. Walgreen does not claim on summary judgment that there is no likelihood of confusion resulting from its sales of commissioned knockoff cups, which have the same overall look and are sold in similar, intentionally deceptive packaging under its unknown WAGI® mark.

8.    LNC sells each of the asserted designs under Admar's registered trademark NUBY®. DE. 1 at ¶11. *Objection:* Immaterial to issues raised by Defendant's motion. Walgreen does not claim on summary judgment that there is no likelihood of confusion resulting from its sales of its commissioned knockoff cups, which have the same overall look and sold in similar and intentionally deceptive packaging under its unknown WAGI® mark.

9.    The NUBY® mark appears prominently on the Gripper Cup in at least seven locations. Ex. A at I:31:22-32:15. *Objection:* Unsupported/misstates record. *Disputed:* The NUBY® mark does not appear seven times on the product. Nor does it appear prominently; rather, it appears discretely, molded into the cup in see-through lettering. *Disputed:* *See* Opp. Decl. of N. Edward Hakim, at ¶ 21. *Objection:* Immaterial to issues raised by Defendant's

motion.  Walgreen does not claim on summary judgment that there is no likelihood of confusion

resulting from its sales of its commissioned knockoff cups, which have the same overall look and

are sold in similar, intentionally deceptive packaging under its unknown WAGI® mark.

        10.      On May 20, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q. Right.  No spill, Veri-Flo, and Nuby
> are registered trademark in the small print.
>  That's four on the packaging, right?
> A.  Right.
> Q.  And then it also appears on the product
> itself?
> A.  Yes, on the very face of the product.
> Q.  How many times?
> A.  To the fact [sic] of the product, which is
> engraved, that's on the - it's embedded and
> engraved in the silicone spout. Not good lighting
> in here.  It may be on the bottom.  Let's see.
> It's on the bottom.
> Q.  So, seven times the word Nuby appears
> on the exhibit 39 product?
> A.  That's correct.

*Disputed, objection:*  Unfair question/misstates record.  The record testimony was plainly

referring to Exhibit 39, which shows both the product and its packaging, not "the exhibit 39

product."  *Disputed:*  The trademark discretely appears 3 times on the product.  *See* Opp. Decl.

of N. Edward Hakim, at ¶ 21.  Ex. A at II:57:17-20.  *Objection:*  Immaterial to issues raised by

Defendant's motion.  Walgreen does not claim on summary judgment that there is no likelihood

of confusion resulting from its sales of its commissioned knockoff cups, which have the same

overall look and sold in similar, intentionally deceptive packaging under its unknown WAGI®

mark.

**Plaintiff's Allegations Are NOT Limited As Defendant Contends.**

        11.      Plaintiffs' Complaint asserts the Gripper Cup against Walgreens.  *Admitted.*

        12.      Plaintiffs Gripper Cup is shown in Exhibit B to the Complaint.  *Admitted.*

13.    Plaintiffs' Complaint asserts the No-Spill Cup against Walgreens.  *Admitted.*

14.    Plaintiffs No-Spill Cup is shown in Exhibit C to the Complaint.  *Admitted.*

15.    Paragraphs 53-56 of the Complaint assert the Comb and Brush Set against Kmart and do not name Walgreens.  *Objections:*  Immaterial, incomplete/out of context.  *Disputed:* Plaintiffs' Complaint, including without limitation Paragraphs 2, 9-28 and 57-114, is not limited by the examples given in paragraphs 53-56, and expressly asserts claims against Walgreen, one of the two "Defendants," for selling a knockoff of the Luv n' care brand comb and brush set, which is Exhibit E to the Complaint.

16.    The Gripper Cup, No-Spill Cup, and Comb/Brush Set are referred to as the "asserted designs."  *Objection:*  This is a defined term in Walgreen's separate statement.

17.    Plaintiffs LNC's Fed. R. Civ. P. 30(b)(6) designee Joseph Hakim testified that Exhibit E to the Complaint was a design asserted against Walgreens during his May 20, 2009 deposition.  *Objection:*  Mr. Hakim was <u>not</u> designated as a Rule 30(b)(6) deponent on this topic as suggested by Walgreen.  Ex. B at I:27:20-21 ("there again, I'm not the expert on this, or this category . . . .").  However, he did confirm the allegations in the Complaint.

18.    On May 20, 2009, LNC's President Joseph Hakim testified:

> Q.  Is exhibit B to the complaint, an
> asserted design, contain an asserted design?
> A.  Is B an asserted design?  I believe so.
> Q.  And C?
> A.  I believe so.
> Q.  And E?
> A.  I believe so.

*Admitted.*

19.    The Complaint does not allege that plaintiffs' alleged trade dress is "not functional."  *Objection:*  Immaterial.  "Not functional" is not the standard.  The components of a protectable trade dress may serve a function.  The standard is whether the overall appearance of a

product or its packaging is primarily non-functional.  ***Disputed:***  Plaintiffs have alleged that the products and packaging at issue serve as trademarks in interstate commerce, *i.e.,* are primarily non-functional.  *See* Complaint ¶ 17 ("The appearance of Plaintiffs' products . . . are distinctive symbols which serve as trademarks of Luv n' care's products in interstate commerce, both in the United States and worldwide."); *id.* ("The appearance of Plaintiffs' . . . packaging . . . are distinctive symbols which serve as trademarks of Luv n' care's products . . . .").

20.     The Complaint contains no allegations that Walgreens has infringed any packaging trade dress.  ***Disputed:***  Plaintiffs' Complaint, including without limitation Paragraphs 2, 13-19, 22-28, and 57-114, are not limited to the allegations in paragraphs 29-56, and expressly allege that both "Defendants" (plural) use infringing packaging.  Walgreen is one of the two Defendants accused of infringing upon Plaintiffs' packaging trade dress.  *E.g.,* Complaint ¶ 83 ("Defendants are intentionally using Plaintiffs' product designs and packaging to trade off of Plaintiffs' reputation and goodwill and to create deception in the marketplace.").  ***Disputed:*** Walgreen expressly alleged as its Fifth Affirmative Defense, filed on Aug. 6, 2008, in reponse to the Complaint, that: "The alleged trademarks asserted by Plaintiffs as to its product designs ***and packaging*** are not famous."   Similarly, Walgreen's Sixth Affirmative Defense stated that: "The alleged trade dress asserted by Plaintiffs as to its product designs ***and packaging*** is functional and therefore not protectable under trade dress or trademark law."  (D.E.# 12).  Therefore, it is clear that Walgreen was fully aware that Plaintiffs were alleging that Walgreen had infringed its packaging trade dress.  *See* AMF ¶114.

21.     Plaintiffs disclosed for the first time on May 20, 2009 packing was being asserted against Walgreens.  ***Objection:***  Unsupported, the deposition testimony cited does not support this contention; and defense counsel's cross-referenced argument is neither evidence, nor an

accurate characterization of the complaint. ***Disputed:*** Plaintiffs' Complaint, including without

limitation Paragraphs 2, 13-19, 22-28, and 57-114, expressly allege that both "Defendants"

(plural) use infringing packaging. Walgreen is one of the two Defendants accused of infringing

upon Plaintiffs' packaging trade dress. *E.g.,* Complaint ¶ 83 ("Defendants are intentionally using

Plaintiffs' product designs and packaging to trade off of Plaintiffs' reputation and goodwill and

to create deception in the marketplace."). ***Disputed:*** Walgreen expressly alleged as its Fifth

Affirmative Defense, filed on Aug. 6, 2008, in reponse to the Complaint, that: "The alleged

trademarks asserted by Plaintiffs as to its product designs ***and packaging*** are not famous."

Similarly, Walgreen's Sixth Affirmative Defense stated that: "The alleged trade dress asserted by

Plaintiffs as to its product designs ***and packaging*** is functional and therefore not protectable

under trade dress or trademark law." (D.E.# 12). Therefore, it is clear that Walgreen was fully

aware that Plaintiffs were alleging that Walgreen had infringed its packaging trade dress. *See*

AMF ¶ 114.

        22.      On May 20, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q. Is packaging part of the trade dress
> that's asserted against Walgreens in this case?
> A. Yes.

***Objection:*** Immaterial. Walgreen expressly alleged as its Fifth Affirmative Defense, filed on

Aug. 6, 2008, in response to the Complaint, that: "The alleged trademarks asserted by Plaintiffs

as to its product designs ***and packaging*** are not famous." Similarly, Walgreen's Sixth

Affirmative Defense stated that: "The alleged trade dress asserted by Plaintiffs as to its product

designs ***and packaging*** is functional and therefore not protectable under trade dress or trademark

law." (D.E.# 12). Therefore, it is clear that Walgreen was fully aware that Plaintiffs were

alleging that Walgreen had infringed its packaging trade dress. *See* AMF ¶ 114. ***Objection:*** The

date of the deposition is immaterial.  Defendant agreed to take the deposition on May 20, 2009.

Defendant could have noticed and taken Mr. Hakim's deposition on an earlier occasion.  The fact

that Defendant waited to May 20, 2009 to depose Mr. Hakim, and Mr. Hakim confirmed an

allegation in the complaint, only means that Defendant waited until May 20th to cross-examine

Mr. Hakim as to the packaging allegation it expressly acknowledged and alleged affirmative

defenses to nearly ten (10) months earlier.  *See* AMF ¶114.

      23.     Plaintiffs do not assert that Walgreens infringes Plaintiffs' NUBY® trademark.

***Admitted in part/disputed in part.***  Plaintiffs have not brought a claim for trademark

infringement; however, Plaintiff have alleged that Walgreen deliberately decided to sell

knockoffs made by Royal King Baby Products Co. ("Royal King") that copied and imitated

Plaintiffs' products, packaging and trademarks.  *See, e.g.,* Complaint ¶¶ 24-25.

      24.     Walgreens sought confirmation that Plaintiffs would not prosecute these untimely

claims that are not in the Complaint.  ***Objection:***  Unsupported, mischaracterizes record.

Defense counsel's self-serving letter is not evidence.  ***Disputed:***  Plaintiffs' complaint timely

asserts claims against Walgreen, including Plaintiffs' claims against Walgreens for infringing

upon Plaintiffs' trade dress packaging.  Also, Walgreens fully deposed Plaintiffs on this issue.  In

addition, the proposed amended complaint, which conforms the pleading to proof, in belts-and-

suspenders fashion, more than adequately responds to defense counsel's mischaracterization of

the record.  ***Disputed:***  Walgreen expressly acknowleged Plaintiffs' timely claims when, in

reponse to the Complaint, it alleged as its Fifth Affirmative Defense, filed on Aug. 6, 2008,

that: "The alleged trademarks asserted by Plaintiffs as to its product designs ***and packaging*** are

not famous."   Similarly, Walgreen's Sixth Affirmative Defense stated that: "The alleged trade

dress asserted by Plaintiffs as to its product designs ***and packaging*** is functional and therefore

not protectable under trade dress or trademark law." (D.E.# 12). Therefore, it is clear that

Walgreen was fully aware that Plaintiffs were timely alleging that Walgreen had infringed its

packaging trade dress.

### Plaintiffs' Alleged Trade Dress In The Gripper Cup And No-Spill Cup Are NOT Commonly Used By Any Competitors And Are Primarily NON-Functional

25.    On May 20, 2009, LNC's CEO Nouri Ed Hakim testified that there are "roughly

12 other competitors in the market."

> Q.  So, that's roughly 12 other competitors
> in the market, right?
> A.  I would think so.

**Objection:**  Unsupported/misstates testimony.  Right after the quoted excerpt, in his very next

breath, Mr. Hakim plainly clarified and qualified his answer:  He would <u>not</u> consider each of the

twelve companies named by defense counsel as "a competitor" or a "major player."  Ex. A at

I:73:2-4.  **Disputed:**  Mr. Hakim testified that Luv n' care only has "about four" or "five"

competitors.  Ex. A at I:73:18-21 ("Q.  But there's about a dozen that you're aware of?  A.  Not

major players, there's only about four."); Ex. A at I:74:8-10 ("the only people that we consider

our competition would be Playtex, Gerber, Even Flo, Avent, and Munchkins.").  With respect to

other baby sundry items, such as a comb and brush set, there are even fewer competitors.  Ex. A

at I:83:13-84:5 ("Q.  What other competitors make combs and brushes for infants?  A.  I would

say First Years.  I would say, I think Gerber still does.  They've discontinued so much, but I

think Gerber still does. . . . There's not many of us left. . . . That's about it.").

26.    Playtex is a competitor of LNC.  **Disputed in part:**  Mr. Hakim testified that

"Playtex certainly doesn't make as many cups as they used to."  Ex. A at I:72:20-21.  Playtex

also does not make a comb and brush set.  Ex. A at I:83:13-84:5.  **Objection:** Plaintiffs object to

this purported fact pursuant to Fed.R.Civ.P. 26, 30(b)(6), and 56(f), because (a) Defendant has

not fulfilled its obligations to provide deposition testimony related to this fact under Fed.R.Civ.P.
30(b)(6), (b) Defendant failed to produce any documentary evidence or answer any request for
admission or interrogatory related to this fact either in its initial disclosures or in response to
Plaintiffs' written discovery requests, and (c) Defendant failed to identify Atico International, a
material witness and indispensible party with knowledge of this fact, in its initial disclosures.
*See* Opp. Decl. Morris Cohen; Opp. Decl. Weisburg; Opp. Decl. Malynn.

27.     Gerber is a competitor of LNC.  ***Admitted.***

28.     Sassy/Mam is a competitor of LNC.  ***Objection, disputed:***  Unsupported/misstates
testimony.  Ex. A at I:73:12-13 ("I would not consider Sassy[/]Mam a competitor, no.").
***Objection:*** Plaintiffs object to this purported fact pursuant to Fed.R.Civ.P. 26, 30(b)(6), and
56(f), because (a) Defendant has not fulfilled its obligations to provide deposition testimony
related to this fact under Fed.R.Civ.P. 30(b)(6); (b) Defendant failed to produce any
documentary evidence or answer any request for admission or interrogatory related to this fact
either in its initial disclosures or in response to Plaintiffs' written discovery requests; and (c)
Defendant failed to identify Atico International, a material witness and indispensible party with
knowledge of this fact, in its initial disclosures.  *See* Opp. Decl. Morris Cohen; Opp. Decl.
Weisburg; Opp. Decl. Malynn.

29.     First Years is a competitor of LNC.  ***Objection, disputed in part:***
Unsupported/misstates testimony.  Ex. A at I:73:18-21 ("Q.  But there's about a dozen that
you're aware of?  A.  Not major players, there's only about four."); Ex. A at I:74:8-10 ("the only
people that we consider our competition would be Playtex, Gerber, Even Flo, Avent, and
Munchkins.").  First Years competes in comb and brush sets.  Ex. A at I:83:13-84:5.  ***Objection:***
Plaintiffs object to this purported fact pursuant to Fed.R.Civ.P. 26, 30(b)(6), and 56(f), because

(a) Defendant has not fulfilled its obligations to provide deposition testimony related to this fact under Fed.R.Civ.P. 30(b)(6); (b) Defendant failed to produce any documentary evidence or answer any request for admission or interrogatory related to this fact either in its initial disclosures or in response to Plaintiffs' written discovery requests; and (c) Defendant failed to identify Atico International, a material witness and indispensible party with knowledge of this fact, in its initial disclosures. *See* Opp. Decl. Morris Cohen; Opp. Decl. Weisburg; Opp. Decl. Malynn.

30.     Even Flo is a competitor of LNC. ***Disputed in part:*** Even Flo no longer makes a comb and brush set. Ex. A at I:83:13-84:5. ***Objection:*** Plaintiffs object to this purported fact pursuant to Fed.R.Civ.P. 26, 30(b)(6), and 56(f), because (a) Defendant has not fulfilled its obligations to provide deposition testimony related to this fact under Fed.R.Civ.P. 30(b)(6); (b) Defendant failed to produce any documentary evidence or answer any request for admission or interrogatory related to this fact either in its initial disclosures or in response to Plaintiffs' written discovery requests, and (c) Defendant failed to identify Atico International, a material witness and indispensible party with knowledge of this fact, in its initial disclosures. Opp. Decl. Morris Cohen; Opp. Decl. Weisburg; Opp. Decl. Malynn.

31.     Munchkins is a competitor of LNC. ***Disputed in part:*** Munchkins does not make a comb and brush set. Ex. A at I:83:13-84:5. ***Disputed in part***: Munchkins, like Walgreen, has also engaged in deceptively selling knockoffs of Luv n' care's products. *See* AMF ¶145-146. ***Objection:*** Plaintiffs object to this purported fact pursuant to Fed.R.Civ.P. 26, 30(b)(6), and 56(f), because (a) Defendant has not fulfilled its obligations to provide deposition testimony related to this fact under Fed.R.Civ.P. 30(b)(6); (b) Defendant failed to produce any documentary evidence or answer any request for admission or interrogatory related to this fact

either in its initial disclosures or in response to Plaintiffs' written discovery requests, and

(c) Defendant failed to identify Atico International, a material witness and indispensible party

with knowledge of this fact, in its initial disclosures.  Opp. Decl. Morris Cohen; Opp. Decl.

Weisburg; Opp. Decl. Malynn

      32.    ABC/Development is a competitor of LNC.  ***Objection, disputed:***

Unsupported/misstates testimony.  Ex. A at I:73:18-21 ("Q.  But there's about a dozen that

you're aware of?  A.  Not major players, there's only about four."); Ex. A at I:74:8-10 ("the only

people that we consider our competition would be Playtex, Gerber, Even Flo, Avent, and

Munchkins.").  With respect to other baby sundry items, such as a comb and brush set, there are

even fewer competitors.  Ex. A at I:83:13-84:5 ("Q.  What other competitors make combs and

brushes for infants?  A.  I would say First Years.  I would say, I think Gerber still does.  They've

discontinued so much, but I think Gerber still does. . . . There's not many of us left. . . . That's

about it.").  ***Objection:*** Speculation, lack of foundation/personal knowledge.  Ex. A at I:70:6-16

("I'm not sure exactly. . . .They're not a big player, if they are [even in the field].").  ***Objection:***

Plaintiffs object to this purported fact pursuant to Fed.R.Civ.P. 26, 30(b)(6), and 56(f), because

(a) Defendant has not fulfilled its obligations to provide deposition testimony related to this fact

under Fed.R.Civ.P. 30(b)(6); (b) Defendant failed to produce any documentary evidence or

answer any request for admission or interrogatory related to this fact either in its initial

disclosures or in response to Plaintiffs' written discovery requests; and (c) Defendant failed to

identify Atico International, a material witness and indispensible party with knowledge of this

fact, in its initial disclosures.  Opp. Decl. Morris Cohen; Opp. Decl. Weisburg; Opp. Decl.

Malynn

      33.    Avent is a competitor of LNC. Ex. A at I:69:16-73:4.  ***Admitted.***

34.    Playskool is a competitor of LNC. Ex. A at I:69:16-73:4. ***Admitted in part.***
Playskool contracts with Luv n' care to make one of its cups.

35.    Plaintiffs testified that there "could be 30 or 40 or 20" competitors in the sippy

cup market. ***Objection, disputed:*** Unsupported/misstates testimony. The quoted excerpt refers

to sippy cups in general, not entities that were directly competing against Plaintiffs, and was in

reference to companies that make "100 cups a year" with "hand paint on them. Really. They go

out and sell them like that, and that's what they do. They may get $20.00 a cup." Ex. A at

I:75:6-12. ***Objection:*** Plaintiffs object to this purported fact pursuant to Fed.R.Civ.P. 26,

30(b)(6), and 56(f), because (a) Defendant has not fulfilled its obligations to provide deposition

testimony related to this fact under Fed.R.Civ.P. 30(b)(6); (b) Defendant failed to produce any

documentary evidence or answer any request for admission or interrogatory related to this fact

either in its initial disclosures or in response to Plaintiffs' written discovery requests; and

(c) Defendant failed to identify Atico International, a material witness and indispensible party

with knowledge of this fact, in its initial disclosures. Opp. Decl. Morris Cohen; Opp. Decl.

Weisburg; Opp. Decl. Malynn

36.    Plaintiffs produced a trade dress chart on May 1, 2009 listing the allegedly

protectable elements of their asserted designs. ***Objection:*** A trade dress does not need

individually "protectable elements." Federal law is clear that a protectable trade dress can

comprise of a unique combination of entirely common and wholly functional features.

***Admitted in part:*** Plaintiffs produced a trade dress chart on May 1, 2009 that provides a

description of the main things consumers visually see and would consider, at a minimum, the

overall look of the Luv n' care brand product designs and packaging, which Walgreen bought,

liked, promoted and copied.

37.    Plaintiffs' trade dress chart does not state Walgreens copied Plaintiffs' alleged unregistered trade dress. ***Objection:*** Immaterial. The chart was an exhibit in the Texas litigation against Royal King and was produced in the New York litigation. Walgreen's buyer and Rule 30(b)(6) designee, Jeff Kruckman, admitted he commissioned the "alternative source" for Luv n' care products and approved Royal King's look-a-likes sold by Walgreens under Walgreen's newly derived mark, which Kruckman came up with. ***Disputed:*** Plaintiffs' Rule 30(b)(6) designee plainly testified that "Royal King" refers to both "Royal King/Walgreens" because "They're the same person" from Plaintiffs' viewpoint. Ex. A at I:77:22-78:2.

38.    On May 20, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q. So, let me then, separate exhibit 40
> into a two page document that has the no spill
> sipper cup, and the hard tipped no spill cup.
> Exhibit 40 contains products that are asserted
> against Walgreens, correct?
> A. That's correct. On the no spill
> drinking cup, and the second page, which is the
> no spill sippy cup.

***Objection:*** Immaterial. This testimony simply reiterates that defense counsel created an exhibit that contains two of the products at issue. ***Disputed:*** Plaintiffs are also asserting claims against Walgreen for copying the Luv n' care brand comb and brush set and Plaintiffs' trade dress packaging, which also are included in the trade dress chart. *See* D.E.# 1.

39.    Plaintiffs produced another trade dress chart, DX 40, that lists the allegedly protectable elements of their asserted sippy cup designs that are also shown in DX. 41. Exs. Q, R. ***Objection:*** A trade dress does not need any individually "protectable elements." Federal law is clear that a protectable trade dress can comprise of a unique combination of entirely common and wholly functional features. ***Disputed in part:*** This trade dress chart was supplemented with one that included Bates Nos. at the bottom. Both charts provide a description of the main things

15

consumers visually see and would consider, at a minimum, the overall look of the Luv n' care

brand products and packaging, which Walgreen bought, liked, promoted and copied.

40.      On May 20, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  Now, I'll hand you exhibit DX 41, which
> contains documents bearing production numbers
> 203301 through 11. This is one -
> A.  That's correct.
> Q.  This is one big table, right?
> A.  That's right.
> Q.  Exhibit 41?  You said, that's correct?
> A.  Yes.

*Admitted:* Mr. Hakim was handed the exhibit, which contained one big table.

### Gripper Cup

41.      Plaintiffs' trade dress chart alleges an element of the Gripper Cup trade dress is "a

colored or tinted bell-shaped cap." ***Disputed/objection to extent read out of context:***  Mr.

Hakim testified that Luv n' care uses custom colors, which are mixed for Luv n' care cups, not

stock colors.  The caps for the Luv n' care brand soft-spout cups include a clear silicone spout

that rests on a clear oval insert attached to the top of the custom colored cap, which gives the cap

a ridged or rounded, layered-like appearance.  The best evidence of the cap and the unique and

distinctive overall look of Luv n' care's trade dress is ***the product itself***, for which a design

patent is pending, and which Walgreen chose to promote and copy.

42.      Competitors of plaintiffs in the sippy cup market sell sippy cups having a colored

or tinted bell-shaped cap.  ***Objection***: Plaintiffs' object to Defendant's use of such

unauthenticated, distorted and manipulated photographic evidence, which it submitted for the

purpose of comparing it to Plaintiffs' asserted trade dress, because Defendant failed to comply

with the authentication requirements of Fed.R.Evid. 901 and 1002.  Defendant's unauthenticated,

distorted and manipulated photographic comparisons are not admissible unless authenticated as a

comparison made by the trier of fact or by expert witnesses with specimens that have also been

authenticated.  Moreover, Defendant's unauthenticated manipulated photographs are

inadmissible because Defendant has failed to submit the original undistorted, unmanipulated

photographs.  Similarly, Defendant has submitted no evidence of the date the purported

competing cups were first offered in commerce; thus, there is no evidence to suggest that such

predated Plaintiffs' trade dress.  Furthermore, even if such photographic comparisons were

authenticated, they should be excluded under Fed.R.Evid. 403 because their probative value is

substantially outweighed by the danger of confusion of the issues and unfair prejudice because

Defendant is seeking through use of such photographs, and portions thereof, to improperly

dissect Plaintiffs' trade dress into its individual elements when it must be evaluated as a whole

pursuant to statute and binding caselaw.   Finally, Plaintiffs object to such photographic

comparisons because Defendant is improperly asking this Court to weigh and evaluate

(unauthenticated) evidence when that is the province of the jury.  ***Disputed:*** Luv n' care's

products are unique and distinctive, both when they were first released into the market in 2003,

and today, except for Royal King's knockoffs and the one Munchkin knockoff. *See* AMF ¶¶41-42,

15, 145-146; Decl. of Opp Decl. of Nouri Ed Hakim, at ¶¶ 5,6.  ***Objection:*** Plaintiffs object to

this purported fact pursuant to Fed.R.Civ.P. 26, 30(b)(6), and 56(f), because (a) Defendant failed

to identify a expert to testify as to such comparisons and to authenticate the specimens and the

comparisons thereof; (b) Defendant has not fulfilled its obligations to provide deposition

testimony related to this fact under Fed.R.Civ.P. 30(b)(6); (c) Defendant failed to produce any

documentary evidence or answer any request for admission or interrogatory related to this fact

either in its initial disclosures or in response to Plaintiffs' written discovery requests; and (d)

Defendant failed to identify Atico International, a material witness and indispensable party with

17

knowledge of this fact, in its initial disclosures.  Opp. Decl. Morris Cohen; Opp. Decl. Weisburg;

Opp. Decl. Malynn.  ***Objections and disputed:***  Unsupported by proffered evidence, which lacks

foundation, personal knowledge, probative value, authenticity and reliability.  There is *no*

*evidence* of when any of these allegedly competing cups were first offered for sale in the market,

whether any of them have been sold on the market, and whether they are even different cups.

None of the depicted caps (save the Munchkin cap, another knockoff that has received a cease

and desist letter, and is shown in the middle) include a clear silicone spout that rests on a clear

oval silicone insert attached to the top of the custom-colored cap, which gives the cap a

ridged/rounded, layered-like appearance.  Moreover, the photographs provided appear to cut off

the tops of the depicted caps, so as to preclude a meaningful comparison.  There is *no evidence*

of the actual sizes of the caps of these allegedly competing cups, as no scale was provided for

each picture.  There is *no evidence* that the caps for these allegedly competing cups use the same

custom colors.  None of the caps (save Munchkin knockoff) look like the cap for the Luv n' care

cup.  In fact, at least one of the photographs has been altered to remove the handles going into

both sides of the cap, which plainly contributes to an overall different look.  Finally, there is *no*

*evidence* that the cups with the depicted caps (save for the infringing Munchkin cup), when

viewed as a whole, look like the Luv n' care brand cup.

      

43.    On May 20, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  All right, do the other competitors, to
> Luv 'N Care's knowledge, use colored caps on
> their sippy cups?
> A.  I would think both categories use
> colored caps, in one form or another.
> . . .
> Q.  No one else uses a bell shaped cap?

A.  Royal King does.
Q.  Anybody else, to Luv 'N Care's
 knowledge?
A.  I think recently Munchkins is doing
 that.

***Admitted in part, disputed/objection to extent taken out of context:***  Mr. Hakim plainly testified

that nobody other than Royal King and recently Munchkins (two infringers) have cups that use a

similar "bell shaped cap."  Ex. A at I:77:11-18 ("Q.  Anybody else?  A.  No.").  In addition, he

pointed out that, although other companies use colors for their cups, Walgreen's commissioned

knockoffs have a color scheme that simulates the custom colors used by the Luv n' care cups,

such that consumers would be unable to distinguish the cups by their colors.

44.    Plaintiffs' trade dress chart alleges an element of the Gripper Cup trade dress is

"an oval clear silicone spout which is attached to a silicone top of the cap."  ***Disputed/objection***

***to extent read out of context:***  The Luv n' care clear silicone spout, which rests on a clear oval

insert attached to the top of a custom colored bell-shaped cap and provides the cap with a

ridged/rounded, layered-like appearance, work together to help give the Luv n' care brand cup a

unique and distinctive look.  The best evidence of the top of the cup, and the unique and

distinctive overall look of Luv n' care's trade dress is the product itself, for which a design patent

is pending, and which Walgreen chose to promote and copy.

45.    Competitors of plaintiffs in the sippy cup market sell sippy cups having an oval

clear silicone spout which is attached to a silicone top of the cap.  ***Objection***: Plaintiffs' object to

Defendant's use of such unauthenticated, distorted and manipulated photographic evidence,

which it submitted for the purpose of comparing it to Plaintiffs' asserted trade dress, because

Defendant failed to comply with the authentication requirements of Fed.R.Evid. 901 and 1002.

Defendant's unauthenticated, distorted and manipulated photographic comparisons are not

admissible unless authenticated as a comparison made by the trier of fact or by expert witnesses with specimens that have also been authenticated. Moreover, Defendant's unauthenticated manipulated photographs are inadmissible because Defendant has failed to submit the original undistorted, unmanipulated photographs. Similarly, Defendant has submitted no evidence of the date the purported competing cups were first offered in commerce; thus, there is no evidence to suggest that such predated Plaintiffs' trade dress. Furthermore, even if such photographic comparisons were authenticated, they should be excluded under Fed.R.Evid. 403 because their probative value is substantially outweighed by the danger of confusion of the issues and unfair prejudice because Defendant is seeking through use of such photographs, and portions thereof, to improperly dissect Plaintiffs' trade dress into its individual elements when it must be evaluated as a whole pursuant to statute and binding caselaw. Finally, Plaintiffs object to such photographic comparisons because Defendant is improperly asking this Court to weigh and evaluate (unauthenticated) evidence when that is the province of the jury. *Disputed:* Luv n' care's products are unique and distinctive, both when they were first released into the market in 2003, and today, except for Royal King's knockoffs and the one Munchkin knockoff. *See* AMF ¶¶ 15, 148-149; Opp. Decl. of Nouri Ed Hakim, at ¶¶ 5,6. *Objection:* Plaintiffs object to this purported fact pursuant to Fed.R.Civ.P. 26, 30(b)(6), and 56(f), because (a) Defendant failed to identify a expert to testify as to such comparisons and to authenticate the specimens and the comparisons thereof, (b) Defendant has not fulfilled its obligations to provide deposition testimony related to this fact under Fed.R.Civ.P. 30(b)(6); (c) Defendant failed to produce any documentary evidence or answer any request for admission or interrogatory related to this fact either in its initial disclosures or in response to Plaintiffs' written discovery requests; and (d) Defendant failed to identify Atico International, a material witness and indispensible party with

knowledge of this fact, in its initial disclosures. Opp. Decl. Morris Cohen; Opp. Decl. Weisburg; Opp. Decl. Malynn. ***Objections and disputes:*** Unsupported by proffered evidence, which lacks foundation, personal knowledge, probative value, authenticity and reliability. There is *no evidence* of when any of these allegedly competing cups were first offered for sale in the market, whether any of them have been sold on the market, and whether they are even different cups. There is *no evidence* that the soft-spouts for these allegedly competing cups rest on a clear oval silicon top to a custom colored bell-shape cap, which together provide a ridged/rounded, layered-like appearance and contribute to the overall look of the Luv n' care cup. The proffered pictures, in fact, purposefully cut off the spouts from the tops of the caps to prevent anyone from actually seeing the tops of the allegedly competing cups, and making an apples-to-apples comparison. There is *no evidence* of the actual sizes of the spouts, as no scale was provided for each picture. None of the spouts (save for the infringing knockoffs) even look like the spout for the Luv n' care cup. Finally, except for the depicted Royal King and Munchkin knockoffs, there is *no evidence* that the cups with the depicted spouts, when viewed as a whole, look like the Luv n' care brand cup.



46.    On May 20, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q. Do any of those other competitors that we've discussed, use an oval, clear, silicone spout?
> A. Two. Royal King - when I tell you Royal King, I can say Royal King/Walgreens. They're the same person.
>  ......
> Q. All right, does any other competitor attach the silicone top, the silicone spout to the silicone top of the cap?
> A. That's my design. The only people who copied is Walgreens and Munchkins.

> Q.  Munchkins copied?
> A.  Yes.
> Q.  Do any of the other competitors use a
> colored cup?
> A.  Everybody uses a colored cup.

***Admitted in part, disputed/objection to extent taken out of context:***  Mr. Hakim plainly testified

that, other than Royal King and recently Munchkins (two infringers), he has never seen any other

cup that uses a similar "oval, clear, silicone spout."  Ex. A at I:77:19-78:18 ("Q.  Anybody else?

A.  Never seen one.").  In addition, Mr. Hakim pointed out that, although other companies use

different colors for their cups, Walgreen's commissioned knockoffs have a color scheme that

simulates the custom colors used by the Luv n' care cups, such that consumers would be unable

to distinguish between the infringing cups and Plaintiffs' cups by their color.

47.     Plaintiffs' trade dress chart alleges an element of the Gripper Cup trade dress is "a

colored cup, the cup having a hood-like shape on it with a wave like appearance in the face-like

area in front of and below the hood."  ***Disputed/objection to extent read out of context:***  Neither

a photograph nor a written description can effectively simulate or bring to life what consumers

see when using and purchasing the cup, both in terms of this element (the Luv n' care hooded-

look and wave-like appearance) and how it contributes to the overall appearance of the cup.  The

best evidence of the cup, and the unique and distinctive overall look of Luv n' care's trade dress

is the product itself, for which a design patent is pending, and which Walgreen chose to promote

and copy.

48.     Competitors of Plaintiffs in the sippy cup market sell sippy cups having a colored

cup, the cup having a hood-like shape on it with a wave like appearance in the face-like area in

front of and below the hood.  ***Objection***: Plaintiffs' object to Defendant's use of such

unauthenticated, distorted and manipulated photographic evidence, which it submitted for the

purpose of comparing it to Plaintiffs' asserted trade dress, because Defendant failed to comply

with the authentication requirements of Fed.R.Evid. 901 and 1002.  Defendant's unauthenticated,

distorted and manipulated photographic comparisons are not admissible unless authenticated as a

comparison made by the trier of fact or by expert witnesses with specimens that have also been

authenticated.  Moreover, Defendant's unauthenticated manipulated photographs are

inadmissible because Defendant has failed to submit the original undistorted, unmanipulated

photographs.  Similarly, Defendant has submitted no evidence of the date the purported

competing cups were first offered in commerce; thus, there is no evidence to suggest that such

predated Plaintiffs' trade dress.  Furthermore, even if such photographic comparisons were

authenticated, they should be excluded under Fed.R.Evid. 403 because their probative value is

substantially outweighed by the danger of confusion of the issues and unfair prejudice because

Defendant is seeking through use of such photographs, and portions thereof, to improperly

dissect Plaintiffs' trade dress into its individual elements when it must be evaluated as a whole

pursuant to statute and binding caselaw.   Finally, Plaintiffs object to such photographic

comparisons because Defendant is improperly asking this Court to weigh and evaluate

(unauthenticated) evidence when that is the province of the jury.  *Disputed:* Luv n' care's

products are unique and distinctive, both when they were first released into the market in 2003,

and today, except for Royal King's knockoffs and the one Munchkin knockoff. *See* AMF ¶¶ 41-

42, 15, 145-146; Opp. Decl. of Nouri Ed Hakim, at ¶¶ 5,6.  *Objection:* Plaintiffs object to this

purported fact pursuant to Fed.R.Civ.P. 26, 30(b)(6), and 56(f), because (a) Defendant failed to

identify a expert to testify as to such comparisons and to authenticate the specimens and the

comparisons thereof; (b) Defendant has not fulfilled its obligations to provide deposition

testimony related to this fact under Fed.R.Civ.P. 30(b)(6); (c) Defendant failed to produce any

documentary evidence or answer any request for admission or interrogatory related to this fact either in its initial disclosures or in response to Plaintiffs' written discovery requests; and (d) Defendant failed to identify Atico International, a material witness and indispensible party with knowledge of this fact, in its initial disclosures.  Opp. Decl. Morris Cohen; Opp. Decl. Weisburg; Opp. Decl. Malynn.  ***Objection and disputed:***  Unsupported by proffered evidence, which lacks foundation, personal knowledge, probative value, authenticity and reliability.  There is *no evidence* of when any of the depicted cups (except for Royal Kings' infringing cup) were first offered for sale in the market, whether any of them have been sold on the market, and whether they are even different cups.  Luv n' care's hooded look with inset waves, which create a unique front and back look to the cup, is distinctive and was unique to the Luv n' care brand cup.  There is *no evidence* of the actual sizes of the depicted cups, as no scale was provided for each picture. There is *no evidence* that any cup vessel, including other vessels with an hour-glass shape, look like the Luv n' care cup (except for the Royal King and Munchkin knockoff cups).  The proffered pictures plainly support this point.  Also, at least one of the pictures has been adulterated to cut off handles, in an obvious attempt to manipulate the viewer into thinking the cups look similar.  Finally, except for the knockoff cups, there is *no evidence* that the cups with the depicted vessels, the caps and spouts of which are not shown, when viewed as a whole, look like the Luv n' care brand soft-spout cup.



49.    On May 20, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  All right, so, other competitors use
> hood like shapes?
> A.  Yes.

> Q.  Other competitors have cups with wave
> like appearances on them?
> A.  Yes.
> Do other competitors have cups with
> wave like appearances in face like areas?
> A.  Yes.
> Q.  And do those face like areas appear in
> front of and below the hood portions of the cups?
> A.  Yes.

**Objection:**  Immaterial, lacks probative value, does not pertain to the Luv n' care cup, but speaks

in generalities.  Federal law is clear that a protectable trade dress can comprise of a unique

combination of entirely common and wholly functional features.  **Disputed/objection to extent**

**read out of context:**  Mr. Hakim made clear that the above testimony was not referring to the

unique and distinctive hooded and wave like appearance of Luv n' care's hour-glass shape cup,

which is how Mr. Hakim originally understood the question.  Ex. A at I:79:1-6 ("Q.  Do other

competitors use a cup having a hood like shape on it?  A.  I would say only Walgreens, and here

again, every time I say Walgreens, it also includes Royal King.  Walgreens, Royal King, and

Munchkins.").  Defense counsel likewise made clear that he was talking about general features;

he was not asking about the look unique to the Luv n' care cup.  Ex. A at I:80:15-16 ("I'm

talking about general features of sippy cups").

50.    There are no other elements of the Gripper Cup asserted against Walgreens in

addition to the elements listed in Exhibits Q and R.  **Objection:**  Calls for a legal conclusion,

vague and ambiguous.  The best evidence of the overall look of the Luv n' care trade dress is the

product itself, for which a design patent is pending, and which Walgreen chose to promote and

copy.  The in-person overall look and appearance of the Luv n' care soft-spout cup comprises its

trade dress.  **Disputed in part:**  Plaintiffs' trade dress chart provides a description of the main

things consumers visually see and would consider, at a minimum, the overall look of this Luv n'

care cup (and its packaging), which Walgreen bought, liked, promoted and copied.  Plaintiffs

dispute any construction of the trade dress chart that would be inconsistent with its plain

language and an in-person visual inspection of the cup, and any such construction of Mr.

Hakim's testimony, as defense counsel did not dig into the meaning of the listed elements but

was very superficial in his questioning.  At no point did he show Mr. Hakim the product, walk

Mr. Hakim through its trade dress, and request that he explain the elements of the product's

overall look.

      51.     On May 20, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  Now, for the exhibit B product, that's
> on the first page of exhibit 40, are there any
> other elements besides the four elements that are
> bulleted there, that are the naked product trade
> dress that's asserted against Walgreens?
> A.  I don't believe so.
> Q.  We need to lock you down on this, all
> right?  We need to understand that there's no
> more elements coming.  That's part of the purpose
> of this deposition, especially when we agreed to
> conduct them afterwards, so I want to get a yes
> or a no from you.
> A.  I don't believe so.

**Objection:**  Calls for a legal conclusion, lack of foundation, vague and ambiguous, no stated

meaning of trade dress elements, let alone "naked product trade dress."  ***Admitted in part,***

***disputed to extent read out of context:***  Plaintiffs' trade dress chart provides a description of the

main things consumers visually see and would consider, at a minimum, the overall look of this

Luv n' care brand cup, which Walgreens bought, liked, promoted and copied.  Plaintiffs dispute

any construction of the trade dress chart that would be inconsistent with its plain language and an

in-person visual inspection of this cup, and any such construction of Mr. Hakim's testimony.

Defense counsel did not provide a definition for trade-dress "elements" or ask follow-up

questions asking Mr. Hakim to explain/elaborate on the listed elements.  The questioning was very superficial.

52.    LNC maintains a website at www.nuby.com. See <www.nuby.com>(visited May 19, 2009 and on other dates, including June 4, 2009). ***Admitted.***

53.    LNC's website describes the Gripper Cup as having functional features.

***Objection.***  Immaterial, not probative, how LNC's website might describe individual features does not speak to whether the *overall* look of the Luv n' care soft-spout cup is primarily non-functional, the federal standard for a protectable trade dress.  ***Disputed:***  The overall look of the Luv n' care soft-spout cup is not dictated by any individual functional feature.  There are many alternative ways to shape, design, style and color a no-spill cup, which has only three basic features visible to the consumer:  a vessel, a cap and a spout.  There is no need to copy the design and overall look of the Luv n' care cup.  This fact is evidenced by the many design patents issued by the United States Patent & Trademark Office ("USPTO") covering no-spill cups, caps and vessels, and the many different alternative shapes, designs, styles and colors of cups on the market.  *See* AMF ¶¶6, 8, 11.  Put simply, the overall look of Luv n' care's cup is primarily non-functional.

54.    LNC's website states its Gripper Cup is "easy to use."  ***Objection:***  Immaterial, not probative, this generalized statement does not pertain to the *look* of the Luv n' care soft-spout cup.  ***Disputed:***  All no-spill cups are easy to use by nature, as they are made for toddlers and young children.  "Easy to use" is puffery and can be said of any viable no-spill cup.  There is no need to copy the design and overall look of the Luv n' care cup.  This fact is evidenced by the many design patents issued by the United States Patent & Trademark Office covering no-spill cups, caps and vessels, and the many different alternative shapes, designs, styles and colors of

cups on the market. *See* AMF ¶¶¶ 6, 8, 11. Put simply, the overall look of Luv n' care's cup is primarily non-functional.

55.    LNC's website states its Gripper Cup is "easy to clean." ***Objection:*** Immaterial, not probative, this generalized statement does not pertain to the *look* of the Luv n' care soft-spout cup. ***Disputed:*** The Luv n' care soft-spout cup is easy to clean in part because it has one less part to clean; it does not have a detachable valve inside the cup. Consumers can remove the valves in other spill-proof cups, and have a sippy cup that is just as easy to clean, without affecting the look of those cups. Valves are ***internal*** devices that are not part of the overall look of a cup. There is no need to copy the design and overall look of the Luv n' care cup. This fact is evidenced by the many design patents issued by the United States Patent & Trademark Office covering no-spill cups, caps and vessels, and the many different alternative shapes, designs, styles and colors of cups on the market. *See* AMF ¶¶¶ 6, 8, 11. Put simply, the overall look of Luv n' care's cup is primarily non-functional.

56.    LNC's website states its Gripper Cup is "perfect for little hands to hold and toddlers on the go." ***Objection:*** Immaterial, not probative, this generalized statement does not speak to whether the overall *look* of this cup is primarily non-functional, the federal standard for a protectable trade dress. ***Disputed:*** All no-spill cups are made for little hands to hold and for ease of use. Such puffery is marketing, intending to appeal to the varying tastes of consumers, and can be said of any viable no-spill cup. There is no need to copy the design and overall look of the Luv n' care cup. There are many cups that made for little hands to hold but look nothing like the overall shape, design, style and color of the Luv n' care cup, for which a design patent is pending, and which Walgreen promoted and copied. This fact is evidenced by the many design patents issued by the United States Patent & Trademark Office covering no-spill cups, caps and

vessels, and the many different alternative shapes, designs, styles and colors of cups on the market. *See* AMF ¶¶¶ 6, 8, 11. Put simply, the overall look of Luv n' care's cup is primarily non-functional.

57.    LNC's website states its Gripper Cup "prevents spills." ***Objection:*** Immaterial, not probative, this generalized statement does not pertain to the *look* of the Luv n' care soft-spout cup. ***Disputed:*** Many different cups in this category prevent spills and/or reduce leaks. There is simply no need to copy the design and overall look of the Luv n' care cup. This fact is evidenced by the many design patents issued by the United States Patent & Trademark Office covering no-spill cups, caps and vessels, and the many different alternative shapes, designs, styles and colors of cups on the market. *See* AMF ¶¶¶ 6, 8, 11. Put simply, the overall look of Luv n' care's cup is primarily non-functional.

58.    LNC's website states its Gripper Cup "reduces leaks." ***Objection:*** Immaterial, not probative, this generalized statement does not pertain to the *look* of the Luv n' care soft-spout cup. ***Disputed:*** Many different cups in this category prevent spills and/or reduce leaks. There is simply no need to copy the design and overall look of the Luv n' care cup. This fact is evidenced by the many design patents issued by the United States Patent & Trademark Office covering no-spill cups, caps and vessels, and the many different alternative shapes, designs, styles and colors of cups on the market. *See* AMF ¶¶¶ 6, 8, 11. Put simply, the overall look of Luv n' care's cup is primarily non-functional.

59.    LNC's website states its Gripper Cup has a "unique 1 piece valve." ***Objection:*** Immaterial, not probative, does not pertain to the *look* of the Luv n' care soft-spout cup. ***Disputed:*** This Luv n' care cup has a patented one-piece valve, rather than some other multi-part internal mechanism to prevents spills and/or reduce leaks, and that is *not seen* by the

consumer.  This patent only requires that the spout be soft and designed for a child's mouth; it otherwise has no bearing on the *look* of the cup, including the style and color of the spout, the shape, design, style and color of the top of the cup, the shape, design, style and color of the cap, and the shape, design, style and color of the vessel.  There is simply no need to copy the design and overall look of the Luv n' care cup.  This fact is evidenced by the many design patents issued by the United States Patent & Trademark Office covering no-spill cups, caps and vessels, and the many different alternative shapes, designs, styles and colors of cups on the market.  *See* AMF ¶¶ 6, 8, 11.  Put simply, the overall look of Luv n' care's cup is primarily non-functional.

60.    LNC's customer sheets describe the utilitarian features of the Gripper Cup.
***Objection.***  Immaterial, not probative, how LNC's customer sheets might describe individual features does not speak to whether the *overall look* of the Luv n' care soft-spout cup is primarily non-functional, the federal standard for a protectable trade dress.  ***Disputed:***  The overall look of the Luv n' care soft-spout cup is not dictated by any of its functional features.  There are many alternative ways to shape, design, style and color a no-spill cup, which has only three basic features visible to the consumer:  a vessel; a cap and a spout.  There is no need to copy the design and overall look of the Luv n' care cup.  This fact is evidenced by the many design patents issued by the United States Patent & Trademark Office covering no-spill cups, caps and vessels, and the many different alternative shapes, designs, styles and colors of cups on the market.  *See* AMF ¶¶ 6, 8, 11.  Put simply, the overall look of Luv n' care's cup is primarily non-functional.

### No-Spill Cup

61.    The No-Spill Cup is sold in a variety of colors.  ***Objection:***  Misstates the record.
***Disputed:***  The Luv n' care hard-spout cups have a custom tinted, translucent vessel and a

darker, custom colored cap; the tints and colors are specially mixed for the Luv n' care brand hard-spout cup.  *See* AMF ¶ 16.

62.    The trademark NUBY® appears on LNC's No-Spill Cup at least one time.

***Objection, disputed:***  Misstates the record.  The trademark appears on the bottom of the Luv n' care hard-spout cup, which would not be apparent to most consumers.  ***Objection:***  Immaterial to issues raised by Defendant's motion.  Walgreen does not claim on summary judgment that there is no likelihood of confusion resulting from its sales of its commissioned knockoff cups, which have the same overall look and sold in similar, intentionally deceptive packaging under its unknown WAGI® mark.

63.    Plaintiffs' trade dress chart alleges a protectable element of the No-Spill Cup traded dress is "a colored tinted generally cylindrical cup with a wider portion."  ***Objection:***  A trade dress does not need any individually "protectable elements."  Federal law is clear that a protectable trade dress can comprise of a unique combination of entirely common and wholly functional features.  ***Disputed/objection to extent read out of context:***  Plaintiffs' trade dress chart provides a description of the main things consumers visually see and would consider, at a minimum, the overall look of the Luv n' care brand hard-spout cup.  The best evidence of the overall look of the Luv n' care hard-spout cup is the product itself, which Walgreens bought, liked, promoted and copied.

64.    Competitors of plaintiffs in the sippy cup market sell sippy cups having a colored tinted generally cylindrical cup with a wider portion.  ***Objection***: Plaintiffs' object to Defendant's use of such unauthenticated, distorted and manipulated photographic evidence, which it submitted for the purpose of comparing it to Plaintiffs' asserted trade dress, because Defendant failed to comply with the authentication requirements of Fed.R.Evid. 901 and 1002.  Defendant's

unauthenticated, distorted and manipulated photographic comparisons are not admissible unless authenticated as a comparison made by the trier of fact or by expert witnesses with specimens that have also been authenticated. Moreover, Defendant's unauthenticated manipulated photographs are inadmissible because Defendant has failed to submit the original undistorted, unmanipulated photographs. Similarly, Defendant has submitted no evidence of the date the purported competing cups were first offered in commerce; thus, there is no evidence to suggest that such predated Plaintiffs' trade dress. Furthermore, even if such photographic comparisons were authenticated, they should be excluded under Fed.R.Evid. 403 because their probative value is substantially outweighed by the danger of confusion of the issues and unfair prejudice because Defendant is seeking through use of such photographs, and portions thereof, to improperly dissect Plaintiffs' trade dress into its individual elements when it must be evaluated as a whole pursuant to statute and binding caselaw. Finally, Plaintiffs object to such photographic comparisons because Defendant is improperly asking this Court to weigh and evaluate (unauthenticated) evidence when that is the province of the jury. **Disputed:** Luv n' care's products are unique and distinctive, both when they were first released into the market in 2003, and today, except for Royal King's knockoffs and the one Munchkin knockoff. *See* AMF 145-146, 15, 41-42; Opp. Decl. of Nouri Ed Hakim, at ¶¶ 5,6. **Objection:** Plaintiffs object to this purported fact pursuant to Fed.R.Civ.P. 26, 30(b)(6), and 56(f), because (a) Defendant failed to identify a expert to testify as to such comparisons and to authenticate the specimens and the comparisons thereof, (b) Defendant has not fulfilled its obligations to provide deposition testimony related to this fact under Fed.R.Civ.P. 30(b)(6); (c) Defendant failed to produce any documentary evidence or answer any request for admission or interrogatory related to this fact either in its initial disclosures or in response to Plaintiffs' written discovery requests; and (d)

Defendant failed to identify Atico International, a material witness and indispensible party with knowledge of this fact, in its initial disclosures. Opp. Decl. Morris Cohen; Opp. Decl. Weisburg; Opp. Decl. Malynn. **Objection and disputed:** Misstates the records, lacks foundation, personal knowledge, probative value, authenticity and reliability. There is *no evidence* of when any of the depicted cups were first offered for sale in the market, whether any of them have been sold on the market, and whether they are even different cups. There is *no evidence* of the actual sizes of these allegedly competing cups, as no scale was provided for each picture. The depicted cups do not have the same or even a similar custom tinted, translucent cylindrical cup that widens towards the top the way the Luv n' care cup widens. Moreover, the depicted cups, when viewed as a whole, do not look like the Luv n' care cup, which is unique and distinctive, as can be readily seen by even these pictures.

     65.    On May 20, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q. All right, do other competitors that
> we've talked about today, use colored, tinted,
> generally cylindrical shaped cups?
> A. Yes.
> Q. Do some of those cups have lighter
> upper portions?
> A. Yes.
> Q. Do other competitors that we've
> discussed today use colored caps?
> A. Yes.
> Q. Tinted caps?
> A. Yes.

**Objection:** Immaterial, lacks probative value as the question does not pertain to the Luv n' care cup, but speaks in generalities. Federal law is clear that a protectable trade dress can comprise of a unique combination of entirely common and wholly functional features. **Disputed/objection to extent read out of context:** Mr. Hakim made clear that the above testimony was not referring to the unique and distinctive look of the Luv n' care hard-spout cup. Ex. A at I:75:22-76:10 ("Q.

And tinted caps?  A.  No.  Q. No one else uses tinted caps?  A.  The only one that I know that uses tinted caps [other than Royal King], maybe, would be Munchkin.").  Defense counsel made clear that he was talking about general features in sippy cups; he was not asking about the look unique to the Luv n' care cup.  Ex. A at I:80:15-16 ("I'm talking about general features of sippy cups").

66.    Plaintiffs' trade dress chart alleges a protectable element of the No-Spill Cup trade dress is "a colored or tinted cap, having a cap sitting on a cap look, with a spout having a bulb-like base and a relatively pointed top."  ***Objection:***  A trade dress does not need any individually "protectable elements."  Federal law is clear that a protectable trade dress can comprise of a unique combination of entirely common and wholly functional features.

***Disputed/objection to extent read out of context:***  Plaintiffs' trade dress chart provides a description of the main things consumers visually see and would consider, at a minimum, the overall look of the Luv n' care brand hard-spout cup.  The best evidence of the overall look of the Luv n' care hard-spout cup is the product itself, which Walgreens bought, liked, promoted and copied.

67.    Competitors of plaintiffs in the sippy cup market sell sippy cups having a colored or tinted cap, having a cap sitting on a cap look, with a spout having a bulb-like base and a relatively pointed top.  ***Objection***: Plaintiffs' object to Defendant's use of such unauthenticated, distorted and manipulated photographic evidence, which it submitted for the purpose of comparing it to Plaintiffs' asserted trade dress, because Defendant failed to comply with the authentication requirements of Fed.R.Evid. 901 and 1002.  Defendant's unauthenticated, distorted and manipulated photographic comparisons are not admissible unless authenticated as a comparison made by the trier of fact or by expert witnesses with specimens that have also been

authenticated.  Moreover, Defendant's unauthenticated manipulated photographs are inadmissible because Defendant has failed to submit the original undistorted, unmanipulated photographs.  Similarly, Defendant has submitted no evidence of the date the purported competing cups were first offered in commerce; thus, there is no evidence to suggest that such predated Plaintiffs' trade dress.  Furthermore, even if such photographic comparisons were authenticated, they should be excluded under Fed.R.Evid. 403 because their probative value is substantially outweighed by the danger of confusion of the issues and unfair prejudice because Defendant is seeking through use of such photographs, and portions thereof, to improperly dissect Plaintiffs' trade dress into its individual elements when it must be evaluated as a whole pursuant to statute and binding caselaw.   Finally, Plaintiffs object to such photographic comparisons because Defendant is improperly asking this Court to weigh and evaluate (unauthenticated) evidence when that is the province of the jury.  ***Disputed:*** Luv n' care's products are unique and distinctive, both when they were first released into the market in 2003, and today, except for Royal King's knockoffs and the one Munchkin knockoff. *See* AMF 15, 41-42, 145-146; Opp. Decl. of Nouri Ed Hakim, at ¶¶ 5,6.  ***Objection:*** Plaintiffs object to this purported fact pursuant to Fed.R.Civ.P. 26, 30(b)(6), and 56(f), because (a) Defendant failed to identify a expert to testify as to such comparisons and to authenticate the specimens and the comparisons thereof; (b) Defendant has not fulfilled its obligations to provide deposition testimony related to this fact under Fed.R.Civ.P. 30(b)(6); (c) Defendant failed to produce any documentary evidence or answer any request for admission or interrogatory related to this fact either in its initial disclosures or in response to Plaintiffs' written discovery requests; and (d) Defendant failed to identify Atico International, a material witness and indispensible party with knowledge of this fact, in its initial disclosures.  Opp. Decl. Morris Cohen; Opp. Decl. Weisburg;

Opp. Decl. Malynn.  **Objection and disputed:**  Misstates the records, lacks foundation, personal

knowledge, probative value, authenticity and reliability.  There is *no evidence* of when any of the

depicted cups were first offered for sale in the market, whether any of them have been sold on

the market, and whether they are even different cups.  There is *no evidence* of the actual sizes of

the caps of these allegedly competing cups, as no scale was provided for each picture.

Moreover, the caps do not have the same or even a similar look, including a custom tinted cap,

cap-sitting-on-cap look, and spout with a bulb-like base and pointed top.  Finally, there is *no*

*evidence* that the depicted cups, when viewed as a whole, look like the Luv n' care cup.



68.    On May 20, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q. Do some of them use caps that have a
> cap sitting on a cap look?
> A.   Yes.
> Q.   Do other competitors have cups with
> spouts that have bold [sic] like faces?
> A.   Yes.
> Q.   And pointy tops?
> A.   Yes.
> Q.   Relatively pointed tops?
> A.   Yes.

**Objection:**  Immaterial, lacks probative value as the question does not pertain to the Luv n' care

cup, but speaks in generalities.  Federal law is clear that a protectable trade dress can comprise of

a unique combination of entirely common and wholly functional features.  **Disputed/objection to**

**extent read out of context:**  Mr. Hakim made clear that the above testimony was not referring to

the unique and distinctive look of the Luv n' care hard-spout cup.  Ex. A at I:75:22-76:10 &

I:79:1-6.  Defense counsel made clear that he was talking about general features in sippy cups;

he was not asking about the look unique to the Luv n' care cup.  Ex. A at I:80:15-16 ("I'm

talking about general features of sippy cups").

69.    Plaintiffs' trade dress chart alleges a protectable element of the No-Spill Cup

trade dress is a "folded inner paper insert."  ***Objection:***  A trade dress does not need any

individually "protectable elements."  Federal law is clear that a protectable trade dress can

comprise of a unique combination of entirely common and wholly functional features.

***Disputed/objection to extent read out of context:***  Plaintiffs' trade dress chart provides a

description of the main things consumers visually see and would consider, at a minimum, the

overall look of the Luv n' care brand hard-spout cup.  The best evidence of the overall look of

the Luv n' care hard-spout cup is the product itself, which Walgreens bought, liked, promoted

and copied.

70.    Competitors of plaintiffs in the sippy cup market sell sippy cups having a folded

inner paper insert.  ***Admitted in part/Disputed in part:*** <u>Other competitors may use packaging that

is folded and inserted into their cups; however, the Defendant provided no evidence that any

such inserts look like Plaintiffs' insert</u> .  ***Objection***: Plaintiffs' object to Defendant's use of such

unauthenticated, distorted and manipulated photographic evidence, which it submitted for the

purpose of comparing it to Plaintiffs' asserted trade dress, because Defendant failed to comply

with the authentication requirements of Fed.R.Evid. 901 and 1002.  Defendant's unauthenticated,

distorted and manipulated photographic comparisons are not admissible unless authenticated as a

comparison made by the trier of fact or by expert witnesses with specimens that have also been

authenticated.  Moreover, Defendant's unauthenticated manipulated photographs are

inadmissible because Defendant has failed to submit the original undistorted, unmanipulated

photographs.  Similarly, Defendant has submitted no evidence of the date the purported

competing cups were first offered in commerce; thus, there is no evidence to suggest that such

predated Plaintiffs' trade dress.  Furthermore, even if such photographic comparisons were

authenticated, they should be excluded under Fed.R.Evid. 403 because their probative value is

substantially outweighed by the danger of confusion of the issues and unfair prejudice because

Defendant is seeking through use of such photographs, and portions thereof, to improperly

dissect Plaintiffs' trade dress into its individual elements when it must be evaluated as a whole

pursuant to statute and binding caselaw.   Finally, Plaintiffs object to such photographic

comparisons because Defendant is improperly asking this Court to weigh and evaluate

(unauthenticated) evidence when that is the province of the jury.  ***Disputed:*** Luv n' care's

products are unique and distinctive, both when they were first released into the market in 2003,

and today, except for Royal King's knockoffs and the one Munchkin knockoff. *See* AMF 15, 41-

42, 145-146; Opp. Decl. of Nouri Ed Hakim, at ¶¶ 5,6.  ***Objection:*** Plaintiffs object to this

purported fact pursuant to Fed.R.Civ.P. 26, 30(b)(6), and 56(f), because (a) Defendant failed to

identify a expert to testify as to such comparisons and to authenticate the specimens and the

comparisons thereof; (b) Defendant has not fulfilled its obligations to provide deposition

testimony related to this fact under Fed.R.Civ.P. 30(b)(6); (c) Defendant failed to produce any

documentary evidence or answer any request for admission or interrogatory related to this fact

either in its initial disclosures or in response to Plaintiffs' written discovery requests; and (d)

Defendant failed to identify Atico International, a material witness and indispensible party with

knowledge of this fact, in its initial disclosures.  Opp. Decl. Morris Cohen; Opp. Decl. Weisburg;

Opp. Decl. Malynn.

      71.    On May 20, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  Do other competitors use packaging
> that's folded and inserted into sippy cups?
> A.  Yes.

**Admitted in part/Disputed in part:**  Defendant has provided no evidence that any such inserts *look* like Plaintiffs' insert.

72.    There are no other elements of the No-Spill Cup asserted against Walgreens in addition to the elements listed in Exhibits Q and R.  **Objection:**  Calls for a legal conclusion, vague and ambiguous.  The best evidence of the overall look of the Luv n' care trade dress is the product itself, which Walgreen chose to promote and copy.  The in-person overall look and appearance of the Luv n' care soft-spout cup comprises its trade dress.  **Disputed in part:** Plaintiffs' trade dress chart provides a description of the main things consumers visually see and would consider, at a minimum, the overall look of this Luv n' care brand cup, which Walgreens bought, liked, promoted and copied.  Plaintiffs dispute any construction of the trade dress chart that would be inconsistent with its plain language and an in-person visual inspection of this cup, and any such construction of Mr. Hakim's testimony.  Defense counsel did not provide a definition for trade-dress "elements" or ask follow-up questions concerning asking Mr. Hakim to explain/elaborate on the listed elements.  The questioning was very superficial.

73.    On May 20, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  For the exhibit C product, which is
> depicted on the left side of the second page of
> exhibit 40, are there any other elements besides
> the four - well, for the naked product, the first
> three elements, are there any other naked trade
> dress elements, besides those three bullet
> points, asserted against Walgreens?
> A.  I don't believe so.

**Objection:**  Calls for a legal conclusion, lack of foundation, vague and ambiguous, no stated meaning of trade dress elements, let alone "naked trade dress elements."  **Admitted in part,**

***disputed to extent read out of context:*** Plaintiffs' trade dress chart provides a description of the main things consumers visually see and would consider, at a minimum, the overall look of this Luv n' care brand cup, which Walgreens bought, liked, promoted and copied.  Plaintiffs dispute any construction of the trade dress chart that would be inconsistent with its plain language and an in-person visual inspection of this cup, and any such construction of Mr. Hakim's testimony.  Defense counsel did not provide a definition for trade-dress "elements," let alone "naked trade dress elements," or ask follow-up questions concerning asking Mr. Hakim to explain/elaborate on the listed elements.  The questioning was very superficial.

74.     Plaintiffs' website describes the No-Spill Cup in functional language.  ***Objection.*** Immaterial, not probative, how LNC's website might describe individual features does not speak to whether the overall *look* of the Luv n' care hard-spout cup is primarily non-functional, the federal standard for a protectable trade dress.  ***Disputed:***  The overall look of the Luv n' care hard-spout cup is not dictated by any functional features.  There are many alternative ways to shape, design, style and color a no-spill cup, which has only three basic features visible to the consumer:  a vessel, a cap and a spout.  There is no need to copy the design and overall look of the Luv n' care cup.  This fact is evidenced by the many design patents issued by the United States Patent & Trademark Office covering no-spill cups, caps and vessels, and the many different alternative shapes, designs, styles and colors of cups on the market.  *See* AMF ¶¶ 6, 8, 11.  Put simply, the overall look of Luv n' care's cup is primarily non-functional.

75.     LNC's website states its No-Spill Cup "features the Dual-flo[TM] valve that can be adjusted to control the flow of liquid.  The easy to use spout is hard and robust perfect for toddlers with newly formed sharp teeth."  ***Objection:***  Immaterial, not probative, does not speak to whether the overall *look* of the Luv n' care soft-spout cup is primarily non-functional, the

federal standard for a protectable trade dress. *Disputed:* All no-spill cups have some sort of internal valve. Whether the internal valve can be adjusted to control the flow of liquid has nothing to do with the *appearance* of the cup. Also, all hard-spout cups can be marketed and puffed as "robust," "good" or "perfect" to toddlers with newly formed sharp teeth. That is why a consumer may prefer a hard-spout over a soft-spout cup. But there is simply no need to copy the design and overall look of the Luv n' care cup. This fact is evidenced by the many design patents issued by the United States Patent & Trademark Office covering no-spill cups, caps and vessels, and the many different alternative shapes, designs, styles and colors of cups on the market. *See* AMF ¶¶ 6,8, 11. Put simply, the overall look of Luv n' care's cup is primarily non-functional.

     76.     LNC's customer sheets describe the utilitarian features of its cups. *Objection.* Immaterial, not probative, how LNC's customer sheets might describe individual features does not speak to whether the overall look of the Luv n' care hard-spout cup is primarily non-functional, the federal standard for a protectable trade dress. *Disputed:* The overall look of the Luv n' care hard-spout cup is not dictated by any functional features. There are many alternative ways to shape, design, style and color a no-spill cup, which has only three basic features visible to the consumer: a vessel, a cap and a spout. There is no need to copy the design and overall look of the Luv n' care cup. This fact is evidenced by the many design patents issued by the United States Patent & Trademark Office covering no-spill cups, caps and vessels, and the many different alternative shapes, designs, styles and colors of cups on the market. *See* AMF ¶¶ 6, 8, 11. Put simply, the overall look of Luv n' care's cup is primarily non-functional.

**Comb/Brush Set**

77.    The trademark NUBY appears on the Comb/Brush Set.  ***Objection, disputed:***
Misstates the record.  The trademark is discretely placed on the comb/brush set, which would not
be apparent to many consumers.  ***Objection:***  Immaterial to issues raised by Defendant's motion.
Walgreen does not claim on summary judgment that there is no likelihood of confusion resulting
from its sales of its commissioned knockoff comb and brush set.

78.    On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  Luv 'N Care, and is there a Nuby
> trademark on the product?
> A.  Yes, there is.

***Objection:***  Immaterial to issues raised by Defendant's motion.  Walgreen does not claim on
summary judgment that there is no likelihood of confusion resulting from its sales of its
commissioned knockoff comb and brush set.  ***Disputed:***  The trademark is not prominent and
would not be apparent to many consumers.

79.    Plaintiffs' second trade dress chart alleges a protectable element of the
Comb/Brush Set trade dress is "a thick band around the handle of the brush."  ***Objection:***  A
trade dress does not need any individually "protectable elements."  Federal law is clear that a
protectable trade dress can comprise of a unique combination of entirely common and wholly
functional features.  ***Disputed/objection to extent read out of context:***  Plaintiffs' trade dress
chart provides a description of the main things consumers visually see and would consider, at a
minimum, the overall look of the Luv n' care comb and brush set.  The best evidence of the
overall look of the Luv n' care comb and brush set is the product itself, which Walgreens liked
and copied.

80.    Competitors of Plaintiffs in the Comb/Brush Set market use a think band around the handle of the brush. ***Objection:*** Plaintiffs object to this purported fact pursuant to Fed.R.Civ.P. 26, 30(b)(6), and 56(f), because (a) Defendant has not fulfilled its obligations to provide deposition testimony related to this fact under Fed.R.Civ.P. 30(b)(6); (b) Defendant failed to produce any documentary evidence or answer any request for admission or interrogatory related to this fact either in its initial disclosures or in response to Plaintiffs' written discovery requests; and (c) Defendant failed to identify Atico International, a material witness and indispensible party with knowledge of this fact, in its initial disclosures. Opp. Decl. Morris Cohen; Opp. Decl. Weisburg; Opp. Decl. Malynn. ***Objection:*** Immaterial, lacks probative value as the question does not pertain to the Luv n' care comb and brush set, but speaks in generalities. Federal law is clear that a protectable trade dress can comprise of a unique combination of entirely common and wholly functional features. ***Disputed/objection to extent read out of context:*** As before, Mr. Hakim was not referring to the unique and distinctive look of the Luv n' care comb and brush set. *See* Ex. A at I:88:15-18 ("We all have our own particular shape, and every one is totally different than the next persons. I don't know of anyone that makes a comb and brush like any other maker."). Defense counsel was talking about general features; he was not asking about the look unique to the Luv n' care product. *See* Ex. A at I:80:15-16.

81.    On May 20, 2009 LNC's Nouri Ed Hakim testified:

> . - Royal King, do any of these other
> competitors use thick bands around the handles of
> the brushes?
> A.   You mean, the ones that we just talked
> about?  Yes.

***Objection:*** Immaterial, lacks probative value as the question does not pertain to the Luv n' care comb and brush set, but speaks in generalities. Federal law is clear that a protectable trade dress

can comprise of a unique combination of entirely common and wholly functional features.

***Disputed/objection to extent read out of context:*** As before, Mr. Hakim was not referring to the unique and distinctive look of the Luv n' care comb and crush set. *See* Ex. A at I:88:15-18 ("We all have our own particular shape, and every one is totally different than the next persons. I don't know of anyone that makes a comb and brush like any other maker."). Defense counsel was talking about general features; he was not asking about the look unique to the Luv n' care product. *See* Ex. A at I:80:15-16.

82.     Plaintiffs' second trade dress chart alleges a protectable element of the Comb/Brush Set trade dress is "an oval band on the handle of the comb." ***Objection:*** A trade dress does not need any individually "protectable elements." Federal law is clear that a protectable trade dress can comprise of a unique combination of entirely common and wholly functional features. ***Disputed/objection to extent read out of context:*** Plaintiffs' trade dress chart provides a description of the main things consumers visually see and would consider, at a minimum, the overall look of the Luv n' care comb and brush set. The best evidence of the overall look of the Luv n' care comb and brush set is the product itself, which Walgreens liked and copied. Except for Walgreen and its commissioned knockoff, no "other competitors have oval bands on the handles of combs." Ex. A at I:84:17-85:2.

83.     Plaintiffs' second trade dress chart alleges a protectable element of the Comb/Brush Set trade dress is "a brightly colored band on the handle of a neutral [colored] brush/comb." ***Objection:*** A trade dress does not need any individually "protectable elements." Federal law is clear that a protectable trade dress can comprise of a unique combination of entirely common and wholly functional features. ***Disputed/objection to extent read out of context:*** Plaintiffs' trade dress chart provides a description of the main things consumers

visually see and would consider, at a minimum, the overall look of the Luv n' care brand comb and brush set.  The best evidence of the overall look of the Luv n' care comb and brush set is the product itself, which Walgreens liked and copied.  Except for Walgreen and its commissioned knockoff, no other competitors have "brightly colored bands on the handle."  Ex. A at I:84:17-85:2.  Nor do they have "neutral colored brushes and combs," which offset the brightly colored bands.  *Id.* at I:85:6-14.  Luv n' care is the only one "that makes a TPE [Thermal plastic elastomer] comb and brush.  That's the brightly colored portion that's on the comb and brush." *Id.* at I:85:14-19.

84.    Plaintiffs' second trade dress chart alleges a protectable element of the Comb/Brush Set trade dress is a "stacked oblong-shaped thinner bands along the band on the handle of the brush and comb."  ***Objection:***  A trade dress does not need any individually "protectable elements."  Federal law is clear that a protectable trade dress can comprise of a unique combination of entirely common and wholly functional features.  ***Disputed/objection to extent read out of context:***  Plaintiffs' trade dress chart provides a description of the main things consumers visually see and would consider, at a minimum, the overall look of the Luv n' care brand comb and brush set.  The best evidence of the overall look of the Luv n' care comb and brush set is the product itself, which Walgreen liked and copied.  Except for Walgreen and its commissioned knockoff, no other competitors "use stacked – stacks of thinner bands along the band on the handle."  Ex. A at I:86:4-6.

85.    Plaintiffs' second trade dress chart alleges a protectable element of the Comb/Brush Set trade dress is a "series of tines on the brush alternating with a ball at end and no ball end."  ***Objection:***  A trade dress does not need any individually "protectable elements." Federal law is clear that a protectable trade dress can comprise of a unique combination of

entirely common and wholly functional features.  ***Disputed/objection to extent read out of***

***context:***  Plaintiffs' trade dress chart provides a description of the main things consumers

visually see and would consider, at a minimum, the overall look of the Luv n' care brand comb

and brush set.  The best evidence of the overall look of the Luv n' care comb and brush set is the

product itself, which Walgreen liked and copied.  Except for Walgreens' knockoff, Plaintiffs

have not seen any competitive combs using "balls at the end of the tines of the combs."  Ex. A at

I:87:4-9.

86.    Plaintiffs testified competitors alternate balls on the end of the tines of the comb

because otherwise it "wouldn't work."  ***Objection:***  Immaterial, lacks probative value as the

question does not pertain to the Luv n' care comb and brush set, but speaks in generalities.

Federal law is clear that a protectable trade dress can comprise of a unique combination of

entirely common and wholly functional features.  ***Objection:***  Misstates testimony.  Plaintiffs'

Rule 30(b)(6) testimony was that they have "not seen one."  Ex. A at I:87:9-14 ("I'm not saying

that they don't [use balls], but that [I haven't] seen any.").  ***Disputed:***  Plaintiffs' testimony was

that, *if a competitor did use balls at the end of the tines of their combs*, "[t]hey would alternate

them" because it would not "work if every one had a ball.  They would be too close together."

Ex. A at I:87:15:88:1.  That is quite different from saying that a competitor's comb uses "balls

on the end of the tines of the comb," which Plaintiffs *had not seen*.  ***Objection to extent read out***

***of context:***  As before, Mr. Hakim was not referring to the unique and distinctive look of the Luv

n' care comb and crush set.  *See* Ex. A at I:88:15-18 ("We all have our own particular shape, and

every one is totally different than the next persons.  I don't know of anyone that makes a comb

and brush like any other maker.").  Defense counsel was talking about general features; he was

not asking about the look unique to the Luv n' care product.  *See* Ex. A at I:80:15-16.

87.    On May 20, 2009 LNC's CEO Nouri Ed Hakim testified:

> Q.   And then, to your knowledge, does
> anyone alternate balls on the ends of the tines
> of the comb?  If you haven't seen balls.
> A.  I think that they would use balls on
> the ends.  They would alternate them.
> Q.  Why do you think that?
> A.  Because I don't think it would work if
> everyone had a ball.  They would be too close
> together.

**Objection:**  Immaterial, lacks probative value as the question does not pertain to the Luv n' care

comb and brush set, but speaks in generalities.  Federal law is clear that a protectable trade dress

can comprise of a unique combination of entirely common and wholly functional features.

**Objection:**  Misstates testimony/taken out of context.  Plaintiffs' testimony was that they have

"not seen one."  Ex. A at I:87:9-14 ("I'm not saying that they don't [use balls], but that [I

haven't] seen any.").  **Disputed:**  The quoted excerpt, when read in context, says only that, *if a*

*competitor did use balls at the end of the tines of their combs*, "[t]hey would alternate them"

because it would not "work if every one had a ball.  They would be too close together."   Ex. A

at I:87:15:88:1.  That is quite different from saying that a competitor's comb uses "balls on the

end of the tines of the comb," which Plaintiffs had not seen.  Ex. A at I:87:9-14.  **Objection to**

**extent read out of context:**  As before, Mr. Hakim was not referring to the unique and distinctive

look of the Luv n' care comb and crush set.  *See* Ex. A at I:88:15-18 ("We all have our own

particular shape, and every one is totally different than the next persons.  I don't know of anyone

that makes a comb and brush like any other maker.").  Defense counsel was talking about general

features; he was not asking about the look unique to the Luv n' care product.  *See* Ex. A at

I:80:15-16.

88.     Plaintiffs' trade dress chart alleges a protectable element of the Comb/Brush Set trade dress is "character images on back of head of brush."  ***Objection:***  A trade dress does not need any individually "protectable elements."  Federal law is clear that a protectable trade dress can comprise of a unique combination of entirely common and wholly functional features. ***Disputed/objection to extent read out of context:***  Plaintiffs' trade dress chart provides a description of the main things consumers visually see and would consider, at a minimum, the overall look of the Luv n' care brand comb and brush set.  The best evidence of the overall look of the Luv n' care comb and brush set is the product itself, which Walgreens liked and copied.

89.     Competitors of plaintiffs in the Comb/Brush Set market sells combs and brushes that have "character images on back of head of brush."  ***Objection***: Plaintiffs' object to Defendant's use of such unauthenticated, distorted and manipulated photographic evidence, which it submitted for the purpose of comparing it to Plaintiffs' asserted trade dress, because Defendant failed to comply with the authentication requirements of Fed.R.Evid. 901 and 1002. Defendant's unauthenticated, distorted and manipulated photographic comparisons are not admissible unless authenticated as a comparison made by the trier of fact or by expert witnesses with specimens that have also been authenticated.  Moreover, Defendant's unauthenticated manipulated photographs are inadmissible because Defendant has failed to submit the original undistorted, unmanipulated photographs.  Similarly, Defendant has submitted no evidence of the date the purported competing cups were first offered in commerce; thus, there is no evidence to suggest that such predated Plaintiffs' trade dress.  Furthermore, even if such photographic comparisons were authenticated, they should be excluded under Fed.R.Evid. 403 because their probative value is substantially outweighed by the danger of confusion of the issues and unfair prejudice because Defendant is seeking through use of such photographs, and portions thereof, to

48

improperly dissect Plaintiffs' trade dress into its individual elements when it must be evaluated as a whole pursuant to statute and binding caselaw.   Finally, Plaintiffs object to such photographic comparisons because Defendant is improperly asking this Court to weigh and evaluate (unauthenticated) evidence when that is the province of the jury.  ***Disputed:*** Luv n' care's products are unique and distinctive, both when they were first released into the market in 2003, and today, except for Royal King's knockoffs and the one Munchkin knockoff. *See* AMF 15, 41-42, 145-146; Opp. Decl. of Nouri Ed Hakim, at ¶¶ 5,6.  ***Objection:*** Plaintiffs object to this purported fact pursuant to Fed.R.Civ.P. 26, 30(b)(6), and 56(f), because (a) Defendant failed to identify a expert to testify as to such comparisons and to authenticate the specimens and the comparisons thereof; (b) Defendant has not fulfilled its obligations to provide deposition testimony related to this fact under Fed.R.Civ.P. 30(b)(6); (c) Defendant failed to produce any documentary evidence or answer any request for admission or interrogatory related to this fact either in its initial disclosures or in response to Plaintiffs' written discovery requests; and (d) Defendant failed to identify Atico International, a material witness and indispensible party with knowledge of this fact, in its initial disclosures.  Opp. Decl. Morris Cohen; Opp. Decl. Weisburg; Opp. Decl. Malynn.  ***Objection:*** Immaterial, lacks probative value as the question does not pertain to the Luv n' care comb and brush set, but speaks in generalities.  Federal law is clear that a protectable trade dress can comprise of a unique combination of entirely common and wholly functional features.

       90.      On May 20, 2009 LNC's CEO Nouri Ed Hakim testified:

> Q.   All right, does anyone else put
> character images on their brushes?
> A.   Yes.

***Objection:***  Immaterial, lacks probative value as the question does not pertain to the Luv n' care comb and brush set, but speaks in generalities.  Federal law is clear that a protectable trade dress

can comprise of a unique combination of entirely common and wholly functional features.

**Disputed/objection to extent read out of context:**  As before, Mr. Hakim was not referring to the unique and distinctive look of the Luv n' care comb and brush set.  *See* Ex. A at I:88:15-18 ("I don't know of anyone that makes a comb and brush like any other maker.").  Defense counsel was talking about general features; he was not asking about the look unique to the Luv n' care product.  *See* Ex. A at I:80:15-16.

91.    Plaintiffs' second trade dress chart alleges a protectable element of the Comb/Brush Set trade dress is a "particular shape and proportions of the comb and brush and its components."  **Objection:**  A trade dress does not need any individually "protectable elements."  Federal law is clear that a protectable trade dress can comprise of a unique combination of entirely common and wholly functional features.  **Disputed/objection to extent read out of context:**  Plaintiffs' trade dress chart provides a description of the main things consumers visually see and would consider, at a minimum, the overall look of the Luv n' care brand comb and brush set.  The best evidence of the overall look of the Luv n' care comb and brush set is the product itself, which Walgreens liked and copied.

92.    Plaintiffs testified that the ball and tines configuration of the Comb/Brush Set is designed "[t]o keep from scratching the child's head."  **Objection:** A trade dress does not need any individually "protectable elements."  Federal law is clear that a protectable trade dress can comprise of a unique combination of entirely common and wholly functional features.

**Disputed/objection to extent read out of context:**  Misstates testimony, incomplete/out of context.  Mr. Hakim testified that all competitors "use particular shapes for their combs and brushes."  Ex. A at I:88:9-13.  "We all have our own particular shape, and every one is totally

different than the next persons.  I don't know of anyone that makes a comb and brush like any

other maker."  Ex. A at I:88:15-18.

93.    Colored hand grips are commonplace in the market.  ***Objection***: Plaintiffs' object

to Defendant's use of such unauthenticated, distorted and manipulated photographic evidence,

which it submitted for the purpose of comparing it to Plaintiffs' asserted trade dress, because

Defendant failed to comply with the authentication requirements of Fed.R.Evid. 901 and 1002.

Defendant's unauthenticated, distorted and manipulated photographic comparisons are not

admissible unless authenticated as a comparison made by the trier of fact or by expert witnesses

with specimens that have also been authenticated.  Moreover, Defendant's unauthenticated

manipulated photographs are inadmissible because Defendant has failed to submit the original

undistorted, unmanipulated photographs.  Similarly, Defendant has submitted no evidence of the

date the purported competing cups were first offered in commerce; thus, there is no evidence to

suggest that such predated Plaintiffs' trade dress.  Furthermore, even if such photographic

comparisons were authenticated, they should be excluded under Fed.R.Evid. 403 because their

probative value is substantially outweighed by the danger of confusion of the issues and unfair

prejudice because Defendant is seeking through use of such photographs, and portions thereof, to

improperly dissect Plaintiffs' trade dress into its individual elements when it must be evaluated

as a whole pursuant to statute and binding caselaw.   Finally, Plaintiffs object to such

photographic comparisons because Defendant is improperly asking this Court to weigh and

evaluate (unauthenticated) evidence when that is the province of the jury.  ***Disputed:*** Luv n'

care's products are unique and distinctive, both when they were first released into the market in

2003, and today, except for Royal King's knockoffs and the one Munchkin knockoff.  *See* AMF

15, 41-42, 145-146; Opp. Decl. of Nouri Ed Hakim, at ¶¶ 5,6.  ***Objection:*** Plaintiffs object to this

purported fact pursuant to Fed.R.Civ.P. 26, 30(b)(6), and 56(f), because (a) Defendant failed to identify a expert to testify as to such comparisons and to authenticate the specimens and the comparisons thereof; (b) Defendant has not fulfilled its obligations to provide deposition testimony related to this fact under Fed.R.Civ.P. 30(b)(6); (c) Defendant failed to produce any documentary evidence or answer any request for admission or interrogatory related to this fact either in its initial disclosures or in response to Plaintiffs' written discovery requests; and (d) Defendant failed to identify Atico International, a material witness and indispensible party with knowledge of this fact, in its initial disclosures.  Opp. Decl. Morris Cohen; Opp. Decl. Weisburg; Opp. Decl. Malynn.  ***Objection and disputed:***  Misstates the records, lacks foundation, personal knowledge, probative value, authenticity and reliability.  There is *no evidence* of when any of the depicted combs/brushes were first offered for sale in the market, whether any of them have been sold on the market, whether they are sold in a set, and whether they are even different products. There is *no evidence* of the actual sizes of the handles or hand grips, as no scale was provided for each picture.  Moreover, the handles or hand grips do not have the same or similar look.  Finally, there is *no evidence* that the depicted combs or brushes, when viewed as a whole, look like the Luv n' care comb or brush.

94.    Neutral combs and brushes are commonplace in the market. ***Objection***: Plaintiffs' object to Defendant's use of such unauthenticated, distorted and manipulated photographic evidence, which it submitted for the purpose of comparing it to Plaintiffs' asserted trade dress, because Defendant failed to comply with the authentication requirements of Fed.R.Evid. 901 and 1002.  Defendant's unauthenticated, distorted and manipulated photographic comparisons are not admissible unless authenticated as a comparison made by the trier of fact or by expert witnesses with specimens that have also been authenticated.  Moreover, Defendant's unauthenticated

manipulated photographs are inadmissible because Defendant has failed to submit the original

undistorted, unmanipulated photographs.  Similarly, Defendant has submitted no evidence of the

date the purported competing cups were first offered in commerce; thus, there is no evidence to

suggest that such predated Plaintiffs' trade dress.  Furthermore, even if such photographic

comparisons were authenticated, they should be excluded under Fed.R.Evid. 403 because their

probative value is substantially outweighed by the danger of confusion of the issues and unfair

prejudice because Defendant is seeking through use of such photographs, and portions thereof, to

improperly dissect Plaintiffs' trade dress into its individual elements when it must be evaluated

as a whole pursuant to statute and binding caselaw.   Finally, Plaintiffs object to such

photographic comparisons because Defendant is improperly asking this Court to weigh and

evaluate (unauthenticated) evidence when that is the province of the jury.  *Disputed:* Luv n'

care's products are unique and distinctive, both when they were first released into the market in

2003, and today, except for Royal King's knockoffs and the one Munchkin knockoff. *See* AMF

15, 41-42, 145-146; Opp. Decl. of Nouri Ed Hakim, at ¶¶ 5,6.  *Objection:* Plaintiffs object to this

purported fact pursuant to Fed.R.Civ.P. 26, 30(b)(6), and 56(f), because (a) Defendant failed to

identify a expert to testify as to such comparisons and to authenticate the specimens and the

comparisons thereof; (b) Defendant has not fulfilled its obligations to provide deposition

testimony related to this fact under Fed.R.Civ.P. 30(b)(6); (c) Defendant failed to produce any

documentary evidence or answer any request for admission or interrogatory related to this fact

either in its initial disclosures or in response to Plaintiffs' written discovery requests; and (d)

Defendant failed to identify Atico International, a material witness and indispensible party with

knowledge of this fact, in its initial disclosures.  Opp. Decl. Morris Cohen; Opp. Decl. Weisburg;

Opp. Decl. Malynn. *Objection and disputed:*  Misstates the records, lacks foundation, personal

knowledge, probative value, authenticity and reliability. There is *no evidence* of when any of the depicted products were first offered for sale in the market, whether any of them have been sold on the market, whether they are sold in a set, and whether they are even different products. There is *no evidence* of the actual sizes of these products, as no scale was provided for each picture. Finally, there is *no evidence* that the depicted combs or brushes look like the Luv n' care comb or brush.

95.      Plaintiffs' website states the Comb/Brush Set "was designed especially for your baby." ***Objection:*** Immaterial; that is the category of product at issue. ***Disputed/objection to extent read out of context:*** Mr. Hakim testified that all competitors "use particular shapes for their combs and brushes." Ex. A at I:88:9-13. "We all have our own particular shape, and every one is totally different than the next persons. I don't know of anyone that makes a comb and brush like any other maker." Ex. A at I:88:15-18.

96.      Plaintiffs' website states the "nylon bristles of the brush are soft and gentle to baby's tender scalp." ***Objection:*** Immaterial. Federal law is clear that a protectable trade dress can comprise of a unique combination of entirely common and wholly functional features. Moreover, *nylon* bristles are not one of the elements or main things that contributes to the overall look of the Luv n' care comb and brush set. ***Disputed/objection to extent read out of context:*** Mr. Hakim testified that all competitors "use particular shapes for their combs and brushes." Ex. A at I:88:9-13. "We all have our own particular shape, and every one is totally different than the next persons. I don't know of anyone that makes a comb and brush like any other maker." Ex. A at I:88:15-18.

97.      Plaintiffs' website states "both the brush and comb are sized just right for baby's needs and comfortable enough for mom to hold!" ***Objection:*** Immaterial. That is the nature of

any competitive baby comb and brush set.  Defendant is citing puffery.  The size of a comb or brush does not dictate the overall look or design of the product.  Also, federal law is clear that a protectable trade dress can comprise of a unique combination of entirely common and wholly functional features.  ***Disputed/objection to extent read out of context:***  Mr. Hakim testified that all competitors "use particular shapes for their combs and brushes."  Ex. A at I:88:9-13.  "We all have our own particular shape, and every one is totally different than the next persons.  I don't know of anyone that makes a comb and brush like any other maker."  Ex. A at I:88:15-18.

98.    Plaintiffs' website states "prints and/or colors may vary."  ***Disputed/objection to extent read out of context:***  Plaintiffs made clear that they use custom colors; and Defendant copied those colors.  In addition, the size and location of the print, and how that contributes to the overall look of the comb or brush, differ.  There is no need in the market for a competitor to copy the color of Plaintiffs' comb and brush set, or the size and location of Plaintiffs' prints.

***Objection:***  Immaterial.  Mr. Hakim testified that all competitors "use particular shapes for their combs and brushes."  Ex. A at I:88:9-13.  "We all have our own particular shape, and every one is totally different than the next persons.  I don't know of anyone that makes a comb and brush like any other maker."  Ex. A at I:88:15-18.  Also, federal law is clear that a protectable trade dress can comprise of a unique combination of entirely common and wholly functional features.

### Plaintiffs File A Design Patent Application And Have Sued For Trade Dress Infringement Because Of The Importance Trade Dress Protection

99.    LNC has not applied to register the asserted designs with the USPTO. <www.uspto.gov> (visited June 4, 2009).  ***Objection/disputed to extent read out of context:***  Irrelevant, immaterial.  There are many factors that go into a decision to register a trade dress.  One factor is whether there is a design patent application pending for the product, which is the case for the Luv n' care soft-spout cup.  A defendant's decision to copy a particular trade dress

may occur before the holder of a protectable trade dress registers it with the USPTO, and is

evidence of secondary meaning.  In this situation, an infringement action moots any need to file

for a registration, particularly when a design patent application is already pending with the

USPTO.  This is the situation at bar.

100.    On May 21, 2009 LNC's CEO Nouri Ed Hakim testified:

> A.  I would register what I can register.
> Q.  So, you would register the trade dress,
> if it was up to you, as CEO?
> A.  Me, personally, I would register
> whatever I could register, without just a sure
> waste of money.

***Objection/disputed to extent read out of context:***  Irrelevant, immaterial, taken completely out

of context.  There are many factors that go into a decision to register a trade dress.  One factor is

whether there is a design patent application pending for the product, which is the case for the

Luv n' care soft-spout cup.  A defendant's decision to copy a particular trade dress may occur

before the holder of a protectable trade dress registers it with the USPTO, and is evidence of

secondary meaning.  In this situation, an infringement action moots any need to file for a

registration, particular when a design patent application is already pending with the USPTO.

This is the situation at bar.

**Plaintiffs Have Evidence Of Tremendously Successful Advertising**

101.    Before 2009, LNC had "basically no" advertising budget in the United States.

***Objection/disputed to extent read out of context:***  Immaterial given that the largest retail chains

in the United States, including Walmart and Walgreens, advertised and promoted Luv n' care's

no-spill cups themselves, with and without any advertising allowances.  The cooperative ads for

Luv n' care cups was effective.  For example, Walgreens would run advertisements and

promotions for Luv n' care hard-spout cup every other month, and sales of this cup would jump

dramatically, from about 23,000 units per week to 85,000 units per week, when Walgreens promoted the cup.  Similarly, Walmart's advertisements and promotion of Luv n' care's soft-spout cup contributed to this cup becoming the #1 selling cup in the United States.  Therefore, the purpose of a large advertising budget was being completely fulfilled through cooperative advertisements by large retail chains, including Walmart and Walgreens.  *See* AMF ¶¶¶¶¶ 55, 56, 59, 66, 67, 73___.

102.  Admar does not advertise in the U.S. at all.  **Objection:**  Irrelevant.  The success of the advertising done by Luv n' care and its retailers also inures to Admar's benefit.

103.  Plaintiffs testified to have given "advertising allowances" to their customers in the form of a rebate to offset costs of advertising in circulars and the like.  **Objection:**  Unsupported (testimony omitted from transcript submitted).  **Objection/disputed to extent read out of context:** Some large retail chains, such as Walgreens, chose to advertise and promote Luv n' care brand cups without any subsidy, rebate or offset, due to the enormous demand for and special appeal and consumer recognition of the Luv n' care brand cups.  *See* AMF ¶74.

104.  Plaintiffs testified, that this allowance would "give [their customers] a certain percentage, based upon their sales, for ***them*** to advertise with."  **Objection/disputed to extent read out of context:**  Cooperate advertising by large retain chains, which by its nature is targeted to customers of the products advertised, uses the same artwork and serves the same function as general advertising, but it is more cost-effective, and in the case of Luv n' care cups, was far more effective in making a commercial impression among targeted consumers.  *See* AMF ¶56.

105.  Plaintiffs cannot ascribe the portion of the non-plaintiff advertising done on any particular product, let alone the asserted products in suit.  **Objection:**  Misstates testimony.  Record cited concerned financial information stored on Plaintiffs' computer system; it did not

concern other types of evidence. It also did not concern "non-plaintiff" or large retail
advertising, but simply "direct" expenditures. Ex. B at II:16:6-17:2. ***Objection/disputed to
extent read out of context:*** Immaterial given that the largest retail chains in the United States,
including Walmart and Walgreens, advertised and promoted Luv n' care's cups themselves, with
and without any advertising allowances. The cooperative ads for Luv n' care cups was effective.
For example, Walgreens would run advertisements and promotions for Luv n' care hard-spout
cup every other month, and sales of this cup would jump dramatically, from about 23,000 units
per week to 85,000 units per week, when Walgreens promoted the cup. Similarly, Walmart's
monthly advertisements and promotion of Luv n' care's soft-spout cup contributed to this cup
becoming the #1 selling cup in the United States. Therefore, the purpose of an advertising
budget, even one earmarked by product, was being completely fulfilled through cooperative
advertisements by large retail chains, including Walmart and Walgreens. *See* AMF ¶¶¶ 55, 56,
59,66, 67, 73.

106.    Plaintiffs' advertisements include some form of functionality. ***Objection.***
Immaterial, not probative, does not speak to any particular product or whether the overall look of
any Luv n' care product is primarily non-functional, the federal standard for a protectable trade
dress. ***Disputed:*** The overall look and appearance of a Luv n' care product is not dictated by
any functional features. There are many alternative ways to shape, design, style and color baby
products, including no-spill cups and comb and brush sets. There is no need to copy the design
and overall look of a Luv n' care product. Put simply, the overall look of Luv n' care's cup is
primarily non-functional.

107.    On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  What advertising are you aware of that
> promotes the functional attributes of the gripper

58

> cup?
> A.  Specifically, only promotes the
> function attributes?
> Q.  No, no, I'm not separating, but I
> understand it may do both, but my first question
> promotes functional attributes?
> A.  That may include some functionality?
> Q.  Sure.
> A.  All of the advertisement probably
> includes some form of functionality.

*Objection.*  Immaterial, not probative, does not speak to any particular product or whether the

overall look of any Luv n' care product is primarily non-functional, the federal standard for a

protectable trade dress.  *Disputed:*  The overall look and appearance of a Luv n' care product is

not dictated by any functional features.  There are many alternative ways to shape, design, style

and color baby products, including no-spill cups and comb and brush sets.  There is no need to

copy the design and overall look of a Luv n' care product.  Put simply, the overall look of Luv n'

care's cup is primarily non-functional.

      108.    On May 29, 2009, LNC's President Joseph Hakim testified:

> Q.  There's a lot of different costs here in
> Exhibits 55 and 56.  Are they apportionable to a
>  8  byproduct basis?
> A   How?
> Q   Can I -- can I apportion these costs --
> A   To a specific item?
> Q   Yes.
> A   No.

*Objection:*  Immaterial.  Record cited concerned financial information stored on Plaintiffs'

computer system; it did not concern other types of evidence.  It also did not concern "non-

plaintiff" or large retailer advertising, but simply "direct" expenditures.  Ex. B at II:16:6-17:2.

*Objection/disputed to extent read out of context:*  Immaterial given that the largest retail chains

in the United States, including Walmart and Walgreens, advertised and promoted Luv n' care's

cups themselves, with and without any advertising allowances.  The cooperative ads for Luv n'

care cups was effective.  For example, Walgreens would run advertisements and promotions for

Luv n' care hard-spout cup every other month, and sales of this cup would jump dramatically,

from about 23,000 units per week to 85,000 units per week, when Walgreens promoted the cup.

Similarly, Walmart's monthly advertisements and promotion of Luv n' care's soft-spout cup

contributed to this cup becoming the #1 selling cup in the United States.  Therefore, the purpose

of an advertising budget, even one earmarked by product, was being completely fulfilled through

cooperative advertisements by large retail chains, including Walmart and Walgreens.  *See* AMF

¶¶ 55, 56, 59, 66, 67, 73.

### Plaintiffs Have Consumer Survey Evidence Of Secondary Meaning But The Court Ruled It Inadmissible

109.    Plaintiffs have not conducted any consumer survey of their own with regard to the

Gripper Cup.  ***Objection/disputed to extent read out of context:***  Plaintiffs have conducted no

consumer survey at this juncture, and the Court has ruled that no expert testimony will be

permitted to confirm secondary meaning at this point in time.

110.    Plaintiffs have not conducted any consumer survey of their own with regard to the

No-Spill Cup.  ***Objection/ disputed to extent read out of context:***  Plaintiffs have conducted no

survey at this juncture, but Plaintiffs did retain an expert, who reviewed the consumer survey

Royal King conducted on the Luv n' care hard-spout cup, provided a report on this survey, and

was made available to Walgreens to depose.  One reason Plaintiffs did not pay for survey

evidence is because Royal King did, and its survey showed that Luv n' care's hard-spout cup has

acquired distinctiveness.  *See* AMF ¶¶ 148, 150.  Royal King's own survey evidence showed

that over 30% of targeted consumers (mothers with young children), even in locations where Luv

n' care does not sell many cups, *just by looking at the cup*, knew that Luv n' care's hard-spout cup came from one source. *See* AMF ¶150.

111. Plaintiffs have not conducted any consumer survey of their own with regard to the Comb/Brush Set. ***Objection/disputed to extent read out of context:*** Plaintiffs have conducted no consumer survey at this juncture, and the Court has ruled that no expert testimony will be permitted to confirm secondary meaning at this point in time.

112. When ask why they never conducted a survey, LNC's CEO testified "why should we? We're the market leader….there is no reason to." ***Objection/ disputed to extent read out of context:*** Plaintiffs' state-of-mind included the fact that Royal King retained an expert to conduct a consumer survey on Plaintiffs' hard-spout cup; this survey confirmed Plaintiffs belief that its hard-spout cup had acquired secondary meaning. Plaintiffs' expert reviewed and provided a report on this survey, and Plaintiffs' expert was made available to Walgreens. Given that Luv n' care's soft-spout cup is the #1 selling cup in the United States (not just the #1 selling cup at Walgreens like Plaintiffs' hard-spout cup), has received more publicity and more awards, and in Plaintiffs' opinion is both inherently distinctive and famous among consumers, Luv n' care's CEO reasonably believed he did not need to spend upwards to $100,000 on survey evidence, particularly in light of the number of products Royal King and Walgreens copied. *See* AMF ¶¶ 144, 105, 110. Both Luv n' care cups are the best selling cup in the United States. *See* AMF ¶¶ 105, 81, 110. Before 2006, when Walgreen copied Luv n' care's two marketing leading cups, it was likely that every mother in the United States had purchased a Luv n' care no-spill cup, and knew precisely what they looked like. *See* AMF ¶¶ 54, 65, 71.

**Plaintiffs Have Evidence Of Unsolicited Media Coverage**

113.    Plaintiffs testified there has been no unsolicited media coverage that highlights the look of the Gripper Cup. ***Objection/ disputed to extent read out of context:*** Plaintiffs testified that there *was* "unsolicited media coverage for Luv n' care's gripper cup," and provided examples. Ex. A at III: 149:19-150:13. As Walgreen's heading to this section indicates, that is the import of Walgreen's questioning. Even if the unsolicited media coverage didn't exclusively highlight the look of the cup, that doesn't mean that there is no evidence of unsolicited media coverage.

114.    Plaintiffs testified that they were "not sure" whether there had been any unsolicited media coverage with respect to the No-Spill Cup. ***Objection/ disputed to extent read out of context:*** Luv n' care's CEO testified to articles in Small World and Juvenile magazines, which he thought were about Luv n' care's hard-spout cup but could not be sure. Ex. A at III: 151:14-20.

115.    Plaintiffs testified that there are 200,000 blogs related to their products sold under their NUBY® trademark that they found on a Google® search. ***Admitted/objection to extent read out of context:*** Mr. Hakim further testified as below. Ex. B at II:20:20-22:4.

116.    On May 29, 2009, LNC's President Joseph Hakim testified:

> Q.   Earlier we were discussing some 200,000
> blogs that apparently are out there about Nuby's
> asserted products in this case?
> A   Yes.
> Q.   Is that right, that information?
> A.   Actually, it's not necessarily 200,000
> blogs. It's 2 million 100 and some-odd thousand
> contacts -- or not contacts. I'm trying to use the
> right term here because blogs were not the right
> term. Blogs is a portion of that. But different
> people talking about, or different individuals,
> eBay, whatever, selling products, talking about

> Nuby products.  Even saw one video where a
> consumer -- never heard of her or seen of her
> before -- she actually did a video on a sippy cup,
> on a Nuby sippy cup.  So that's how much
> communication is out there.  I ran -- it was done on
> a Google search and what I did was to try to get as
> close to the pure Nuby products as I could, I
> excluded, you know, you did Nuby but exclude --
> there was a -- there's some kind of painting out
> there that refers to Nuby, or an artist.  There's a
> couple different things.  So I tried to exclude all
> those to get as close to all Nuby stuff as I could
> get.  So I came up with a million 100 and some-odd
> thou -- 2 million 100 and some-odd thousand
> references.  I mean, even if it's, you know, has a
> hundred thousand incorrect ones, then you're still
> around a couple of million.

*Admitted.*

117.    Plaintiffs testified that the asserted designs have acquired secondary meaning because of 200,000 web sites that talk about the asserted designs.  ***Objection/ disputed to extent read out of context:***  That was only one reason given.  Another reason was that Royal King's own consumer survey showed that Luv n' care's hard-spout cup had acquired secondary meaning.  Ex. A at I:58:15-18.  It follows that Luv n' care's soft-spout cup, which had greater sales, received product awards for its design, and was the subject of even more cooperate advertising and unsolicited media coverage, acquired secondary meaning as well.  *See* AMF ¶¶¶¶ 62, 66, 67, 68.

118.    May 20, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  But my question was, why didn't Luv 'N
> Care ever do a survey regarding, for example,
> secondary meaning?
> A.  Didn't need to.
> Q.  For what?
> A.  Didn't need to.  It's a simple case.
> Q.  This is -
> A.  I think it's a simple case.  Either the

> copied or they didn't copy.  We have secondary
> meaning.
> Q.  How do you know that?
> A.  How do I know that?  Well, if you get
>  on the web site, you can look up about 200,000
> different web sites that talk about this product.

***Objection/ disputed to extent read out of context:***  Walgreen's omits the very next sentence from Luv n' care's CEO's testimony, where he plainly testified that Royal King's own consumer survey showed that Luv n' care's hard-spout cup had acquired secondary meaning.  Ex. A at I:58:15-18.  It follows that Luv n' care's soft-spout cup, which had greater sales, received product awards for its design, and was the subject of even more cooperate advertising and unsolicited media coverage, acquired secondary meaning as well.  *See* AMF  ¶¶ 62, 66, 67, 68.

119.    On June 4, 2009 a Google® search of "nuby sippy cup" resulted in 27,800 hits.

***Objection/ disputed to extent read out of context:***  This search criteria is inaccurate and under inclusive because it fails to mention Luv n' care and fails to use the name of the item "no-spill cup."

**Plaintiffs' Utility Patents Are Immaterial**

120.    At least four patents describe and depict features of the No-Spill and Gripper Cups, including the "overall look" of these asserted product designs.  Ex. A at II:183:10-16 (No-Spill Cup); Ex. A at II:186:6-16 (Gripper Cup); Exs. K-N.  ***Objection:*** Immaterial.  The subject patents show that there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress.  Plaintiffs' trade dress focuses on the ***outer*** appearance of Plaintiffs' no-spill cups.  *See* Decl. of Nouri E. Hakim, ¶¶ 36, 37, 38.  On the other hand, in each of the subject patents, its central advance focuses on a spill proof valve and liquid dispensing system that is ***internal*** to the product and has nothing to do with the **outward** appearance, *i.e*, Plaintiffs' trade dress.  Accordingly, there is no overlap between the "central

advance" of the patents and the essential features of Plaintiffs' trade dress and the patents provide no evidence on the issue of functionality. *See* AMF ¶20-39.

121.    LNC's CEO, Nouri Edward Hakim is listed as a named inventor on U.S. Patent Nos. 7,243,814, 6,357,620, 6,321,931, and 6,994,225. Ex. A at II:194:11-20; Exs. K-N. **Admitted.**

122.    The patents from Paragraph 100 are assigned to Admar International, Inc. (Admar). Ex. A at II:194:11-20. **Objection:** Immaterial. The subject patents show that there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress. Plaintiffs' trade dress focuses on the **outer** appearance of Plaintiffs' no-spill cups. *See* Decl. of Nouri E. Hakim, ¶¶¶ 7, 3, 6, 37, 38. On the other hand, in each of the subject patents, its central advance focuses on a spill proof valve and liquid dispensing system that is **internal** to the product and has nothing to do with the **outward** appearance, *i.e*, Plaintiffs' trade dress. Accordingly, there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress and the patents provide no evidence on the issue of functionality. *See* AMF ¶ 20-39. **Disputed:** Mr. Hakim assigned all of the subject patents to Luv n' care, not to Admar. *See* Opp. Decl. of Morris E. Cohen, ¶129, Ex. 39.

123.    Plaintiffs testified that their patents "spea[k] for themselves" Ex. A at II:144:7-21. **Objection:** Immaterial. The subject patents show that there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress. Plaintiffs' trade dress focuses on the **outer** appearance of Plaintiffs' no-spill cups. *See* Decl. of Nouri E. Hakim, ¶¶ ¶36, 37, 38. On the other hand, in each of the subject patents, its central advance focuses on a spill proof valve and liquid dispensing system that is **internal** to the product and has nothing to do with the **outward** appearance, *i.e*, Plaintiffs' trade dress. Accordingly, there is no overlap

between the "central advance" of the patents and the essential features of Plaintiffs' trade dress and the patents provide no evidence on the issue of functionality. Moreover, without proper determination of what the claims of the subject utility patents are, this Court may not consider them as relevant evidence, let alone undisputed fact. *See* AMF ¶ 20-39.

124.    Alleged inventor N.E. Hakim testified that the Figure 10(B) of U.S. Patent Number 6,994,225 illustrates the asserted product design of the Gripper Cup. Ex. A at II:186:6-16. ***Objection/ disputed to extent read out of context:*** The patent includes a black and white line drawing that merely shows general shape and not the other aspects of the overall visual impression of the products at issue. The main purpose of the drawing is simply to depict the location of the valve assembly and valve holders within the interior of the cup and the Patent. It does not show the coloring and tinting that make up part of the trade dress and, therefore, does not include the combination and arrangement of those elements. ***Objection:*** Immaterial. The subject patents show that there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress. Plaintiffs' trade dress focuses on the ***outer*** appearance of Plaintiffs' no-spill cups. *See* Decl. of Nouri E. Hakim, ¶¶ 36, 37, 38. On the other hand, in each of the subject patents, its central advance focuses on a spill proof valve and liquid dispensing system that is ***internal*** to the product and has nothing to do with the **outward** appearance, *i.e*, Plaintiffs' trade dress. Accordingly, there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress and the patents provide no evidence on the issue of functionality. Moreover, without proper determination of what the claims of the subject utility patents are, this Court may not consider them as relevant evidence, let alone undisputed fact. *See* AMF ¶20-39

125.    On May 21, 2009 LNC's CEO, Nouri Edward Hakim Testified:

> Q.  Does figure ten depict Luv 'N Care's no
> spill gripper cup that's asserted against
> Walgreens?  Sorry, figure ten.
> A.  The outside shape, yes.
> Q.  Side shape?
> A.  The outside shape, yes.
> Q.  The outside shape.
> A.  For all these.
> Q.  An overhead view?
> A.  The outside shape.  The physical shape
> of the spout and the cup, yes.

Ex. A at II:186:6-16.  ***Objection/ disputed to extent read out of context:***  The patent includes a black and white line drawing that merely shows general shape and not the other aspects of the overall visual impression of the products at issue.  The main purpose of the drawing is simply to depict the location of the valve assembly and valve holders within the interior of the cup and the Patent.  It does not show the coloring and tinting that make up part of the trade dress and, therefore, does not include the combination and arrangement of those elements.  ***Objection***:  Immaterial.  The subject patents show that there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress.  Plaintiffs' trade dress focuses on the ***outer*** appearance of Plaintiffs' no-spill cups.  *See* Decl. of Nouri E. Hakim, ¶¶ 36, 37, 38. On the other hand, in each of the subject patents, its central advance focuses on a spill proof valve and liquid dispensing system that is ***internal*** to the product and has nothing to do with the ***outward*** appearance, *i.e*, Plaintiffs' trade dress.  *See* AMF ¶20-39.  Accordingly, there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress and the patents provide no evidence on the issue of functionality.  Moreover, without proper determination of what the claims of the subject utility patents are, this Court may not consider them as relevant evidence, let alone undisputed fact.

126.    This Figure shows Fig. 10(B) from U.S. Patent No. 6,994,225 (left) and plaintiffs' Gripper Cup from Exhibit B from the Complaint (right). ***Objection***: Plaintiffs' object to

Defendant's use of such unauthenticated, distorted and manipulated photos and images, which

are submitted for the purpose of comparing Plaintiffs' patent with Plaintiffs' trade dress, because

Defendant failed to comply with the authentication requirements of Fed.R.Evid. 901 and 1002.

Defendant's unauthenticated, distorted and manipulated photographic comparisons are not

admissible unless authenticated as a comparison made by the trier of fact or by expert witnesses

with specimens that have also been authenticated.  Moreover, Defendant's unauthenticated

manipulated images are inadmissible because Defendant has failed to submit the original

undistorted, unmanipulated images.  Furthermore, even if such comparison was authenticated, it

should be excluded under Fed.R.Evid. 403 because their probative value is substantially

outweighed by the danger of confusion of the issues and unfair prejudice because Defendant is

seeking through use of such photographs and images to improperly compare Plaintiffs patent

with its trade dress appearance.   Finally, Plaintiffs object to such comparison because Defendant

is improperly asking this Court to weigh and evaluate (unauthenticated) evidence when that is

the province of the jury.  ***Disputed***: The '225 Patent is a method patent directed toward an:

"[i]mproved no-spill drinking products including a nipple or soft spout having a valve

incorporated therein.  The valve is designed to provide an enhanced no-spill function providing

an extremely secure seal against accidental liquid flow form the nipple or spout when the use is

not drinking therefrom."  *See* Ex. N, '225 Patent,  Abstract.  The central advance of this patent is

to incorporate a flow control valve into the nipple itself.  Although Fig. 10 of the '225 Patent

does provide a generalized depiction of Plaintiffs' cup, that appearance does not form part of any

claim, nor is that image part of the "central advance" of the patent. Thus, as a threshold matter,

that disclosure is irrelevant to considerations of functionality.  ***Objection***: Immaterial.  The

subject patents show that there is no overlap between the "central advance" of the patents and the

essential features of Plaintiffs' trade dress.  Plaintiffs' trade dress focuses on the **outer**

appearance of Plaintiffs' no-spill cups.  *See* Decl. of Nouri E. Hakim, ¶¶¶ 36, 37, 38.  On the

other hand, in each of the subject patents, its central advance focuses on a spill proof valve and

liquid dispensing system that is **internal** to the product and has nothing to do with the **outward**

appearance, *i.e*, Plaintiffs' trade dress.  *See* AMF ¶20-39.  Accordingly, there is no overlap

between the "central advance" of the patents and the essential features of Plaintiffs' trade dress

and the patents provide no evidence on the issue of functionality.  Moreover, without proper

determination of what the claims of the subject utility patents are, this Court may not consider

them as relevant evidence, let alone undisputed fact.

| FIG. 10(B) from U.S. Pat. No. 6,994,225 | Plaintiffs' Gripper Cup |
|---|---|
| |  |

127.    The 6,994,225 patent discloses, "The embodiments of the drinking products with

a nipple are, of course, provided for use by babies…The spout is preferably a soft spout which is

part of a soft lid, e.g. a lid and spout made of silicone."  Ex. N, '225 Patent at Col. 5, ln. 28-34.

**Objection**: Immaterial.  The subject patents show that there is no overlap between the "central

advance" of the patents and the essential features of Plaintiffs' trade dress.  Plaintiffs' trade dress

focuses on the **outer** appearance of Plaintiffs' no-spill cups.  *See* Decl. of Nouri E. Hakim, ¶¶¶

36, 37, 38.  On the other hand, in each of the subject patents, its central advance focuses on a

spill proof valve and liquid dispensing system that is **internal** to the product and has nothing to

do with the **outward** appearance, *i.e*, Plaintiffs' trade dress. *See* AMF ¶ 20-39. Accordingly, there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress and the patents provide no evidence on the issue of functionality. Moreover, without proper determination of what the claims of the subject utility patents are, this Court may not consider them as relevant evidence, let alone undisputed fact. ***Disputed***: The '225 Patent is a method patent directed toward an: "[i]mproved no-spill drinking products including a nipple or soft spout having a valve incorporated therein. The valve is designed to provide an enhanced no-spill function providing an extremely secure seal against accidental liquid flow form the nipple or spout when the use is not drinking therefrom." *See* AMF ¶20-39. The central advance of this patent is to incorporate a flow control valve into the nipple itself. Although Fig. 10 of the '225 Patent does provide a generalized depiction of Plaintiffs' cup, that appearance does not form part of any claim, nor is that image part of the "central advance" of the patent. Thus, as a threshold matter, that disclosure is irrelevant to considerations of functionality. Furthermore, there is no claim requiring the use of silicone let alone the use of clear silicone. Thus while the Patent discloses silicone as one possible material, there is no requirement that silicone be used. *See* AMF ¶20-39.

128.    The 6,994,225 patent discloses "A gripping area for use to hold the cup more securely...this grip area can be in the form of a series of contours in the cup." Ex. N, '225 Patent at Col. 20, ln. 22-25. ***Objection***: Immaterial. The subject patents show that there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress. Plaintiffs' trade dress focuses on the ***outer*** appearance of Plaintiffs' no-spill cups. *See* Decl. of Nouri E. Hakim, ¶¶¶ 36, 37, 38. On the other hand, in each of the subject patents, its central advance focuses on a spill proof valve and liquid dispensing system that is ***internal*** to the

product and has nothing to do with the **outward** appearance, *i.e*, Plaintiffs' trade dress.  *See* AMF ¶20-39.  Accordingly, there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress and the patents provide no evidence on the issue of functionality.  Moreover, without proper determination of what the claims of the subject utility patents are, this Court may not consider them as relevant evidence, let alone undisputed fact.

***Disputed***:  The '225 Patent is a method patent directed toward an: "[i]mproved no-spill drinking products including a nipple or soft spout having a valve incorporated therein.  The valve is designed to provide an enhanced no-spill function providing an extremely secure seal against accidental liquid flow form the nipple or spout when the use is not drinking therefrom."  *See* AMF ¶20-39.  The central advance of this patent is to incorporate a flow control valve into the nipple itself.  Although Fig. 10 of the '225 Patent does provide a generalized depiction of Plaintiffs' cup, that appearance does not form part of any claim, nor is that image part of the "central advance" of the patent.  *See* AMF ¶20-39.  Thus, as a threshold matter, that disclosure is irrelevant to considerations of functionality.

129.    The 6,994,225 patent discloses "The nipple can be constructed out of any of the flexible materials currently used in the art of baby bottle nipple construction, or any other suitable flexible materials for use in such a nipple.  Such materials are preferably soft, elastic, and made of a material which is harmless to the user."  Ex. N, '225 Patent at Col. 6, ln. 11-16.

***Objection***:  Immaterial.  The subject patents show that there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress.  Plaintiffs' trade dress focuses on the ***outer*** appearance of Plaintiffs' no-spill cups.  *See* Decl. of Nouri E. Hakim, ¶¶ 36, 37, 38.  On the other hand, in each of the subject patents, its central advance focuses on a spill proof valve and liquid dispensing system that is ***internal*** to the product and has nothing to

71

do with the **outward** appearance, *i.e*, Plaintiffs' trade dress.  *See* AMF ¶20-39.  Accordingly,

there is no overlap between the "central advance" of the patents and the essential features of

Plaintiffs' trade dress and the patents provide no evidence on the issue of functionality.

Moreover, without proper determination of what the claims of the subject utility patents are, this

Court may not consider them as relevant evidence, let alone undisputed fact.  ***Disputed***: The '225

Patent is a method patent directed toward an: "[i]mproved no-spill drinking products including a

nipple or soft spout having a valve incorporated therein.  The valve is designed to provide an

enhanced no-spill function providing an extremely secure seal against accidental liquid flow

form the nipple or spout when the use is not drinking therefrom."  *See* AMF ¶20-39.  The central

advance of this patent is to incorporate a flow control valve into the nipple itself.  Although Fig.

10 of the '225 Patent does provide a generalized depiction of Plaintiffs' cup, that appearance

does not form part of any claim, nor is that image part of the "central advance" of the patent.  *See*

AMF ¶20-39.  Thus, as a threshold matter, that disclosure is irrelevant to considerations of

functionality.

      130.    Alleged inventor Hakim testified that the Figure 5 of U.S. Patent Number

7,243,814, illustrates the asserted No-Spill Cup product.  Ex. A at II:140: 6-15.  ***Objection/***

***disputed to extent read out of context:*** The patent includes a black and white line drawing that

merely shows general shape and not the other aspects of the overall visual impression of the

products at issue.  The main purpose of the drawing is simply to depict the location of the valve

assembly and valve holders within the interior of the cup and the Patent.  It does not show the

coloring and tinting that make up part of the trade dress and, therefore, does not include the

combination and arrangement of those elements.  Furthermore, the patent drawing does not

depict the same spout shape shown on the products at issue in the Complaint  ***Objection***:

Immaterial.  The subject patents show that there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress.  Plaintiffs' trade dress focuses on the **outer** appearance of Plaintiffs' no-spill cups.  *See* Decl. of Nouri E. Hakim, ¶¶¶ 36, 37, 38.  On the other hand, in each of the subject patents, its central advance focuses on a spill proof valve and liquid dispensing system that is **internal** to the product and has nothing to do with the **outward** appearance, *i.e*, Plaintiffs' trade dress.  *See* AMF ¶20-39.  Accordingly, there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress and the patents provide no evidence on the issue of functionality.  Moreover, without proper determination of what the claims of the subject utility patents are, this Court may not consider them as relevant evidence, let alone undisputed fact.  **Disputed**: The '814 Patent is a continuation of the '931 Patent and, like that patent, is directed toward spill-proofing a sippy cup.  This patent focuses on and further develops no-spill valve technology.  The subject invention "relates to a no-spill cup assembly with an improved valve mechanism to prevent liquid from flowing out of the cup when not desired."  *See* Ex. K, '814 Patent, Field of Invention.

Significantly, the valve technology is incorporated into the cup and is not even visible.  *See* e.g. Ex. K, '814 Patent, Fig. 2 (depicting the arrangement of cup, valve system and lid).  There is no requirement of any particular shapes for the exterior appearance.  *See* AMF ¶20-39.

131.    On May 21, 2009 LNC's CEO, Nouri Edward Hakim Testified:

> Q.  Take a look now at figure five -
> A.  Okay.
> Q.  - in the 814 patent that is exhibit 42.
> A.  Okay.
> Q.  That appears to look more like exhibit 36.
> A.  Yes.
> Q.  And is it, in fact, a graphical

representation of the product that's exhibit 36?

A.   That's correct.

Ex. A at II:140: 6-15.  ***Objection/ disputed to extent read out of context:*** The patent includes a black and white line drawing that merely shows general shape and not the other aspects of the overall visual impression of the products at issue.  The main purpose of the drawing is simply to depict the location of the valve assembly and valve holders within the interior of the cup and the Patent.  It does not show the coloring and tinting that make up part of the trade dress and, therefore, does not include the combination and arrangement of those elements.  Furthermore, the patent drawing does not depict the same spout shape shown on the products at issue in the Complaint.  ***Objection***: Immaterial.  The subject patents show that there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress. Plaintiffs' trade dress focuses on the ***outer*** appearance of Plaintiffs' no-spill cups.  *See* Decl. of Nouri E. Hakim, ¶¶¶ 36, 37, 38.  On the other hand, in each of the subject patents, its central advance focuses on a spill proof valve and liquid dispensing system that is ***internal*** to the product and has nothing to do with the **outward** appearance, *i.e*, Plaintiffs' trade dress.  *See* AMF ¶20-39.  Accordingly, there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress and the patents provide no evidence on the issue of functionality.  Moreover, without proper determination of what the claims of the subject utility patents are, this Court may not consider them as relevant evidence, let alone undisputed fact.

***Disputed***: The '814 Patent is a continuation of the '931 Patent and, like that patent, is directed toward spill-proofing a sippy cup.  This patent focuses on and further develops no-spill valve technology.  The subject invention "relates to a no-spill cup assembly with an improved valve mechanism to prevent liquid from flowing out of the cup when not desired."  *See* Ex. K, '814 Patent, Field of Invention.  Significantly, the valve technology is incorporated into the cup and is

not even visible.  *See* e.g. Ex. K, '814 PatentFig. 2 (depicting the arrangement of cup, valve

system and lid).  There is no requirement of any particular shapes for the exterior appearance.

*See* AMF ¶20-39.

132.    This Figure shows Fig. 5(a) from U.S. Patent No. 7,234,814 (left) and plaintiffs'

No-Spill Cup from Exhibit C from the Complaint (right).  ***Objection***: Plaintiffs' object to

Defendant's use of such unauthenticated, distorted and manipulated photos and images, which

are submitted for the purpose of comparing Plaintiffs' patent with Plaintiffs' trade dress, because

Defendant failed to comply with the authentication requirements of Fed.R.Evid. 901 and 1002.

Defendant so manipulated the images that nothing even appears on the left side of the grouping.

Defendant's unauthenticated, distorted and manipulated photographic comparisons are not

admissible unless authenticated as a comparison made by the trier of fact or by expert witnesses

with specimens that have also been authenticated.  Moreover, Defendant's unauthenticated

manipulated images are inadmissible because Defendant has failed to submit the original

undistorted, unmanipulated images.  Furthermore, even if such comparison was authenticated, it

should be excluded under Fed.R.Evid. 403 because their probative value is substantially

outweighed by the danger of confusion of the issues and unfair prejudice because Defendant is

seeking through use of such photographs and images to improperly compare Plaintiffs patent

with its trade dress appearance.   Finally, Plaintiffs object to such comparison because Defendant

is improperly asking this Court to weigh and evaluate (unauthenticated) evidence when that is

the province of the jury.  ***Disputed***: The '814 Patent is a continuation of the '931 Patent and, like

that patent, is directed toward spill-proofing a sippy cup.  This patent focuses on and further

develops no-spill valve technology.  The subject invention "relates to a no-spill cup assembly

with an improved valve mechanism to prevent liquid from flowing out of the cup when not

desired." *See* Ex. K, '814 Patent, Field of Invention.  Significantly, the valve technology is

incorporated into the cup and is not even visible.  *See* e.g. Ex. K, '814 Patent,  Fig. 2 (depicting

the arrangement of cup, valve system and lid).  There is no requirement of any particular shapes

for the exterior appearance.  ***Objection***: Immaterial.  The subject patents show that there is no

overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade

dress.  Plaintiffs' trade dress focuses on the ***outer*** appearance of Plaintiffs' no-spill cups.  *See*

Decl. of Nouri E. Hakim, ¶¶¶ 36, 37, 38.  On the other hand, in each of the subject patents, its

central advance focuses on a spill proof valve and liquid dispensing system that is ***internal*** to the

product and has nothing to do with the **outward** appearance, *i.e*, Plaintiffs' trade dress.  *See*

AMF ¶20-39.  Accordingly, there is no overlap between the "central advance" of the patents and

the essential features of Plaintiffs' trade dress and the patents provide no evidence on the issue of

functionality.  Moreover, without proper determination of what the claims of the subject utility

patents are, this Court may not consider them as relevant evidence, let alone undisputed fact.

***Disputed***: The '814 Patent is a continuation of the '931 Patent and, like that patent, is directed

toward spill-proofing a sippy cup.  This patent focuses on and further develops no-spill valve

technology.  The subject invention "relates to a no-spill cup assembly with an improved valve

mechanism to prevent liquid from flowing out of the cup when not desired."  *See* Ex. K,  '814

Patent, Field of Invention.  Significantly, the valve technology is incorporated into the cup and is

not even visible.  *See* e.g. Ex. K, '814 Patent Fig. 2 (depicting the arrangement of cup, valve

system and lid).  There is no requirement of any particular shapes for the exterior appearance.

*See* AMF ¶20-39.

| FIG. 5(a) from U.S. Pat. No. 7,243,814 | Plaintiffs' No-Spill Cup |
|---|---|
| |  |

133.    U.S. Pat. No. 7,243,814 ("the '814 patent") claims, "an apparatus as claimed in claim 1, wherein said apparatus comprises a cap for a cup, said cap comprising a soft spout." Ex. K, '814 Patent, Claim 14.  **Objection:** Immaterial.  The subject patents show that there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress.  Plaintiffs' trade dress focuses on the **outer** appearance of Plaintiffs' no-spill cups.  *See* Decl. of Nouri E. Hakim, ¶¶¶ 36, 37, 38.  On the other hand, in each of the subject patents, its central advance focuses on a spill proof valve and liquid dispensing system that is **internal** to the product and has nothing to do with the **outward** appearance, *i.e*, Plaintiffs' trade dress.  *See* AMF ¶20-39.  Accordingly, there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress and the patents provide no evidence on the issue of functionality.  Moreover, without proper determination of what the claims of the subject utility patents are, this Court may not consider them as relevant evidence, let alone undisputed fact.  **Disputed**: The '814 Patent is a continuation of the '931 Patent and, like that patent, is directed toward spill-proofing a sippy cup.  This patent focuses on and further develops no-spill valve technology.  The subject invention "relates to a no-spill cup assembly with an improved valve mechanism to prevent liquid from flowing out of the cup when not desired."  *See* Ex. K, '814

Patent Field of Invention. Significantly, the valve technology is incorporated into the cup and is not even visible. *See* e.g. Ex. K, Fig. 2 (depicting the arrangement of cup, valve system and lid). There is no requirement of any particular shapes for the exterior appearance. *See* AMF ¶20-39.

134.    The '814 patent claims "an apparatus according to claim 23, comprising a cup, and wherein said cap is further provided with finger grips on the outside of said cap to facilitate screwing of said cap on and off of said cup." Ex. K, '814 Patent, Claim 34. **Objection**: Immaterial. The subject patents show that there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress. Plaintiffs' trade dress focuses on the ***outer*** appearance of Plaintiffs' no-spill cups. *See* Decl. of Nouri E. Hakim, ¶¶¶ 36, 37, 38. On the other hand, in each of the subject patents, its central advance focuses on a spill proof valve and liquid dispensing system that is ***internal*** to the product and has nothing to do with the **outward** appearance, *i.e*, Plaintiffs' trade dress. *See* AMF ¶20-39. Accordingly, there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress and the patents provide no evidence on the issue of functionality. Moreover, without proper determination of what the claims of the subject utility patents are, this Court may not consider them as relevant evidence, let alone undisputed fact. **Disputed**: The '814 Patent is a continuation of the '931 Patent and, like that patent, is directed toward spill-proofing a sippy cup. This patent focuses on and further develops no-spill valve technology. The subject invention "relates to a no-spill cup assembly with an improved valve mechanism to prevent liquid from flowing out of the cup when not desired." *See* Ex. K, '814 Patent, Field of Invention.

Significantly, the valve technology is incorporated into the cup and is not even visible. *See* e.g.

Ex. K, '814 Patnet, Fig. 2 (depicting the arrangement of cup, valve system and lid). There is no

requirement of any particular shapes for the exterior appearance. *See* AMF ¶20-39.

### Plaintiffs Unreliable Sales Information Cannot Be Attributed To The "Overall Design" Of Plaintiffs' Products

135.    Plaintiffs' sales data does not identify what portion of sales is attributable to

product design. ***Objection:*** Immaterial. Sales data merely needs to be attributable to the

products at issue not to the product design or any other particular form of intellectual property; to

suggest otherwise ignores the reality of how sales revenue is collected and accounted for. The

number of cups sold show that, as of 2006, when Walgreen's copied Luv n' care's cup designs,

every mother of a small child in the United States had likely purchased both Luv n' care cups,

and knew those cups by the way they looked. *See* AMF ¶¶70, 16-19. ***Disputed:*** Accountants do

not "attribute" sales; they report sales data. Plaintiffs have declared, based on their own personal

knowledge and experience in baby product sales, that the look of a cup is what drives product

sales. Attribution is not something shown by raw sales data. See AMF ¶ 12-13.

136.    Before May 20, 2009, plaintiffs' provided only total sales by Wal-Mart of non-

specific products, which are not pertinent to Walgreens. ***Objection/disputed:*** Plaintiffs

produced all the invoices and back-up data showing total product sales, including sales at

Walmart and Walgreens. At all times Walgreens could have performed its own sales

compilation but declined. *See* Fed.R.Civ.P. 33(d). At deposition, Plaintiffs testified to sales

totals as well. ***Objection/disputed/misstates record:*** Joseph Hakim testified that Walmart sales

of "door knocker pacifiers," "nasal aspirators," "cherry actuating pacifiers," "butterfly pacifiers

with dots and 9 oz. Nuby contoured skirted bottles" were not pertinent, <u>not</u> that sales at Walmart

of the products at issue in this case were not pertinent. Ex. B at I:18:16-19:6.

137.    On May 20, 2009 , LNC's President Joseph Hakim testified:

> Q.   And as a general proposition, what kind
> of products are in the later stack, that is not
> relevant?
> A.   That is not relevant?  Can I look at
> them?
> Q.   You can.
> A.   Okay, types of things are, like, the
> Wal-Mart sales, which I don't think is pertinent
> to Walgreens . . . .

***Objection/disputed/misstates record:***  In an obvious attempt to deceive the Court, Walgreen

omitted pertinent testimony with ellipses.  Joseph Hakim plainly testified that Walmart sales of

"door knocker pacifiers," "nasal aspirators," "cherry actuating pacifiers," "butterfly pacifiers

with dots and 9 oz. Nuby contoured skirted bottles" were not pertinent, <u>not</u> that sales at Walmart

of the products at issue in this case were not pertinent.  Ex. B at I:18:16-19:6.  Moreover,

Defense counsel called for a legal conclusion and failed to define the legal term "relevant" for

the deponent.

138.    Plaintiffs are aware that a portion of their sales of the Gripper Cup is attributable

to their patents.  ***Objection:***  Immaterial.  ***Disputed:***  Misstates testimony, Mr. Hakim stated that

he was aware of a "possibility" not a certainty.  Moreover, Plaintiffs have declared, based on

their own personal knowledge and experience in baby product sales, that the look of a cup is

what drives product sales.  Moreover, even if consumers purchased a cup due in part to some

utility does not mean that the overall look of the cup has not acquired secondary meaning or is

not primarily non-functional.  The premises are entirely consistent with each other.

139.    On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.   Are you aware of any sales that are
> attributable to the patent applied for features
> of the gripper cup?
> A.   Yes.

> Q.  You're aware that there are sales
> attributable to those patent pending features?
> A.  It's possible.
> Q.  Do you know what portion?
> A.  No.

**Objection:** Immaterial.  **Disputed:** Misstates testimony, Mr. Hakim stated that he was aware of

a "possibility" not a certainty.  Moreover, Plaintiffs have declared, based on their own personal

knowledge and experience in baby product sales, that the look of a cup is what drives product

sales.  Moreover, even if consumers purchased a cup due in part to some utility does not mean

that the overall look of the cup has not acquired secondary meaning or is not primarily non-

functional.  The premises are entirely consistent with each other.

140.    Plaintiffs have no knowledge as to what portion of their sales of the Gripper Cup

is attributable to their patents.  **Objection**: Misstates testimony, immaterial.  **Disputed:** Sales

data merely needs to be attributable to the products at issue, not to the patent or any other

particular form of intellectual property; to suggest otherwise ignores the reality of how sales

revenue is collected and accounted for.  The fact that Luv n' care's CEO does not know what

portion of sales is attributable to a patent does not mean that Plaintiffs have no knowledge on this

topic.  Plaintiffs have declared, based on their own personal knowledge and experience in baby

product sales, that the look of their cups is a signature, drives product sales and is important for

brand loyalty.  See AMF ¶ 12-13.

141.    On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  And do you know what portion of the
> of the gripper cup product were
> attributable to patent protection?
> A.  No.
> Q.  You have no evidence of that -
> A.  Myself, personally?  No.
> Q.  Do you have any evidence that you're
> aware of that would report that some sales were

> attributable to the patentable aspects of the
> gripper cup?
> A.   I have no knowledge either way which
> part of the sales would be attributed to the
> patent.

**Objection**:  Immaterial.  **Disputed:**  Sales data merely needs to be attributable to the products at

issue, not to the patent or any other particular form of intellectual property; to suggest otherwise

ignores the reality of how sales revenue is collected and accounted for.  The fact that Luv n'

care's CEO does not know what portion of sales is attributable to a patent, and that he,

personally, does not have evidence of that, does not mean that Plaintiffs have no knowledge on

this topic.  Plaintiffs have declared, based on their own personal knowledge and experience in

baby product sales, that the look of their cups is a signature, drives product sales and is important

for brand loyalty.  See AMF ¶12-13.

142.    Plaintiffs have no knowledge as to what portion of their sales of the Gripper Cup

is attributable to their copyrights.  **Objection**:  Misstates testimony, immaterial.  **Disputed:** Sales

data merely needs to be attributable to the products at issue, not to a copyright or any other

particular form of intellectual property; to suggest otherwise ignores the reality of how sales

revenue is collected and accounted for.   The fact that Luv n' care's CEO does not know what

portion of sales, if any, is attributable to a copyright does not mean that Plaintiffs have no

knowledge on this topic.  Plaintiffs have declared, based on their own personal knowledge and

experience in baby product sales, that the look of their cups is a signature, drives product sales

and is important for brand loyalty.  See AMF ¶12-13.

143.    On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  Do you know what portion of the sales
> of the gripper cup are attributable to the
> copyright?
> A.  No.

*Objection*:  Immaterial.  *Disputed:* Sales data merely needs to be attributable to the products at issue, not to a copyright or any other particular form of intellectual property; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for.  The fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to a copyright does not mean that Plaintiffs have no knowledge on this topic.  Plaintiffs have declared, based on their own personal knowledge and experience in baby product sales, that the look of their cups is a signature, drives product sales and is important for brand loyalty.  See AMF ¶12-13.

144.    Plaintiffs have no knowledge as to what portion of their sales of the Gripper Cup is attributable to its silicone spout. *Objection*:  Misstates testimony, immaterial.  *Disputed:* Sales data merely needs to be attributable to the products at issue, not to any particular feature of such product or any particular form of intellectual property; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for.  The fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to a silicone spout does not mean that Plaintiffs have no knowledge on this topic.  Plaintiffs have declared, based on their own personal knowledge and experience in baby product sales, that the look of their cups is a signature, drives product sales and is important for brand loyalty.  *See* AMF ¶12-13.

145.    On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  But you don't know what portion of the
> sales were attributable to the success of the
> silicone spout in this particular product?
> A.  No.

*Objection*:  Immaterial.  *Disputed:* Sales data merely needs to be attributable to the products at issue, not to any particular feature of such product or any particular form of intellectual property; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for.  The

fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to a silicone spout does not mean that Plaintiffs have no knowledge on this topic.  Plaintiffs have declared, based on their own personal knowledge and experience in baby product sales, that the look of their cups is a signature, drives product sales and is important for brand loyalty.  *See* AMF ¶ 12-13.

146.    Plaintiffs have no knowledge as to what portion of their sales of the Gripper Cup is attributable to the fact that it fits easily into a small baby's hands.  **Objection**: Misstates testimony, immaterial.  **Disputed:**  Sales data merely needs to be attributable to the products at issue, not to any particular feature of such product or any particular form of intellectual property; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for.  The fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to this ornamental feature does not mean that Plaintiffs have no knowledge on this topic.  Plaintiffs have declared, based on their own personal knowledge and experience in baby product sales, that the look of their cups is a signature, drives product sales and is important for brand loyalty.  *See* AMF ¶ 12-13.

147.    On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  Do you know what portion of the sales
> of the gripper cup are apportionable to the fact
> that it fits easily in baby's small hands?
>  A.  No.

**Objection**:  Immaterial.  **Disputed:**  Sales data merely needs to be attributable to the products at issue, not to any particular feature of such product or any particular form of intellectual property; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for.  The fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to this ornamental feature does not mean that Plaintiffs have no knowledge on this topic.  Plaintiffs have

declared, based on their own personal knowledge and experience in baby product sales, that the

look of their cups is a signature, drives product sales and is important for brand loyalty.  *See*

AMF ¶12-13.

148.    Plaintiffs have no knowledge as to what portion of their sales of the Gripper Cup

is attributable to the fact that it is made from substantially break resistant plastic.  **Objection**:

Misstates testimony, immaterial.  **Disputed:**  Sales data merely needs to be attributable to the

products at issue, not to any particular feature of such product or any particular form of

intellectual property; to suggest otherwise ignores the reality of how sales revenue is collected

and accounted for.  The fact that Luv n' care's CEO does not know what portion of sales, if any,

is attributable to the fact that they make a quality no-spill cup does not mean that Plaintiffs have

no knowledge on this topic.  Plaintiffs have declared, based on their own personal knowledge

and experience in baby product sales, that the look of their cups is a signature, drives product

sales and is important for brand loyalty.  *See* AMF ¶12-13.

149.    On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.   Do you know what portion of the sales
> of the gripper cup are attributable to the fact
> that it is made from break resistant plastic?
> A.   Substantially break resistant plastic,
> no.

**Objection**:  Immaterial.  **Disputed:**  Sales data merely needs to be attributable to the products at

issue, not to any particular feature of such product or any particular form of intellectual property;

to suggest otherwise ignores the reality of how sales revenue is collected and accounted for.  The

fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to the fact

that they make a quality no-spill cup does not mean that Plaintiffs have no knowledge on this

topic.  Plaintiffs have declared, based on their own personal knowledge and experience in baby

product sales, that the look of a cup is what drives product sales and is important for brand loyalty. *See* AMF ¶12-13.

150.    Plaintiffs have no knowledge as to what portion of their sales of the Gripper Cup is attributable to their NUBY trademark. **Objection**:  Misstates testimony, immaterial.

**Disputed:**  Sales data merely needs to be attributable to the products at issue, not to any particular form of intellectual property reflected therein; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for.  The fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to their trademark does not mean that Plaintiffs have no knowledge on this topic.  Plaintiffs have declared, based on their own personal knowledge and experience in baby product sales, that the look of their cups is a signature, drives product sales and is important for brand loyalty. *See* AMF ¶12-13.

151.    On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.   What portion of the sales of the
> gripper cup are attributable to the fact that it
> bears the Nuby trademark?
> A.  I think the Nuby - I can't give you a
> percentage, but I can tell you that the name
> Nuby, obviously, stops the consumer, and makes
> them pick up the product and look.  It's a
> trusted name.
> . . .
> Q.   - you don't know what portion of the
> sales are attributable to the fact that this
> product bears the Nuby trademark multiple times?
> A.   The percentage?  I think once they see
> the name, it doesn't matter if you put it 50
> times in there.  When they see the name Nuby on
> the cup, they're going to see the name Nuby.
> Q.   And they'll buy it?
> A.   You're gone have a better shot of
> selling it.

***Objection***:  Immaterial.  Walgreens does not claim on summary judgment that there is no

likelihood of confusion.  ***Disputed:***  Sales data merely needs to be attributable to the products at

issue, not to any particular form of intellectual property reflected therein; to suggest otherwise

ignores the reality of how sales revenue is collected and accounted for.  The fact that Luv n'

care's CEO does not know what portion of sales, if any, is attributable to their trademark does

not mean that Plaintiffs have no knowledge on this topic.  Plaintiffs have declared, based on their

own personal knowledge and experience in baby product sales, that the look of their cups is a

signature, drives product sales and is important for brand loyalty.  *See* AMF ¶12-13.

152.    Plaintiffs have no knowledge as to what portion of their sales of the No-Spill Cup

is attributable to their NUBY® trademark. ***Objection***:  Misstates testimony, immaterial.

***Disputed:***  Sales data merely needs to be attributable to the products at issue, not to any

particular form of intellectual property reflected therein; to suggest otherwise ignores the reality

of how sales revenue is collected and accounted for.  The fact that Luv n' care's CEO does not

know what portion of sales, if any, is attributable to their trademark does not mean that Plaintiffs

have no knowledge on this topic.  Plaintiffs have declared, based on their own personal

knowledge and experience in baby product sales, that the look of their cups is a signature, drives

product sales and is important for brand loyalty.  *See* AMF ¶12-13.

153.  On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  Do you know what portion of the sales
> of the hard tipped sippy cup, that's asserted in
> this case, are attributable to the Nuby trademark
> that appears on the body of the cup?
> A.  I would say a fair percentage.
> Q.  More than half?
> A.  Can't pin it down to a half.  I know
> the Nuby name is a trusted name, so it's going to
> stop the consumer, and then what's in their head,
> why they buy it, I think they buy it because they

> trust the brand.  They assume the brand is going
> to work, or they wouldn't buy it to begin with.
> So, they're buying it for the aesthetic look of
> it, because they trust it's going to work.  It's
> made by Nuby.

***Objection***:  Immaterial.  Walgreens does not claim on summary judgment that there is no

likelihood of confusion.  ***Disputed:***  Sales data merely needs to be attributable to the products at

issue, not to any particular form of intellectual property reflected therein; to suggest otherwise

ignores the reality of how sales revenue is collected and accounted for.  The fact that Luv n'

care's CEO does not know what portion of sales, if any, is attributable to their trademark does

not mean that Plaintiffs have no knowledge on this topic.  Plaintiffs have declared, based on their

own personal knowledge and experience in baby product sales, that the look of their cups is a

signature, drives product sales and is important for brand loyalty.  *See* AMF ¶12-13.

154.    Plaintiffs have no knowledge as to what portion of their sales of the No-Spill Cup

is attributable to their patents.  ***Objection***:  Misstates testimony; immaterial.  Sales data merely

needs to be attributable to the products at issue, not to any particular form of intellectual property

reflected therein; to suggest otherwise ignores the reality of how sales revenue is collected and

accounted for.  ***Disputed:***  The fact that Luv n' care's CEO does not know what portion of

sales, if any, is attributable to a patent does not mean that Plaintiffs have no knowledge on this

topic.  Plaintiffs have declared, based on their own personal knowledge and experience in baby

product sales, that the look of their cups is a signature, drives product sales and is important for

brand loyalty.  *See* AMF ¶ 12-13.

155.    On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  Do you know what portion of the sales
> are attributable to the patent protection over
> the exhibit C to the complaint product that's in
> exhibit 36?

A.  Six?  Do not.

*Objection*:  Immaterial.  Sales data merely needs to be attributable to the products at issue, not to any particular form of intellectual property reflected therein; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for.  *Disputed:*  The fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to a patent does not mean that Plaintiffs have no knowledge on this topic.  Plaintiffs have declared, based on their own personal knowledge and experience in baby product sales, that the look of their cups is a signature, drives product sales and is important for brand loyalty.  *See* AMF ¶12-13.

156.    Plaintiffs have no knowledge as to what portion of their sales of the No-Spill Cup is attributable to its dual flow feature.  *Objection*:  Misstates testimony, immaterial.  Sales data merely needs to be attributable to the products at issue, not to any particular feature of such product or any particular form of intellectual property; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for.  *Disputed:*  The fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to this product feature does not mean that Plaintiffs have no knowledge on this topic.  Plaintiffs have declared, based on their own personal knowledge and experience in baby product sales, that the look of their cups is a signature, drives product sales and is important for brand loyalty.  *See* AMF ¶12-13.

157.    On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  You don't know what portion of the
> sales of the hard tipped no spill cup are
> attributable to the dual flow feature?
> A.  I do not.

*Objection*:  Immaterial.  Sales data merely needs to be attributable to the products at issue, not to any particular feature of such product or any particular form of intellectual property; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for.  *Disputed:*

The fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to this product feature does not mean that Plaintiffs have no knowledge on this topic. Plaintiffs have declared, based on their own personal knowledge and experience in baby product sales, that the look of their cups is a signature, drives product sales and is important for brand loyalty. *See* AMF ¶12-13.

158.    Plaintiffs have no knowledge as to what portion of their sales of the No-Spill Cup is attributable to its reversible valve. ***Objection***: Misstates testimony, immaterial. Sales data merely needs to be attributable to the products at issue, not to any particular feature of such product or any particular form of intellectual property; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for. ***Disputed:*** The fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to this product feature does not mean that Plaintiffs have no knowledge on this topic. Plaintiffs have declared, based on their own personal knowledge and experience in baby product sales, that the look of their cups is a signature, drives product sales and is important for brand loyalty. *See* AMF ¶12-13.

159.    On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q. Do you know what portion of the sales
> are attributable to that valve being reversible?
> A. No, I do not.

***Objection***: Immaterial. Sales data merely needs to be attributable to the products at issue, not to any particular feature of such product or any particular form of intellectual property; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for. ***Disputed:*** The fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to this product feature does not mean that Plaintiffs have no knowledge on this topic. Plaintiffs have declared, based on their own personal knowledge and experience in baby product sales, that

the look of their cups is a signature, drives product sales and is important for brand loyalty.  *See*

AMF ¶12-13.

160.    Plaintiffs have no knowledge as to what portion of their sales of the No-Spill Cup

is attributable to its no-spill feature.  ***Objection***:  Misstates testimony, immaterial.  Sales data

merely needs to be attributable to the products at issue, not to any particular feature of such

product or any particular form of intellectual property; to suggest otherwise ignores the reality of

how sales revenue is collected and accounted for.  ***Disputed:***  The fact that Luv n' care's CEO

does not know what portion of sales, if any, is attributable to consumers wanting a no-spill cup,

rather than a different type of cup, does not mean that Plaintiffs have no knowledge on this topic.

Plaintiffs have declared, based on their own personal knowledge and experience in baby product

sales, that the look of their cups is a signature, drives product sales and is important for brand

loyalty.  *See* AMF ¶12-13.

161.    On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  Do you know what portion of the sales
> are attributable to the no spill feature?
> A.  I do not.

***Objection***:  Immaterial.  Sales data merely needs to be attributable to the products at issue, not to

any particular feature of such product or any particular form of intellectual property; to suggest

otherwise ignores the reality of how sales revenue is collected and accounted for.  ***Disputed:***

The fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to

consumers wanting a no-spill cup, rather than a different type of cup, does not mean that

Plaintiffs have no knowledge on this topic.  Plaintiffs have declared, based on their own personal

knowledge and experience in baby product sales, that the look of their cups is a signature, drives

product sales and is important for brand loyalty.  *See* AMF ¶12-13.

162.     Plaintiffs have no knowledge as to what portion of their sales of the Comb/Brush Set is attributable to its NUBY trademark. *Objection*:  Misstates testimony, immaterial.  Sales data merely needs to be attributable to the products at issue, not to any particular form of intellectual property reflected therein; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for. *Disputed:*  The fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to their trademark does not mean that Plaintiffs have no knowledge on this topic.  Plaintiffs have declared, based on their own personal knowledge and experience in baby product sales, that the look of their cups is a signature, drives product sales and is important for brand loyalty.  *See* AMF ¶12-13.

163.     On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  Do you know what portion of the sales
> of this product that's exhibit 46 is attributable
> to the trademark Nuby on the product?
> A.  No, I don't.

*Objection*:  Immaterial.  Sales data merely needs to be attributable to the products at issue, not to any particular form of intellectual property reflected therein; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for.  Walgreens does not claim on summary judgment that there is no likelihood of confusion. *Disputed:*  The fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to their trademark does not mean that Plaintiffs have no knowledge on this topic.  Plaintiffs have declared, based on their own personal knowledge and experience in baby product sales, that the look of their cups is a signature, drives product sales and is important for brand loyalty.  *See* AMF ¶12-13.

164.     Plaintiffs have no knowledge as to what portion of their sales of the Comb/Brush Set is attributable to the fact that this product is marketed as soft and gentle on a baby's scalp. *Objection*:  Misstates testimony, immaterial.  Sales data merely needs to be attributable to the

92

products at issue, not to any particular feature of such product or any particular form of intellectual property; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for. *Disputed:* The fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to their trademark does not mean that Plaintiffs have no knowledge on this topic. Plaintiffs have declared, based on their own personal knowledge and experience in baby product sales, that the look of their cups is a signature, drives product sales and is important for brand loyalty. *See* AMF ¶ 12-13.

      165.    On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q.  Do you know what portion of the sales
> are attributable to the fact that this product is
> marketed as soft and gentle on a baby's scalp?
> A.  No, I do not.

*Objection*:  Immaterial.  Sales data merely needs to be attributable to the products at issue, not to any particular feature of such product or any particular form of intellectual property; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for. *Disputed:* The fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to this product feature does not mean that Plaintiffs have no knowledge on this topic. Plaintiffs have declared, based on their own personal knowledge and experience in baby product sales, that the look of their cups is a signature, drives product sales and is important for brand loyalty. *See* AMF ¶ 12-13.

      166.    Plaintiffs have no knowledge as to what portion of their sales of the Comb/Brush Set is attributable to the soft-grip handle. *Objection*:  Misstates testimony, immaterial.  Sales data merely needs to be attributable to the products at issue, not to any particular feature of such product or any particular form of intellectual property; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for. *Disputed:* The fact that Luv n' care's CEO

does not know what portion of sales, if any, is attributable to this product feature does not mean that Plaintiffs have no knowledge on this topic. Plaintiffs have declared, based on their own personal knowledge and experience in baby product sales, that the look of their cups is a signature, drives product sales and is important for brand loyalty. *See* AMF ¶¶12-13.

167.    On May 21, 2009, LNC's CEO Nouri Ed Hakim testified:

> Q. All right, do you know what portion of
> the sales are attributable to the soft grip
> handle?
> A. No, I don't.

**Objection**: Immaterial. Sales data merely needs to be attributable to the products at issue, not to any particular feature of such product or any particular form of intellectual property; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for. **Disputed:** The fact that Luv n' care's CEO does not know what portion of sales, if any, is attributable to this product feature does not mean that Plaintiffs have no knowledge on this topic. Plaintiffs have declared, based on their own personal knowledge and experience in baby product sales, that the look of their cups is a signature, drives product sales and is important for brand loyalty. *See* AMF ¶¶12-13.

168.    Plaintiffs produced sales data that does not indicate what portion of the sales was due to initial or repeat customers. **Objection:** Immaterial. **Disputed:** The high volume of sales of both Luv n' care cups evidences a large number of repeat customers. Luv n' care outsold the target market, new mothers, **by more than 4 to 1**, thereby, deeply penetrating the market. *See* AMF ¶71. Sales invoices and spreadsheets timely produced in this case, without more, show that parents nationwide repurchased Luv n' care cups at a high rate, totaling ▮▮▮▮▮▮▮▮ *cups*

***sold in 5 years***, and ████████ ***cups in the first 2 years***, when about 8 million babies were

born.  *See* AMF ¶ 70.

169.    On May 29, 2009, LNC's President Joseph Hakim testified:

> Q.   I'm going to hand you exhibits labeled
> Hakim 10, 11 and 13 that are part of Defendants'
> Exhibit 30 in this case.  My questions probably can
> be answered generally, so I'm going to ask that
> first and see if you can answer generally.
> A.   Okay.
> Q.   Can you identify in exhibits Hakim 10, 11
> or 13 what sales are repeat sales?
> A.   Which sales are repeat sales?
> Q.   Yes.
> A.   Talking about at a consumer level?
> Q.   Yes.
> A   No.
> Q .  Does Luv N' Care have any information that
> would show an initial versus a repeat sale for an
> easy grip, hard and soft comb and brush?
> A.   These documents as you see them cannot
> give whether or not a consumer is buying a
> repetitive product or not.
> Q.   Can the McQuillen database generate such a
> report?
> A.   No, because the consumer doesn't buy
> directly from Luv N' Care.
> Q.   So then Luv N' Care has no -- no
> information itself about what it -- what percentage
> of the asserted products are sold in the initial
> versus the repeat stage?
> A.   Not from reports.

***Objection:***  Misstates the testimony; immaterial.  Mr. Hakim clearly stated that the reports he

was being shown did not and could not reflect that type of consumer-level data because Luv n'

care does not sell directly to the consumers; its retailers do that.  ***Disputed:***  The high volume of

sales of both Luv n' care cups evidences a large number of repeat customers.  Luv n' care

outsold the target market, new mothers, ***by more than 4 to 1***, thereby, deeply penetrating the

market.  *See* AMF ¶ 71  Sales invoices and spreadsheets timely produced in this case, without

more, show that parents nationwide repurchased Luv n' care cups at a high rate, totaling ***over*** ▇

▇▇▇ ***cups sold in 5 years***, and ***over*** ▇▇▇▇▇ ***cups in the first 2 years***, when about 8 million

babies were born.  *See* AMF ¶70..

170.    Plaintiffs' sales numbers do not indicate what portion of the sales is attributable to

the plaintiffs' common-law trademarks.  ***Objection***:  Misstates testimony, immaterial.  Sales data

merely needs to be attributable to the products at issue, not to any particular form of intellectual

property; to suggest otherwise ignores the reality of how sales revenue is collected and accounted

for.  ***Disputed:***  The fact that Luv n' care's CEO does not know what portion of sales is

attributable to common law trademark does not mean that Plaintiffs have no knowledge on this

topic.  Plaintiffs have declared, based on their own personal knowledge and experience in baby

product sales, that the look of their cups is a signature, drives product sales and is important for

brand loyalty.  *See* AMF ¶¶ 12-13_.

171.    On May 20, 2009 LNC's CEO Edward Hakim testified:

> Q.  All right, are those sales - what
> portion of those sales are attributable to the no
> spill trademark?  I'm just showing you also, in
> conjunction with these questions, defendant's
> exhibit eight.
> A.  The no spill trademark is not shown on
> this cup.
> Q.  Its shown on the advertising materials.
> This is an excerpt from the web site - from Luv
> 'N Care's web site.
> A.  Oh, do I know what sales of this cup -
> the success, or what percentage of the sales are
> because of this web site page?
> Q.  Are because the product is marketed in
> connection with a no spill, with a little TM,
> which indicates a common law trademark.
> A.  Well, I don't know that.

*Objection*:  Immaterial.  Sales data merely needs to be attributable to the products at issue, not to any particular form of intellectual property; to suggest otherwise ignores the reality of how sales revenue is collected and accounted for.  *Disputed:*  The fact that Luv n' care's CEO does not know what portion of sales is attributable to common law trademark does not mean that Plaintiffs have no knowledge on this topic.  Plaintiffs have declared, based on their own personal knowledge and experience in baby product sales, that the look of their cups is a signature, drives product sales and is important for brand loyalty.  *See* AMF ¶12-13.

### Plaintiffs Had Actual Notice Of All Claims

172.    In their May 2008 Complaint, plaintiffs claim Walgreens infringed unregistered trade dress in two "sippy cups" shown in Complaint Exs. B and C.  DE 1 at ¶¶ 39-48 (facts), 82-84 (Count).  *Admitted in part/disputed in part:* Plaintiffs also asserted that Walgreens infringed unregistered trade dress in its packaging trade dress for such products.  Walgreen expressly alleged as its Fifth Affirmative Defense, filed on Aug. 6, 2008, in reponse to the Complaint, that: "The alleged trademarks asserted by Plaintiffs as to its product designs *and **packaging*** are not famous."  Similarly, Walgreen's Sixth Affirmative Defense stated that: "The alleged trade dress asserted by Plaintiffs as to its product designs *and **packaging*** is functional and therefore not protectable under trade dress or trademark law."  (D.E.# 12).  Therefore, it is clear that Walgreen was fully aware that Plaintiffs were alleging that Walgreen had infringed its packaging trade dress.  *See* AMF ¶¶114.

173.    Plaintiffs' Complaint also asserts the Ex. E "Comb and Brush Set" product design against KMart.  *Objections:*  Immaterial, incomplete/out of context.  *Disputed:*  Plaintiffs' Complaint, including without limitation Paragraphs 2, 9-28 and 57-114, is not limited by the examples given in paragraphs 53-56, and expressly asserts claims against Walgreens, one of the

two "Defendants," for selling a knockoff of the Luv n' care brand comb and brush set, which is Exhibit E to the Complaint.

174.    The only packaging identified in the Complaint is for Complaint Ex. A, which plaintiffs assert against KMart. ***Disputed:*** Plaintiffs' Complaint, including without limitation Paragraphs 2, 13-19, 22-28, and 57-114, are not limited to paragraphs 30-38, and expressly allege that both "Defendants" (plural) use infringing packaging. Walgreens is one of the two Defendants accused of infringing upon Plaintiffs' packaging trade dress. *E.g.,* Complaint ¶ 83 ("Defendants are intentionally using Plaintiffs' product designs and packaging to trade off of Plaintiffs' reputation and goodwill and to create deception in the marketplace."). Walgreen expressly alleged as its Fifth Affirmative Defense, filed on Aug. 6, 2008, in reponse to the Complaint, that: "The alleged trademarks asserted by Plaintiffs as to its product designs ***and packaging*** are not famous." Similarly, Walgreen's Sixth Affirmative Defense stated that: "The alleged trade dress asserted by Plaintiffs as to its product designs ***and packaging*** is functional and therefore not protectable under trade dress or trademark law." (D.E.# 12). Therefore, it is clear that Walgreen was fully aware that Plaintiffs were alleging that Walgreen had infringed its packaging trade dress. *See* AMF ¶¶114.

175.    The word "packaging" in Paragraph 83 of the Complaint refers to the Ex. A product asserted against Kmart. ***Disputed:*** Plaintiffs' Complaint, including without limitation Paragraphs 2, 13-19, 22-28, and 57-114, are not limited to paragraphs 30-38, and expressly allege that both "Defendants" (plural) use infringing packaging. Walgreens is one of the two Defendants accused of infringing upon Plaintiffs' packaging trade dress. *E.g.,* Complaint ¶ 83 ("Defendants are intentionally using Plaintiffs' product designs and packaging to trade off of Plaintiffs' reputation and goodwill and to create deception in the marketplace."). Walgreen

expressly alleged as its Fifth Affirmative Defense, filed on Aug. 6, 2008, in reponse to the

Complaint, that: "The alleged trademarks asserted by Plaintiffs as to its product designs ***and***

***packaging*** are not famous."   Similarly, Walgreen's Sixth Affirmative Defense stated that: "The

alleged trade dress asserted by Plaintiffs as to its product designs ***and packaging*** is functional

and therefore not protectable under trade dress or trademark law."  (D.E.# 12).  Therefore, it is

clear that Walgreen was fully aware that Plaintiffs were alleging that Walgreen had infringed its

packaging trade dress.  *See* AMF ¶¶114.

176.    The Court ordered that discovery closed on May 1, 2009.  ***Objection, disputed:***
The Court originally ordered discovery closed on May 7, 2009.  The Court's subsequent order is

errant.  If discovery is not reopened to permit (a) discovery propounded *prior to* the subsequent

order and (b) discovery on Atico, who was disclosed by Walgreen's after the Court issued its

subsequent order, in violation of Rule 26 of the Federal Rules of Civil Procedure, then Plaintiffs'

rights under the Federal Rules of Civil Procedure and the Due Process Clause will have been

violated.

177.    Plaintiffs did not state any allegation of packaging trade dress infringement

against Walgreens until after discovery closed on May 1, 2009.  ***Disputed.***  Plaintiffs' Complaint,

including without limitation Paragraphs 2, 13-19, 22-28, and 57-114, are not limited to

paragraphs 30-38, and expressly allege that both "Defendants" (plural) use infringing packaging.

Walgreens is one of the two Defendants accused of infringing upon Plaintiffs' packaging trade

dress.  *E.g.,* Complaint ¶ 83 ("Defendants are intentionally using Plaintiffs' product designs and

packaging to trade off of Plaintiffs' reputation and goodwill and to create deception in the

marketplace.").  Walgreen expressly alleged as its Fifth Affirmative Defense, filed on Aug. 6,

2008, in reponse to the Complaint, that: "The alleged trademarks asserted by Plaintiffs as to its

product designs ***and packaging*** are not famous."   Similarly, Walgreen's Sixth Affirmative

Defense stated that: "The alleged trade dress asserted by Plaintiffs as to its product designs ***and***

***packaging*** is functional and therefore not protectable under trade dress or trademark law."

(D.E.# 12).   Therefore, it is clear that Walgreen was fully aware that Plaintiffs were alleging that

Walgreen had infringed its packaging trade dress.  *See* AMF ¶¶114.

178.    On May 28 and 29, 2009, Walgreen's counsel wrote to plaintiffs:

> We write concerning plaintiffs' intentions concerning the
> packaging trade dress claims allegedly asserted against Walgreens.  It is
> not entirely clear to us whether plaintiffs actually intend to assert
> packaging trade dress claims against Walgreens.  To the extent
> plaintiffs actually intend to assert trade dress in packaging, we believe
> these late-advanced claims are improper and should be dismissed.
>
> Certainly, no packaging claims are stated against Walgreens in the
> Complaint.  However, after the May 1, 2009 close of fact discovery (and
> during the May ~~12~~ 20 and ~~13~~ 21 corporate depositions of Ed Hakim),
> plaintiffs noted for the first time that they were asserting some sort of
> trade dress claims based on packaging.  While it's still not entirely clear to
> us what those packaging claims are, they appear to include packaging (1)
> 1-pack Gripper Cup, (2) 2-pack Gripper Cup, (3) 1-pack Sport Sipper, and
> (4) No-Spill hard-spout cup.  For (1) and (2), a Gripper Cup is shown
> without packaging in Ex. B to the Complaint.  For (4), a No-Spill Cup is
> shown with an instruction sheet folded inside in Ex. C to the Complaint.
> For (3), a Sport Sipper is shown in Ex. A to the Complaint, but that
> product and packaging is specifically restricted in the body of the
> Complaint to direct claims at defendant KMart and not Walgreens.
> Plaintiff LNC's CEO confirmed during corporate testimony that no
> packaging is shown in Ex. B to the Complaint and that the insert in Ex. C
> is merely an instruction sheet.
>
> It is fundamentally and manifestly unfair, not to mention
> prejudicial and costly, that Walgreens must defend against packaging
> claims that were not in the Complaint and that it did not have notice of
> until at or after the close of discovery.  Please immediately advise us
> whether plaintiffs intend to assert trade dress in the packaging and provide
> us with a detailed statement of what each packaging claim is and when
> plaintiffs contend Walgreens had notice - with specific identification of
> the notice vehicle plaintiffs believe would support the Court's finding that
> these claims are properly noticed.   We reserve the right to request the
> Court preclude any packaging claims by plaintiffs against Walgreens and

will do so if we do not have a specific notice-supporting response from
you by the end of the week.

*Objection:* Immaterial; not evidence. This is an improper submission of correspondence

between counsel, which pursuant to the Honorable Judge Chin's Individual Rule of Practice 1.A.:

"shall not be sent to the Court." ***Disputed.*** Plaintiffs' Complaint, including without limitation

Paragraphs 2, 13-19, 22-28, and 57-114, are not limited to paragraphs 30-38, and expressly

allege that both "Defendants" (plural) use infringing packaging. Walgreens is one of the two

Defendants accused of infringing upon Plaintiffs' packaging trade dress. *E.g.,* Complaint ¶ 83

("Defendants are intentionally using Plaintiffs' product designs and packaging to trade off of

Plaintiffs' reputation and goodwill and to create deception in the marketplace."). Walgreen

expressly alleged as its Fifth Affirmative Defense, filed on Aug. 6, 2008, in reponse to the

Complaint, that: "The alleged trademarks asserted by Plaintiffs as to its product designs ***and***

***packaging*** are not famous." Similarly, Walgreen's Sixth Affirmative Defense stated that: "The

alleged trade dress asserted by Plaintiffs as to its product designs ***and packaging*** is functional

and therefore not protectable under trade dress or trademark law." (D.E.# 12). Therefore, it is

clear that Walgreen was fully aware that Plaintiffs were alleging that Walgreen had infringed its

packaging trade dress. *See* AMF ¶¶114.

179.     As of the filing of this paper, plaintiffs had not responded to the letter of the

previous paragraph. *Objection:* Immaterial; not evidence. Defendant's submission of

correspondence between counsel is improper pursuant to the Honorable Judge Chin's Individual

Rule of Practice 1.A., which states that: "Copies of correspondence between counsel shall not be

sent to the Court." **Disputed:** Plaintiffs' Complaint, including without limitation Paragraphs 2,

13-19, 22-28, and 57-114, are not limited to paragraphs 30-38, and expressly allege that both

"Defendants" (plural) use infringing packaging. Walgreens is one of the two Defendants

accused of infringing upon Plaintiffs' packaging trade dress. *E.g.,* Complaint ¶ 83 ("Defendants

are intentionally using Plaintiffs' product designs and packaging to trade off of Plaintiffs'

reputation and goodwill and to create deception in the marketplace."). Walgreen expressly

alleged as its Fifth Affirmative Defense, filed on Aug. 6, 2008, in reponse to the Complaint,

that: "The alleged trademarks asserted by Plaintiffs as to its product designs **and packaging** are

not famous." Similarly, Walgreen's Sixth Affirmative Defense stated that: "The alleged trade

dress asserted by Plaintiffs as to its product designs **and packaging** is functional and therefore

not protectable under trade dress or trademark law." (D.E.# 12). Therefore, it is clear that

Walgreen was fully aware that Plaintiffs were alleging that Walgreen had infringed its packaging

trade dress. *See* AMF ¶¶114.

180.    No accused Walgreens product bears the word NUBY. **Objection:** Immaterial.

Walgreen does not claim in its motion for summary judgment that there is no likelihood of

confusion. **Disputed to extend read out of context**: The *Polaroid* factors plainly weigh in favor

of a likelihood of confusion, particularly given the facts that: (a) Walgreen undertook little, if no,

effort, to avoid confusing customers, and (b) Walgreens took affirmative steps to confuse

customers. Moreover, even if Walgreen's knockoff does not bear the Nuby® mark, consumers

are still likely to be confused as to sponsorship and are likely to believe that the Wagi knockoff

was licensed by Plaintiffs when, in reality, it was not.

### Miscellaneous

181.    Plaintiffs claim that the alleged trade dress of the Gripper Cup includes the following elements: (1) a colored or tined bell-shaped cap; (2) an oval clear silicone spout which is attached to a silicone top of the cap; (3) a colored cup, the cup having a hood-like shape on it with a wave like appearance in the face-like area in front of and below the hood; and (4) the combination and arrangement of said elements.  ***Objection/disputed to extent read out of context:***  Plaintiffs produced a trade dress chart on May 1, 2009 that provides a description of the main things consumers visually see and would consider, at a minimum, the overall look of this Luv n' care cup.  The best evidence the overall look of Luv n' care's trade dress is the product itself, for which a design patent is pending, and which Walgreen chose to promote and copy.

182.    Plaintiffs claim that the alleged trade dress of the No-Spill Cup includes the following elements: (1) a colored tinted generally cylindrical cup with a wider portion; (2) a colored or tinted cap, having a cap sitting on a cap look, with a spout having a bulb-like base and a relatively pointed top; (3) no outer packaging; (4) a folded inner paper insert; and (5) the combination and arrangement of the aforesaid elements.  ***Objection/disputed to extent read out of context:***  Plaintiffs produced a trade dress chart on May 1, 2009 that provides a description of the main things consumers visually see and would consider, at a minimum, the overall look of this Luv n' care cup.  The best evidence the overall look of Luv n' care's trade dress is the product itself, which Walgreen bought, liked, promoted and copied.

183.    Plaintiffs allege that "the overall appearance of Luv n' care's product is protected trade dress" and includes a number of elements.  ***Objection/disputed to extent read out of context:***  Plaintiffs produced a trade dress chart on May 1, 2009 that provides a description of the main things consumers visually see and would consider, at a minimum, the overall look of Luv

n' care products.  The best evidence the overall look of Luv n' care's trade dress for each product at issue is the product itself, which Walgreen bought, liked, promoted and copied.

184.     Plaintiffs claim that the alleged trade dress of the Comb and Brush set includes the following elements: (1) a thick band around the handle of the brush; (2) an oval band on the handle of the comb; (3) a brightly colored band on the handle of a neutral [colored] brush/comb; (4) stacked oblong-shaped thinner bands along the band on the handle of the brush and comb; (5) series of tines on the brush alternating with a ball at end and no ball end; (6) character images on back of head of brush; (7) particular shape and proportions of the comb and brush and its components; and (8) the combination and arrangement of the aforesaid elements.

***Objection/disputed to extent read out of context:***  Plaintiffs produced a trade dress chart on May 1, 2009 that provides a description of the main things consumers visually see and would consider, at a minimum, the overall look of the Luv n' care comb and brush set.  The best evidence the overall look of Luv n' care's trade dress for its comb and brush set at issue is the product itself, which Walgreen bought, liked, promoted and copied.

185.     Despite discovery demands that were served on Plaintiffs last year, it was only after the close of fact discovery that Plaintiffs first produced computer generated sales figures for each product beginning in 2004.  ***Objection/disputed to extent read out of context:***  Plaintiff produced the underlying raw data from which Walgreens could have compiled sales figures. *See* Fed.R.Civ.P. 33(d). The fact that Plaintiffs' produced a compilation of its sales figures in connection with Plaintiffs' deposition is immaterial.  Walgreens had a full opportunity to cross-examine.

186.     Figure 1 shows exemplary sippy cups made by competitors.  ***Objection***: Plaintiffs' object to Defendant's use of such unauthenticated, distorted and manipulated photographic

104

evidence, which it submitted for the purpose of comparing it to Plaintiffs' asserted trade dress, because Defendant failed to comply with the authentication requirements of Fed.R.Evid. 901 and 1002. Defendant's unauthenticated, distorted and manipulated photographic comparisons are not admissible unless authenticated as a comparison made by the trier of fact or by expert witnesses with specimens that have also been authenticated. Moreover, Defendant's unauthenticated manipulated photographs are inadmissible because Defendant has failed to submit the original undistorted, unmanipulated photographs. Similarly, Defendant has submitted no evidence of the date the purported competing cups were first offered in commerce; thus, there is no evidence to suggest that such predated Plaintiffs' trade dress. Furthermore, even if such photographic comparisons were authenticated, they should be excluded under Fed.R.Evid. 403 because their probative value is substantially outweighed by the danger of confusion of the issues and unfair prejudice because Defendant is seeking through use of such photographs, and portions thereof, to improperly dissect Plaintiffs' trade dress into its individual elements when it must be evaluated as a whole pursuant to statute and binding caselaw. Finally, Plaintiffs object to such photographic comparisons because Defendant is improperly asking this Court to weigh and evaluate (unauthenticated) evidence when that is the province of the jury. *Disputed:* Luv n' care's products are unique and distinctive, both when they were first released into the market in 2003, and today, except for Royal King's knockoffs and the one Munchkin knockoff. *See* AMF ¶¶15, 41-42, 145-146; Opp. Decl. of N. Edward Hakim, at ¶¶5, 6. *Objection:* Plaintiffs object to this purported fact pursuant to Fed.R.Civ.P. 26, 30(b)(6), and 56(f), because (a) Defendant failed to identify a expert to testify as to such comparisons and to authenticate the specimens and the comparisons thereof; (b) Defendant has not fulfilled its obligations to provide deposition testimony related to this fact under Fed.R.Civ.P. 30(b)(6); (c) Defendant failed to produce any

documentary evidence or answer any request for admission or interrogatory related to this fact either in its initial disclosures or in response to Plaintiffs' written discovery requests; and (d) Defendant failed to identify Atico International, a material witness and indispensible party with knowledge of this fact, in its initial disclosures.  Opp. Decl. Morris Cohen; Opp. Decl. Weisburg; Opp. Decl. Malynn.  ***Objections and disputed:***  Unsupported by proffered evidence, which lacks foundation, personal knowledge, probative value, authenticity and reliability.  There is *no evidence* of when any of these allegedly competing cups were first offered for sale in the market (before or after Plaintiffs' products), whether any of them have even been offered for sale on the market, whether they are even spill-proof cups for children, and whether some are even different cups or simply different colored versions of the same cup.  Finally, none of the depicted cups look like the Luv n' care cups Walgreens copied (save for the other knockoffs shown).

Dated: June 29, 2009      Respectfully submitted,

**LAW OFFICES OF MORRIS COHEN, P.C.**
One Penn Plaza, Suite 2527
New York, NY 10119
Telephone: 212-244-4111, ext. 226.
and
**FELDMAN GALE, P.A.**
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone:  305-358-5001
Facsimile:  305-358-3309

By: /s James A. Gale
  Morris E. Cohen / MC-4620
  E-mail: MCohen@ipcases.com
  James A. Gale / Fla. Bar no. 371726
  E-mail: JGale@FeldmanGale.com
  *Attorneys for Plaintiffs.*


**CERTIFICATE OF SERVICE**

I HEREBY certify that on this 29th day of June 2009, I electronically filed the foregoing document with the Clerk of the Court using its CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified either via transmission of Notices of Electronic Filing generated by this Court's CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

  /s James A. Gale
  JAMES A. GALE

## SERVICE LIST

***Luv N' Care, Ltd.,  et al. v. Walgreen Co., et al.***
Case No. 08-civ-4457 (DC)
United States District Court, Southern District of New York

Alan Weisberg
aweisberg@cwiplaw.com
Jason Buratti
jburatti@cwiplaw.com
Jeffrey H. Kamenetsky
jkamenetsky@cwiplaw.com
Christopher & Weisberg, P.A.
200 East Las Olas Blvd., Suite 2040
Ft. Lauderdale, FL 33301
Phone: 954-828-1488
Facsimile: 954-828-9122
*Via CM/ECF.*