**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **LUV N' CARE, LTD. and** | ) | |
| **ADMAR INTERNATIONAL, INC.** | ) | |
| | ) | CIVIL ACTION NO. |
| **Plaintiffs,** | ) | |
| **v.** | ) | 08 CIV 4457 (DC/HP) |
| | ) | |
| **WALGREEN CO. and** | ) | |
| **KMART CORP.** | ) | JURY TRIAL DEMANDED |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS
IN OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. Proc. 56 and Local Rule 56.1, plaintiffs Luv n' Care, Ltd. and

Admar International, Inc. (collectively, "Plaintiffs") submit this Statement of Additional Material

Facts in Opposition to Defendant's Motion for Summary Judgment as to which that is no

genuine issue for trial.

**I.     Luv n' care's Products and Packaging**

1.     Luv n' care is a leading baby products company, established in early 1980s.

Declaration of Nouri Edward Hakim ("Edward Hakim Decl.") ¶ 3; Declaration of Jack Ralph

Hakim ("Jack Hakim Decl.") ¶ 5; Declaration of Tim McQuillen ("McQuillen Decl.") ¶ 5.

2.     Luv n' care sells baby products in over 150 fifty countries under several

trademarks, including NUBY®.  Edward Hakim Decl. ¶ 4.

3.     In the United States, Luv n' care sells baby products in large major retail chains,

including Wal-Mart, Target, Baby's 'R Us, CVS, Kmart, and formerly Walgreens.  Edward

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

Hakim Decl. ¶ 5; Declaration of Joseph Hakim ("Joseph Hakim Decl.") ¶ 20; Declaration of

Nathan Shamosh ("Shamosh Decl.") ¶ 1; McQuillen Decl. ¶ 7.

4.      Luv n' care sells baby products in over ███ retail stores in the United States,

and no-spill cups in about ███ retail outlets, including over 3,600 Wal-Mart stores and

formerly including over 5,800 Walgreens stores.   Edward Hakim Decl. ¶ 6; Joseph Hakim Decl.

¶¶ 20-21; *see also* Jack Hakim Decl. ¶¶ 11, 19; Shamosh Decl. ¶ 24; McQuillen Decl. ¶¶ 12, 17.

5.      Luv n' care enjoys a strong reputation domestically and worldwide for making

quality baby products, including no-spill cups.  Edward Hakim Decl. ¶ 7; Jack Hakim Decl. ¶ 6;

Shamosh Decl. ¶ 4; McQuillen Decl. ¶ 6.

6.      There are many different and alternative ways to shape, design, color and style a

no-spill cup to catch a consumer's eye and distinguish one brand of cup from another.   Edward

Hakim Decl. ¶¶ 13, 35, Ex. 2-3, Shamosh Decl. ¶ 5.

7.      There are only three basic features of a no-spill cup:  A liquid-holding vessel that

can be easily handled by young children; a cap that closes the vessel and helps keep liquid from

spilling; and a means to dispense liquid, such as a spout or straw.  Edward Hakim Decl. ¶ 10;

Shamosh Decl. ¶ 6.

8.      The United States Patent & Trademark Office ("USPTO") has issued numerous

design patents on no-spill cups, including caps and vessels for no-spill cups, protecting different

designs from copying, and thus consumer confusion.  Edward Hakim Decl. ¶ 31; Declaration of

Todd M. Malynn, Ex. A to HH.

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

9.      Each one of Luv n' care's four no-spill cups has a unique and distinctive overall look and product design.  Edward Hakim Decl. ¶¶ 14, 32, Ex. 1 (A-D); Shamosh Decl. ¶ 13.

10.     Apart from having a cup, cap and drinking spot, there is no reason why a no-spill cup has to look like another cup on the market.  Edward Hakim Decl. ¶¶ 15-17, 30, 34, 35; Shamosh Decl. ¶ 5.

11.     The different shapes, designs, colors and styles of no-spill cups on the market are ornamental.  They primarily are a form of marketing, a way to match a no-spill cup to the tastes of consumers, and distinguish one brand from another.  Edward Hakim Decl. ¶¶ 13, 27, 32-33, Ex. 1 (A-D); Shamosh Decl. ¶ 9.

12.     The overall look of a no-spill cup is important to the success of the cup, both in terms of initial sales and brand loyalty.  Edward Hakim Decl. ¶¶ 19-26, 28-29, 38, 80-84; Shamosh Decl. ¶¶ 10-12, 14-16.

13.      In the no-spill cup market, the target consumer, mothers with children, purchase no-spill cups based on appearance.  Appearance is important because the cups are used in both private and public settings where others will see the cup.  Edward Hakim Decl. ¶ ¶ 21-22.

14.     Perhaps the only thing a mother holds more than her child is her child's sippy cups, which she refills five to ten times a day, which she routinely picks up off the floor, and which she notices other parents using with their children.  Opp. Decl. of Edward Hakim ¶ 20.

15.     In 2003, Luv n' care introduced two of its no-spill cups on the market:  The Luv n' care brand hard-spout and soft-spout cup.  Jack Hakim Decl. ¶¶ 9, 23; Shamosh Decl. ¶ 20, Ex. 1; McQuillen Decl. ¶¶ 11, 18.

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

16.    Both Luv n' care cups have a unique and distinct overall look and product design,

including a unique combination of features and ornamental designs:

      a.    The trade dress of Luv n' care's hard-spout, no-spill cup includes a
custom-tinted, translucent cylindrical shaped cup that gradually
widens towards the top of the cup, where it opens like a flower
peddle to meet the cap, a custom colored and shaped cap, with the
appearance of a cap sitting on a cap look, and a spout with a bulb-
like base and a relatively pointy top;

      b.    The trade dress of Luv n' care's soft-spout, no-spill includes an
oval-shaped, clear-silicone spout, resting on a circular, disc-like
insert that is convex, raised above and resting on the cap,
providing a ridged or rounded layered-like appearance; a custom-
colored, bell-shaped cap with relief impressions along the sides;
the cap is on top of a clear or custom-colored translucent cup
having a hour-glass shape in front and back; the top portion of the
cup possesses a hood-like design that starts at the top and extends
in a fluid, curved form downward ending near the bottom of the
cup; the middle portion of the cup has a series of inset wave and
ripple-like grooves that extend in a concave fashion toward the
interior of cup; the bottom and top of the cup have a bulbous-like
shape, with the top being more round than the bottom of the cup.

Edward Hakim Decl. ¶¶ 36-37; Jack Hakim Decl. ¶¶ 9, 25; Shamosh Decl. ¶ 13; McQuillen

Decl. ¶¶ 11, 19.

17.    Luv n' care cups are designed to convey a commercial impression to consumers,

separate from any words or packaging, including the embedded, discretely placed NUBY®

trademark.  *See* Edward Hakim Decl.; Opp. Decl. of Edward Hakim ¶ 21.

18.    The trademark on the cup helps consumers associate the look of those cups with a

single source.  Opp. Decl. of Edward Hakim ¶ 22.

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

19.    Due to the uniqueness of the Luv n' care hard-spout and soft-spout no-spill cups, these cups cost more to manufacture than other no-spill cups on the market.  Edward Hakim Decl. ¶ 18.

20.    Mr. Nouri Edward Hakim, is the owner of five utility patents cited by Defendant Walgreen as purported evidence in this matter.  Opp. Decl. of Morris Cohen ¶ 1.

21.    The subject patents show that there is no overlap between the "central advance" of the patents and the essential features of Plaintiffs' trade dress.  Plaintiffs' trade dress focuses on the **outer** appearance of Plaintiffs' products.  *See* D.E #52, Decl. of Nouri E. Hakim, ¶¶ 37, 38.  On the other hand, in each of the subject patents, its **claims** or central advance focuses on the **inside** of the product, namely, a spill proof valve and liquid dispensing system that is **internal** to the cap or spout.   Morris Cohen Dec. ¶101-120.  As discussed in the Declaration of Mr. Cohen -- who wrote and prosecuted the patents at issue at the Patent Office -- the patents at issue are directed to new valves for preventing spillage.

22.    The claim of the '931 Patent are directed toward valve technology preventing accidental or unintentional spillage of liquid.  Opp. Decl. of Morris Cohen ¶ 103, Ex. 29.

23.    The claims in the patent require a specific improved valve using a flexible valve member which rests against a blocking element.  Opp. Decl. of Morris Cohen ¶ 104, Ex. 29.

24.    The valve operates in response to negative pressure (by sucking), namely, such negative pressure is used to cause a flexible valve to move off of a blocking element.  Opp. Decl. of Morris Cohen ¶ 104, Ex.29.

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

25.    This patent does disclose "relief impressions" along the edge of the cap to facilitate removal and attachment of the cap.  However, that feature is not claimed in this patent and cannot be said to form part of the "central advance" because it has nothing to do with the valve system.  *See generally* Opp. Decl. of Morris Cohen ¶ 107.

26.    Indeed, the shape of the relief impressions shown in the patent is not the same as the finger grips in the subject product design.  The relief impressions are also disclosed in the '620 and '814 patents; however, because the element does not form part of the "central advance" of those patents it may be disregarded.  Nevertheless, the element is but one aspect of the multi-featured trade dress.  *See generally* Opp. Decl. of Morris Cohen ¶ 107.

27.    The '814 Patent is a continuation of the '620 Patent discussed below and is also directed toward spill-proofing a sippy cup.  This patent focuses on and further develops no-spill valve technology.  Opp. Decl. of Morris Cohen ¶ 111, Ex. 32.

28.    The subject invention "relates to a no-spill cup assembly with an improved valve mechanism to prevent liquid from flowing out of the cup when not desired."    Significantly, the valve technology is incorporated into the cup and is not even visible.  Opp. Decl. of Morris Cohen ¶ 111, Ex. 32.

29.    Like the '620 Patent, there is no disclosure directed toward the shapes that form the exterior appearance and essential features of the trade dress.  Opp. Decl. of Morris Cohen ¶ 111, Ex. 32.

30.    The '620 Patent is also a continuation of the '931 Patent.  Its claims also focus on the valve system that allows users to open the valve by sucking on a spout thereby creating a

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

pressure differential, which in turn opens the valve and allows liquid to flow. Opp. Decl. of Morris Cohen ¶ 109, Ex. 31.

31.    This patent clarifies that the key advance is that, in each of the embodiments, a valve is provided where, in the closed position, an extremely tight seal is created precluding the spilling and leakage of fluid. Opp. Decl. of Morris Cohen ¶ 109, Ex. 31.

32.    None of its claims focus on or include Plaintiffs' trade dress. Again, there is no overlap between the technology claimed in this patent and the trade dress. Opp. Decl. of Morris Cohen ¶ 110, Ex. 31.

33.    The '386 Patent is similar and consists of a series of method claims, all directed at the same goal of providing a no-spill cup through use of the valve system. It is also a continuation of the '931 Patent. Opp. Decl. of Morris Cohen ¶ 108, Ex. 30.

34.    This patent discloses an improved assembly and a method for using the same to create a no-spill cup so that when the opening of the valve is unblocked through the creation of a pressure differential, liquid is allowed to flow. When there is no pressure differential, the valve remains closed and liquid may not flow. Opp. Decl. of Morris Cohen ¶ 108, Ex. 30.

35.    Again, this is accomplished through the claimed valve technology and not the elements of Plaintiff's trade dress. Opp. Decl. of Morris Cohen ¶ 108, Ex. 30.

36.    Similarly, the '225 Patent continues to expand on the central advance of the '931 Patent. The '225 Patent is a method patent directed toward an: "[i]mproved no-spill drinking products including a nipple or soft spout having a valve incorporated therein. Opp. Decl. of Morris Cohen ¶ 114-15, Ex. 33.

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

37.     The valve is designed to provide an enhanced no-spill function providing an extremely secure seal against accidental liquid flow form the nipple or spout when the use is not drinking therefrom.  *See generally* Opp. Decl. of Morris Cohen ¶¶ 114-15, Ex. 33.

38.     The central advance is to incorporate a flow control valve into the nipple itself. Accordingly, this patent discloses an invention whereby:

> a user places his or her mouth against the spout of the product to bite down on the soft material of the spout and to drink liquid out when desired. The spout includes a valve therein, such that the act of biting on the soft spout and/or compression of the soft spout with the tongue causes the valve to open. . .In the resting or relaxed state, with no compression applied, the valve sits in a configuration in which fluid is securely blocked from passage out of the drinking product.

*See generally* Opp. Decl. of Morris Cohen ¶¶ 114-15, Ex. 33.

39.     Although Fig. 10 of the '225 Patent does depict a configuration of grooves described as providing a grip, those grooves do not form part of any claim, nor are they part of the "central advance" of the patent. Thus, as a threshold matter, that disclosure is irrelevant to considerations of functionality.  Opp. Decl. of Morris Cohen ¶ 117, Ex. 33.

40.     Mr. Hakim assigned all of the subject patents to Luv n' care, not Admar.  Opp. Decl. of Morris Cohen ¶ 129, Ex. 39.

41.     When Luv n' care introduced its two no-spill cups into the market, no other cup had a similar overall look to the Luv n' care brand hard-spout cup.  McQuillen Decl. ¶ 11.

42.     When Luv n' care introduced its two no-spill cups into the market, no other cup had a similar overall look to the Luv n' care brand soft-spout cup.  McQuillen Decl. ¶ 18.

43.     The overall look of Luv n' care's hard-spout and soft-spout cups are cable of creating a commercial impression distinct from accompanying words or packaging.  Edward Hakim Decl. ¶¶ 15, 33, 36-37; Shamosh Decl. ¶ 18.

8

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

44.    The overall look of Luv n' care's soft-spout cup is inherently distinctive and a design patent application is pending. Edward Hakim Decl. ¶¶ 32, 37; McQuillen Decl. ¶ 19.

45.    The patent examiner who is reviewing Luv n' care's design patent for the soft-spout no-spill cup has never raised the issue of functionality. Opp. Decl. of Edward Hakim ¶28.

46.    Luv n' care sells its hard-spout, no-spill cup in clear plastic shrink wrap single-item displays, and consumers can visibly see the cups. Edward Hakim Decl. ¶¶ 28, 52; Jack Shamosh Decl. ¶ 29.

47.    Luv n' care generally sold its soft-spout, no-spill cup in clear plastic shrink wrap single-item displays, so that consumers could visibly see the cups. Edward Hakim Decl. ¶¶ 28, 52; Shamosh Decl. ¶ 29.

48.    For use at Walgreen stores, Luv n' care specially designed a unique clear plastic shrink wrap 2-pack combination for Luv n' care's soft-spout, no-spill cups. Edward Hakim Decl. ¶ 52; Jack Hakim Decl. ¶ 31; McQuillen Decl. ¶ 23.

49.    The trade dress of Luv n' care specially designed clear plastic packaging includes the following unique combination of features and ornamental designs: (a) a see-through, form-fitted shrink-wrapped plastic surface having (i) a colorful band positioned at the top, which encircles the two enclosed cups beneath their caps; (ii) relatively thick, child-like block lettering having a border and shadow effect and being centered within the colorful band and spelling out the words "No Spill Cup"; (iii) the phrase "2- pack" positioned in the upper left portion of the front of the packaging, just above the word "No" in the phrase "No-Spill Cup"; (iv) Walgreen's promotional "Wow" sticker positioned at the bottom right, next to the trademark NUBY®; and

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

(b) a uniquely shaped cardboard insert wedged between the two cups and visible within the shrink-wrap and having: a colorful, bordered oval shape printed on its outward face wherein the trademark is centered and portrayed in large block lettering.  Edward Hakim Decl. ¶ 53.

50.    Luv n' care's soft-spout cup remains visible to the consumer in the specially designed 2-pack packaging.  Edward Hakim Decl. ¶ 53.

51.    Luv n' care's specially designed 2-pack packaging is inherently distinctive. Edward Hakim Decl. ¶¶ 52-53.

52.    Luv n' care began selling its hard-spout no-spill cup in early 2003.  Opp. Decl. of Edward Hakim ¶ 6.

53.    Luv n' care's hard-spout cup is a top selling no-spill cup in the United States, selling about ████████ pieces in its first full five years (2004 to 2008) and over ████████ pieces in its first full two years (2004 and 2005).  Edward Hakim Decl. ¶ 39; Joseph Hakim ¶ 7.

54.    Given that roughly 4 million babies are born each year in the United States, new mothers were likely to purchase a Luv n' care hard-spout cup.  Edward Hakim Decl. ¶ 45.

55.    Luv n' care's large retail customers, including Walgreen, promoted Luv n' care's hard-spout cup to Luv n' care's target audience through in-store promotions or co-operative advertising, which involved including pictures of Luv n' care's cup in newspaper inserts, circulars and flyers, and ran advertisements about every other month.  Jack Hakim Decl. ¶¶ 16-17, 19-21; McQuillen Decl. ¶¶ 14, 16-17.

56.    Cooperate advertising, which by its nature is targeted to customers of the products advertised, uses the same artwork and serves the same function as general advertising, but is

10

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

more cost effective and generates better response.  *See generally* Opp. Decl. of N. Edward Hakim ¶ 12-14.

57.    Walgreen approached Luv n' care in mid-2004 about selling the Luv n' care hard-spout no-spill cup in Walgreen's stores.  McQuillen Decl. ¶ 13.

58.    Because of the consumer demand for and recognition of this cup, Walgreen came to Luv n' care to promote this cup as a "Wow" item, where a consumer would think, "Wow," that is a product I want at a good price, and promoted it as a "Wow" item for 3 years.  Jack Hakim Decl. ¶¶ 14-17; McQuillen Decl. ¶¶ 12-13.

59.    The co-operative advertisements and in-store promotions for this Luv n' care cup were effective in drawing consumers to stores.  In 2005, Luv n' care was selling on average a little more than ███████ hard-spout cups per week in all stores.  When Walgreens would run an ad promoting this Luv n' care cup, Walgreens projected its stores would sell ███████ cups that week, as compared to a normal week, where it projected weekly sales at ██████ cups.  Edward Hakim Decl. ¶ 40; Jack Hakim Decl. ¶¶ 18-22; McQuillen Decl. ¶¶ 15-17.

60.    The overall look of Luv n' care's hard-spout cup acquired secondary meaning among targeted consumers as being associated with one product source.  Edward Hakim Decl. ¶¶ 46-47, 50-52; Shamosh Decl. ¶ 18.

61.    Luv n' care began selling its soft-spout no-spill cup (the Gripper cup) in late 2003. *See generally* Opp. Decl. Edward Hakim ¶ 6.

62.    Luv n' care's soft-spout cup is the best selling no-spill cup since it was introduced into the market, selling over ███████ pieces in its first full five years (2004 to 2008) and over

11

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

█████ pieces in its first full two years (2004 and 2005). Edward Hakim Decl. ¶¶ 41, 43;

Jack Hakim ¶ 24; Joseph Hakim ¶ 8.

63.    At Wal-Mart alone, Luv n' care's soft-spout cup sold over ████ units in 2004

and over █████ units in 2005. Jack Hakim Decl. ¶ 24.

64.    Luv n' care's soft-spout cup became the best selling baby sundry item in all of

Wal-Mart stores. Shamosh Decl. ¶ 16.

65.    Given that roughly 4 million babies are born each year in the United States, new

mothers were likely to purchase a Luv n' care soft-spout cup. Edward Hakim Decl. ¶ 45.

66.    Because of the special appeal this no-spill cup has with consumers, Wal-Mart

made a corporate decision to get behind this cup, and it advertised and promoted this Luv n' care

nearly every month in 2005, so that mothers near one of Wal-Mart's over 3,800 stores would be

aware of this Luv n' care cup and know that they could purchase it at Wal-Mart. Edward Hakim

Decl. ¶ 48; Shamosh Decl. ¶ 24.

67.    Other large retail customers, including Target, CVS, Kmart and Walgreens (but

not initially), also promoted Luv n' care's soft-spout cup to Luv n' care's target audience through

in-store promotions and co-operative advertising, which involved including pictures of

Luv n' care's cup in newspaper inserts, circulars and flyers. Edward Hakim Decl. ¶ 49.

68.    Because of the high consumer demand for and recognition of this cup, Walgreen

came to Luv n' care to promote this cup as a "Wow" item, and it began to promote and sell this

Luv n' care cup in May 2005 in a specially design 2-pack. Edward Hakim Decl. ¶¶ 51-52; Jack

Hakim Decl. ¶¶ 27-31; McQuillen Decl. ¶¶ 21-23.

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

69.    The overall look of Luv n' care's soft-spout cup acquired secondary meaning as being associated with one product source and is famous among consumers.  Edward Hakim Decl. ¶¶ 47, 50-52; Shamosh Decl. ¶¶ 19, 22.

70.    Repurchase rates of Luv n' care's cups totaled over ███████ in 5 years, and over ███████ cups in the first 2 years.  *See* Edward Hakim Decl. ¶¶ 19, 41, 43; Jack Hakim Decl. ¶¶ 7, 24.

71.    Luv n' care's no-spill cups outsold the target market, new mothers, by more than 4 to 1.  Edward Hakim Decl. ¶ 45.

72.    There is no question that consumers in the target market know Luv n' care cups by the way they look.  The cups have a unique appeal to consumers.  Opp. Decl. Edward Hakim ¶ 20.

73.    Luv n' care has spent in excess of ███████ on advertising the products at issue in this lawsuit.  This number does not include credits Luv n' care provided credits to retailers who advertised and promoted Luv n' care's products.  Jack Hakim Decl. ¶ 26.

74.    In certain instances, retailers, including Walgreen, advertised and promoted the Luv n' care products at no charge to Luv n' care. Edward Hakim Decl. ¶ 51; Jack Hakim Decl. ¶ 21.

75.    Luv n' care's soft-spout cup became a Top 30 selling product among all products in all product categories at Wal-Mart.  Shamosh Decl. ¶ 16.

76.    Luv n' care received Wal-Mart's Golden Cup Award and 2005 Item Driver Award for its soft-spout cup.  Edward Hakim Decl. ¶ 47; Shamosh Decl. ¶ 23.

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

77.    Retail buyers were praising the high-customer awareness of and demand for Luv n' care's soft-spout cup as the "MOTHER OF ALL SIPPY CUPS."  Shamosh Decl. ¶ 21.

78.    Consumers discussed and praised the no-spill cups on the Internet via consumer created websites and blogs.  Shamosh Decl. ¶ 22; Joseph Hakim Decl. ¶ 25.

79.    One blogger commented on how quickly Luv n' care's no-spill cups would sell out at Wal-Mart.  Joseph Hakim Decl. ¶ 25, Ex. D; see also

80.    Luv n' care also received emails from consumers praising the no-spill cups.  One consumer wrote, "Please don't think we are crazy. We have fell in love with a no-spill cup that we have purchased at Wal-Mart."  Another stated that she was willing to travel fifty miles to buy Luv n' care's no-spill cups.  Joseph Hakim Decl. ¶ 24, Ex. C.

**Walgreen's Bad Faith/Acts Meant to Deceive**

81.    Originally, Walgreen approached Luv n' care to buy and resell its hard-spout and soft-spout cups as "WOW" items, *after* Luv n' care's hard-spout and soft-spout cups had *already* become America's best selling cups.  Opp. Decl. Edward Hakim ¶ 9, 16.

82.    Walgreen told Luv n' care that it had to have its cups and wanted to promote them as "WOW" items because of their special appeal to consumers.  Opp. Decl. Edward Hakim ¶ 8.

83.    Luv n' care's cups were perfect "WOW" items: quality products that had special appeal with consumers, where consumers would naturally think, "Wow, those are products I want, at a good price too."  Jack Hakim Decl. ¶¶ 14-17; McQuillen Decl. ¶¶ 12-13.

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

84.    Before Luv n' care sold no-spill cups at Walgreens there was no market for this product in its stores.  Its best selling brand was selling only ███████████ units per year.  Jack Hakim Decl. ¶¶ 11, 22; McQuillen Decl. ¶¶ 13, 21.

85.    Even after Walgreens started selling Luv n' care cups the next best selling brand sold only ███████████ units per year.  Jack Hakim Decl. ¶ 37; McQuillen Decl. ¶ 32.

86.    Consumers went to Walgreens to buy Luv n' care cups, where they purchased over ████████ Luv n' care cups in 2005, and nearly ████████ Luv n' care cups in 2006.  *See* Edward Hakim Decl. ¶ 40; Jack Hakim Decl. ¶¶ 18, 20, 22, 32; McQuillen Decl. ¶¶ 15-16, 24.

87.    In December 2005, Jeff Kruckman became Walgreen's new buyer for baby sundry items, including no-spill cups.  Jack Hakim Decl. ¶ 33; McQuillen Decl. ¶ 25.

88.    In early 2006, Kruckman invited Luv n' care's sales representative, Tim McQuillen and President, Jack Hakim, into Walgreens' Planogram room for baby sundry items and, in connection with having Luv n' care make a full presentation of its product line, including providing Kruckman with confidential information about its product line, Kruckman knowingly disclosed confidential information of Luv n' care's competitors' to Luv n care.  Jack Hakim Decl. ¶ 33; McQuillen Decl. ¶ 26.

89.    In April 2006, in response to a proposed price increase due to escalating oil prices, Kruckman said to Luv n' care's President and sales representative that he would take the price increase, provided Luv n' care agreed made two more shipments of the Luv n' care soft-spout cups at the old pricing.  Jack Hakim Decl. ¶ 43; McQuillen Decl. ¶ 39, Ex. 2.

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

90.     Luv n' care questioned why Walgreens wanted so much additional inventory so quickly, as Walgreens already had a projected 40-week supply of Luv n' care soft-spout cups. Jack Hakim Decl. ¶ 45; McQuillen Decl. ¶ 42.

91.     Kruckman proffered two reasons for his request for additional inventory:



McQuillen Decl. ¶ 43, Ex. 4.

92.     For planning purposes, it takes well more than six months to design, approve, import into the United States and get to retail stores a product like a no-spill cup.  Edward Hakim Decl. ¶ 18.

93.     There is no reason to believe that Kruckman did not provide Walgreens' in-house direct import agent access to Walgreen's Planogram rooms and Luv n' care's products and confidential information the same way Kruckman gave access to Luv n' care.  Jack Hakim Decl. ¶ 48; McQuillen Decl. ¶ 46.

94.     Because of Kruckman's procurement of additional inventory, Walgreens had enough inventory of Luv n' care's soft-spout cup many months into 2007.  Jack Hakim Decl. ¶ 47; McQuillen Decl. ¶ 45.

95.     On June 27, 2006, after previously confirming that he would accept the price increase, Kruckman notified Luv n' care that he had found an "alternative source" for the "WOW! product going forward to maintain our current price points."  Jack Hakim Decl. ¶ 49; McQuillen Decl. ¶ 47, Ex. 5.

16

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

96.     Through Walgreens' in-house direct import agent, Atico International USA, Inc. ("Atico"), Walgreen approved, agreed to purchase and put its mark on cups from Royal King Baby Product Co. ("Royal King"), a known intellectual property pirate. Edward Hakim Decl. ¶ 44, 77, Ex. 1 (Ex. A thru O); Jack Hakim Decl. ¶ 46; McQuillen Decl. ¶ 46.

97.     Kruckman recommended that Walgreen find an "alternative source" for the "WOW" promotional cups. Opp. Dec. of Todd M. Malynn at ¶ 8, Ex.7; *see* AMF 153-160.

98.     Kruckman commissioned and approved the designs of Royal King's copies of Luv n' care's hard-spout and soft-spout no-spill cups. Jack Hakim Decl. ¶ 60.

99.     Kruckman also created the name for the Royal King knockoffs. Kruckman Dep. at 218:8-9, Opp. Decl. of Todd M. Malynn at ¶ 8, Ex.7.

100.    Walgreen began selling the Royal King knockoffs in October 2006. Edward Hakim Decl. ¶ 58, Ex. 4; Jack Hakim Decl. ¶ 58, Ex. 1; Shamosh Decl. ¶ 31, Ex 5; McQuillen Decl. ¶ 58, Ex. 7.

101.    Walgreens continued to promote Luv n' care cups after October 2006, when it was selling look-a-like cups, to bait consumers. Edward Hakim Decl. ¶ 58, Ex. 4; Jack Hakim Decl. ¶ 58, Ex. 1; Shamosh Decl. ¶ 31, Ex 5; McQuillen Decl. ¶ 58, Ex. 7.

102.    Walgreen continued to sell Luv n' care cups in the same space at Walgreen stores pursuant to the Planogram that was shown to Luv n' care in early 2006. Jack Hakim Decl. ¶ 56; McQuillen Decl. ¶ 56.

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

103.    Walgreen stores commingled the look-a-like cups with Luv n' care cups, selling both of them in the same space at Walgreen stores.  Edward Hakim Decl. ¶ 57; Jack Hakim Decl. ¶ 57; Shamosh Decl. ¶ 30; McQuillen Decl. ¶ 57.

104.    In addition, underneath Walgreens' signage for end-cap displays promoting Luv n' care soft-spout cups, Walgreens sold the look-a-like cups.  Edward Hakim Decl. ¶ 58, Ex. 4; Jack Hakim Decl. ¶ 58, Ex. 1; Shamosh Decl. ¶ 31, Ex 5; McQuillen Decl. ¶ 58, Ex. 7.

105.    Walgreen copied the look of Luv n' care's two best-selling cups and Luv n' care's comb and brush set.  Despite all the shapes, designs, styles and colors available to the creative mind, Walgreen commissioned and approved look-a-like copies of Luv n' care's products.  Opp. Decl. Edward Hakim ¶ 7.

106.    Luv n' care's cups were the cups customers were buying at Wal-Mart, Kmart and other large retain chains.  Walgreen did not want to risk a huge drop in sales.  Opp. Decl. Edward Hakim ¶ 112.

107.    Consumers were actually confused.  For example, Ms. Brandy Thomas went to Walgreens to purchase Luv n' care soft-spout cups.  When she thought she was grapping two Luv n' care soft-spout 2-packs, she actually grabbed one of Walgreen's look-a-likes instead. When she got home, one of the four cups did not work.  Ms Thomas returned all four cups to Luv n' care, mistakenly believing the cup that failed was one of its cups, asking for her money back.  The cup that failed to work was one of the Royal King look-a-like cups.  Edward Hakim Decl. ¶ 76, Ex. 5.

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

108.    Walgreens acted in bad faith.  Edward Hakim Decl. ¶¶ 52-84; Jack Hakim Decl. ¶¶ 33-61; Shamosh Decl. ¶¶ 28-32; McQuillen Decl. ¶¶ 25-59.

109.    Although there are many alternative ways to shape, design, color and style a hard-spout cup, Walgreens decided to sell a hard-spout cup that includes essentially the same unique combination of features and ornamental designs that form the trade dress of Luv n' care's hard-spout cup, which was Walgreen's best-selling cup.  Edward Hakim Decl. ¶¶ 63-65.

110.    Although there are many alternative ways to shape, design, color and style a hard-spout cup, Walgreens decided to sell a soft-spout cup that includes essentially the same unique combination of features and ornamental designs that form the trade dress of Luv n' care's soft-spout cup, which was the best-selling cup in the United States.  Edward Hakim Decl. ¶¶ 66-70.

111.    Walgreen chose to likewise sell its knockoff soft-spout cup in a clear plastic 2-pack shrink wrap, with a similar combination of features and ornamental designs.  Edward Hakim Decl. ¶ 71.

112.    Walgreen's took steps in its packaging to increase the likelihood of confusion.  Edward Hakim Decl. ¶¶ 72-75.

113.    On April 17, 2008, Plaintiffs filed an action in the Eastern District of Texas against Royal King alleging, *inter alia*, trademark infringement and unfair competition under Section 43(a) of the Lanham Act.  Opp. Decl. of Edward Hakim Decl. at ¶ 2.

114.    On May 12, 2008, Plaintiffs filed the instant action in the Southern District of New York alleging, *inter alia*, trademark infringement and unfair competition under Section 43(a) of the Lanham Act.  (D.E. #1)  Fifth Affirmative Defense, filed on Aug. 6, 2008, in

19

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

response to the Complaint, that: "The alleged trademarks asserted by Plaintiffs as to its product designs ***and*** ***packaging*** are not famous."    Similarly, Walgreen's Sixth Affirmative Defense stated that: "The alleged trade dress asserted by Plaintiffs as to its product designs ***and*** ***packaging*** is functional and therefore not protectable under trade dress or trademark law." (D.E.# 12).

115.    On November 7, 2008 this Court held a Fed. R. Civ. P. 26(f) conference.  The Court set November 21, 2008 as the deadline for the parties to provide initial disclosures and tentatively set May 7, 2009 for the conclusion of discovery, on which date the parties would reconvene to discuss the progress of discovery.  No scheduling order was entered.  Morris Cohen Decl. at ¶¶ 3,4,6; Opp. Decl. of Rochelle R. Weisburg at ¶3-5 .

116.    Contrary to its duties under Fed. R. Civ. P. 26, Walgreen did not identify Atico as a person with knowledge in its initial disclosures.  Opp. Decl. of Morris Cohen ¶¶ 7, 24-5; Opp. Decl. of Rochelle R. Weisburg at ¶6, Ex. 1.

117.    On March 9, 2009, in response to Walgreen's document production requests, Plaintiffs produced over one hundred ninety-two thousand (192,000) documents, Bates Label No. LNC-00001 through LNC-192383.  Opp. Decl. of Rochelle R. Weisburg at ¶13, Ex. 2.

118.    The March 9, 2009 documents included raw sales data identified as documents bates numbered as LNC 0001143 - 192296 (invoices) included in the raw sales data.  Opp. Decl. of Rochelle Weisberg at ¶ 51, fn. 10, Ex. 16-17.

119.    On May 1, 2009 Plaintiffs served their amended discovery responses and had sent the balance of their production which, including, the documents produced over the prior several

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

months, now numbered in excess of 203 thousand pages.  Opp. Decl. of Rochelle Weisberg at ¶ 51, fn. 10, Ex. 16-17.

120.    On March 13, 2009 Walgreen and Atico filed an action for declaratory relief in the Southern District of Florida.  This was the first time that Plaintiffs were made aware that Atico existed or had any interest in the instant action.  Opp. Decl. of Morris Cohen ¶ 24-5.

121.    Plaintiffs in this action moved to join Atico as an indispensible party.

122.    In the Florida action, both Walgreen and Atico stated, "Other competing products, like Munchkin, Babies R' Us, Gerber, Playtex and Avent, *look different* from defendants' asserted trade dress even if they may have certain similar functional features." (D.E. #1, #31).

123.    On April 1, 2009 Plaintiffs propounded its first set of interrogatories, first requests to admit, and first set of document requests on Walgreen.  Opp. Decl. of Morris Cohen ¶ 28.

124.    On April 2, 2009, this Court held a telephonic conference to address Walgreen's request to file a motion on the pleadings and motion to dismiss.  At the conclusion of the conference, the Court *sua sponte* changed the tentative discovery deadline from May 7, 2009 to May 1, 2009.  No record of this conference exists. Besides a short order entered on April 2, 2009.  Opp. Decl. of Morris Cohen ¶ 43-51, Ex. 7.

125.    As a result of the discovery deadline date change, Walgreen asserts that it does not have to respond to Plaintiffs' April 1, 2009 discovery.  To date Walgreen has not produced any documents in response to the April 1 discovery and refuses to do so.  Opp. Decl. of Morris Cohen ¶ 33, 56, 69.

21

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

126.    The discovery propounded on April 1, 2009 relates to topics that are central to this lawsuit and the parties' motions for summary judgment.  Opp. Decl. of Morris Cohen ¶ 35-42.

127.    On April 10, 2009 Walgreen served its amended Fed R. Civ. P. 26 statement in which it identified Ipso Mendelson, Royal King's expert in the Texas action, as "having knowledge about the lack of secondary meaning attributable to the functional products and designs made by Plaintiffs."  Opp. Decl. of Morris Cohen ¶ 52, Ex. 8.

128.    On April 20, 2009, Plaintiffs served its Fed. R. Civ. P. 30(b)(6) notice of taking deposition, which designated 57 topics.   This included document requests identical those propounded in Luv n' care's first request for production on April 1, 2009.  Opp. Decl. of Morris Cohen ¶ 59, Ex. 11.

129.    On April 22, 2009, Plaintiffs timely produced its expert report.  Opp. Decl. of Morris Cohen ¶ 65, Ex. 14.

130.    On May 12 and 13, 2009, Plaintiffs deposed Kruckman in his individual capacity and as Walgreen's Fed. R. Civ. P. 30(b)(6) designee.  Walgreen produced 45 documents in response to the requests propounded as part of Luv n' care's Fed. R. Civ. P. 30(b)(6) notice. Opp. Decl. of Morris Cohen ¶ 73.

131.    The documents were woefully inadequate as they pertained to limited financial data (which is believed to be incomplete) and documents publicly available on the Internet. Morris Cohen Decl. ¶ 75; Opp. Decl. of Rochelle Weisburg at ¶ 56.

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

132.    During the two days of his deposition, Kruckman responded to questions posed by Luv n' care's counsel stating "I don't know," "I don't recall," or "I don't remember" over 400 times.  Opp. Decl. of Todd M. Malynn at ¶ 8.

133.    In his personal deposition, repeatedly and continually made allegations that he had no recollection with respect to critical issues and facts of central importance to the case in which he directly participated.  Opp. Decl. of Morris Cohen ¶ 80, Ex. 18.

134.    The only knowledge Kruckman had was regarding what his counsel had told him to say.  Opposing counsel continually asserted privilege and refused to let Kruckman testify when Luv n' care's counsel attempted to probe into this knowledge.  Likewise, Kruckman minimally prepared for his 30(b)(6) deposition.  Opp. Decl. of Morris Cohen ¶ 81-2, Ex. 18.

135.    With respect to Walgreen's relationship with Atico, Walgreen testified that he sent the July 18, 2006 letter from Plaintiffs' counsel regarding infringement issues to Atico.  Walgreen also testified that Atico was tasked to deal with this issue.  Walgreen repeatedly denied knowledge of events and stated Atico was the person with knowledge.  Opp. Decl. of Morris Cohen ¶ 83, Ex. 18.

136.    As a result of Walgreen's failure to comply with its discovery obligations, including designating Kruckman as Walgreen's Fed. R. Civ. P. 30(b)(6) designee, Plaintiffs, on May 18, 2009, requested the opportunity to file discovery motions, which this Court denied.  Opp. Decl. of Morris Cohen ¶ 85-6, Ex. 14, 23; Opp. Decl. of Rochelle Weisburg at ¶ 59-60, Ex. 19-20.

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

137.    On May 27, Walgreen requested that this Court strike Plaintiffs' expert report, written by Dr. Bruce Isaacson.    Although opposed, this Court entered an order striking Luv n' care's expert report on June 5, 2009. Opp. Decl. of Morris Cohen ¶ 89-92, Ex. 24-27; Opp. Decl. of Rochelle Weisburg at ¶ 62-66, Ex. 21-24.

138.    On June 19, 2009 counsel for the parties communicated with one another regarding a continuation of Kruckman's deposition.  Walgreen acknowledged that it needed to prepare Kruckman properly, in his capacity as Walgreen's Fed. R. Civ. P. 30(b)(6) designee, for his deposition. Opp. Decl. of Morris Cohen ¶¶ 95-96; Opp. Decl. of Todd M. Malynn at ¶¶ 2-5, Ex. 1-4.

139.    Walgreen has offered to sit again for deposition, subject to dates it offers. Walgreen has also stated that it may have to produce three different witnesses to comply with its obligations under Fed. R. Civ. P. 30(b)(6). Opp. Decl. of Morris Cohen ¶¶ 95-96; Opp. Decl. of Todd M. Malynn at ¶¶ 2-5, Ex. 1-4.

140.    On June 22, 2009, Luv n' care and Royal King entered into a global settlement agreement by which Royal King would 1) pay Luv n' care $500,000 in attorneys fees; 2) a 12% royalty on all past sales of confusingly similar products; 3) immediately cease and desist from "making, selling, offering to sell, marketing, and/or promoting" the confusingly similar products, which includes the Luv n' care hard-spout and soft-spout no-spill cups.    Opp. Decl. Edward Hakim ¶ 4.

141.    During a telephone conference with Royal King's owner after the case had settled, Royal King's owner admitted to me that Walgreen had approached Royal King to

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

manufacture cups and other products that looked like Luv n' care's best-selling baby sundry items.  Opp. Decl. Edward Hakim ¶ 4.

142.    Luv n' care chose to forego a consumer survey because it already knew that consumers knew Luv n' care's two best selling no-spill cups by the cups' appearance.  Opp. Decl. of Edward Hakim ¶¶ 22-23.

143.    Plaintiffs discovered that, in the Texas action, Royal King had commissioned a consumer survey to disprove that consumers believe that Luv n' care's cups had secondary meaning.  Opp. Decl. of Edward Hakim ¶ 22.

144.    Plaintiffs believed that instead of commissioning its own survey, it would be more effective to hire an expert witness, Dr. Bruce Isaacson, to analyze Royal King's consumer survey.  Opp. Decl. of Edward Hakim ¶ 23.

145.    Plaintiffs denied that any competitive cups, other than Royal King's knockoffs (and a Munchkin knockoff), look like Luv n' care's cups.  Opp. Decl. of Edward Hakim ¶ 5.

146.    Plaintiffs denied that there were competitors, other than Royal King and Munchkin, that were even using some of the specific features found in Luv n' care's cups.  Opp. Decl. of Edward Hakim ¶ 6.

147.    Walgreen directed Royal King to copy the look of Luv n' care's hard-spout and soft-spout no-spill cups.  Opp. Decl. of Edward Hakim ¶ 7.

148.    Royal King's own survey showed that Luv n' care's hard-spout cup has achieved secondary meaning.  Opp. Decl. of Edward Hakim ¶ 27.

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

149.    Royal King conducted the survey in high-end malls in markets where Luv n' care has less presence.  Opp. Decl. of Edward Hakim ¶ 24.

150.    Royal King's consumer survey relating to Luv n' care's hard-spout cup shows that over 30% of targeted customers, mothers with young children, could identify the source of the hard-spout cup by merely looking at it.  Opp. Decl. of Edward Hakim ¶ 25.

151.    On June 8, 2009, Walgreen moved for summary judgment.  To bolster its argument that it had not infringed Luv n' care's trade dress, Walgreen presented small, distorted and unreliable pictures of the portions of the cups, and groupings of cups that look completely different in person by way.  Opp. Decl. of Edward Hakim at 5.

152.    Plaintiffs have moved for summary judgment because Walgreen's request to make America's two best-selling cups "WOW" items is nothing less than an admission by Walgreen that Luv n' care's cups have unique appeal to consumers, who know those cups by the way they look.  *See generally* Opp. Decl. Edward Hakim ¶ 20..

153.    Kruckman testified he ███████████████████████ ███████████████████████████████ Kruckman Dep. At 345:13-22, Opp. Decl. of Todd M. Malynn at ¶ 8, Ex. 7.

154.    Kruckman testified that Walgreen carried many different brands of sippy cups because ████████████████████████████ it."  Kruckman Dep. At 381:15-22, Opp. Decl. of Todd M. Malynn at ¶ 8, Ex. 7.

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

155.    Kruckman stated the non-essential nature of the outward design of these cups when he explained that the only ████████████████████████████ Kruckman Dep. at 383:7-15, Opp. Decl. of Todd M. Malynn at ¶ 8, Ex. 7.

156.    Kruckman testified that he was Walgreen's baby sundries buyer during the time period relevant to this action.  Kruckman Dep. at 60:16-20, Opp. Decl. of Todd M. Malynn at ¶ 8, Ex. 7.

157.    Kruckman testified that design changes for sippy cups ████████████ ████████████████████████████ Kruckman Dep. At 486:1-487:24, Opp. Decl. of Todd M. Malynn at ¶ 8, Ex. 7.

158.    Kruckman testified that he approved the "look" of the cups Walgreen purchased. Kruckman Dep. at 240:1-5, 241:24-242:4, Opp. Decl. of Todd M. Malynn at ¶ 8, Ex. 7.

159.    Kruckman testified that appearance was a factor in his decision to purchase the knockoffs from Royal King.  Kruckman Dep. at 325:12-15, Opp. Decl. of Todd M. Malynn at ¶ 8, Ex. 7.

160.    Kruckman stated that, in his opinion, that some sippy cups look nicer than others. Kruckman Dep. at 280:16-281:3, Opp. Decl. of Todd M. Malynn at ¶ 8, Ex. 7.

161.    Likewise, the sales evidence with respect to the comb and brush is also sufficient to create a genuine issue of fact.  Specifically, over ████████ of these products have been sold since 2004.  Dec. of Joseph H. Hakim dated 6-29-09 at Ex. A.

162.    Furthermore, Plaintiffs previously wished to move the court for an extension of the discovery period in view of Walgreen's stonewalling on important discovery, including that

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

of Atico, and in view of extreme extenuating circumstances beyond its control that have accompanied this case, including, serious illnesses and deaths affecting Plaintiffs' closely held family company and an unusual number of concurrent other litigations. Morris Cohen Dec. ¶¶ 10-21, 66, 85. However, Plaintiffs were never given the opportunity to file a motion or be heard on those and other issues, which it respectfully submits violates due process and has prejudiced its rights, and has interfered with its ability to fully and fairly pursue a meritorious action. Morris Cohen Dec. ¶ at 44, 66.

163.    Walgreen obtained a copy of this survey from Royal King in early April 2009 and disclosed the survey's author as a witness shortly thereafter on April 10, 2009.

Dated: June 29, 2009                    Respectfully submitted,

**LAW OFFICES OF MORRIS COHEN, P.C.**
One Penn Plaza, Suite 2527
New York, NY 10119
                                                and

**FELDMAN GALE, P.A.**
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone:  305-358-5001
Facsimile:  305-358-3309

By:  /s   *James A. Gale*
       Morris E. Cohen / MC-4620
       E-mail: MCohen@ipcases.com
       James A. Gale / Fla. Bar no. 371726
       E-mail: JGale@FeldmanGale.com
       ***Attorneys for Plaintiffs.***

28

*Luv n' care, Ltd. v. Walgreen Co.*
Civil Action No. 08 CIV 4457 (DC/HP)

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 29th day of June 2009, I electronically filed the foregoing document with the Clerk of the Court using its CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified either via transmission of Notices of Electronic Filing generated by this Court's CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

       /s   *James A. Gale*
              JAMES A. GALE

## SERVICE LIST

*Luv N' Care, Ltd.,  et al. v. Walgreen Co., et al.*
Case No. 08-civ-4457 (DC)
United States District Court, Southern District of New York

Alan Weisberg
aweisberg@cwiplaw.com
Jason Buratti
jburatti@cwiplaw.com
Jeffrey H. Kamenetsky
jkamenetsky@cwiplaw.com
Christopher & Weisberg, P.A.
200 East Las Olas Blvd., Suite 2040
Ft. Lauderdale, FL 33301
Phone: 954-828-1488
Facsimile: 954-828-9122
*Via CM/ECF.*