Bennette D. Kramer (BK1269)
SCHLAM STONE & DOLAN LLP
26 Broadway
New York, NY 10004
Telephone: (212) 344-5400
BDK@schlamstone.com

Floyd B. Chapman (Pro Hac Vice)
Robert J. Scheffel (Pro Hac Vice)
WILEY REIN LLP
1776 K Street NW
Washington DC 2006
Telephone: (202) 719-7000

Jeffrey H. Kamenetsky (Pro Hac Vice)
Jason R. Buratti (Pro Hac Vice)
CHRISTOPHER & WEISBERG, P.A.
200 East Las Olas Boulevard, Suite 2040
Fort Lauderdale, Florida 33301
Telephone: (954) 828-1488

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUV N' CARE, LTD. and<br>ADMAR INTERNATIONAL, Inc.<br><br>        Plaintiffs,<br>vs.<br><br>WALGREEN CO. and KMART CORP.<br><br>        Defendants. | CIVIL ACTION NO.<br><br>08-CIV 4457 (DC/HP) |

**WALGREEN'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 3 |
| | A. | Plaintiffs Have Not Overcome *TrafFix*'s Presumption Of Functionality | 3 |
| | | 1. Plaintiffs' "Evidence" of Alternative Designs is Legally Irrelevant | 3 |
| | | 2. Plaintiffs Cannot Protect Purely Functional Features By Merely Asserting That The Overall Appearance Of Its Purported Trade Dress Is Protectable | 5 |
| | | 3. Plaintiffs Cannot Rely On A Non-Issued Patent Application As "Evidence" Of No-Functionality | 6 |
| | B. | Plaintiffs' "Evidence" Of Purported Secondary Meaning Is Insufficient As A Matter Of Law | 7 |
| | | 1. Plaintiffs' Advertising And Sales Evidence Cannot Raise A Genuine Issue Of Material Fact | 7 |
| | | 2. Plaintiffs' Improperly Seek To Avoid Summary Judgment By Relying Upon Already Excluded Evidence And Inadmissible Settlement Discussions | 7 |
| | C. | Plaintiffs' Unfair Competition Claims Fail As A Matter Of Law | 8 |
| | D. | Plaintiffs Cannot Seek Additional Discovery Pursuant To Fed. R. Civ. P. 56(f) When They Had More Than Adequate Time To Pursue Their Claims And Do Not Even Identify What Discovery They Need To Oppose This Motion | 8 |
| | E. | Plaintiffs' Failure To Follow The Federal Rules Is Not Excusable | 9 |
| | F. | Plaintiffs' Allegations Of Packaging Trade Dress Infringement Are Not Part Of This Case, But Nevertheless Are Not Protectable | 9 |
| | G. | Plaintiffs' Self-Serving Conclusory Declarations Cannot Undo Deposition Testimony And Should Be Stricken | 10 |
| III. | CONCLUSION | | 10 |

i

# TABLE OF AUTHORITIES
**Cases**                                                                                                                                    **Page**

*Antioch Co. v. W. Trimming Corp.*,
   347 F.3d 150 (6th Cir. 2003) .................................................................................. 4, 6

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
   457 F.3d 1063 (9th Cir. 2006) ..................................................................................... 4

*Bd. of Supervisors for Louisiana State Univ. Agric. and Mech. College v. Smack Apparel Co.*,
   550 F.3d 465 (5th Cir. 2008) ........................................................................................ 4

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*,
   769 F.2d 919 (2d Cir. 1985)......................................................................................... 9

*Desclafani v. Pave-Mark Corp.*,
   2008 WL 3914881 (S.D.N.Y. Aug. 22, 2008);............................................................ 9

*Eppendorf-Netheler-Hinz GmbH v. Ritter GmbH*,
   289 F.3d 351 (5th Cir. 2002) ........................................................................................ 6

*Espada v. Schneider*,
   522 F. Supp. 2d 544 (S.D.N.Y. 2007).......................................................................... 9

*Henri Bendel v. Sears, Roebuck and Co.*,
   25 F. Supp. 2d 198 (S.D.N.Y. 1998)............................................................................ 5

*Highland Capital Mgmt., L.P.*,
   551 F.Supp 2d 173 (S.D.N.Y. 2008)............................................................................ 8

*Hollander v. Am. Cyanamid Co.*,
   172 F.3d 192 (2d Cir. 1999)....................................................................................... 10

*In re Pingel Enters.*,
   46 U.S.P.Q.2d 1811 (T.T.A.B. 1998) .......................................................................... 5

*Leatherman Tool Group, Inc. v. Cooper Indus.*,
   199 F.3d 1009 (9th Cir. 1999). ..................................................................................... 6

*Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*,
   292 F. Supp. 2d 535 (S.D.N.Y. 2003)...................................................................... 4, 6

*Malaco Leaf, AB v. Promotion in Motion, Inc.*,
   287 F. Supp. 2d 355 (S.D.N.Y. 2003).......................................................................... 3

*Paddington Partners v. Bouchard,*
    34 F.3d 1132 (2d Cir. 1994) .................................................................................. 9

*Patterson v. County of Oneida,*
    375 F.3d 206 (2d Cir. 2004) ................................................................................ 10

*Scott Paper Co. v. Marcalus Mfg. Co.,*
    326 U.S. 249 (1945) ............................................................................................. 4

*Starter Corp. v. Converse, Inc.,*
    170 F.3d 286 (2d Cir. 1999) .................................................................................. 8

*Talking Rain Beverage Co. v. South Beach Beverage Co.,*
    349 F.3d 601 (9th Cir. 2003) ................................................................................ 4

*Thomas & Betts Corp. v. Panduit Corp.,*
    65 F.3d 654 (7th Cir. 1995) .................................................................................. 5

*TrafFix Devices, Inc. v. Marketing Displays, Inc.,*
    532 U.S. 23 (2001) ....................................................................................... *passim*

*Trebor Sportswear Co. v. The Limited Stores, Inc.,*
    865 F.2d 506 (2d Cir. 1989) .................................................................................. 8

*Vargas v. Midtown Air Condition & Ventiliation, Ltd.,*
    2008 WL 5062611 (S.D.N.Y. 2008) ..................................................................... 9

## **Other Authorities**

Fed. R. Civ. P. 56(f) .................................................................................................. 8, 9

Fed. R. Evid. 408 ........................................................................................................... 8

## I. INTRODUCTION

Despite a continued barrage of self-serving, conclusory, and generalized declarations from their interested witnesses and attorneys, Plaintiffs cannot escape their critical failure of proof. They raise no <u>genuine</u> issue of <u>material</u> fact to meet their "heavy burden" to establish protectable trade dress rights. Plaintiffs' unfair competition allegations are similarly ill-fated, as they require the same legal showings required by the Lanham Act. DE 70, Section III(A)(1). They are also precluded by binding precedents of this Court, the Second Circuit, and the Supreme Court. *Id.*

Critically, Plaintiffs have not and cannot overcome the Supreme Court-dictated <u>presumption</u> of functionality and for their unregistered and unproven product design trade dress set forth in the Supreme Court's decision in *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29-30 (2001). Plaintiffs' own patents and customer sheets indisputably tout the <u>functional</u> benefits of their products. Moreover, Plaintiffs cannot dispute that numerous competitors use the elements of the alleged trade dress.[1]

Plaintiffs' improperly rely upon a vague "overall combination" of the asserted trade dress. To evaluate functionality, the Supreme Court recognizes a functionality analysis must necessarily address the <u>features</u> of the asserted trade dress. This Court has followed that precedent and should reject Plaintiffs' invitation to depart from it. Indeed, this is how Plaintiffs defined their alleged trade dress. Regardless, Plaintiffs' own testimony establishes that sippy cups are, as a whole "designed" for functional purposes. *See* Section III(A)(2), *infra*; DE 52, ¶ 12. So do their patents and customer sheets. *See, e.g.*, RASUF ¶¶ 20-40; WSUF ¶¶ 60, 76.

Plaintiffs identify no admissible evidence that links their alleged secondary meaning to

---

[1] *See e.g.*, DE 44 (Walgreen's Statement of Undisputed Facts ("WSUF")) ¶¶ 25-52, 61, 63-73, 83-89, 92-98, 186; *see also* Response to Additional Statements of Undisputed Facts ("RASUF") ¶ 43; DE 72 at ¶¶ 162-205.

1

their alleged trade dress. Plaintiffs rely on inadmissible declarations of their own witnesses and inadmissible hearsay, which establishes at best that their products were successful. Yet they do not dispute that success alone cannot establish secondary meaning. DE 43, Section IV(A)(iii). Moreover, Plaintiffs offer no proof to establish acquired secondary meaning <u>prior</u> to competitors' (including Walgreen's) sales of sippy cups.

Instead, Plaintiffs' opposition desperately seeks to avoid summary judgment through inappropriate and baseless attorney arguments and inadmissible declarations. For example:

- Plaintiffs rely on an expert report <u>this Court excluded</u> (DE 38);

- Plaintiffs rely on settlement in the Texas action and hearsay statements allegedly made therein to establish liability in this action <u>in direct contravention to the Federal Rules</u>;

- For the very first time, Plaintiffs claim hardship based on, *inter alia*, other litigations, should excuse them for their discovery failures in this action including their failure to request an extension (something they did in another action);

- Having had a year to conduct discovery in this action, Plaintiffs seek <u>additional</u> non-specified discovery under Fed. R. Civ. P 56(f) to remedy their fatal defects;

- Plaintiffs misstate Walgreen's arguments as to the Federal law of trade dress and New York Unfair Competition; and

- Plaintiffs attempt to undo or qualify their admissions in deposition testimony through self-serving, conclusory and generalized declarations of interested witnesses and their attorneys.

Plaintiffs fail to raise a single <u>genuine</u> issue of <u>material</u> fact as to the lack of protectability of their alleged trade dress. Because all of Plaintiffs' claims require protectable trade dress and because Plaintiff cannot meet its "heavy burden," there can be no trade dress infringement, no trade dress dilution, and no unfair competition by Walgreens.

## II. <u>LEGAL STANDARD FOR SUMMARY JUDGMENT</u>

To successfully oppose a motion for summary judgment, Plaintiffs shoulder the burden of coming forward with actual evidence demonstrating a genuine issue of material fact. *See, e.g.,*

2

*Beard v. Banks*, 548 U.S. 521, 529 (2006). It is insufficient to "rely merely on allegations or denials" of the factual assertions of the movant. Fed. R. Civ. P. 56(e)(2); *see, e.g., Amaker v. Foley*, 274 F.3d 677, 680-81 (2d Cir. 2001). Plaintiffs "may not rely on mere conclusory allegations or speculation, but instead must offer some hard evidence" in support of its factual assertions. *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 514 (S.D.N.Y. 2008). Plaintiffs must also "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. Plaintiffs cannot meet this burden.

## III. <u>ARGUMENT</u>

### A.  <u>Plaintiffs Have Not Overcome *TrafFix*'s Presumption Of Functionality</u>

For unregistered trade dress, functionality is <u>presumed</u> under Supreme Court precedent. *See TrafFix*, 532 U.S. at 29-30 (2001). "The legal tenet that 'the nonfunctionality requirement 'protects competition even at the cost of potential consumer confusion,'' is 'even more critical' in a product configuration case 'because monopoly right in the design of the product itself is more likely to preclude competition.'" *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 366 (S.D.N.Y. 2003). Plaintiffs have not come close to rebutting this presumption, and instead proffer disjointed, legally irrelevant arguments.

#### 1.  <u>Plaintiffs' "Evidence" of Alternative Designs is Legally Irrelevant</u>

Plaintiffs contend Walgreen is "dead wrong" that evidence of alternative designs is legally irrelevant to the functionality analysis. It is <u>Plaintiffs'</u> position that is flawed. Indeed, *TrafFix*—a case that Plaintiffs conveniently failed to cite in its own summary judgment brief— unambiguously states that "<u>[w]here the design is functional . . . there is no need to proceed further to consider if there is a competitive necessity for the feature.</u>" *TrafFix*, 532 U.S. at 33 (holding

3

that because patents evidenced functionality no further analysis was necessary).[2] Here, the plain teachings of Plaintiffs' numerous utility patents and customer sheets indisputably establish that Plaintiffs' cups are functional. Availability of alternative designs need not even be considered consistent with the precedent of the Supreme Court and numerous circuits.

Tellingly, Plaintiffs ignore their customer sales sheets and website descriptions of the functionality of their designs. They do not dispute, or even address, Walgreen's arguments. *See* DE 77. Advertising that touts functional features is highly indicative of functionality. *See, e.g., Talking Rain Beverage Co. v. South Beach Beverage Co.*, 349 F.3d 601, 603-04 (9th Cir. 2003) (granting summary judgment of invalidity of registered bottle design based on functionality). Moreover, *TrafFix* holds utility patents are incontrovertible evidence of functionality. 532 U.S. at 29-30. In order to avoid the harsh glare of the plain teachings of its patents, Plaintiffs recite some unsupported "central advance" test and suggest that a *Markman* hearing was necessary to construe its patent claims. Plaintiffs' argument is based on a fundamentally flawed premise: that only the *claims* of a patent are relevant in assessing functionality. This premise has been expressly contradicted by numerous courts and administrative bodies.[3]

---

[2] This sentiment has been repeatedly articulated by Circuits and District Courts alike. *See, e.g., Bd. of Supervisors for Louisiana State Univ. Agric. and Mech. College v. Smack Apparel Co.*, 550 F.3d 465, 487 (5th Cir. 2008) ("The [Supreme] Court explained that if a product feature is found to be functional under the traditional test, which it was in that case, the inquiry ends and there is no need to consider whether the feature is a competitive necessity"); *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1063, 1071 (9th Cir. 2006); *Antioch Co. v. W. Trimming Corp.*, 347 F.3d 150, 156 (6th Cir. 2003); *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 547-48 (S.D.N.Y. 2003).

[3] *See, e.g., Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 256 (1945) ("[T]he patentee may not exclude the public from participating in that good will or secure, to any extent, a continuation of his monopoly by resorting to the trademark law and registering as a trademark any particular descriptive matter *appearing in the specifications, drawings or claims* of the expired patent, *whether or not such matter describes essential elements of the invention*")(emphasis added); *Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 660 (7th Cir. 1995) ("Whether or not a feature is claimed is not necessarily, however, a good indicator of its relative importance to the invention as a whole") (internal citations omitted); *In re Pingel Enter.*, 46 U.S.P.Q.2d 1811, 1817 (T.T.A.B. 1998) ("[I]t is well settled that the existence of one or more utility patents which *disclose* the superior utilitarian advantages of a design generally is adequate, and frequently is conclusive or incontrovertible, evidence of the de jure functionality of a configuration") (emphasis added).

Therefore, because all of the features of plaintiffs' alleged trade dress are described in their utility patents as "embodiments," no reasonable juror could conclude those features are anything but functional, regardless of whether they are claimed (which in many instances they are).

### 2. Plaintiffs Cannot Protect Purely Functional Features By Merely Asserting That The Overall Appearance Of Its Purported Trade Dress Is Protectable.

Plaintiffs do not dispute (other than through a conclusory declaration that is contradictory to the quoted deposition testimony) that many competitors use the elements of Plaintiffs' alleged trade dress. *See e.g.*, WSUF ¶¶ 25-52, 61, 63-73, 83-89, 92-98, 186; *see also* RASUF ¶ 43; DE 72 at ¶¶ 162-205. Plaintiffs acknowledge that three of the six competitors (Walgreens, Munchkins, Plaintiffs) utilize the alleged trade dress elements. *Id.*[4] Thus, half of the admitted competitors use the alleged trade dress features.

Instead, Plaintiffs take issue with analyzing the individual features, yet ignore that even they characterize their alleged trade dress, not just by overall design, but as a combination of identified <u>features</u>. This Court and the Supreme Court analyze functionality (even for the design as a whole) by the individual features.[5] Rather than address the features, Plaintiffs argue their purported overall design is protectable despite consisting entirely of functional features they do not dispute are used by competitors. DE 42, Ex. F, G.

Plaintiffs' argument is legally and factually flawed. Legally, this Court and numerous other circuits have emphasized that, when purported trade dress is composed exclusively of

---

[4]    More do, too, but Plaintiffs ignore their admissions during deposition testimony that nearly a dozen competitors exist. *See, e.g.*, WSUF ¶¶ 25-52, 61, 63-73, 83-89, 92-98, 186; *see also* RASUF ¶ 43; DE 72 at ¶¶ 162-205. The record reflects that not less than 12 competitors use some or all of the features of Plaintiffs' asserted trade dress. *See, e.g.*, DE 43 at 19-20; 25-52, 61, 63-73, 83-89, 92-98, 186; *see also* RASUF ¶ 43; DE 72 at ¶¶ 162-205.

[5]    *See TrafFix*, 523 U.S. at 35 ("[F]unctional features may not be the subject of trade dress protection") and *Henri Bendel v. Sears, Roebuck and Co.*, 25 F. Supp. 2d 198, 202 (S.D.N.Y. 1998) (holding that "overall trade dress" was not protectable by analyzing individual features of cosmetic bags).

5

functional features, it is unprotectable even where a plaintiff separately asserts the "overall look." *See Leatherman Tool Group, Inc. v. Cooper Indus.*, 199 F.3d 1009, 1013 (9th Cir. 1999).[6] Thus, Plaintiffs' attempts to dodge the unambiguous teachings of their patents and customer sheets by asserting a nebulous "overall look" argument are legally implausible.

Factually, Plaintiffs' own admission undoes their own theory. Indeed, as succinctly stated in Ed Hakim's June 8 Declaration, sippy cups by their very nature are simple, functional articles. *See* DE 52, ¶¶ 10, 12 (Ed Hakim June 8 Declaration) ("By design, no spill cups are easy to grip. Young children will grab a cup virtually from anywhere, the top, bottom or middle of the cup, to bring it to their mouth when they are thirsty...."). Mr. Hakim's patents, customer sheets, and website indisputably confirm this. *See, e.g.*, RASUF ¶¶ 20-40; WSUF 52-57, 60, 74-76, 95-98.

### 3. Plaintiffs Cannot Rely On A Non-Issued Patent Application As "Evidence" Of Non-Functionality

Plaintiffs' reliance on their heretofore withheld design patent application is misplaced. No design patent has issued. The Examiner's <u>silence</u> to date cannot be "evidence" of non-functionality, especially since he rejected the application for having an inadequate disclosure. *See, e.g.*, RASUF ¶ 45.

### B. Plaintiffs' "Evidence" Of Purported Secondary Meaning Is Insufficient As A Matter Of Law

Plaintiffs cannot meet their heavy burden of establishing secondary meaning. As

---

[6] "*Leatherman* is correct that trade dress must be viewed as a whole, but where the whole is nothing other than the assemblage of functional parts, and where even the arrangement and combination of the parts is designed to result in superior performance, it is semantic trickery to say that there is still some sort of separate 'overall appearance' which is non-functional." *See also Antioch Co. v. W. Trimming Corp.*, 347 F.3d 150, 159 (6th Cir. 2003) ("[W]here one key functional feature is the reason that the product works . . . then the entire product configuration may be considered functional and not deserving of trade dress protection"); *Eppendorf- Netheler-Hinz GmbH v. Ritter GmbH*, 289 F.3d 351, 358 (5th Cir. 2002) (holding that trade dress protection was unwarranted where the eight design elements of a disposable pipette tip were functional and essential to the overall operation of the product); *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 543 (S.D.N.Y. 2003) ("'Nonetheless, the fact that a trade dress is composed exclusively of commonly used or functional elements might suggest that that dress should be regarded as unprotectable or 'generic,' to avoid tying up a product or marketing idea'").

discussed below, the only "evidence" Plaintiffs have is their sales, which alone cannot establish secondary meaning. The other attempts to identify "evidence" fall flat.

### 1. Plaintiffs' Advertising And Sales Evidence Cannot Raise A Genuine Issue Of Material Fact

Plaintiffs cite <u>no</u> evidence of advertising of <u>the products they assert</u>. Instead, Plaintiffs allege they "have spent $1,100,000 on advertising <u>its products</u>." Pl. Br. at 10. What is missing is what "products" were subject to advertising. Moreover, no "evidence" shows when this advertising took place. No "evidence" even constitutes advertising during the time before Walgreen allegedly entered the market in 2006. *See, e.g.*, RASUF ¶¶ 100, 126; *see also* Response to WSUF ¶ 112. To the contrary, as previously noted, Plaintiffs admit they did not advertise the products at issue until 2009 <u>after Walgreen was already on the market</u>. *See* DE 43 at 7, 16-17; WSUF ¶¶ 101-105. Similarly, Plaintiffs' evidence of sales, absent any more information as to the motivation behind the sales (*e.g.*, a survey) cannot establish secondary meaning.

### 2. Plaintiffs' Improperly Seek To Avoid Summary Judgment By Relying Upon Already Excluded Evidence And Inadmissible Settlement Discussions

As part of their continued attempts to prejudice Walgreen, Plaintiffs try to rely upon an expert report <u>this Court has excluded</u>. *See* Pl. Br. at 12. In its June 6 <u>Order</u>, this Court struck the expert reports cited by Plaintiffs in their opposition. *See* DE 38. Walgreen is at a loss for words as to this tactic. These arguments in Plaintiffs' opposition should be stricken.

Nor can Plaintiffs rely on settlements and hearsay from settlement discussions. Pl's Brief at 3-4. Their arguments contravene the Federal Rules of Evidence and the decisions of the Second Circuit and this Court.[7] This inadmissible evidence cannot create a fact issue as to liability.

---

[7] *See e.g.*, Fed. R. Evid. 408(a)(1); *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 293 (2d Cir. 1999) ("Rule 408 bars the use of settlement evidence to establish the validity or invalidity of a claim of trademark infringement");

7

Additionally, Plaintiffs were required to identify admissible evidence of <u>intent</u> to plagiarize. *Accord Kaufman & Fisher Wish Co.*, 184 F. Supp. 2d 311, 319 (S.D.N.Y. 2001); WSUF ¶ 37. Their citation to settlement hearsay falls far short of raising any genuine factual dispute as to that element of the secondary meaning analysis. Accordingly, this Court should reject Plaintiffs' treatment of the Federal Rules as aspirational guidelines rather than binding rules, and must disregard Plaintiffs' inappropriate use of settlement discussions.

### C. <u>Plaintiffs' Unfair Competition Claims Fail As A Matter Of Law</u>

Plaintiffs mistakenly allege that Walgreen's motion is a "non-starter" because of their unfair competition claims. Pl. Br. at 1, 3. It is Plaintiffs that are wrong. As stated in detail in Walgreen's opposition to Plaintiffs' summary judgment motion, the state law unfair competition claims, which are based on Plaintiffs' alleged trade dress, must "mirror" the Lanham Act claims. *See* DE 70, Section III(A)(1). To the extent Plaintiffs seek this broader protection, the causes of action are preempted. *See* DE 70, Section III(A)(2).

### D. <u>Plaintiffs Cannot Seek Additional Discovery Pursuant To Fed. R. Civ. P. 56(f) When They Had More Than Adequate Time To Pursue Their Claims And Do Not Even Identify What Discovery They Need To Oppose This Motion</u>

Plaintiffs' Rule 56(f) request should be denied because they had a reasonable opportunity to conduct discovery.[8] Plaintiffs' Rule 56(f) request also should be denied because they did not

---

*Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 196 (S.D.N.Y. 2008) ("Rule 408 'embodies the strong federal policy favoring settlement of disputes by precluding the use of settlement-related materials as a means of establishing or disproving liability'").

[8] *See, e.g., Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511-12 (2d Cir. 1989) (affirming denial of request under Rule 56(f) for further discovery where "appellants had ample time to conduct discovery"); *Vargas v. Midtown Air Condition & Ventilation, Ltd*, 2008 WL 5062611, at *8 (S.D.N.Y. Nov. 24, 2008) ("Plaintiffs' application would still be denied because Plaintiffs had 'ample time to pursue the discovery it now claims is essential[.]'"); *Desclafani v. Pave-Mark Corp.*, 2008 WL 3914881, at *8 (S.D.N.Y. Aug. 22, 2008); *Espada v. Schneider*, 522 F. Supp. 2d 544, 549-50 (S.D.N.Y. 2007).

follow the Second Circuit's absolute requirement to file a Rule 56(f) Affidavit.[9] Even if the Court considers this request, Plaintiffs' arguments are manufactured. They cite no evidence that bears on the issues in Walgreen's motion – that Plaintiffs' alleged trade dress is not protectable. In their opposition, Plaintiffs refuse to identify what information they need, or how that discovery would affect the issues at hand. RASUF ¶ 138; *see generally* Pl. Br. Second, Plaintiffs had a year to conduct this discovery. The fact they waited until the eleventh hour to try is not Walgreen's fault.

### E. Plaintiffs' Failure To Follow The Federal Rules Is Not Excusable

Despite the clear mandates of the Federal Rules of Civil Procedure and this Court's rules and Orders, Plaintiffs beg for forgiveness when they should have asked for permission. Plaintiffs argue <u>for the first time</u> in their opposition that there were "extreme extenuating circumstances beyond its control" that prevented them from seeking any discovery until less than a month before the close of fact discovery. This is disingenuous.[10] Indeed, in another case Plaintiffs cite for hardship, Plaintiffs' counsel requested to extend litigation deadlines. Reply Ex. 16, DE 114. Walgreen should not be punished for Plaintiffs' counsel's failure to follow the Rules.

### F. Plaintiffs' Allegations Of Packaging Trade Dress Infringement Are Not Part Of This Case, But Nevertheless Are Not Protectable

As previously noted, Plaintiffs' new allegations as to packaging are not properly part of this case. *See, e.g.*, WSUF ¶¶ 20, 21, 24, 36, 172, 174-75, 177-78; *see also* DE 68 at 8-11, DE 72 at 68-93. Nevertheless, for the reasons stated in Walgreen's opposition to Plaintiffs' motion for

---

[9] *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994) ("A reference to Rule 56(f) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit . . . and the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate . . . .") (citations omitted; emphasis added); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985) ("A memorandum is not a substitute for an affidavit under Rule 56(f) . . . .").

[10] Since March of this year, Plaintiffs and their lawyers have field dozens of papers in just these three related litigations. They have five law firms working on these cases. Yet, they never sought an extension in this case.

summary judgment, Plaintiffs cannot meet their burden to establish the shrink-wrap packaging is protectable. Indeed, this packaging, as noted by Plaintiffs was directed, at least in part, by Walgreen (*see* discussion as to "WOW" packaging). *See, e.g.*, RASUF ¶¶ 51, 55 (McQuillen Decl. ¶ 14), 58 (Walgreen Resp.). Any good will is Walgreen's.

### G. Plaintiffs' Self-Serving Conclusory Declarations Cannot Undo Deposition Testimony And Should Be Stricken

Plaintiffs' opposition is a smokescreen of conclusory declarations from its interested witnesses and attorneys.[11] This self-serving, conclusory testimony cannot undo deposition testimony. Indeed, it should be stricken.[12] Nevertheless, as identified in Walgreen's RASUF's, the arguments and deposition testimony speak for themselves. *See e.g.*, RASUF ¶¶ 11-13, 17, 20-22, 29, 36, 43, 70, 71, and 73.

## IV. CONCLUSION

Plaintiffs cannot raise a genuine issue of fact upon which any reasonable juror could find that Plaintiffs have protectable trade dress rights for their unregistered product designs. Plaintiffs further cannot avoid this fact by reliance on unfair competition law. Walgreen respectfully requests that this Court grant its motion for summary judgment.

---

[11] The following examples further illustrate plaintiffs' attempts to manufacture fact issues as part of their bizarre theory that Walgreens challenges the weight of evidence (Pl. Br. Section II) rather than the insufficiency and the inadmissibility of plaintiffs' evidence. ¶¶ 1-5, 7, 10, 12-14, 16-20, 25-26, 41-78, 81-88, 90, 92-94, 98, 102, 103, 104, 105, 106, 108, 109, 110, 111, 112, 113, 115, 120, 121, 123, 125, 126, 130, 131, 132, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 162, and 163 do not cite any exhibit. ¶¶ 115, 116, 117, 118, 119, 120, 123, 124, 125, 126, 127, 128, 129, 130, 131, 133, 134, 135, 136, 137, 138, 139, and 162 depend upon attorney declarations that constitute inadmissible attorney argument. ¶¶ 55, 48, 83, 84, 85, 87, 88, 90, 93, 94, 102, and 161 cite only the declarations of Jack Hakim and Tim McQuillen – witnesses not listed on Plaintiffs' Initial Disclosures and paragraphs 100, 101, 103, 104, and 108 include declaration testimony from Nathan Shamosh who repeatedly testified (with confirmation from counsel) he knew nothing about Walgreens. *See* DE 72 at 111-43.

[12] "A court may therefore strike portions of an affidavit [in support of summary judgment] that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999), *abrogated on other grounds by Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000); *see also Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) ("affidavit's [inadmissible] hearsay assertion . . . is insufficient to create a genuine issue for trial").

Dated: July 15, 2009

Respectfully submitted,

_/s/ Bennette D. Kramer_
Bennette D. Kramer (BK1269)
SCHLAM STONE & DOLAN LLP
26 Broadway
New York, NY 10004
Telephone: (212) 344-5400
BDK@schlamstone.com

Alan M. Weisberg, Esq. (No. AW9062)
Jeffrey H. Kamenetsky (Pro Hac Vice)
Jason R. Buratti (Pro Hac Vice)
CHRISTOPHER & WEISBERG, P.A.
200 East Las Olas Boulevard, Suite 2040
Fort Lauderdale, Florida 33301
Telephone: (954) 828-1488
Facsimile: (954) 828-9122
aweisberg@cwiplaw.com

*Attorneys for Defendant WALGREEN CO.*

11