**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CASE NO.: 08-CIV-4457 (DC/HP)

**LUV N' CARE, LTD., and**
**ADMAR INTERNATIONAL, INC.,**

          **Plaintiffs,**

**vs.**

**WALGREEN CO., and**
**KMART CORP.**
          **Defendants.**
_____/

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.     The Material Undisputed Facts Favor Summary Judgment. . . . . . . . . . . . 1

      B.     Certain Issues Remain for the Jury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    WALGREEN HAS VIOLATED NEW YORK LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.     The Broad Parameters of New York State Law are Well Established. . . . . 2

      B.     New York Law is Not Preempted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   PLAINTIFFS PRODUCED DIRECT EVIDENCE OF DECEPTION AND PALMING
      OFF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.    WALGREEN HAS DELIBERATELY VIOLATED THE LANHAM ACT. . . . . . . . . . . 5

      A.     The Packaging Claims are Fully Supported. . . . . . . . . . . . . . . . . . . . . . . . 5

      B.     There is Substantial Unrebutted Evidence of Secondary Meaning. . . . . . . 6

      C.     The Evidence of Likelihood of Confusion is Also Unrebutted. . . . . . . . . . 8

      D.     The Appropriate Legal Standards Demonstrate the Trade Dress is
           Nonfunctional. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

*20th Century Wear, Inc. v. SanMark-Stardust Inc.,* 747 F.2d 81 (2nd Cir. 1984). . . . . . . . . . . . . . 3

*20th Century Wear, Inc. v. Sanmark-Stardust, Inc.,* 815 F.2d 8 (2nd Cir. 1986). . . . . . . . . . . . . . . 6

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 109 S.Ct. 971 (1989). . . . . . . . . 4

*Cartier, Inc. v. Four Star Jewelry Creations Inc.,* 348 F. Supp. 2d 217 (S.D.N.Y. 2004). . . . . . 2

*Cartier, Inc. v. Sardell Jewelry, Inc.,* 294 Fed. Appx. 615 (2nd Cir. 2008). . . . . . . . . . . . . . . . 8, 9

*Getty Petroleum Corp. v. Island Transp. Corp.,* 878 F.2d 650 (2nd Cir. 1989). . . . . . . . . . . . . . . 9

*LeSportsac, Inc. v. K Mart Corp.,* 754 F.2d 71 (2nd Cir. 1984). . . . . . . . . . . . . . . . . . . . . . 7, 9, 10

*Linkco, Inc. v. Fujitsu Ltd.,* 230 F. Supp. 2d 492 (S.D.N.Y. 2002). . . . . . . . . . . . . . . . . . . . . . 2, 3

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20 (1995)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Paddington Corp. v. Attiki Importers & Distribs., Inc.,* 996 F.2d 577 (2nd Cir. 1993). . . . . . . 5, 10

*PAF S.r.l. v. Lisa Lighting Co. Ltd.,* 712 F. Supp. 394 (S.D.N.Y. 1989). . . . . . . . . . . . . . . . . . . 6

*Perfect Fit Industries, Inc., v. Acme Quilting Co., Inc.,* 618 F.2d 950 (2nd Cir. 1980). . . . . . . 2, 5

*RJR Foods, Inc. v. White Rock Corp.,* 603 F.2d 1058 (2nd Cir. 1979). . . . . . . . . . . . . . . . . . . . . 6

*SGC Commun. Res., LLC v. Seminar Ctr., Inc.,* 2001 U.S. Dist. LEXIS 2862 (S.D.N.Y. 2001)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Sutton Cosmetics (P.R.) Inc. v. Lander Co., Inc.,* 455 F.2d 285 (2nd Cir. 1972). . . . . . . . . . . . . 3, 8

*Telecom Int'l Am., Ltd. v. AT&T Corp.,* 280 F.3d 175 (2nd Cir. 2001). . . . . . . . . . . . . . . . . . . . . 2

*Thompson Medical Co. v. Pfizer, Inc.,* 753 F.2d 208 (2nd Cir. 1985). . . . . . . . . . . . . . . . . . . . . 3, 7

*Traffix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 121 S. Ct. 1255 (2001). . . . . . . 10

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.,* 529 U.S. 205, 120 S.Ct. 1339 (2000). . . . . . 2, 5

*Warner Bros. v. American Broadcasting Co.,* 720 F.2d 231 (2nd Cir. 1983). . . . . . . . . . . . . . . . 3

**OTHER AUTHORITIES**

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition, "New York Rule":*

*Substitutes for Secondary Meaning,* § 15:12 (July 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## TABLE OF EXHIBITS

1.  Photographs of Walgreen's deceptive signage and displays

2.  Luv n' care's original products and packaging (right) and Walgreen's infringements (left)

3.  Affidavit of Brandy Thomas

4.  Images of Royal King's copying of Luv n' care's line

5.  *Cartier, Inc. v. Sardell Jewelry, Inc.,* 294 Fed. Appx. 615 (2nd Cir. 2008)

6.  Excerpts of design patents (excerpted from Dkt 46)

7.  Images of competitors' products from websites (Dkt 56, Exhibit A)

8.  Photographs of examples of competitors' products from Exhibit 7

9.  Excerpt from 30(b)(6) Deposition of Jeffrey Kruckman

10. Sample emails from consumers

11. Sample documents re unsolicited media attention, weblogs, and websites on the Internet

I.    INTRODUCTION

A.    The Material Undisputed Facts Favor Summary Judgment

Walgreen has no real defense.  On the law, its papers are replete with distortions and outright fabrications of legal principles.  On the facts, it has a single witness who exhibited memory loss in his deposition, continually claiming not to know or remember critical facts, or refusing to testify on them and essential issues.  *See,* Supp. Dec. of R. Weisberg of 7-16-09 (Dkt 93) at ¶¶13-17; Dkt 77 at 23.  On top of all this, Walgreen has not produced documents and, in fact, has refused to produce documents in its possession supporting Plaintiffs' position, such as Walgreen's advertising.  In view thereof, all negative inferences should be taken against it.[1]

In contrast, Plaintiffs' case rests on abundant admissible evidence.  *See*, Dkt 94 (LNC Reply in Support of Separate Statement of Facts dated 7-16-09).  Plaintiffs have extensive documentation, including, photographs of the infringing conduct, emails, design patents, physical samples, images of competitors' products, news articles, and so forth, as well as direct testimony from the individuals involved. Dkt. 45 and 77. This evidence is essentially unrebutted.[2]

B.    Certain Issues Remain for the Jury

Plaintiffs have partially moved on a subset of matters, namely, certain of the more complex legal issues.  On those issues, facts not reasonably in dispute demonstrate that summary judgment is warranted.  Neither side has moved on other issues, such as various additional claims under federal and New York law[3].  Thus, certain remaining matters must be determined by a jury, whether in New York, or in Florida if the Court grants Plaintiffs' pending motion to transfer.

---

[1] Walgreen has produced a total of only <u>45 pages</u> (which were produced at a 30(b)(6) deposition as a means of attempting to evade having to testify on numerous topics). Dkt 93 at 12-13.  In contrast, Plaintiffs have produced over 200,000 pages of relevant documents in discovery.

[2] Plaintiffs also proffered an expert report on secondary meaning, likelihood of confusion, and non-functionality before any discovery cutoff, with offers to conduct discovery on it and to depose the expert even past the cutoff, which offers Walgreen refused.  Dkt 81 (at ¶¶65, 88-91, Ex. 25).  That report was stricken by the Court without any motion practice or other opportunity for submissions on the record, which it is respectfully submitted is reversible error.

[3] *See e.g.,* Dkt 1, Complaint, Cause of Actions for Federal Trademark Dilution at 11-12, and Injury to Business Reputation and Dilution under NY General Business Law §360-1 at 14.

1

II.    WALGREEN HAS VIOLATED NEW YORK LAW

    A.    The Broad Parameters of New York State Law are Well Established

    New York law and federal law are not the same:  New York law is based on a more expansive definition of unfair competition.[4]  "[T]he Second Circuit has made clear that unfair competition is not limited to the categories of infringement that have been ... recognized by courts, but instead encompasses a broad range of conduct."  *Linkco, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 500-501 (S.D.N.Y. 2002) (collecting cases)[5].  Thus, this Court's decisions regarding NY common law unfair competition have not required secondary meaning[6], even after the Supreme Court's *Samara* decision of March 2000.  *See e.g., Cartier, Inc. v. Four Star Jewelry Creations Inc.,* 348 F. Supp. 2d 217, 250-251 (S.D.N.Y. 2004)[7]  As the leading treatise on trademark law continues to explain in its latest supplement, this is a known difference between New York law and the laws of other jurisdictions.[8]

    Walgreen's allegation that the Supreme Court opined on this is dead wrong.  Dkt 70 at 7.  As a review of *Samara* demonstrates, the Supreme Court never addressed New York or any other state law; it only discussed federal law under Section 43(a) of the Lanham Act.  *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.,* 529 U.S. 205, 216, 120 S.Ct. 1339, 1345 (2000).  Walgreen likewise misleadingly cites other precedents out of context and for propositions that they do not actually hold,

---

    [4]  *Telecom Int'l Am., Ltd. v. AT&T Corp.,* 280 F.3d 175, 197-198 (2nd Cir. 2001)(NY unfair compeition is a broad and flexible doctrine depending more upon the facts than most causes of action, and encompassing any form of commercial immorality, endeavoring to reap where one has not sown, or taking the skill, expenditures and labors of a competitor).

    [5]  *See also, Perfect Fit Industries, Inc., v. Acme Quilting Co., Inc.,* 618 F.2d 950, 952-954 (2nd Cir. 1980) (New York unfair competition claims do not require secondary meaning).

    [6] Plaintiff has <u>never</u> conceded lack of secondary meaning – rather, they have extensive evidence of it.  They simply stated that the New York claims do not even require those showings.

    [7]  *See also, SGC Commun. Res., LLC v. Seminar Ctr., Inc.,* 2001 U.S. Dist. LEXIS 2862, 22-23 (S.D.N.Y. 2001) (J. Chin) (trade dress case holding that a NY common law unfair competition claim requires actual confusion or likelihood of confusion, and bad faith).

    [8]  *See,* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition, "New York Rule": Substitutes for Secondary Meaning,* § 15:12 (July 2009) (Under the "New York Rule", certain types of unfair practices may call for judicial remedies even without a showing of secondary meaning).

2

to try and confuse the Court on this issue.[9]

Furthermore, a property right is certainly implicated here – "New York courts have found that persons have a protectable property interest in their "labor, skill, expenditure, name and reputation" *Linkco,* 230 F. Supp. 2d at 502. Thus, Plaintiffs have a protectable interest in their labor, skill, and expenditure in designing their products and packaging; in Luv n' care's name, which was deceptively associated with infringing products (*see,* Exhibit 1); and in their reputation, which is tarnished by confusion, and complaints over infringements thought to originate from them (*see e.g.,* Exhibit 3).

In fact, circumstances such as those here even violate federal law without needing to show secondary meaning. A second comer violates Section 43(a) by falsely representing his goods as those of the trademark owner. *See, Sutton Cosmetics (P.R.) Inc. v. Lander Co., Inc.,* 455 F.2d 285, 287-88 (2nd Cir. 1972). That is exactly what Walgreen did. In posting signage misrepresenting the infringing products as coming from Luv n' care, Walgreen directly violated Section 43(a) of the Lanham Act. *See,* Exhibit 1. In fact, a claim of "passing off" may be established even if the goods are not confusingly similar; the wrong lies in the misrepresentation of the source. *See Warner Bros. v. American Broadcasting Co.,* 720 F.2d 231, 247 (2nd Cir. 1983); *Thompson Medical Co. v. Pfizer, Inc.,* 753 F.2d 208, 215 (2nd Cir. 1985). Walgreen's misrepresentation of infringing products as having come from Luv n' care is certainly a false designation of origin and false advertising under Section 43(a) of the Lanham Act, and under any applicable provisions of New York law.

B.    New York Law is Not Preempted

It is well settled in this Circuit that the Lanham Act does not preempt the New York law of unfair competition. *20th Century Wear, Inc. v. SanMark-Stardust Inc.,* 747 F.2d 81, 93 n. 15 (2nd Cir. 1984). The protection afforded by section 43(a) is cumulative of the broader remedies provided for by common law and does not preempt state law causes of action. *Id.*[10]

---

[9]    None of the cases cited by Walgreen state that secondary meaning or proof of non-functionality is required under New York common law, nor do they hold that New York law is bound by the holding in *Samara. See also,* Dkt. 91 Ex. 1 and ¶¶ 3-8. Even a law student working for Walgreen would know better than to cite these cases for the proposition that secondary meaning or non-functionality are required under New York law.

[10]    *See also*, *International Order of Job's Daughters v. Lindeburg and Co.,* 633 F.2d 912, 915-16 (9th Cir. 1980) ("many states ... protect against trademark infringement and other types of

Furthermore, the Supreme Court has confirmed that the States are free to place conditions on the use of trade dress, including the regulation of deceptive simulation of trade dress. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 154, 109 S.Ct. 971 (1989). Furthermore, the Lanham Act has harmoniously coexisted with state unfair competition laws for decades, without disapproval by Congress, making the case for federal preemption particularly weak. *See e.g., Bonito Boats,* 489 U.S. at 166-167 (analogously referring to the coexistence between state law and federal patent law).

Moreover, as opposed to federal law, NY common law specifically requires a showing that the commercial conduct was conducted in bad faith, making the New York rule narrower than the federal one in this respect. The two legal regimes are distinct, serving different purposes. Nor is there a bar to competition – other parties have had no problem fairly designing and selling such products.

C.    The Accused Activities are Also Violations of Section 349

Section 349 is directed to deceptive acts or practices in the conduct of any business, trade or commerce in the service of any service in this state. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 24-24 (1995). The legislative history indicates that it was intended to afford a practical means of halting consumer frauds. *Id.* at 25. A plaintiff must show that the acts or practices have a broader impact on consumers at large, are deceptive or misleading in a material way, and have injured the plaintiff. *Id.* Here, Walgreen has engaged in a practice of "bait and switch" and falsely advertised or promoted its products as coming from Luv n' care. Furthermore, the practice of misleading consumers by commissioning and co-mingling misleading look-a-likes appears to be a consistent and standard operating practice of Walgreen. *See,* Dkt 92, Dec. of Nouri E. Hakim dated 7-16-09 at ¶¶2-4 and Exhibits 1-2 thereto.

III.    PLAINTIFFS PRODUCED DIRECT EVIDENCE OF DECEPTION AND PALMING OFF

Clearly, there was deception and palming off by Walgreen. Consumers don't independently know whether or not WAGI is one of Luv n' care trademarks. Walgreen's deceptive manner of presentation and sale was deliberately meant to mislead them into believing it is. Walgreen promoted

---

unfair competition, such as misappropriation of the fruits of another's labor ... These protections need not track those provided by the Lanham Act"); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 372 n. 3 (1st Cir. 1980) (The Supremacy Clause only bars state law that would permit the sort of confusing or deceptive practices the Lanham Act sought to prevent).

and sold the accused products as coming from Luv n' care (*see,* Exhibit 1), falsely designating Luv n' care as the source or origin. This was not a mistake – it was a widespread and deliberate practice throughout Walgreen's stores, viewed by multiple witnesses at multiple times.[11]

## IV.    WALGREEN HAS DELIBERATELY VIOLATED THE LANHAM ACT

### A.    The Packaging Claims are Fully Supported

Plaintiffs' packaging claims were expressly set forth in the Complaint – Walgreen's allegation that they were not is particularly misleading considering that Walgreen expressly set forth affirmative defenses to those packaging claims in its Answer.[12]

The packaging claims require less analysis because they fall under a more relaxed standard – either inherent distinctiveness *or* secondary meaning can be shown. *Wal-Mart,* 529 U.S. at 210-11. Luv n' care's packaging has a unique combination and arrangement of elements (*see,* Exhibit 2 and Dkt 45 at 18), which was "selected from an almost limitless supply of patterns, colors and designs". *Paddington Corp. v. Attiki Importers & Distribs., Inc.,* 996 F.2d 577, 584 (2nd Cir. 1993); *Perfect Fit,* 618 F.2d at 953. There is no evidence in the record showing any industry practice of using packaging having such an appearance. *Paddington,* 996 F.2d at 584. Thus, the packaging is inherently distinctive. *Id.* Moreover, Plaintiffs have also proven secondary meaning – so it prevails on its packaging claims under either or both standards (only one of which need be legally shown).

Additionally, the allegation that the packaging has "merged" with the product is ridiculous. Dkt. 70 at 22. To anyone but Walgreen, there can be no dispute that Luv n' care's packaging (shrink wrap with words, colors, and images printed on it) is separate, and to be removed from, the product itself. *See e.g.,* Exhibit 2.

---

[11] *See,* Dkt 52, ¶¶ 57, 58 & Ex. 4; Dkt. 47, ¶¶ 30, 31 & Ex. 5; Dkt. 50, ¶¶ 56-58 & Ex. 1; Dkt. 48, ¶¶ 56-58 & Ex. 7).

[12] *See,* the Complaint (Dkt 1 at ¶¶ 2, 13-19, 22-28, and 57-114) which expressly alleges that "Defendants" Kmart and Walgreen use infringing packaging, and Dkt 1 ¶ 83("Defendants are intentionally using Plaintiffs'. . . packaging to trade off of Plaintiffs' reputation and goodwill and to create deception in the marketplace."). *See also,* Walgreen's Answer, Dkt. 12 at ¶¶ 2, 13-19, 22-28, 57-114, Sixth Aff. Defense (alleging that the packaging trade dress is functional); Fifth Aff. Defense (alleging that the packaging trade dress is not famous).

B.    There is Substantial Unrebutted Evidence of Secondary Meaning

Plaintiffs' briefs (Dkt 45 and Dkt. 77) and submissions set forth substantial evidence of secondary meaning.  These include, tremendous sales (Dkt 45 at 13-15, and Dkt 77 at 9-10); advertising nationwide by giant retailers such as Walmart and even Walgreen[13] with extremely large numbers of retail outlets carrying and promoting the product (Dkt 45 at 16-17, Dkt 77 at 10-11); unsolicited media attention, including, articles, emails, and blogs raving about these products (Exhibits 10-11; Dkt 45 at 15-16 and Dkt 77 at 11-12); intentional copying (Dkt 45 at 17-18 and Dkt 77 at 12); and so forth.  This evidence is all essentially unrebutted.

For example, it is undisputed that Luv n' care's products rapidly became the top no-spill cups in the country within a very brief period[14] (Dkt 77 at 10), <u>dominating</u> the market <u>with far more cups sold than babies born</u>.  Dkt 45 at 13-15, and Dkt 77 at 10.  That alone is compelling evidence.

Secondary meaning in these cups existed <u>before</u> Walgreen entered the picture – the consumer recognition and success is <u>why</u> Walgreen specifically wanted to carry Luv n' care products in its stores (Dkt 77 at 2, 4-5, 10).  Consumer demand for Luv n' care products was also why Walgreen copied instead of designing their own cups or just carrying other competitors' cups.[15]

Indeed, that intentional copying is itself strong proof of secondary meaning.  *20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 815 F.2d 8, 10 (2nd Cir. 1986) ("A finding that Sanmark had intentionally copied 20th Century's mark could also be persuasive, ***if not conclusive***, evidence of consumer recognition and good will") (emphasis added).  "This intentional simulation ... supports plaintiff's argument that it had succeeded in creating consumer recognition and good will for its product's dress which defendant was seeking to appropriate"; *RJR Foods, Inc. v. White Rock Corp.,*

---

[13]  Walgreen has refused to produce its advertisements so all negative inferences should be taken against it on this point.

[14]  *See e.g., PAF S.r.l. v. Lisa Lighting Co. Ltd.*, 712 F. Supp. 394, 407-408 (S.D.N.Y. 1989) (product became the second best selling lamp in a relatively short period, demonstrating secondary meaning to sustain a claim under the Lanham Act).

[15]  If price was an issue, why didn't Walgreen just discontinue the Luv n' care product and rely on sales of the competitor's cups they were selling – such as Playtex's, Gerber's and Avent's?  Because they wanted and needed to trade off of the extensive consumer recognition of LNC's products.  Thus, they specifically copied Luv n' care's cups, and no one else's.

603 F.2d 1058, 1060 (2nd Cir. 1979). There can be no doubt that Walgreen deliberately copied here. The products and packaging (Ex. 2), and the circumstances (Dkt 45 at 2-4 and Dkt 77 at 2-3, 12), lend themselves to no other reasonable conclusion.[16]

Walgreen bought and then copied Luv n' care's cups because Luv n' care's products had extensive consumer recognition and demand. That's why Walgreen chose to copy Luv n' care, not Playtex, not Gerber, and not Avent. It wanted to trade off of the extensive recognition of Luv n'care products, the national favorite among parents. Walgreen has no evidence whatsoever rebutting this – not a single witness or document to the contrary.

Unable to answer on the undisputable facts, Walgreen distorts the law. For example, Walgreen's requirement of apportionment via percentages (Dkt 43 at 15) is a fabricated rule, without a shred of legal authority in support (*id*). Likewise, the Court of Appeals has never required a "linkage" between sales and design features (Dkt. 70 at 19). In fact, common sense is contrary to Walgreen's position. The degree and extent of sales itself <u>inherently</u> demonstrates the degree of consumer knowledge and recognition: obviously, the more sales there are, the more consumers see, know about, and recognize the products.[17] Moreover, there are few products that mothers see more frequently, hold more often, or know better, than the cups they regularly use to feed their children.[18]

Walgreen's allegation that surveys are mandatory is also wrong. There is no such requirement by the Second Circuit.[19] Walgreen makes incorrect statements hoping no one will notice that the

---

[16] Walgreen's position that there was no copying is ridiculous. Furthermore, it has not produced a single design drawing or document supporting that position. The fact that it chose to use Royal King, a known pirate of Luv n' care's line (*see,* Exhibit 4), also speaks volumes.

[17] Furthermore, it is the look which attracts consumers to these products on the shelves, leading them to buy them. Dkt. 52, ¶22, 25.

[18] The repeated use of the NUBY® trademark on the products only further contributes to secondary meaning, causing consumers to associate the look with Luv n' care's NUBY® brand.

[19] *Thompson,* 753 F.2d at 217 (2nd Cir. 1985) (in assessing the existence of secondary meaning, no single factor is determinative and every element need not be proved); *LeSportsac, Inc. v. K Mart Corp.,* 754 F.2d 71, 78 (2nd Cir. 1984) (no requirement that survey evidence of secondary meaning or customer confusion be introduced).

cases it cites are all from <u>other</u> circuits (*see,* Dkt 70 at 19, fn 3).[20]

Nor does Walgren cite any legal authority that product designs must be registered.[21]  In fact, though, Luv n' care has already applied for a design patent on its designs, and plans to continue to file for yet further ones. Dkt. 77 at 22.

C.    The Evidence of Likelihood of Confusion is Also Unrebutted

Plaintiffs' briefs have amply demonstrated likelihood of confusion.  Dkt 45 at 19-22.  The legal factors are strongly in Plaintiffs' favor.[22]  Dkt 45 at 19-22.  Walgreen has no real evidence on any of these factors – no testimony and no facts.

Walgreen's activities were clearly designed to produce confusion and trade off of Luv n' care's reputation.  *See,* Exhibits 1-2.  Even by itself, such copying alone is strong evidence of likelihood of confusion.  "In assessing the likelihood of confusion to the public, an important factor is whether or not the second comer created the similar trade dress intentionally.  <u>If there was intentional copying the second comer will be presumed to have intended to create a confusing similarity of appearance and will be presumed to have succeeded.</u>" *Perfect Fit,* 618 F.2d at 954. Walgreen has no evidence to overcome this presumption.

Walgreen's attempt to protest Plaintiffs' evidence also rings hollow.  As noted above, consumers don't have knowledge of all the trademarks owned by a given company.  Thus, Walgreen placed the WAGI copy under signs bearing the Luv n' care name to confuse consumers into thinking that WAGI is another trademark of Luv n' care, like NUBY.  *See,* Exhibit 1.  Again, this alone is a violation of the Lanham Act (regardless of issues of secondary meaning or functionality), since Walgreen deliberately used the Luv n' care name as a false designation of origin for the infringing products.  *See e.g. Sutton,* 455 F.2d at 287-88,

---

[20]  Additionally, Plaintiffs had discussed survey evidence in its stricken expert report.

[21]  Contrary to Walgreen's misrepresentation (Dkt. 70, p. 19), Luv n' care <u>has</u> identified cases finding trade dress infringement for unregistered product designs.  *See,* Dkt 45 at 5; *Cartier, Inc. v. Sardell Jewelry, Inc.,* 294 Fed. Appx. 615, 617 (2nd Cir. 2008) (unpublished) (Exhibit 5).

[22]  Luv n' care also proffered expert evidence regarding likelihood of confusion on a timely basis; however, it is respectfully noted that the Court struck it without any motion practice on the record, despite the fact that the report was timely offered before the applicable cutoff.

Likewise, with respect to actual confusion, it can be inferred, and surveys need not be produced.[23] Furthermore, there is reliable evidence here. For example, a consumer attested that she went to Walgreen the year before this litigation was commenced, and bought an illegal knockoff, confused into believing it was Luv n' care's. *See,* Exhibit 3 (and Dkt. 45, Ex. 6). She and Luv n' care only learned about her mistake when she complained and sought to return the infringement to Luv n' care – thinking it to be a genuine Luv n' care product. Indeed, even Walgreen's 30(b)(6) corporate representative – their buyer for these products – was confused. *See,* Exhibit 9; Dkt. 93 at ¶23.

D.    The Appropriate Legal Standards Demonstrate the Trade Dress is Nonfunctional

When there are alternative designs that could perform the "function" in question, the trade dress under review is legally nonfunctional. *Cartier,* 294 Fed. Appx. at 620-621 (Exhibit 5). Here, Luv n' care has presented extensive evidence regarding alternative designs for these no-spill cup products. *See,* attached Exhibit 6 (excerpts of design patents; from Dkt 46); Exhibit 7 (websites showing competitor's products; from Dkt 56, Exhibit A); and Exhibit 8 (enlargements of several competitor's products; Dkt. 96). This alternative design evidence is unrebutted in Walgreen's brief (Dkt 70 at 19-21), demonstrating that Plaintiffs are entitled to summary judgment on this issue.[24]

Walgreen knows its position is wrong, so it tries to reduce the trade dress into elements, arguing that Plaintiffs have made statements on websites and so forth regarding the benefits of those elements, and arguing that competitors use those elements[25]. Those arguments are all red herrings. *See, Cartier,* 294 Fed. Appx. at 620-621 (Exhibit 5) (it is improper to break down trade dress into

---

[23] *Getty Petroleum Corp. v. Island Transp. Corp.,* 878 F.2d 650, 656 (2nd Cir. 1989) (record sufficient to support finding of actual confusion without surveys or anecdotal evidence. Non-Getty product sold to consumers under the Getty trademark without any notice or suggestion it was not Getty gasoline. Common sense to reason that purchasers, who would have no way of knowing the truth, were certainly deceived by and unaware of the substitution"); *LeSportsac,* 754 F.2d at 78 (survey not necessary for a finding of likelihood of confusion).

[24] Walgreen does not and cannot deny the existence of all of these alternative designs, so it provides misleading statements of law, falsely claiming that alternative designs are irrelevant (Dkt 43 at 23), which is totally wrong. *See, Cartier,* 294 Fed. Appx. at 617 (Exhibit 5).

[25] Walgreen also deliberately confuses the lay meaning of functionality with the legal meaning. Whether something has a function or a use is not the standard (*see* Dkt. 77 at 15); the standard is whether it is essential. *See, Cartier* 294 Fed. Appx. at 620 (Exhibit 5)*.

9

individual elements and call them functional, when the combination and arrangement of those elements is what comprises the trade dress at issue); *LeSportsac,* 754 F.2d at 76 (despite functions of individual elements of sports bag, bag is nonfunctional when viewed in its entirety); Dkt 45 at 22; Dkt 77 at 16-19. "One could no more deny protection to a trade dress for using commonly used elements than one could deny protection to a trademark because it consisted of a combination of commonly used letters of the alphabet." *Paddington,* 996 F.2d at 584.

The utility patents are yet another red herring. Dkt 77 at 20-22. The central advance claimed in the utility patents is the <u>valve</u> which make these products no-spill. Those patented valves are <u>inside</u> the products, as opposed to the trade dress here which is to the <u>outside</u> appearance of the products. The utility patents are irrelevant, since they don't claim the applicable trade dress.

Likewise, this case is nothing like *Traffix. See, Traffix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 121 S. Ct. 1255 (2001). There, trade dress protection was asserted to a single feature, which feature was claimed in two utility patents. *Traffix,* 532 U.S. at 30-31.[26] In contrast, this case relates to the overall appearance of a <u>combination</u> of features which is <u>not</u> claimed in Plaintiffs' utility patents. Indeed, if Plaintiffs' utility patents claimed the trade dress at issue, <u>then why are there no patent causes of action in this case</u>? Despite the fact that the patents have not expired yet (Dkt. 92 at 5), not a single one of those patents has been asserted here, which demonstrates that the asserted trade dress and the patents' claims are different. Walgreen's position is baseless.

The fact that the Patent Office itself has never rejected Luv n' care's designs on grounds of functionality yet further demonstrates that Walgreen is simply and totally wrong. Dkt 77 at 22.

This case is not about functional trade dress essential to making a no-spill cup. Others have had no problem designing products that perform the same no-spill cup functions but look very different from those of Luv n' care. *See e.g.,* Exhibits 6-8. This case is about deliberate deception by Walgreen to trade off of the extensive recognition of Luv n' care's products in the marketplace.

V.     CONCLUSION

It is respectfully requested that Plaintiffs' Motion for Partial Summary Judgment be granted for all of the reasons set forth above.

---

[26] *Traffix* was an attempt to extend the term of protection for a patented feature, after the patents on it expired, unlike this case, in which none of the patents have expired. Dkt. 92 at ¶5.

Dated: July 16, 2009                    Respectfully submitted,

**LAW OFFICES OF MORRIS COHEN, P.C.**
One Penn Plaza, Suite 2527
New York, NY 10119
Telephone: 212-244-4111 x226
Facsimile: 212-563-7108
and

**FELDMAN GALE, P.A.**
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone:  305-358-5001
Facsimile:  305-358-3309

By:   /s/Morris E. Cohen
 Morris E. Cohen / MC-4620
 E-mail: mcohen@ipcases.com

 James A. Gale / Fla. Bar no. 371726 (Pro Hac Vic)
 E-mail: JGale@FeldmanGale.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 16th day of July 2009, I electronically filed the foregoing document with the Clerk of the Court using its CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified either via transmission of Notices of Electronic Filing generated by this Court's CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.


 /s/Morris E. Cohen
MORRIS E. COHEN


## SERVICE LIST

*Luv N' Care, Ltd.,  et al. v. Walgreen Co., et al.*
Case No. 08-civ-4457 (DC)
United States District Court, Southern District of New York

Alan Weisberg
**aweisberg@cwiplaw.com**
Jason Buratti
jburatti@cwiplaw.com
Jeffrey H. Kamenetsky
**jkamenetsky@cwiplaw.com**
Christopher & Weisberg, P.A.
200 East Las Olas Blvd., Suite 2040
Ft. Lauderdale, FL 33301
Phone: 954-828-1488
Facsimile: 954-828-9122
*Via CM/ECF.*

12