

LEXSEE 2008 U.S. APP. LEXIS 19277

**Cartier, Inc., a division of Richemont North America, Inc. and Cartier International, B.V., Plaintiffs-Counter-Defendants-Appellees, v. Sardell Jewelry, Inc. and Eli Sardar, Defendants-Appellants, Samo's Sons, Inc., Freddie Samuel and Gabriel Efraim Jewelry, Inc., Defendants-Counter-Claimants, L&M Jewelry Creations, Inc., David Rappaport, John Does 1-5 and AWAD II, Inc., Defendants.**

No. 07-1813-cv

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

*294 Fed. Appx. 615*; *2008 U.S. App. LEXIS 19277*

**September 8, 2008, Decided**

**NOTICE:**   PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** *Cartier v. Samo's Sons, Inc., 2007 U.S. Dist. LEXIS 25866 (S.D.N.Y., Apr. 4, 2007)*

**COUNSEL:** [**1] FOR APPELLANTS: Noel W. Hauser, Noel W. Hauser & Associates, New York, New York.

FOR APPELLEES: Milton Springut, Kalow & Springut LLP, New York, New York.

**JUDGES:** PRESENT: HON. PETER W. HALL, HON. DEBRA A. LIVINGSTON, Circuit Judges, HON. COLLEEN MCMAHON, District Judge. *

   *   The Honorable Colleen McMahon, United States District Court Judge for the Southern District of New York, sitting by designation.

**OPINION**

[*617]  **SUMMARY ORDER**

UPON DUE CONSIDERATION of this appeal from a judgment of the United States District Court for the Southern District of New York (Berman, *J.*), it is hereby ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Defendants appeal from an April 19, 2007 judgment of the district court granting plaintiffs summary judgment on their trade dress infringement claim pursuant to Lanham Act *§ 43(a)*, awarding plaintiffs $ 94,217.28, and permanently enjoining defendants from infringing upon the Tank Francaise trade dress. We assume the parties' familiarity with the facts and procedural history of the case.[1]

   1   Plaintiffs have made a motion for this Court to take judicial notice of the trademark registrations for the Tank Francaise watch. Because we affirm the district court's [**2] decision based on the record that was before it, we see no need to take judicial notice of the recent trademark registrations.

**A. Summary Judgment**

Defendants argue that the district court improperly granted summary judgment to plaintiffs on their trade dress infringement claim because (1) the Tank Francaise trade dress has not acquired a secondary meaning and thus is not distinctive; (2) the Tank Francaise trade dress is functional; and (3) there is no likelihood of confusion between defendants' watches and plaintiffs' Tank Francaise watch. "We review a grant of summary judgment *de novo* applying the same tests used by the district court." *Topps Co., Inc. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 67-68 (2d Cir. 2008)*. "Imposing this procedural remedy is appropriate only when there is no genuine issue with regard to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* at *68*. "When deciding a summary judgment motion, a court

must construe all the evidence in the light most favorable to the nonmoving party . . . and draw all inferences and resolve all ambiguities in that party's favor." *Id.*

"A product's trade dress encompasses the overall design and appearance [**3] that make the product identifiable to consumers." *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 269 F.3d 114, 118 (2d Cir. 2001). Section 43(a) of the Lanham Act protects trade dress. [2] To prevail on a claim for trade dress infringement under § 43(a), the plaintiff must prove "(1) that the mark is distinctive as to the source of the good, and (2) that there is a likelihood of confusion between its good and the defendant's." *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 115 (2d Cir. 2001). The plaintiff must prove distinctiveness by showing secondary meaning, "that in the minds of the public, the primary significance of the mark is to identify the source of the product rather than the product itself." *Id.* (internal quotation marks omitted). The plaintiff must also show that an unregistered trade dress is not functional. *Id. at 116.* "A product feature is functional . . . if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Id.* (internal quotation marks omitted). We address each element: (1) distinctiveness, (2) likelihood of confusion, and (3) functionality, in turn below.

> 2   *Section 43(a)* provides, in pertinent part:
>
> (1) Any [**4] person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . .
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
>
> *15 U.S.C. § 1125(a).*

**[*618] (1) Distinctiveness**

The first question is whether the Tank Francaise trade dress is distinctive because it has acquired a secondary meaning. "Whether a trade dress has acquired a secondary meaning is a factual matter subject on review to the clearly erroneous test." *Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.,* 65 F.3d 1063, 1070 (2d Cir. 1995). To determine whether secondary meaning has attached, the court considers six factors: "(1) advertising expenditures, (2) [**5] consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." *Id.* (quoting *Centaur Communications, Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1222 (2d Cir. 1987)). We address only the factors concerning which defendants argue the district court erred: advertising expenditures, consumer studies, and attempts to plagiarize the trade dress.

Defendants argue that although Cartier spends a great deal on advertising, it is not clear that those monies go to promoting the Tank Francaise. We disagree. It is clear from the documents submitted by Cartier that Cartier spends a significant amount of money on advertising in general and also specifically for the Tank Francaise. It was not clearly erroneous for the district court to have concluded that this factor weighed in favor of finding that the Tank Francaise had acquired a secondary meaning. *See Mana Prods., Inc.,* 65 F.3d at 1070.

As to consumer studies, Cartier submitted a survey (the "Lirtzman survey") conducted to determine whether the Tank Francaise had achieved a secondary meaning; the survey had been conducted [**6] in the course of Cartier's litigation of a different case. [3] The Lirtzman survey indicated that there was a 60% recognition rate among relevant consumers for identifying the Tank Francaise with a single source. The district court appropriately found that this survey also mitigated in favor of finding that the Tank Francaise had acquired a secondary meaning. [4]

> 3   In *Cartier, Inc. v. Four Star Jewelry Creations, Inc.,* 348 F. Supp. 2d 217 (S.D.N.Y. 2004), Judge Motley held that the defendant's watches infringed on the trade dress of a number of Cartier watches, including the Tank Francaise.
>
> 4   Defendants argue that the Lirtzman survey followed another survey (the "Roper survey"), which had determined that the Tank Francaise did not have a secondary meaning. The Lirtzman survey had been conducted in response to the Roper survey, which had been commissioned by the *Four Star Jewelry* defendants. Although the Roper survey did indeed find that the Tank Fran-

294 Fed. Appx. 615, *; 2008 U.S. App. LEXIS 19277, **

caise did not have a secondary meaning, that survey was not before the district court in this case. Moreover, because the Lirtzman survey reports that the Tank Francaise has achieved a secondary meaning in the relevant consumer market, we agree [**7] with the district court on this issue.

To support their argument relating to attempts to plagiarize the mark, plaintiffs produced evidence that there are many different Tank Francaise knockoffs or lookalikes being sold by various merchants. That there are a number of merchants who use the words "Cartier style" and "Tank style" or even "Tank Francaise" supports the plaintiffs' argument that Tank Francaise has acquired secondary meaning. The district court's conclusion on this factor was not clearly erroneous. *See Mana Prods., Inc., 65 F.3d at 1070*.

Because the district court found that the other factors weighed in favor of the conclusion that the Tank Francaise trade dress is distinctive because it has acquired a secondary meaning, and because the defendants' arguments to the contrary do nothing to disturb that finding, we conclude [*619] that the district court's decision was not clearly erroneous.

### (2) Likelihood of Confusion

"The likelihood-of-confusion inquiry turns on whether numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance into the marketplace of defendant's mark." *Playtex Prods., Inc. v. Georgia-Pacific Corp., 390 F.3d 158, 161 (2d Cir. 2004)* [**8] (internal quotation marks omitted). There must be a "probability of confusion, not a mere possibility." *Id.* (quoting *Nora Beverages, Inc., 269 F.3d at 121*). This Court applies the eight factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961)*, to determine the likelihood of confusion: (1) the strength of the plaintiff's mark; (2) the similarity of the parties' marks; (3) the proximity of the parties' products in the marketplace; (4) the likelihood that the plaintiff will bridge the gap between the products; (5) actual consumer confusion between the two marks; (6) the defendant's intent or any bad faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the relevant consumer group. *Playtex Prods., Inc., 390 F.3d at 162*. "Where the predicate facts are beyond dispute, the proper balancing of these factors is considered a question of law." *Id.* Courts should not treat any one factor as dispositive, nor treat the inquiry as a mechanical process; instead, a court "should focus on the ultimate question of whether consumers are likely to be confused." *Id.*

"On appeal from a grant of summary judgment, the findings with [**9] respect to predicate facts underlying each *Polaroid* factor are reviewed with 'considerable deference' to the district court," but we review its balancing of those factors de novo. *Id.* We address here only those factors upon which defendants claim the district court erred in its decision: (a) proximity of the parties' products; (b) likelihood of bridging the gap; (c) sophistication of the buyers; and (d) quality of the defendants' product. We affirm the district court's conclusions on the other four factors, which it found weigh in favor of finding a likelihood of confusion, because we give considerable deference to its findings in this regard. *See id.*

The district court found that because both defendants' and Cartier's watches are luxury watches, the proximity of the products is sufficiently close to create a likelihood of confusion. The proximity factor "focuses on whether the two products compete with each other. . . . [,] serve the same purpose, fall within the same general class, or are used together . . . ." *Savin Corp. v. Savin Group, 391 F.3d 439, 458 (2d Cir. 2004)*. Giving proper deference to the district court's finding that both watches are luxury watches and thus occupy the [**10] same market, we agree that the parties' products are close in the marketplace. Defendants argue that because the Tank Francaise is sold only in Cartier boutiques or by authorized Cartier dealers and the Geneve watches are sold by lower-end jewelry merchants, the products are not proximate in the marketplace. We disagree and choose not to construe the relevant marketplace so narrowly.

The district court reasoned that because the goods here compete in the same market, there is no gap for plaintiffs to bridge and thus the "bridging the gap" factor is inapplicable. This factor considers the likelihood that plaintiff will enter into the defendant's market--it protects the plaintiff's interest in being able to enter a related field at some future time. *Id. at 459-60*. Again reading "market" narrowly, defendants attempt to argue that they do not occupy the same market because Cartier watches cannot and will not be sold in the same stores where Geneve [*620] watches are for sale. They cite no law to support such a narrow reading of this factor, and thus we agree with the district court that it does not apply because both parties' products are already in the same market.

As to the sophistication of the [**11] relevant consumer group, the district court found that there would not be confusion, because it recognized that sophisticated buyers interested in luxury products would not mistake a Geneve for a Cartier. Without expressly saying so, the district court appears to have found that this factor weighs in favor of defendants. Indeed, "[a]s the theory goes, the more sophisticated the purchaser, the less likely

he or she will be confused by the presence of similar marks in the marketplace." *Savin Corp., 391 F.3d at 461*. We agree that it is unlikely that the relevant consumer group here would be confused by defendants' product. Because the district court concluded that this factor weighs in favor of defendants, we assume that the defendants are arguing that this factor should have figured more prominently in the balancing of the factors, which we address below.

As to the quality of the defendants' product, the district court ruled that this factor weighed in favor of plaintiffs because the inferior quality of defendants' watches could cause injury to plaintiffs if people think defendants' watches came from the same source as plaintiffs'. ] We have said, however, that "[a] marked difference [**12] in quality . . . tends to reduce the likelihood of confusion in the first instance, because buyers will be less likely to assume that the senior user whose product is high-quality will have produced the lesser-quality products of the junior user." *Id. at 461*. It is undisputed that defendants' watches were of a quality inferior to that of the plaintiffs' watches. This factor, therefore, weighs in favor of defendants, not plaintiffs, because the difference in quality makes it less likely that consumers would confuse the two products. However, since the district court's analysis of the other seven Polaroid factors was indisputably correct, we are not convinced that this error led to an incorrect result in the case. We therefore affirm the district court's conclusion that, on balance, there is a likelihood of confusion based on the Polaroid factors. *See Playtex Prods. Inc., 390 F.3d at 162*.

### (3) Functionality

*Section 43(a)(3)* specifically provides: "In a [**13] civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." *15 U.S.C. § 1125(a)(3)*. Applicable to our analysis here, trade dress is functional, and thus not protectable, when it is "essential to the use or purpose of the article." *Yurman Design, Inc., 262 F.3d at 116* (quoting *TrafFix Devices Inc. v. Marketing Displays, Inc., 532 U.S. 23, 32, 121 S. Ct. 1255, 149 L. Ed. 2d 164 (2001))*. A product design is functional when "certain features of the design are essential to effective competition in a particular market." *Landscape Forms, Inc. v. Columbia Cascade Co., 70 F.3d 251, 253 (2d Cir. 1995)*. In other words, "the absence of alternative constructions performing the same function . . . renders the feature functional." *Brandir Int'l, Inc. v. Cascade Pacific Lumber Co., 834 F.2d 1142, 1148 (2d Cir. 1987)*.

The district court found that the Tank Francaise trade dress was not functional. Defendants argued below, as they do here, that the most prominent features of the Cartier design, the roman numerals and its square shape, are purely functional. [**14] The district court explained that it was [*621] improper for defendants to break the trade dress down into specific elements and call them functional, because plaintiffs' claim is that the combination and arrangement of those design elements comprise the trade dress at issue. That the design features perform a function, the district court reasoned, is not dispositive because the ultimate test is whether the feature is dictated by the functions to be performed--the district court found that it was not.

The district court's conclusion in this regard is sound. Although the design of the Tank Francaise does operate to perform a function, the trade dress is not "functional" because there are many alternative designs that could perform the same function. Enforcing Cartier's rights in this design will not inhibit its competitors from being able to compete effectively in the market for luxury watches. The district court did not err in its decision, therefore, that the Tank Francaise trade dress is not functional.

### B. Profits Award

Defendants argue that (1) the district court erred in finding they acted in bad faith, which resulted in an award of defendants' profits, and (2) even if an award of profits [**15] was warranted, the district court's method of calculating the profits was erroneous. We review the district court's decision on whether to award profits, damages, or attorneys' fees for an abuse of discretion. *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749, 752 (2d Cir. 1996)*.

Defendants did not contest the magistrate judge's finding of bad faith below, and thus they waived this argument on appeal. *See Coosemans Specialties, Inc. v. Gargiulo, 485 F.3d 701, 708-09 (2d Cir. 2007)*. Even if we did consider their argument, we would conclude that the district court's finding of bad faith was not clearly erroneous. Magistrate Judge Eaton found that Eli Sardar, the president of Sardell Jewelry, Inc., did not respond to the first letter from Cartier, and that Sardar's response to the second letter was to reply that he did not sell the watches to which Cartier referred. Magistrate Judge Eaton also found that Sardar may have initially set aside the 61 potentially infringing watches, but did not return them to Gold Enterprises until much later, probably as late as March 2004 when Sardar was served with notice of Cartier's complaint. Sardell's actions in returning [**16] the watches, rather than holding them in inventory as requested by Cartier, also evidences bad faith. That Sardell was still selling the infringing watches in February 2004 when investigator Hanice Taveras bought one from the Sardell store was a further indication that Sardell, and

Sardar, were aware of the potentially infringing watches but chose not to pull them from the shelves until the threat became more pronounced. Also telling were Sardell co-owner Yakoub Sardar's statements to Taveras, when she bought the infringing watch, that the watch was an exact copy of Cartier's and that it was just like a Cartier.

Defendants also argue that the district court improperly calculated the profits award, contending that it should not have included the 61 watches defendants returned, and that its method of determining how many other infringing watches had been sold was unreasonable. As to the first argument, the district court was correct in its determination that defendants' profits included the refund they received for the 61 infringing watches. As the district court explained, had the defendants not returned the watches for a full refund from Gold Enterprises, the watches would have been [**17] destroyed. Thus it was proper, and not an abuse of discretion, to [*622] consider in the award of profits the refund on the watches.

Defendants also dispute the magistrate judge's method in determining that they had sold 212 infringing watches. The magistrate judge found, and it is undisputed, that defendants provided no information about how many infringing watches they sold and at what profit. We have said that "[w]here the defendants fail to produce evidence . . . of [their] sales of counterfeit products, the court must rely on less certain methods of proof." *Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 973 (2d Cir. 1985)*. Citing *Deering, Milliken & Co. v. Gilbert, 269 F.2d 191, 193 (2d Cir. 1959)*, where the defendant was evasive and uncooperative by refusing to testify as to how many infringing products he sold, we commented that in such situations the court may rely on indirect and circumstantial evidence. *Louis Vuitton S.A., 765 F.2d at 973*. This is a similar situation because by failing to provide any information as to how many infringing watches they sold, defendants have frustrated the effort to prove profits. The magistrate judge's factual findings concerning the 212 [**18] watches was not clearly erroneous, and his decision to award profits on this basis, therefore, was not an abuse of discretion.

We have considered all of defendants' other arguments and find them to be without merit. Although the parties requested that oral argument be rescheduled for August, we conclude that oral argument is unnecessary in this case because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." *Fed. R. App. P. 34(a)(2)(C)*. For the reasons stated above, the judgment of the district court is AFFIRMED, the plaintiffs' motion for this Court to take judicial notice of the trademark registrations is DENIED, and the parties' request to reschedule oral argument is DENIED.