USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/19/2010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x

LUV N' CARE, LTD. and ADMAR                :
INTERNATIONAL, INC.,
                                           :
                    Plaintiffs,            :        **OPINION**

           - against -                     :        08 Civ. 4457 (DC)

WALGREEN CO. and KMART CORP.,              :

                    Defendants.            :
                                           :
- - - - - - - - - - - - - - - - - - -x

**APPEARANCES:**    (See last page)

**CHIN, District Judge**

        Plaintiffs Luv N' Care, Ltd. ("LNC") and Admar
International, Inc. ("Admar") market baby products under the mark
NUBY.  Defendant Walgreen Co. ("Walgreens") was a retailer of
plaintiffs' products.  Plaintiffs allege that Walgreens sold
"knock-off" copies of two of plaintiffs' "sippy cups."
Plaintiffs further allege that Walgreens perpetrated a "bait and
switch" scheme on LNC customers by shelving the look-a-like
products next to LNC products and below signs identifying them as
LNC products.  Walgreens then terminated its relationship with
LNC while continuing to sell the allegedly infringing sippy cups.

        Plaintiffs bring the following claims against
Walgreens:  (1) unfair competition and trademark infringement
under § 43(a) of the Lanham Act, 15 U.S.C. § 1125; (2) federal
trademark dilution; (3) unfair competition under New York common
law; and (4) violation of New York General Business Law ("NYGBL")
§ 349.  Plaintiffs move for summary judgment on their first,

third, and fourth causes of action.  Walgreens moves for summary judgment dismissing plaintiffs' claims on the grounds that plaintiffs have not established protectable trade dress, secondary meaning, or non-functionality.  For the reasons set forth below, I hold that (1) substantial issues of material fact remain as to plaintiffs' federal claims and state unfair competition claim, and (2) plaintiffs have not pled a cognizable claim under NYGBL § 349.  Accordingly, plaintiffs' motion for summary judgment is denied and Walgreens's motion for summary judgment is granted only as to plaintiffs' NYGBL claim.

## BACKGROUND

### A.  **Facts**

On a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. For purposes of these cross-motions for summary judgment, when considering each side's motion, I construe the facts in the light most favorable to the other party.

The following facts are drawn from the deposition transcripts, affidavits, declarations, and exhibits submitted by the parties.  Certain undisputed facts are drawn from the parties' Rule 56.1 statements.

LNC is a baby product company that sells certain products under the trademark NUBY, which is owned by Admar. (Pls. Add'l 56.1 Facts ¶¶ 1-2; Def. Response to Pls. Add'l 56.1 Facts at 1; Def. Add'l 56.1 Facts ¶ 64).  Walgreens was a retailer of NUBY products, including the two sippy cups at issue

-2-

in this suit. (Pls. 56.1 Facts ¶ 3; Def. Response to Pls. 56.1 Facts at 2-3).

In early 2006, Walgreens invited LNC's then-president and sales representative to a meeting. (Pls. Add'l 56.1 Facts ¶ 88; Def. Response to Pls. Add'l 56.1 Facts at 66). Plaintiffs allege that, at this meeting, Walgreens gained confidential information regarding plaintiffs' products. (Jack Hakim Decl. ¶ 33, 35-36; McQuillen Decl. ¶ 26, 30).

In April 2006, in response to escalating oil prices, plaintiffs proposed a price increase to Walgreens. (Pls. Add'l 56.1 Facts ¶ 89; Def. Response to Pls. Add'l 56.1 Facts at 67). Walgreens accepted this proposed price increase, and plaintiffs then agreed to provide Walgreens with two additional shipments of LNC sippy cups at the un-escalated price. (Jack Hakim Decl. ¶ 43; McQuillen Decl. ¶ 39 & Ex. 2).[1] As a rationale for needing the two additional shipments, Walgreens told plaintiffs that (1) it is fair business practice to allow a buyer a final opportunity to buy the product at the old price and (2) Walgreens had already planned certain advertisements for the sippy cups at the previous price. (Pls. Add'l 56.1 Facts ¶ 91; Def. Response to Pls. Add'l 56.1 Facts at 68).

On June 27, 2006, Walgreens notified plaintiffs that it had found an "alternative source" for the sippy cups that would

---

[1]     Walgreens disputes that it agreed to the price increase but admits that LNC provided it with two additional shipments of cups at the un-escalated price. (Def. Response to Pls. Add'l 56.1 Facts at 67).

allow Walgreens to maintain its current price points, and thus it would no longer be purchasing the relevant sippy cups from LNC. (Pls. Add'l 56.1 Facts ¶ 95; Def. Response to Pls. Add'l 56.1 Facts at 71).  This alternate source was Royal King Baby Product Co. ("Royal King"), a manufacturer contracted through Walgreens's import agent.  (Pls. Add'l 56.1 Facts ¶ 96; Def. Response to Pls. Add'l 56.1 Facts at 71-72).  These Royal King sippy cups are sold under Walgreens's WAGI brand.  (Pls. Add'l 56.1 Facts ¶ 99; Def. Response to Pls. Add'l 56.1 Facts at 73).  Plaintiffs allege (but Walgreens denies) that Royal King is a "known intellectual pirate" that produces look-a-likes of the LNC sippy cups.  (Pls. Add'l 56.1 Facts ¶ 96; Nouri Edward Hakim Decl. ¶¶ 44, 77; Jack Hakim Decl. ¶ 46; McQuillen Decl. ¶ 46).

Plaintiffs allege that Walgreens used the additional two shipments provided by LNC to carry out a "bait and switch" scheme, whereby Walgreens commingled Royal King sippy cups with LNC sippy cups, and placed Royal King sippy cups above LNC signs. (Nouri Edward Hakim Decl. ¶¶ 57-58 & Ex. 4; Jack Hakim Decl. ¶¶ 57-61 & Ex. 1; McQuillen Decl. ¶ 58 & Ex. 7).  An LNC customer testified that she was tricked into purchasing Royal King products instead of LNC products.  (Nouri Edward Hakim Decl. Ex. 5 (Brandy Thomas Affidavit); Nouri Edward Hakim Supp. Decl. ¶¶ 2-4).

**B.    Procedural History**

On May 13, 2008, plaintiffs filed suit against Walgreens and Kmart Corp. ("Kmart") claiming that defendants were

"using [p]laintiffs' product designs and packaging to trade off of [p]laintiffs' reputation and goodwill and to create deception in the marketplace." (Compl. ¶ 65). Plaintiffs alleged that Kmart sold infringing copies of the following LNC products and their packaging: the sports sipper cup, the gripper cup (the "soft spout cup"), the flip-it sports sipper cup, and a comb and brush set. (Id. ¶¶ 30-43, 49-56). Plaintiffs further alleged that Walgreens sold infringing copies and packaging of the soft spout cup and the no-spill cup (the "hard spout cup"). (Id. ¶¶ 39-48; Nouri Edward Hakim Decl. ¶ 57).

On May 20, 2009, plaintiffs voluntarily dismissed all claims against Kmart with prejudice. (5/20/09 Stip.). Accordingly, only the claims against Walgreens regarding the hard and soft spout cups and their packaging remain.[2]

On June 8, 2009, the parties filed the instant cross-motions for summary judgment. Plaintiffs additionally filed a motion to amend their complaint or, in the alternative, to transfer the case. On February 4, 2009, I denied plaintiffs' motion to amend/transfer in all respects. Luv N' Care, Ltd. v.

----

[2]    Plaintiffs' moving papers make reference to Walgreens's sale and copying of the comb and brush set. Plaintiffs' complaint, however, only made allegations as to Kmart regarding the comb and brush set. (Compl. ¶¶ 53-56). No such allegations were made against Walgreens. Further, little, if any, of plaintiffs' evidence regarding trademark infringement and unfair practices pertains to the comb and brush set. Moreover, plaintiffs did not request to assert any additional claims against Walgreens when they requested to amend their complaint. Instead, plaintiffs' proposed amendments sought to eliminate claims no longer at issue due to Kmart's absence. (Pls. Mem. for Leave to Amend at 6). Accordingly, I will not consider any arguments as to the comb and brush set.

Walgreen Co., No. 08 Civ. 4457 (DC), 2010 U.S. Dist. LEXIS 11011
(S.D.N.Y. Feb. 4, 2010). I now consider the parties' motions for
summary judgment.

### DISCUSSION

## A. Summary Judgment Standard

The standards governing motions for summary judgment
are well-settled. A court may grant summary judgment only where
there is no genuine issue of material fact and the moving party
is therefore entitled to judgment as a matter of law. See Fed R.
Civ. P. 56(c); accord Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 475 U.S. 574, 585-87 (1986). Summary judgment should be
denied "if the evidence is such that a reasonable jury could
return a verdict" in favor of the non-moving party. See NetJets
Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 178-79 (2d
Cir. 2008).

In deciding a motion for summary judgment, the Court
must construe the evidence in the light most favorable to the
non-moving party and draw all reasonable inferences in the
non-moving party's favor. In re "Agent Orange" Prod. Liab.
Litig., 517 F.3d 76, 87 (2d Cir. 2008). A court faced with
cross-motions for summary judgment need not "grant judgment as a
matter of law for one side or the other," but "'must evaluate
each party's motion on its own merits, taking care in each
instance to draw all reasonable inferences against the party
whose motion is under consideration.'" Heublein, Inc. v. United
States, 996 F.2d 1455, 1461 (2d Cir. 1993) (quoting Schwabenbauer
v. Bd. of Educ. of Olean, 667 F.2d 305, 313-14 (2d Cir. 1981)).

-6-

**B.  Trademark Infringement Under the Lanham Act**

          To prevail on a trademark infringement claim based on

an unregistered mark, a plaintiff must prove that (1) the trade

dress is distinctive as to the source of the good, (2) there is a

likelihood of confusion between its good and defendant's, and

(3) the trade dress is not functional.  Wal-Mart Stores, Inc. v.

Samara Bros., Inc., 529 U.S. 205, 210-12 (2000); Cartier, Inc. v.

Sardell Jewelry, Inc., 294 Fed. App'x 615, 617 (2d Cir. 2008)

(noting that burden is on plaintiff to show non-functionality).

          The standards for proving the first element,

distinctiveness, differ for plaintiffs claiming infringing

packaging from those claiming infringing product design:

> Where the mark is . . . product packaging the
> plaintiff may prove distinctiveness by
> showing either that the "intrinsic nature" of
> the mark serves to identify a particular
> source (what is known as "inherent
> distinctiveness") or that "in the minds of
> the public, the primary significance of [the
> mark] is to identify the source of the
> product rather than the product itself" (what
> is known as "acquired distinctiveness" or
> "secondary meaning").  The product design
> plaintiff, however, must always make the
> second, more difficult showing.

Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 115 (2d Cir.

2001) (quoting Wal-Mart Stores, Inc., 529 U.S. at 210-11, 213-14)

(second alteration in original).

          Plaintiffs here allege trademark infringement of both

their product design and product packaging.  I address these

claims below and conclude that disputed issues of material fact

preclude summary judgment on both claims.

-7-

## 1.  Plaintiffs' Product Design Claim

As noted above, plaintiffs bringing suit for product design infringement must show that the product design has acquired distinctiveness through secondary meaning, there is a likelihood of confusion between the products, and the product design is not functional.  Wal-Mart Stores, Inc., 529 U.S. at 115-16.  Plaintiffs argue that they have established all three elements and thus are entitled to summary judgment as a matter of law.  Walgreens argues that plaintiffs have not established secondary meaning and that material issues of fact remain as to customer confusion, but that it is nonetheless entitled to summary judgment because plaintiffs' product designs are functional as a matter of law.

For the reasons set forth below, I find that neither party is entitled to summary judgment as material issues of fact remain regarding secondary meaning, likelihood of confusion, and the functionality of the relevant designs.

### a.  Distinctiveness

#### (I)  Applicable Law

Secondary meaning attaches when, "'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'"  Id. at 211 (quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n.11 (1982)) (alteration in original).  "Proof of secondary meaning entails vigorous evidentiary requirements."

-8-

Thompson Med. Co. v. Pfizer, Inc., 753 F.2d 208, 217 (2d Cir.
1985). To determine whether secondary meaning has attached, the
court considers the following six factors: "(1) advertising
expenditures, (2) consumer studies linking the mark to a source,
(3) unsolicited media coverage of the product, (4) sales success,
(5) attempts to plagiarize the mark, and (6) length and
exclusivity of the mark's use." Cartier, Inc. v. Sardell
Jewelry, Inc., 294 Fed. App'x 615, 618 (2d Cir. 2008) (internal
quotation marks and citation omitted). No single factor is
determinative. Thompson Med. Co., 753 F.2d at 217.

### (ii) **Application**

Summary judgment may not be awarded to either side
regarding secondary meaning of the product design because, at a
minimum, the following issues of fact exist:

First, Walgreens disputes the extent of any unsolicited
media coverage of LNC's products. (Buratti Decl. Ex. B at II:20-
22, Ex. H (comparing LNC President's testimony with Internet
research)).

Second, regarding plaintiffs' sales success, Walgreens
challenges several aspects of plaintiffs' evidence, including
LNC's repurchase rates (Def. Response to Pls. Add'l 56.1 Facts at
56 ("As LNC's corporate designee testified, plaintiffs have no
ability to know how many repeat sales of their products may have
actually occurred." (citing Buratti Reply Decl. Ex. E at 8:3-
9:3))), and LNC's target market (id. at 57-58 (highlighting
discrepancies in Nouri Edward Hakim's testimony and citing

Buratti Reply Decl. Ex. A at II:153:9-16, II:268:7-69:21,
II:38:20-41:8)).  As noted, Walgreens points to specific evidence
to support its challenges to plaintiffs' evidence.

Third, as to the intentional copying factor, LNC
alleges that Walgreens, after having access to confidential
information regarding LNC products, commissioned and approved the
"knock-off" sippy cups.  LNC's sales representative, Tim
McQuillen, and former president, Jack Hakim, testified that they
were invited to a meeting with Walgreens's buyer, where they
divulged confidential information about LNC products.  (Jack
Hakim Decl. ¶¶ 33-36; McQuillen Decl. ¶¶ 30-31).  Walgreens,
however, does not concede that it had access to LNC's
confidential information.  (Def. Response to Pls. Add'l 56.1
Facts at 66-67).  Moreover, the parties dispute to what extent,
if at all, Walgreens dictated and approved the allegedly
infringing designs.  (Malynn Opp. Decl. Ex. 7; Def. Mem. Ex. 7;
Nouri Edward Hakim Decl. ¶¶ 44, 77; Jack Hakim Decl. ¶¶ 46-61;
McQuillen Decl. ¶ 46).

Fourth, as to the length and exclusivity factor, LNC
provides evidence that, when it introduced the hard and soft
spout cups in 2003 (Shamosh Decl. Ex. 1 (citing customer e-mails
from 2003 referring to the "Soft Spout Gripper Cup"); McQuillen
Decl. ¶¶ 18, 23), no other cups in the marketplace had the same
look and appearance as the allegedly infringed cups (McQuillen
Decl. ¶¶ 11, 18).  Walgreens, however, provides testimony and
evidence disputing both the length and exclusivity alleged by
LNC.  (Buratti Decl. Ex. B at I:162:9-19).

As demonstrated above, substantial questions of material fact exist as to secondary meaning that must be left for a jury. _See_ _New Colt Holding Corp. v. RJG Holdings of Fla., Inc._, 312 F. Supp. 2d 195, 209 (D. Conn. 2004) (dismissing a motion for summary judgment because evidence pertaining to secondary meaning factors revealed triable issues of material fact).

### b. __Likelihood of Confusion__

Even if I were to find secondary meaning in plaintiffs' product design, plaintiffs would still not be entitled to summary judgment because material issues of fact exist as to the likelihood of customer confusion.

### (I) __Applicable Law__

Courts in this Circuit apply the following factors, established in _Polaroid Corp. v. Polarad Electronics Corp._, to determine whether a likelihood of confusion exists: (1) strength of plaintiff's mark, (2) similarity of competing marks, (3) competitive proximity of the products, (4) likelihood that plaintiff will "bridge the gap" and offer a product like defendant's product, (5) actual confusion, (6) defendant's good faith, (7) quality of defendant's product, and (8) sophistication of the buyers. 287 F.2d 492, 495 (2d Cir. 1961). "Summary judgment based on likelihood of confusion under the _Polaroid_ analysis is appropriate where the undisputed evidence would lead only to one conclusion." _U-Neek, Inc. v. Wal-Mart Stores, Inc._, 147 F. Supp. 2d 158, 173 (S.D.N.Y. 2001) (citing _Sports Auth.,_

-11-

Inc. v. Prime Hospitality Corp., 89 F.3d 955, 960 (2d Cir. 1996))
(internal quotation marks omitted).  "'The bottom line on a
motion for summary judgment is not how many factors favor each
side but whether a reasonable trier of fact might differ as to
likelihood of confusion.'"  Id. (quoting Physicians Formula
Cosmetics Inc. v. W. Cabot Cosmetics, Inc., 857 F.2d 80, 85 (2d
Cir. 1988)).

### (ii)   Application

        Reasonable triers of fact might differ as to whether
the product designs at issue create a likelihood of customer
confusion.  Among many debatable points are the similarities
between LNC and Royal King's designs, whether the NUBY and WAGI
trademarks' prominence on the cups and their packaging resolves
any confusion, see Playtex Prods. v. Ga.-Pac. Corp., 390 F.3d
158, 164 (2d Cir. 2004), and whether the allegedly infringing
products appeared affiliated with LNC, id. ("[I]n some
circumstances, the addition of a trade name does not necessarily
alleviate the problem of confusion of marks, and indeed, can
aggravate it, as a purchaser could well think plaintiff had
licensed defendant as a second user." (internal citations and
quotation marks omitted)).  Further, there are clear factual
disputes as to whether Walgreens acted in bad faith by exploiting
plaintiffs' confidential information, deceiving plaintiffs into
supplying extra inventory for a "bait and switch" scheme, and
commingling LNC products with Royal King products above LNC
signs.  (Pls. Add'l 56.1 Facts ¶¶ 100-07; Nouri Edward Hakim
Supp. Decl. ¶¶ 2-4; Def. Response to Pls. Add'l 56.1 Facts at 73-

75). Finally, reasonable triers of fact might differ as to whether plaintiffs' evidence regarding actual customer confusion is legitimate. (Nouri Edward Hakim Decl. Ex. 5 (Brandy Thomas Affidavit); Def. Add'l 56.1 Facts ¶¶ 118-20 (attacking relevance and legitimacy of Thomas's Affidavit); Barten Opp. Decl. Ex. 9). Accordingly, I will not award summary judgment to either party on the trademark infringement claim for plaintiffs' product design.

### c. Functionality

#### (I) Applicable Law

Walgreens argues that, regardless of whether there is secondary meaning and likelihood of customer confusion, plaintiffs' trade dress is functional and, thus, not entitled to protection. To show that a product is non-functional, plaintiffs must demonstrate that their design elements are configured in a distinctive way, rather than the only efficient way. See Brandir Int'l, Inc. v. Cascade Pac. Lumber Co., 834 F.2d 1142, 1148 (2d Cir. 1987) ("[T]he absence of alternative constructions performing the same function . . . renders the feature functional."). When evaluating functionality, courts in this Circuit examine whether the design as a whole is functional, not whether the individual elements that make up the design are functional. See Cartier, Inc. v. Sardell Jewelry, Inc., 294 Fed. App'x 615, 620-21 (2d Cir. 2008) (affirming district court's determination that "it was improper for defendants to break the trade dress down into specific elements and call them functional,

because plaintiffs' claim is that the combination and arrangement of those design elements comprise the trade dress at issue").[3]

### (ii)  **Application**

Walgreens argues that plaintiffs' product designs are functional as a matter of law because all of the cups' features are necessary to the design of a sippy cup, as evidenced by the presence of those features in many competitors' cups.  (Def. Mem. at 17-20; Buratti Decl. Ex. A at I:65-66, 75-82 & Exs. D, F, G, Q, R).  Walgreens contends that plaintiffs admitted that "competitors use each and every allegedly protectable feature" of their designs.  (Def. Mem. at 2; Buratti Decl. Ex. A at I:65-66, I:75-82).  In response, plaintiffs (1) deny making any such admissions, (2) attack the quality of Walgreens's evidence regarding plaintiffs' competitors, which consists mostly of fuzzy, thumbnail, Internet images, (3) argue that the combination of their design features renders the designs non-functional, and (4) contend that Walgreens's own evidence demonstrates the various ways in which a sippy cup's form, shape, texture, size, and graphic features may be designed.  (Pls. Opp. Mem. at 15-19).

---

[3]      Defendant argues that the Court should consider the product design's individual features when determining functionality.  In support of this approach, defendant relies on Textron, Inc. v. U.S. International Trade Communications, 753 F.2d 1019 (Fed. Cir. 1985).  The court in Textron, however, explicitly noted that "the determination of whether an overall design is functional should be based on the superiority of the design as a whole."  Id. at 1026.  Moreover, as stated above, the Second Circuit considers the product design as a whole.  See Cartier, Inc., 294 Fed. App'x at 620.  Defendant's argument is rejected.

Moreover, the parties dispute whether certain of plaintiffs'
utility patents overlap with the allegedly infringed designs.
(Def. Memo at 9-11; Buratti Decl. Ex. A at II:140, II:144,
II:183-86, Exs. K-N; Pls. Opp. Mem. at 20-22; Cohen Opp. Decl. ¶¶
101-20; Nouri Edward Hakim Decl. ¶¶ 37-38).  These conflicts in
evidence and questions of fact preclude judgment as a matter of
law on the issue of functionality.  Accordingly, this question
shall be left for the jury and my earlier determination denying
summary judgment on the question of trademark infringement
stands.

  **2.  <u>Plaintiffs' Product Packaging Claim</u>**

          Plaintiffs bringing trademark infringement claims as to
product packaging must establish distinctiveness, likelihood of
confusion, and non-functionality.  <u>Fun-Damental Too v. Gemmy
Indus. Corp.</u>, 111 F.3d 993, 999 (2d Cir. 1997).  Plaintiffs argue
that they have established each of these elements and thus are
entitled to summary judgment on this claim.  Defendant argues
that plaintiffs have not established distinctiveness, and thus
Walgreens is entitled to summary judgment on this claim.  I find
that material issues of fact preclude summary judgment in favor
of either party.

  **a.  <u>Distinctiveness</u>**

  **(I)  <u>Applicable Law</u>**

          As noted above, plaintiffs claiming infringement of
product packaging may prove the first element, distinctiveness,

by showing inherent distinctiveness or secondary meaning.  <u>Yurman</u>
<u>Design, Inc. v. PAJ, Inc.</u>, 262 F.3d 101, 115 (2d Cir. 2001).
"Because manufacturers and retailers have a 'virtually unlimited'
choice of packaging and labeling materials available to them,
most packaging trade dress is [inherently distinctive]."  <u>Nora</u>
<u>Bevs., Inc. v. Perrier Group of Am. Inc.</u>, 164 F.3d 736, 743 (2d
Cir. 1998).  Nonetheless, the Supreme Court has ruled that, when
it is difficult to distinguish the product design from the
packaging, the court should err on the side of caution and
require a showing of secondary meaning.  <u>Wal-Mart Stores, Inc. v.</u>
<u>Samara Bros., Inc.</u>, 529 U.S. 205, 215 (2000); <u>see</u> <u>Kaufman &</u>
<u>Fisher Wish Co. v. F.A.O. Schwarz</u>, No. 01 Civ. 0301, 2001 U.S.
Dist. LEXIS 17064, at **14-15 (S.D.N.Y. Oct. 17, 2001).

            (ii)  **Application**

        Walgreens argues that plaintiffs' product designs merge
with their packaging, and thus this Court must require a showing
of secondary meaning.  (Def. Opp. Mem. at 21-22).  Walgreens
posits that the "alleged packaging is nothing more than clear
shrink-wrap with text that becomes the shape of the bottle . . .
[and] therefore merges with the product design itself."  (<u>Id.</u>).
In light of the Supreme Court's determination that courts should
err on the side of a higher evidentiary standard in cases where
the product packaging is arguably part of the product design, I
conclude, for purposes of this motion only, that the product and
packaging are indistinguishable and require a showing of
secondary meaning.

Plaintiffs' evidence in favor of secondary meaning for their product packaging is the same evidence discussed above regarding their product design.  Thus, for the reasons stated above, triable issues of fact exist as to whether secondary meaning attaches to plaintiffs' product packaging that must be left for the jury.

### b.  Likelihood of Confusion

Even if I were to find that the product design and packaging are clearly distinguishable and that plaintiffs established inherent distinctiveness, plaintiffs would still not be entitled to summary judgment.  Indeed, I have already considered all of plaintiffs' evidence regarding the likelihood of confusion and ruled that material issues of fact preclude summary judgment on this issue.

### c.  Functionality

To the extent that Walgreens argues that the product packaging is non-functional as a matter of law, and thus, not entitled to protection regardless of its distinctiveness or likelihood to cause customer confusion, this argument is rejected.  First, if Walgreens is correct that the product design and packaging have merged, then my earlier determination that material issues of fact exist as to whether the product design is functional would apply to the product packaging as well.  Moreover, even if the product design and packaging are distinguishable, material issues of fact exist as to whether the packaging is functional.  A reasonable jury could find, for example, that there are alternate ways the packaging, including

-17-

its graphics and lettering, could have been designed.
Fun-Damental Too v. Gemmy Indus. Corp., 111 F.3d 993, 1002 (2d
Cir. 1997).  Indeed, plaintiffs themselves previously packaged
their cups in large cardboard boxes as opposed to individual
shrinkwrap.  (Pls. Reply Mem. Ex. 4).  Accordingly, neither party
is entitled to summary judgment on the packaging claim.

C.  **Plaintiffs' Unfair Competition Claim**

        New York unfair competition law mirrors the Lanham
Act's trademark infringement standard in many ways, but does not
always require a showing of secondary meaning.  Indeed, the
Second Circuit has noted that, while "a claim for unfair
competition under New York law requires proof of a competitor's
deliberate use of a non-functional [trade dress] and likelihood
of public confusion[, p]roof of secondary meaning is not
required."  Morex S.P.A. v. Design Inst. Am., Inc., 779 F.2d 799,
801 (2d Cir. 1985) (citing Perfect Fit Indus., Inc. v. Acme
Quilting Co., 618 F.2d 950, 952-53 (2d Cir. 1980)).  To the
extent defendant claims that this is not the law in this Circuit
or that I should depart from this precedent, these claims are
rejected.

        As plaintiffs suggest, New York courts have found
trademark infringement in the absence of secondary meaning when
plaintiffs have shown "intentional palming off" or
"misappropriation of business value."  See 2 McCarthy on
Trademarks and Unfair Competition § 15:38 (J. Thomas McCarthy
ed., 4th ed. 2009).  Plaintiffs' claims under these theories,
however, center on findings of bad faith and confusion of

-18-

customers.  (See Pls. Reply Mem. at 4).  See also Jeffrey
Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34 (2d
Cir. 1995) ("The essence of unfair competition under New York
common law is the bad faith misappropriation of the labors and
expenditures of another, likely to cause confusion or to deceive
purchasers as to the origin of the goods." (internal quotation
marks and citation omitted)); Sly Magazine, LLC v. Weider Publs.
L.L.C., No. 08-2430-cv, 2009 U.S. App. LEXIS 20964, at *6 (2d
Cir. Sept. 23, 2009).  As discussed above, material issues of
fact exist as to whether Walgreens intentionally copied LNC's
products in bad faith and whether customers might in fact be
confused.  Accordingly, summary judgment is denied as to this
claim.

## D.  **Plaintiffs' NYGBL Claim**

         Plaintiffs assert that Walgreens violated NYGBL § 349
by conducting a "bait and switch," and misleading customers by
commissioning misleading "knock-off" products and "palming them
off" to confused customers.  (Pls. Reply Mem. at 4).  "It is well
settled, however, that infringement claims are not cognizable
under [§ 349] unless there is a specific and substantial injury
to the public interest over and above ordinary trademark
infringement or dilution."  Nat'l Distillers Prods. Co., LLC v.
Refreshment Brands, Inc., 198 F. Supp. 2d 474, 486-87 (S.D.N.Y.
2002); see U-Neek, Inc. v. Wal-Mart Stores, Inc., 147 F. Supp. 2d
158, 176 (S.D.N.Y. 2001).  Moreover, "[i]t is well-established
that trademark infringement actions alleging only general
consumer confusion do not threaten . . . direct harm to consumers

-19-

for purposes of stating a claim under section 349 . . . ."[4]
Perkins Sch. for the Blind v. Maxi-Aids, Inc., 274 F. Supp. 2d
319, 327 (E.D.N.Y. 2003) (internal quotation marks and citation
omitted); see Cartier v. Samo's Sons, Inc., No. 04 Civ. 2268,
2005 U.S. Dist. LEXIS 23395 (S.D.N.Y. Oct. 11, 2005).
Accordingly, as plaintiffs have not properly pled a claim under §
349, this claim is dismissed.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion for
summary judgment is denied.  Defendant's motion for summary
judgment is granted, but only in regard to the NYGBL § 349 claim.
All other issues remain for the jury.  The parties shall appear
for a pre-trial conference on April 23, 2010, at 10:00 a.m.

SO ORDERED.

Dated:    New York, New York
          March 19, 2010

                                 DENNY CHIN
                                 United States District Judge

---

[4]     Plaintiffs, in their reply memorandum of law, once
mention that Walgreens "falsely advertised or promoted its
products as coming from Luv n' Care," in violation of § 349.
(Pls. Reply Memo at 4).  Plaintiffs do not, however, discuss the
legal standards relevant to a false advertising claim, nor do
they bring a cause of action under NYGBL § 350, the provision
prohibiting false advertising.  N.Y. Gen. Bus. Law § 350 (2010).
Accordingly, I do not consider whether such a claim would survive
summary judgment.

-20-

**APPEARANCES:**


For Plaintiffs:

       PEARL COHEN ZEDEK & LATZER LLP
           By:  Morris E. Cohen, Esq.
       1500 Broadway
       New York, NY  10036

            - and -

       FELDMAN GALE, P.A.
           By:  James A. Gale, Esq.
       One Biscayne Tower
       2 South Biscayne Boulevard
       Miami, FL  33131


For Defendant Walgreen Co.:

       SCHLAM STONE & DOLAN LLP
           By:  Bennette Deacy Kramer, Esq.
       26 Broadway
       New York, NY  10004

            - and -

       CHRISTOPHER & WEISBERG, P.A.
           By:  Jason R. Buratti, Esq.
               Alan M. Weisberg, Esq.
               Jeffrey H. Kamenetsky, Esq.
               Garrett A. Barten, Esq.
       200 East Las Olas Boulevard
       Fort Lauderdale, FL  33301

            - and -

       WILEY, REIN & FIELDING LLP
           By:  Floyd B. Chapman, Esq.
               Robert J. Scheffel, Esq.
       1776 K Street NW
       Washington, DC  20006