UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUV N' CARE, LTD. and<br>ADMAR INTERNATIONAL, INC.,<br><br>         Plaintiffs,<br><br>v.<br><br>WALGREEN CO. and<br>KMART CORP.<br><br>         Defendants. | Civil Action No. 08 CIV 4457 (DC/HP)<br><br>PLAINTIFFS' [PROPOSED] JURY<br>INSTRUCTIONS |

Plaintiffs, Luv n' care and Admar International, Inc., by and through its attorneys of record, hereby serve upon you proposed jury instructions for the above-captioned matter in accordance with the Court's Scheduling Order and Individual Rules of Judge Chin as follows:

INDEX OF INSTRUCTIONS

Page

I.    INSTRUCTIONS ON THE TRIAL PROCESS…………………………………………1

      Cover Sheet…………………………………………………………………………2

1.    Duty of Jury (Court Reads and Provides Written Set of Instructions) ………………..3

2.    Duty of Jury (Court Reads Instructions Only) …………………………………………..4

3.    Duty of Jury (Court Reads and Provides Written Instructions at End of Case) ……….5

4.    Claims and Defenses…………………………………………………………………...6

5.    Burden of Proof—Preponderance of the Evidence………………..………………..9

6.    What Is Evidence………………………………………………………………………..10

7.    What Is Not Evidence…………………………………………………………………...11

8     Evidence for Limited Purpose………………………………………………………...12

9     Direct and Circumstantial Evidence……………………………………………………13

10    Ruling on Objections……………………………………………………………………14

11.   Credibility of Witnesses………………………………………………………………15

12    Conduct of the Jury……………………………………………………………………16

13.   No Transcript Available to Jury………………………………………………………17

14.   Bench Conferences and Recesses……………………………………………………18

15.   Outline of Trial…………………………………………………………………………19

II.   INSTRUCTIONS ON TYPES OF EVIDENCE…………………………………………...20

16.   Stipulations of Fact……………………………………………………………………...21

17.   Judicial Notice…………………………………………………………………………...22

Page

18.    Deposition in Lieu of Live Testimony…………………………………………………..23

19.    Impeachment Evidence—Witness………………………………………………………24

20.    Expert Opinion…………………………………………………………………………25

21.    Charts and Summaries Not Received in Evidence…………………………………….26

22.    Charts and Summaries in Evidence……………………………………………………27

23.    Evidence in Electronic Format…………………………………………………………28

III.    INSTRUCTIONS CONCERNING DELIBERATIONS……………………………30

24.    Deliberations and Verdict—Introduction……………………………………………..31

25.    Duty to Deliberate……………………………………………………………………..32

26.    Communication With Court……………………………………………………………33

27.    Return of Verdict………………………………………………………………………34

28.    Unanimous Verdict……………………………………………………………………...35

29.    Court Has No Opinion…………………………………………………………………36

IV.    TRADEMARK…………………………………………………………………………37

30.    Preliminary Instruction—Trademark…………………………………………………38

31.    Definition—Trade Dress
       (15 U.S.C. § 1125(a))……………………………………….........................................41

32.    Trademark & Trade Dress Liability—Theories and Policies
       (15 U.S.C. §§ 1114(1), 1125(a))……………......................……………………………42

33.    Infringement/Unfair Competition —
       Elements and Burden of Proof—Trade Dress (15 U.S.C.
       1125(a)(1))………………………………………………………………………………43

34.    Infringement/Unfair Competition —Elements—
       Validity— Trade Dress………………………………………………………………….45

35.    Infringement/Unfair Competition —Elements—
       Validity—Trade Dress —
       Distinctiveness…………………………………………………………………………..46

36.    Infringement/Unfair Competition —Elements—
       Validity—Distinctiveness—Secondary Meaning……………………………………….49

Page

37.    Infringement/Unfair Competition —Elements—Validity—
       Trade Dress—
       Non–Functionality Requirement……………………………………………...51

38.    Infringement/Unfair Competition —Elements—
       Trade Dress—
       Articulation Requirement…………………………………………………54

39.    Infringement/Unfair Competition —Likelihood of Confusion—
       Factors—Polaroid Test (15 U.S.C. §d 1125(a)) …………………………….....55

40.    Trade Dress Dilution—
       Elements and Burden Of Proof (15 U.S.C. 1125(c))…………………………57

41.    Trade Dress Dilution—
       Fame of Plaintiffs' Dress (15 U.S.C. 1125(c))…………………………………58

42     Trade Dress Dilution—
       Dilution by Blurring or Tarnishment (15 U.S.C. 1125(c))…………………….....59

43.    Trade Dress Dilution— Elements-Similarity …………………………………...60

44.    Relationship Between Trade Dress Confusion
       and Trade Dress Dilution ……………………………………………...............61

45.    Trademark Damages—Intentional Infringement
       (15 U.S.C. § 117 (b)) …………………………………………………….....62

V.     OTHER CLAIMS AND DEFENSES…………………………………………...63

46.    Unfair Competition--Common Law……………………………………………65

47.    Injury to Business Reputation Under New York Law………………………........67

IV.    DAMAGES………………………………………………………………68

48.    Damages—Proof……………………………………………………………69

49.    Trademark Damages—Walgreen's Profits
       (15 U.S.C. § 1117(a))…...……………………………………………………70

50.    Punitive Damages………………………………………………………………71

## I.    INSTRUCTIONS ON THE TRIAL PROCESS

1..     Duty of Jury (Court Reads and Provides Written Set of Instructions)

2.      Duty of Jury (Court Reads Instructions Only)

3.      Duty of Jury (Court Reads and Provides Written Instructions at End of Case)

4.      Claims and Defenses

5.      Burden of Proof—Preponderance of the Evidence

6.      What Is Evidence

7.      What Is Not Evidence

8.      Evidence for Limited Purpose

9.      Direct and Circumstantial Evidence

10.     Ruling on Objections

11      Credibility of Witnesses

12      Conduct of the Jury

13      No Transcript Available to Jury

14      Bench Conferences and Recesses

15      Outline of Trial

**1.0    COVER SHEET**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUV N' CARE, LTD. and<br>ADMAR INTERNATIONAL, INC.,<br><br>       Plaintiffs,<br><br>v.<br>WALGREEN CO. and<br>KMART CORP.<br><br>       Defendants. | Civil Action No. 08 CIV 4457 (DC/HP) |

**JURY INSTRUCTIONS**

**DATED:** _____

_____
     **UNITED STATES DISTRICT JUDGE**

AUTHORITY:       Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 1.0

2

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 1**
**DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS)**

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set throughout the trial to which to refer. This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, I will give you a final set of instructions. It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

AUTHORITY:      Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 1.1A

3

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 2**
**DUTY OF JURY (COURT READS INSTRUCTIONS ONLY)**

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

AUTHORITY:       Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 1.1B

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 3**
**DUTY OF JURY – (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS**
**AT END OF CASE)**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]

or

[A copy of these instructions will be sent with you to the jury room when you deliberate.]

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

AUTHORITY:     Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 1.1C

5

## PLAINTIFFS' PROPOSED JURY INSTRUCTION 4
## CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Plaintiffs Luv n' care, Ltd. and Admar International, Inc., contend that defendant Walgreen Co. has engaged in federal trade dress infringement and unfair competition by offering for sale and selling competing no-spill children's and infants' drinking cups which confusingly imitate and copy Plaintiffs' famous, protectable, distinctive and non-functional trade dress in the product designs and packaging for Luv n' care's no-spill children's and infants' drinking cups, including Plaintiffs' product known as the "Gripper Cup," without authorization. Plaintiffs contend that Walgreen's offer for sale and sale of unauthorized copies of Plaintiffs' product designs and packaging is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Walgreen with Plaintiffs, or as to the origin, sponsorship, or approval of Walgreen's products or commercial activities by Plaintiffs. Plaintiffs contend that Walgreen's advertising, offer for sale and sale of unauthorized copies of Plaintiffs' product designs and packaging also misrepresents the nature, characteristics or qualities of Walgreen's goods. Plaintiffs contend that Walgreen's acts of infringement and unfair competition have been willful and in bad faith. Plaintiffs contend that they have suffered monetary damages as a result of Walgreen's acts.

Plaintiffs also contend that Walgreen has engaged in federal trademark dilution by offering for sale and selling competing no-spill children's and infants' drinking cups, including Plaintiffs' product known as the "Gripper Cup," which confusingly imitate and copy Plaintiffs' famous, protectable, distinctive and non-functional trade dress in the product designs and packaging for Luv n' care's no-spill children's and infants' drinking cups, including the "Gripper Cup," without authorization. Plaintiffs contend that Walgreen's offer for sale and sale of unauthorized copies of Plaintiffs' product designs and packaging is likely to cause dilution of the distinctive quality of Plaintiffs' trade dress by: (i) creating an

6

association arising from the similarity Walgreen's improperly copied product designs and packaging and Plaintiffs' trade dress that impairs the distinctiveness of Plaintiffs' trade dress; and (ii) creating an association arising from the similarity between Walgreen's improperly copied product designs and packaging and Plaintiffs' trade dress that harms the reputation of Plaintiffs' trade dress.  Plaintiffs claim that Walgreen's acts of dilution have been willful. Plaintiffs contend that they have suffered monetary damages as a result of Walgreen's acts.

Plaintiffs also contend that Walgreen has engaged in unfair competition under New York law.  Plaintiffs contend that they have created their products, packaging, and marks, including their famous, distinctive, non-functional trade dress, through extensive time, labor, skill and money.  Plaintiffs contend that Walgreen has misappropriated the results of that labor and skill and those expenditures of Plaintiffs.  Plaintiffs contend that Walgreen has used Plaintiffs' products, packaging and marks in competition with Plaintiffs, gaining an unfair advantage, because Walgreen and its manufacturer bore little or no burden of expense of development.  Plaintiffs contend that Walgreens, by taking deceptive copies of Plaintiffs' products and then using to compete against Plaintiffs' own products, has misappropriated a commercial advantage belonging to Plaintiffs.  Plaintiffs contend that Walgreen has also engaged in bad faith misappropriation of the labors of Plaintiffs which is likely to cause confusion, and to deceive purchasers as to the origin of the goods, and which dilutes the value of Plaintiffs' product designs and packaging.  Plaintiffs contend that Walgreen's actions have caused significant commercial damage to Plaintiffs.  Plaintiffs contend that Walgreen's decision to distribute the illegal products from Thailand is also irresponsible and potentially dangerous to the public.  Plaintiffs contend that they have suffered monetary damages as a result of Walgreen's acts.

Plaintiffs also contend that Walgreen's use of unauthorized imitations of Plaintiffs' trade dress for their soft-spout no-spill cup and packaging, no-spill drinking cup, is likely to

cause injury to Plaintiffs' business reputation in their cups and to dilute the distinctive quality of Plaintiffs' goods and packaging, in violation of New York law.

Plaintiffs have the burden of proving at least one of these claims.

Walgreen denies these claims.

AUTHORITY:      Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 1.2

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 5**
**BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

AUTHORITY:       Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 1.3

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 6**
**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits which are received into evidence; and

3. any facts to which the lawyers have agreed.

AUTHORITY:       Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 1.6

## PLAINTIFFS' PROPOSED JURY INSTRUCTION 7
## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, [will say in their] closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I [give] [have given] a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

AUTHORITY:      Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 1.7

11

## PLAINTIFFS' PROPOSED JURY INSTRUCTION 8
## EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose,

you must consider it only for that limited purpose and for no other.

[The testimony [you are about to hear] [you have just heard] may be considered only

for the limited purpose of [describe purpose] and for no other purpose.]

AUTHORITY:      Ninth Circuit Manual of Model Jury Instructions, Civil (2007),
Instruction No. 1.8

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 9**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

AUTHORITY:        Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 1.9

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 10**
**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

AUTHORITY:   Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 1.10

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 11**
**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

AUTHORITY:     Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 1.11

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 12**
**CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else; this includes discussing the case in internet chat rooms or through internet "blogs," internet bulletin boards or e-mails. Nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case, please let me know about it immediately;

Second, do not read or listen to any news stories, articles, radio, television, or online reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the [bailiff] [clerk] [law clerk] to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Finally, until this case is given to you for your deliberation and verdict, you are not to discuss the case with your fellow jurors.

AUTHORITY:        Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 1.12

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 13**
**NO TRANSCRIPT AVAILABLE TO JURY**

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

AUTHORITY:      Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 1.13

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 14**
**BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess. Please understand that while you were waiting, we were working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum. I did not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

AUTHORITY:      Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 1.18

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 15**
**OUTLINE OF TRIAL**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

AUTHORITY:       Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 1.19

## II.    INSTRUCTIONS ON TYPES OF EVIDENCE

16.    Stipulations of Fact

17.    Judicial Notice

18.    Deposition in Lieu of Live Testimony

19.    Impeachment Evidence—Witness

20.    Expert Opinion

21.    Charts and Summaries Not Received in Evidence

22.    Charts and Summaries in Evidence

23.    Evidence in Electronic Format

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 16**
**STIPULATIONS OF FACT**

The parties have agreed to certain facts that I will read to you. You should therefore treat these facts as having been proved.

AUTHORITY:        Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 2.2

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 17**
**JUDICIAL NOTICE**

The court has decided to accept as proved the fact that [state fact], even though no

evidence has been introduced on the subject. You must accept this fact as true.

AUTHORITY:        Ninth Circuit Manual of Model Jury Instructions, Civil (2007),
Instruction No. 2.3

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 18**
**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

If testimony is read into the record, do not place any significance on the behavior or tone of voice of any person reading the questions or answers from the transcript.

AUTHORITY:       Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 2.4

## PLAINTIFFS' PROPOSED JURY INSTRUCTION 19
## IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness e.g., has been convicted of a crime, lied under oath on a prior occasion, etc. may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

AUTHORITY:      Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 2.8

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 20**
**EXPERT OPINION**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

AUTHORITY:       Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 2.11; Fed. R. Evid. 602, 701–05.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 21**
**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not received in evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.


AUTHORITY:      Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 2.12

## PLAINTIFFS' PROPOSED JURY INSTRUCTION 22
## CHARTS AND SUMMARIES IN EVIDENCE

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

AUTHORITY:       Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 2.13

## PLAINTIFFS' PROPOSED JURY INSTRUCTION 23
## EVIDENCE IN ELECTRONIC FORMAT

Those exhibits capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. (Alternatively, you may request a paper copy of an exhibit received in evidence by sending a note through the [clerk] [bailiff].) If you need additional equipment or supplies, you may make a request by sending a note.

In the event of any technical problem, or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your foreperson or by one or more members of the jury. Be as brief as possible in describing the problem and do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room [with [the clerk] [the bailiff] [me] present for the sole purpose of assuring that the only matter that is discussed is the technical problem.] When the court technician or any non-juror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any non-juror other than to describe the technical problem or to seek information about operation of equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to make sure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If

you discover that the computer provides or allows access to such materials, you must inform me immediately and refrain from viewing such materials. Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

AUTHORITY:      Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 2.14

## III.    INSTRUCTIONS CONCERNING DELIBERATIONS

24.    Deliberations and Verdict—Introduction

25.    Duty to Deliberate

26.    Communication With Court

27.    Return of Verdict

28.    Unanimous Verdict

29.    Court Has No Opinion

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 24**
**DELIBERATION AND VERDICT— INTRODUCTION**

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages. Do not ever write down or tell anyone outside the jury how you stand on your votes. For example, do not write down or tell anyone outside the jury that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

AUTHORITY:          Uniform Jury Instructions For Patent Cases in the United States District Court for the District of Delaware, March 1993, Instruction 7.1

## PLAINTIFFS' PROPOSED JURY INSTRUCTION 25
## DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.

Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that -- your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court. You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

AUTHORITY:       Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 3.1

## PLAINTIFFS' PROPOSED JURY INSTRUCTION 26
## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [marshal] [bailiff], signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

AUTHORITY:      Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 3.2

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 27**
**RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

AUTHORITY:      Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 3.3

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 28**
**UNANIMOUS VERDICT**

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges -- judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

AUTHORITY:        Uniform Jury Instructions For Patent Cases in the United States District Court for the District of Delaware, March 1993, Instruction 7.2

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 29**
**COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way.

You must decide the case yourselves based on the evidence presented.

AUTHORITY:        Uniform Jury Instructions For Patent Cases in the United States District Court for the District of Delaware, March 1993, Instruction 7.4

## IV.   TRADEMARK

30.   Preliminary Instruction—Trademark

31.   Definition—Trade Dress (15 U.S.C. § 1125(a))

32.   Trademark Liability—Theories and Policies (15 U.S.C. §§ 1114(1), 1125(a))

33   Infringement/Unfair Competition—Elements and Burden of Proof—Trade Dress (15 U.S.C. 1125(a)(1))

34.   Infringement/Unfair Competition —Elements—Validity—Trade Dress

35.   Infringement/Unfair Competition —Elements—Validity—Trademarks, Trade Dress—Distinctiveness

36.   Infringement/Unfair Competition —Elements—Validity—Distinctiveness—Secondary Meaning

37.   Infringement/Unfair Competition —Elements—Validity—Trade Dress—Non–Functionality Requirement

38.   Infringement/Unfair Competition —Elements—Trade Dress—Articulation Requirement

39.   Infringement/Unfair Competition —Likelihood of Confusion—Factors—Polaroid Test (15 U.S.C. § 1125(a))

40.   Trade Dress Dilution—Elements and Burden Of Proof (15 U.S.C. 1125(c))

41   Trade Dress Dilution—Fame of Plaintiffs' Dress (15 U.S.C. 1125(c))

42.   Trade Dress Dilution—Dilution by Blurring or Tarnishment (15 U.S.C. 1125(c))

43.   Trade Dress Dilution—Elements-Similarity

44.   Relationship Between Trade Dress Confusion and Trade Dress Dilution

45.   Trademark Damages—Intentional Infringement/Unfair Competition (15 U.S.C. § 1117(b))

## PLAINTIFFS' PROPOSED JURY INSTRUCTION 30
## PRELIMINARY INSTRUCTION—TRADEMARK

Plaintiffs, Luv n' care, Ltd. and Admar International, Ltd. seek damages against the defendant, Walgreen Co., for trade dress infringement, unfair competition and trade dress dilution, as a result of Walgreen's sale of the accused Wagi no-spill children's and infants' drinking cups.  Walgreen denies infringing or diluting Plaintiffs' trade dress, or unfairly competing, and contends the trade dress is invalid on the grounds of functionality.

To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.

DEFINITION OF A TRADE DRESS

The term "trade dress" refers to the total image of a product, product packaging, product label, product design, or a combination of these things. It can include features such as size, shape, color or color combinations, texture, or graphics.

Trade dress is a type of trademark.  A trademark is used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product.

The purpose of trademark law is to prevent confusion among consumers about the source of products, and to permit trade dress owners to show ownership of their products and control their product's reputation.

HOW A PROTECTABLE TRADE DRESS IS OBTAINED

A person acquires the right to exclude others from using a trade dress by being the first to use it in the marketplace.  Rights in a trade dress are obtained through commercial use of the dress.

A trade dress owner may enforce the right to exclude others in an action for infringement or unfair competition or false designation of origin or false descriptions.

PLAINTIFFS' BURDEN OF PROOF

Federal Infringement and Unfair Competition

Plaintiffs claim that Walgreen infringed Plaintiffs' trade dress and engaged in unfair competition by offering for sale and selling the accused Wagi no-spill cups that copy or imitate the product design and packaging of Luv n' care's original no-spill drinking cups, without authorization.

Plaintiffs have the burden of proving by a preponderance of the evidence that they are the owner of distinctive, non-functional trade dress in the product design and packaging for their no-spill children's and infants' drinking cups, and that Walgreen has infringed that trade dress and engaged in unfair competition by creating a likelihood of confusion.

Federal and State Dilution

Plaintiffs also claim that Walgreen diluted the distinctive nature of Plaintiffs' trade dress by offering for sale and selling the accused Wagi no-spill cups that copy or imitate the product design and packaging of Luv n' care's original no-spill drinking cups, without authorization.

Plaintiffs have the burden of proving by a preponderance of the evidence that they are the owner of famous, distinctive, non-functional trade dress in the product design and packaging for their no-spill cups, and that Walgreen's offer for sale and sale of unauthorized copies of plaintiffs' product designs and packaging is likely to cause dilution or actually caused dilution of the distinctive quality of plaintiffs' famous trade dress by: (i) harming the distinctiveness or uniqueness of plaintiffs' trade dress; or (ii) harming the reputation of plaintiffs' famous, protectable, distinctive and non-functional trade dress.

New York State Common Law of Unfair Competition

Plaintiffs also claim that Walgreen has engaged in unfair competition under the law of the State of New York by: (a) offering for sale and selling the accused Wagi products next to

signs falsely identifying the accused products as being products of Luv n' care, with co-mingling of the accused Wagi products with Luv n' care's NUBY products so as to mislead the public into believing that Wagi products originate from Luv n' care like NUBY; and (b) by offering for sale and selling accused Wagi no-spill cups that copy or imitate the product design and packaging of Luv n' care's original no-spill drinking cups, without authorization.

Plaintiffs have the burden of proving by a preponderance of the evidence:

i)      a likelihood that consumers would be confused or misled by Walgreen's actions, or that there was actual confusion of consumers; and,

ii)     that Walgreen's actions were in bad faith.


WALGREEN'S BURDEN OF PROOF

Walgreen denies Plaintiffs' claims and makes the following assertions: (i) that Plaintiffs possess no trade dress rights for their asserted product designs and packaging; (ii) that Plaintiffs cannot demonstrate that there was any likelihood of confusion as to the source of Walgreen's products or that Walgreen's products are associated with, originate with, or are endorsed by, Plaintiffs; (iii) that the trade dress asserted by Plaintiffs as to their product designs and packaging are not famous; and (iv) that the trade dress asserted by Plaintiffs as to its product designs and packaging is functional.

Preponderance of the evidence means that to find in favor of Walgreen you must be persuaded by the evidence that Walgreen's assertions are more probably true than not for each of the federal and state causes of action.

AUTHORITY:      Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 15.0; Federal Civil Jury Instructions of the Seventh Circuit (2009 rev.), Instruction No. 13.1.1; 15 U.S.C. § 1125(a), (c); Heller Inc. v. Design Within Reach, Inc., 2009 U.S. Dist. LEXIS 71991 at *13 (S.D.N.Y. Aug. 14, 2009); Do Denim, LLC v. Fried Denim, Inc., 634 F. Supp. 2d 403, 408 (S.D.N.Y. 2009); Dan-Foam A/S v. Brand Named Beds, LLC, 2007 U.S. Dist. LEXIS 33301 at *28-32 (S.D.N.Y. May 4, 2007); Major League Baseball Properties, Inc. v. Salvino, Inc., 420 F. Supp. 2d 212,222 (S.D.N.Y. 2005).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 31**
**DEFINITION—TRADE DRESS (15 U.S.C. § 1125(a))**

Trade dress in the design of a product is the overall design and appearance that make the product identifiable to consumers.  Likewise, trade dress in packaging is the overall design and appearance that makes the packaging identifiable to consumers.

Trade dress is used to distinguish a party's products from the products of others.  It is the product or packaging's total image and overall appearance, and may include features such as size, shape, color, color combinations, texture, or graphics. In other words, trade dress is the form in which a person presents a product or service to the market, its manner of display.

Trade dress concerns the overall visual impression of the product or packaging created in the consumer's mind.  When a Plaintiffs' trade dress is in the combination or arrangement of design elements, you must consider the appearance of the features together, as a whole, rather than separately.

A Plaintiff does not have to register its trade dress to have rights to it and to assert an infringement or dilution action against a party.

A person who uses the trade dress of another may be liable for damages.

AUTHORITY:   Cartier, Inc. v. Sardell Jewelry, Inc., 294 Fed. Appx. 615 (2nd Cir. 2008); Two Pesos, Inc., v. Taco Cabana, Int'l Inc., 932 F.2d 1113 (5th Cir.1991), aff'd, 505 U.S. 763, 770–73 (1992); Forschner Group, Inc. v. Arrow Trading Co., Inc., 124 F.3d 402, 407 (2d Cir. 1997); Landscape Forms, Inc. v. Columbia Cascade Co., 70 F.3d 251, 253 (2d Cir. 1995); Fabrication Enterprises, Inc. v. The Hygenic Corporation, 64 F.3d 53, 59 (2d Cir. 1995); Stormy Clime, Ltd. v. ProGroup, Inc., 809 F.2d 971, 977 (2d Cir. 1987); R.F.M.A.S., Inc. v. So, 619 F. Supp. 2d 39, 74-5 (S.D.N.Y. 2009).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 32**
**FEDERAL TRADE DRESS LIABILITY—THEORIES AND POLICIES (15 U.S.C. §**
**1125(a), (c))**

The federal trademark laws balance three goals: 1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; 2) protecting the rights of a business to identify itself to the public, and the reputation of goods and services offered to the public; and 3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may conflict.

Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In my instructions, I will identify types of facts you are to consider in deciding if Walgreen is liable to Plaintiffs for violating the federal trademark law. These facts are relevant to whether Walgreen is liable for:

1.      infringing Plaintiffs' trade dress by using trade dress in a manner likely to cause confusion among consumers;

2.      unfairly competing, by using trade dress in a manner likely to cause confusion as to the origin or quality of Plaintiffs' goods; and

3.      diluting Plaintiffs' trade dress rights by using a trade dress that diminishes the ability of Plaintiffs' trade dress to indicate a single source.

I will also explain later what you should consider in deciding if Walgreen violated New York State law.

AUTHORITY:      Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 15.4

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 33**
**FEDERAL INFRINGEMENT/ UNFAIR COMPETITION—ELEMENTS AND**
**BURDEN OF PROOF—TRADE DRESS (15 U.S.C. 1125(a)(1))**

On Plaintiffs' claim for federal trade dress infringement and unfair competition, Plaintiffs have the burden of proving by a preponderance of the evidence each of the following elements with respect to Plaintiffs' product design for their soft-spout no-spill cup:

1. Plaintiffs' trade dress in their product design is nonfunctional;

2. Plaintiffs' product design for their soft-spout no-spill cup has secondary meaning;

3. Walgreen used Plaintiffs' product design for their soft-spout no-spill cup without the consent of Plaintiffs in a manner that is likely to cause confusion, or to cause mistake, or to deceive ordinary purchasers as to the affiliation, connection, or association of Walgreen with Plaintiffs, or as to the origin, sponsorship, or approval of Walgreen's goods by Plaintiffs; and

4. Plaintiffs were damaged by Walgreen's infringement/unfair competition.

Plaintiffs have the burden of proving by a preponderance of the evidence each of the following elements with respect to Plaintiffs' packaging for their soft-spout no-spill cup:

1. Plaintiffs' trade dress in their packaging for their soft-spout no-spill cup is nonfunctional;

2. Plaintiffs' packaging for their soft-spout no-spill cup is inherently distinctive or has secondary meaning;

3. Walgreen used Plaintiffs' packaging for their soft-spout no-spill cup without the consent of Plaintiffs in a manner that is likely to cause confusion, or to cause mistake, or to deceive ordinary purchasers as to the affiliation, connection, or association of Walgreen with Plaintiffs, or as to the origin, sponsorship, or approval of Walgreen's goods by Plaintiffs; and

4. Plaintiffs were damaged by Walgreen's infringement.

43

Plaintiffs have the burden of proving by a preponderance of the evidence each of the following elements with respect to Plaintiffs' product design for their hard-top no-spill children's drinking cup:

1. Plaintiffs' trade dress in their hard-top no-spill children's drinking cup is nonfunctional;

2. Plaintiffs' product design for their no-spill children's drinking cup has secondary meaning;

3. Walgreen used Plaintiffs' product design for their no-spill children's drinking cup without the consent of Plaintiffs in a manner that is likely to cause confusion, or to cause mistake, or to deceive ordinary purchasers as to the affiliation, connection, or association of Walgreen with Plaintiffs, or as to the origin, sponsorship, or approval of Walgreen's goods by Plaintiffs; and

4. Plaintiffs were damaged by Walgreen's infringement.

If you find that each of the elements on which Plaintiffs have the burden of proof has been proved, your verdict should be for Plaintiffs. If, on the other hand, Plaintiffs have failed to prove any of these elements, your verdict should be for Walgreens.

AUTHORITY:       Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 15.6; 15 U.S.C. § 1125(a)(1); Yurman Design, Inc. v. PAJ, Inc.., 262 F.3d 101, 115-16 (2d Cir. 2001).  Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc., 65 F.3d 1063, 1069 (2d Cir. 1995); Malaco Leaf, AB v. Promotion In Motion, Inc., 287 F. Supp. 2d 355, 363 (S.D.N.Y. 2003); R.F.M.A.S., Inc. v. So, 619 F. Supp. 2d 39, 87 (S.D.N.Y. 2009).

## PLAINTIFFS' PROPOSED JURY INSTRUCTION 34
## INFRINGEMENT/UNFAIR COMPETITION—ELEMENTS—VALIDITY—TRADE DRESS

Instruction 5.3 requires Plaintiffs to prove by a preponderance of the evidence that Plaintiffs' trade dress is valid.

Only valid trade dress can be infringed.  Valid trade dress in the appearance of packaging is the non-functional design of the packaging that is either:

1. inherently distinctive; or

2. has acquired secondary meaning.

Valid trade dress for the appearance of a product is the non-functional design of the product packaging that:

1. has acquired secondary meaning.

If you determine Plaintiffs proved by a preponderance of the evidence that the trade dress for the product design for Plaintiffs' soft-top no-spill cup, and/or Plaintiffs' hard-top no-spill cup, and/or the packaging for Plaintiffs' soft-spout no-spill cup are valid trade dress then you should consider whether Plaintiffs own them or whether Walgreen's actions infringed them.  If you do not determine that Plaintiffs proved by a preponderance of the evidence that the trade dress for the product design for Plaintiffs' soft-top no-spill cup, and/or Plaintiffs' hard-top no-spill children's drinking cup, and/or the packaging for Plaintiffs' soft-spout no-spill cup are valid trade dress then you should not consider whether Plaintiffs own them or whether Walgreen's actions infringed them.


AUTHORITY:      Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 15.8; Federal Civil Jury Instructions of the Seventh Circuit (2009 rev.), Instruction No. 13.1.2.2; Star Industries, Inc. v. Bacardi & Co. Ltd. Corp., 2003 U.S. Dist. LEXIS 23411 at *14; 71 U.S.P.Q.2D 1026 (S.D.N.Y. Dec. 31, 2003); IMAF, S.p.A., Plaintiff, v. J.C. Penney Co., Inc., 806 F. Supp. 449, 454 (S.D.N.Y. 1992).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 35
INFRINGEMENT/UNFAIR COMPETITION—ELEMENTS—VALIDITY—
TRADE DRESS—DISTINCTIVENESS**

Distinctiveness

Trademark law provides protection to distinctive or strong trademarks and trade dress. Conversely, trademarks and trade dress that are not as distinctive or strong are called "weak" and receive less protection from infringing uses. Trademarks and trade dress that are not distinctive are not entitled to any protection.

You must consider whether the trade dress asserted by Plaintiffs is distinctive here.

Inherent Distinctiveness

An inherently distinctive trademark is a word, symbol or device, or combination of them, which can intrinsically identifies a particular source of a good in the market. The law assumes that an inherently distinctive trade dress is one that almost automatically tells a consumer that it refers to a brand or a source for a product, and that consumers will be predisposed to equate the trade dress with the source of a product. Because manufacturers and retailers have a "virtually unlimited" choice of packaging and labeling materials available to them, most packaging trade dress is capable of being inherently distinctive.

Thus, in determining whether an inherently distinctive trade dress exists, you should ask whether there are alternative ways that the packaging could look.

If the packaging could be made with a different look, then it is inherently distinctive. If the packaging could not be made with a different look, then the packaging is not inherently distinctive.

Product vs. Packaging Distinctiveness

As opposed to packaging trade dress, trade dress based on the design of a product must have acquired distinctiveness, otherwise known as secondary meaning, which I will explain to you shortly.

AUTHORITY:        Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 15.9; Wal-Mart Stores, Inc. v. Samara Brothers, Inc., 529 U.S. 205, 207, 213, 216 (2000); Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 786-69 (1992); In Re Slokevage, 441 F.3d 957, 961 (Fed. Cir. 2006); Sally Beauty Co., Inc. v. Beautyco, Inc., 304 F.3d 964, 977-78 (10th Cir. 2002); Nora Beverages, Inc. v. Perrier Group Of America, Inc., 164 F.3d 736, 743-4 (2d Cir. 1998); R.F.M.A.S., Inc. v. So, 619 F. Supp. 2d 39, 81 (S.D.N.Y. 2009); Gross v. Bare Escentuals Beauty, Inc., 641 F. Supp. 2d 175, 193-94 (S.D.N.Y. 2008); McNeil Nutritionals, LLC v. Heartland Sweeteners LLC, 566 F. Supp. 2d 378, 388 (E.D. Pa. 2008); Do The Hustle, LLC v. Rogovich, 2003 U.S. Dist. LEXIS 10445 at *27 (S.D.N.Y. June 19, 2003).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 36
INFRINGEMENT/UNFAIR COMPETITION—ELEMENTS—VALIDITY—
DISTINCTIVENESS—SECONDARY MEANING**

For certain aspects of the federal unfair competition claims, you must consider whether Plaintiffs' trade dress has market recognition among prospective purchasers. This market recognition of the trade dress is called "secondary meaning."

A word, symbol, term or trade dress acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective purchasers is the identification of the product with a single source, regardless of whether consumers know who or what that source is.  Thus, secondary meaning is present if consumers recognize the trade dress as being a unique look that originates from a single company.

You must find that the preponderance of the evidence shows that when Walgreen came out with its accused product, Plaintiffs' soft-top no-spill drinking cup, and/or its hard-top no-spill drinking cup had secondary meaning.

You should also evaluate whether the soft-spout no-spill cup packaging had secondary meaning, although the packaging does not require secondary meaning if it has inherent distinctiveness.

The following are the factors that you may consider when you determine whether Plaintiffs' products and/or packaging have acquired secondary meaning:

1. Advertising of the product with its mark or dress.  This factor assesses to what degree and in what manner there has been advertising of the claimed trade dress.  Advertising is relevant because it provides public exposure and can create recognition of the trade dress in the minds of consumers, which you may find leads to a finding of secondary meaning.

2. Consumer studies or direct testimony from consumers linking the marks or dress to the source.  Consumer studies can be useful to show whether the people who purchase the products bearing the trade dress associate it with a single source.  However, a Plaintiff is not required to conduct a survey to prove secondary meaning.

48

3. Sales Success. This factor looks at the levels of sales that Plaintiffs had of products having the claimed trade dress.  Levels of sales and commercial success are relevant since they indicate the nature and extent of public exposure to the trade dress.

High levels of sales or significant commercial success are relevant as they can be evidence of a greater likelihood of secondary meaning.  Alternatively, low levels or lack of commercial can be evidence of a lesser likelihood of secondary meaning.  Likewise, if large amounts of sales or success are achieved in a short period of time, that can also be evidence of secondary meaning.

4. Unsolicited media coverage.  This factor looks at whether Plaintiffs received any unsolicited coverage in newspapers or magazines, or on television, on the Internet, or elsewhere, for their trade dress.  Unsolicited coverage or awards can also indicate that there is secondary meaning.

5. Attempts to plagiarize. Whether Walgreen or another entity attempted to intentionally copy Plaintiffs' trade dress is also a factor in determining secondary meaning.  If you find that Walgreen intentionally copied Plaintiffs' trade dress, that would be significant evidence that Plaintiffs had succeeded in creating consumer recognition and good will for its dress that Walgreen was seeking to appropriate.  In other words, it would be evidence that the trade dress had secondary meaning.  If you find that Walgreen did not intentionally copy Plaintiffs' trade dress, you still need to consider the other factors.

6. The length and exclusivity of the trade dress' use.  The greater the extent of use, the greater the amount of public exposure potentially leading to secondary meaning.  The lower the extent of use, the lower of the amount of public exposure potentially leading to secondary meaning.  In considering this factor, you should consider the length of time that the trade dress was used, and how extensive the use was geographically.  There is no particular length of time, however, that a trade dress must be used before it acquires a secondary meaning.

You should also consider whether or not Plaintiffs were the only ones to use the combination of features claimed as trade dress when the accused activities by Walgreen began.  If so, this suggests that suggests that the trade dress had secondary meaning.


Plaintiffs have the burden of proving that their soft-spout no-spill cup product design, soft-spout no-spill cup packaging, no-spill drinking cup product design have acquired a secondary meaning.  In making your determination, you should consider all of the factors and the weight of the evidence presented for each of those factors.  Every factor need not be proved by Plaintiffs.  Rather, you must consider all of the evidence presented.

AUTHORITY:      Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 15.10; 20th Century Wear, Inc. v. Sanmark-Stardust, Inc.,  815 F.2d 8, 10 (2nd Cir. 1986); RJR Foods, Inc. v. White Rock Corp.,  603 F.2d 1058, 1060 (2nd Cir. 1979); Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n.11 (1982); Genesee Brewing Company, Inc. v. Stroh Brewing Company, 124 F.3d 137, 143 (2d Cir. 1997); PaperCutter, Inc. v. Fay's Drug Co., 900 F.2d 558, 564 (2d Cir. 1990); PAF S.r.l. v. Lisa Lighting Co., Ltd., 712 Supp. 394, 407-408 (S.D.N.Y. 1989) Centaur Communications v. A/S/M Communications, Inc., 830 F.2d 1217, 1222-25 (2d Cir. 1983); R.F.M.A.S., Inc. v. So, 619 F. Supp. 2d 39, 81 (S.D.N.Y. 2009).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 37**
**INFRINGEMENT/UNFAIR COMPETITION—ELEMENTS—VALIDITY—**
**TRADE DRESS—NON-FUNCTIONALITY REQUIREMENT**

As I explained earlier, trade dress is the design of a product or its packaging, which indicates or identifies the product's source and distinguishes it from the products of others.

One of the issues that you must determine is whether or not Plaintiffs' trade dress is functional.  Trade dress is functional if it is essential to the use or purpose of the article.

When a Plaintiff claims that a combination and arrangement of design elements comprises the trade dress at issue, it is not proper to break trade dress down into specific elements or parts and to determine whether those individual parts are functional.  Rather, you must determine whether the design as a whole is essential for the use or purpose of the article.

In considering this factor, you can examine whether an alternate design could have been used, allowing competition in the market for that type of product.

If there are alternative designs that could perform the same function, then the trade dress is non-functional.

If there is an absence of alternative constructions that could perform the same function, then the trade dress is functional.

The existence of concomitant utility patents may be evidence of functionality.  However, in considering this issue, you must examine whether the particular design or combination of product features that has been "claimed" in a utility patent is the same as the combination of features that has been claimed in the trade dress at issue.

Specifically, in a utility patent the patent claims define the invention.  The patent claims are located in the back of the patent under numbered paragraphs.  A patent claim consists of all elements under that numbered paragraph.  Every element of a patent claim is important, and no element can be ignored.

51

If the combination of features claimed in the utility patent are identical to the combination of features claimed as trade dress, this would weigh in favor of finding the trade dress to be functional.

If the utility patent does not claim the identical combination of features of the trade dress, that is evidence that the trade dress is not functional and therefore protectable.

Plaintiffs have the burden of proving non-functionality by a preponderance of the evidence in order to show that the trade dress is valid and protected from infringement. Defendants have the burden of proving that any utility patents demonstrate functionality.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 15.11; Cartier, Inc. v. Sardell Jewelry, Inc., 294 Fed. Appx. 615 (2nd Cir. 2008); Yurman Design Inc. v. PAJ, Inc., 262 F.3d 101, 116 (2nd Cir. 2001).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 38
INFRINGEMENT/UNFAIR COMPETITION—ELEMENTS—TRADE
DRESS—ARTICULATION REQUIREMENT**

A party seeking to protect its trade dress in a line of products must articulate the design elements that compose the trade dress.  In other words, the party must indicate the specific features, or combination of features, that it considers to be its trade dress.

You must, therefore, determine whether Plaintiffs have articulated their trade dress in their products and packaging.

If you find that Plaintiffs have articulated their trade dress, you should then consider the other aspects of Plaintiffs' federal trade dress infringement claims.

However, if you find that Plaintiffs have not articulated their trade dress, you must return a verdict in favor of Walgreen on the federal trade dress infringement claims.


AUTHORITY:  Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 381 (2d Cir. 1997); Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 32-33 (2d Cir. 1995); Heller Inc. v. Design Within Reach, Inc., 2009 U.S. Dist. LEXIS 71991 at *14-15 (S.D.N.Y. Aug. 14, 2009).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 39
INFRINGEMENT/UNFAIR COMPETITION—LIKELIHOOD OF CONFUSION—
FACTORS—POLAROID TEST (15 U.S.C. § 1125(a))**

You must consider whether Walgreen's use of the trade dress is likely to cause confusion among consumers about the source of Walgreen's products or packaging. This means that you must determine whether ordinary purchasers viewing products at the point of sale, or viewing them after-sale, are likely to be misled or confused into believing that the accused products are Plaintiffs, based on the appearance of the products or their packaging, based on the level of care that such purchasers ordinarily give.

When evaluating the likelihood of consumer confusion, the test is not whether products or packaging can be differentiated when compared side by side, but rather the overall impression that is created on the consumer.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

1. Strength or Weakness of Plaintiffs' Dress. The more that the consuming public recognizes Plaintiffs' trade dress as an indication of origin of Plaintiffs' goods, or the more unique it is, the more likely it is that consumers would be confused about the source of Walgreen's goods if Walgreen uses a similar dress.

2. Similarity of Plaintiffs' and Walgreen's Dress. If the overall impression created by Walgreen's products or packaging in the marketplace is similar to that created by Plaintiffs' trade dress, there is a greater chance that consumers are likely to be confused by Walgreen's use of the dress. Similarities in appearance weigh more heavily than differences in finding the trade dresses are similar.

3. Competitive Proximity of Products. If Walgreen and Plaintiffs use their trade dress on the same kinds of goods there is a greater likelihood of confusion about the source of the goods than if they use them on different kinds of goods.

4. Actual Confusion.  You may consider whether use by Walgreen of Plaintiffs' trade dress has led to instances of actual confusion by consumers.  Actual confusion can suggest a likelihood of confusion, while an absence of actual confusion can suggest no likelihood of confusion.  However, Plaintiffs are not required to prove that there has been actual confusion for you to find that there was a likelihood of confusion.

5. Walgreen's Intent or any Bad Faith in Using the Trade Dress.  If you find that Walgreen knowingly copied Plaintiffs' trade dress to identify similar goods, or intended to derive benefit from the reputation of Plaintiffs' trade dress, this weighs in favor of a likelihood of confusion.  There is a presumption in the law that confusion will result from intentional copying of trade dress.

On the other hand, even in the absence of proof that Walgreen acted knowingly, the use of Plaintiffs' trade dress to identify similar goods may indicate a likelihood of confusion.

6. Quality of Walgreen's Products and Compared to Plaintiffs'. If Plaintiffs' and Walgreen's goods are of the same or similar level of quality, this may increase the likelihood of confusion.  Conversely, if they are of markedly different levels of quality, this may decrease the likelihood of confusion.

7. Sophistication of Purchasers. The discrimination that a reasonably prudent purchaser exercising ordinary caution may exercise can vary with the sophistication of the purchaser.

Also, where the price of a product is low, a purchaser's care is less, and there is more likelihood of confusion.  Where the price of a product is high, a purchaser's care is higher, and there is less likelihood of confusion.

Thus, with less sophisticated buyers or less expensive purchases, they may be a greater likelihood of confusion created by similarities between the trade dress.  With more sophisticated buyers or more expensive purchases, there may be less likelihood of confusion by similarities between Plaintiffs' and Walgreen's trade dress.

AUTHORITY:        Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 15.16; Harold F. Ritchie, Inc. v. Chesebrough-Ponds, Inc., 281 F.2d 755, 762 (2nd Cir. 1960); Butterick Company v. The McCall Pattern Company, 1984 U.S. Dist. LEXIS 19671, *11-12 (S.D.N.Y. 1984); Harlequin Enterprises, Ltd. v. Gulf & Western Corp., 644 F.2d 946,949 (2nd Cir. 1981); Streetwise Maps, Inc. v. Vandam, Inc., 159 F.3d 739, 743 (2d Cir. 1998); Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1046 (2d Cir. 1992); Polaroid Co. v. Polarad Elecs. Co., 287 F.2d 492, 495 (2d Cir. 1961); R.F.M.A.S., Inc. v. So, 619 F. Supp. 2d 39, 82 (S.D.N.Y. 2009); RJR Foods, Inc. v. White Rock Corp., 603 F.2d 1058, 1061 (2nd Cir. 1979).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 40
TRADE DRESS DILUTION—ELEMENTS AND BURDEN OF PROOF (15 U.S.C.
1125(c))**

In this case, Plaintiffs contend that Walgreen has diluted Plaintiffs' trade dress. "Dilution" means a lessening of the capacity of a famous mark or dress to identify and distinguish goods or services. In other words, when a second comer adopts the same or similar trade dress as a first party, then that first party's trade dress may become more common or "dilute".

Dilution can be found regardless of the presence or absence of competition, and regardless of the presence of likely or actual confusion, mistake, deception, or economic injury.

To prove this claim, Plaintiffs have the burden of proving by a preponderance of the evidence that their trade dress is non-functional and famous; that Walgreen's use of its trade dress began after Plaintiffs' dress became famous; and that Walgreen's use of its trade dress is likely to cause dilution by blurring or dilution by tarnishment.

AUTHORITY: 15 U.S.C. § 1125(c)(1); 15 U.S.C. § 1127; Pfizer Inc. v. Sachs, 652 F. Supp. 2d 512, 525 (S.D.N.Y. 2009); Heller Inc. v. Design Within Reach, Inc., 2009 U.S. Dist. LEXIS 71991 at *7-8 (S.D.N.Y. Aug. 14, 2009); Do Denim, LLC v. Fried Denim, Inc., 634 F. Supp. 2d 403, 408 (S.D.N.Y. 2009).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 41**
**TRADE DRESS DILUTION—FAME OF PLAINTIFFS' DRESS (15 U.S.C. 1125(c))**

Trade dress is famous if it is widely recognized by the general consuming public of the United States as a designation of the source of the goods or services of the trade dress's owner. In determining whether Plaintiffs' dress is famous, you may consider several factors I will describe for you in a moment.

These factors are only suggestions and may not constitute all of the possible types of evidence indicating whether a dress is famous. The presence or absence of any one particular factor on this list should not necessarily determine whether a trade dress is famous. You should consider all the relevant evidence in making your determination.

The factors you should consider are:

1. the duration, extent and geographic reach of advertising and publicity of the trade dress, whether advertised or publicized by Plaintiffs or third parties;

2. the amount, volume, and geographic extent of sales of goods offered under the dress;

3. the extent of actual recognition of the dress; and

4. whether the dress was federally registered.

Federal registration of trade dress is not required, however, for the trade dress to be considered famous.

AUTHORITY: A.B.A. Model Jury Instruction 2.6.2; 15 U.S.C. § 1125(c)(2); HRP Creative Services Co., LLC v. FPI-MB Entertainment, LLC, 616 F. Supp. 2d 481, 495 (D. Del. 2009); PBI Performance Products, Inc. v. Norfab Corp., 2007 U.S. Dist. LEXIS 58689 at *34 (E.D. Pa. Aug. 3, 2007).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 42**
**FEDERAL CLAIM FOR TRADE DRESS DILUTION—DILUTION BY**
**BLURRING OR TARNISHMENT (15 U.S.C. 1125(c))**

Dilution by "blurring" is an association arising from the similarity between Walgreen's product design and packaging and Plaintiffs' famous trade dress that impairs the distinctiveness or uniqueness of Plaintiffs' trade dress.

Dilution by tarnishment is an association arising from the similarity between Walgreen's product design and packaging and Plaintiffs' famous trade dress that harms the reputation of Plaintiffs' trade dress.

In determining whether trade dress will cause actual dilution by blurring or by tarnishment, you may consider all relevant factors, including the following:

1. the degree of similarity between Walgreen's product design and packaging and the famous trade dress;

2. the degree of inherent or acquired distinctiveness of the famous trade dress;

3. the extent to which Plaintiffs are engaging in substantially exclusive use of the trade dress;

4. the degree of recognition of the famous trade dress;

5. whether Walgreen intended to create an association with the famous trade dress; and

6. any actual association between Walgreen's product design and packaging and the famous trade dress.

AUTHORITY: A.B.A. Model Jury Instruction 2.6.4 (modified); 15 U.S.C. § 1125(c)(2); Tiffany (NJ) Inc. v. eBay, Inc., 600 F.3d 93, 111 (2d Cir. 2010); Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 105-6, 110-11 (2d Cir. 2009).

## PLAINTIFFS' PROPOSED JURY INSTRUCTION 43
## TRADE DRESS DILUTION—ELEMENTS-SIMILARITY

In determining the degree of similarity between Walgreen's product design and packaging and Plaintiffs' product design and packaging, you should consider whether the designs and packaging are used on competing goods and whether the designs and packaging are highly similar or not.

If the designs and packaging are used on competing goods, it is more likely that consumers will perceive similarities in the designs and packaging, and more likely that there is dilution.

If the goods are not competing, it is less likely that consumers will perceive similarities in the designs and packaging, and less likely that there is dilution.

If the prominent features of Walgreen's product design and packaging and Plaintiffs' product design and packaging are identical or nearly identical, it is more probable that dilution is likely.

If the prominent features of Walgreen's product design and packaging Plaintiffs' product design and packaging are not identical or nearly identical, then it is less likely that Walgreen's product design and packaging will cause dilution.

AUTHORITY: Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 635-36 (9th Cir. 2007); Perfumebay.com Inc. v. eBay Inc., 506 F.3d 1165, 1180 (9th Cir. 2007); Thane International, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 906 (9th Cir. 2002); Playboy Enterprises, Inc. v. Welles, 279 F.3d 796, 806 n.41 (9th Cir. 2002); SG Services Inc. v. God's Girls Inc., 2007 U.S. Dist. LEXIS 61970 at *24 (C.D. Cal. 2007); Century 21 Real Estate LLC v. Century Insurance Group, 2007 U.S. Dist. LEXIS 9720 at *45 (D. Az. 2007).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 44**
**RELATIONSHIP BETWEEN TRADE DRESS CONFUSION**
**AND TRADE DRESS DILUTION**

Evidence of a likelihood of confusion or actual confusion is not necessary for a dilution claim.  Thus, the absence of actual or even of a likelihood of confusion does not undermine evidence of trademark dilution.

However, evidence that establishes a likelihood of confusion is sufficient to establish dilution. This is because if a consumer is confused about a trade dress, that confusion will also diminish the distinctiveness of the trade dress.

AUTHORITY: Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 109 (2d Cir. 2009); Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 635-36 (9th Cir. 2008); Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 1007 (9th Cir. 2004); Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208, 219 (2d Cir. 1999); Starbucks Corp. v. Lundberg, 2005 U.S. Dist. LEXIS 32660 at *21-22 (D. Or. 2005).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 45
TRADEMARK DAMAGES—INTENTIONAL INFRINGEMENT/UNFAIR
COMPETITION (15 U.S.C. § 1117(b))**

If you find that Walgreen infringed Plaintiffs' trade dress or engaged in unfair competition under either of the federal causes of action for confusion or dilution, you must also determine whether Walgreen used Plaintiffs' trade dress intentionally.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instruction No. 15.27; 15 U.S.C. § 1117(b).

## V.   OTHER CLAIMS AND DEFENSES

46.   Unfair Competition Common Law

47.   New York General Business Law 360-1

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 46**
**UNFAIR COMPETITION—COMMON LAW**

Plaintiffs also contend that Walgreen has engaged in unfair competition under the common law of the State of New York.

Specifically, Plaintiffs claim that Walgreen has engaged in unfair competition under the law of the State of New York by:

(a) offering for sale and selling the accused Wagi products next to signs falsely identifying the accused products as being products of Luv n' care, with co-mingling of the accused Wagi products with Luv n' care's NUBY products so as to mislead the public into believing that Wagi products originate from Luv n' care like NUBY; and,

(b) offering for sale and selling accused Wagi no-spill cups that improperly copy or imitate the product design and packaging of Luv n' care's original no-spill drinking cups, without authorization.


The requirements of New York State common law are different from and broader than federal law, as I will explain to you. Specifically, in order to establish that Walgreen engaged in unfair competition under the common law of the State of New York, Plaintiffs must prove the following:

i)      a likelihood that consumers would be confused or misled by Walgreen's actions, or actual confusion of consumers; and,

ii)     that Walgreen acted in bad faith.


Walgreen's accused actions with respect to displays by signs, or its actions with respect to the look of its Wagi products, or with respect to the look of its packaging can be the basis of a finding of likelihood or actual confusion. Plaintiffs only have to prove one of these, although you may find that it proved more than one.

Some factors to consider with respect to Plaintiffs' unfair competition claim under New York law, are the following contentions by Plaintiffs:

Plaintiff's contend that they have created their products and packaging through extensive time, labor, skill and money. Plaintiffs contend that Walgreen has misappropriated the results of that labor and skill and those expenditures of Plaintiffs. Plaintiffs contend that Walgreen has used Plaintiffs' products, packaging and marks in competition with Plaintiffs, gaining an unfair advantage, because Walgreen and its manufacturer bore little or no burden or expense of development.

Additional factors to consider are that Plaintiffs contend that Walgreens, by taking deceptive copies of Plaintiffs' products and then using to compete against Plaintiffs' own products, has misappropriated a commercial advantage belonging to Plaintiffs. Plaintiffs contend that Walgreen has also engaged in bad faith misappropriation of the labors of Plaintiffs which is likely to cause confusion, and to deceive purchasers as to the origin of the goods, and which dilutes the value of Plaintiffs' product designs and packaging. Plaintiffs contend that Walgreen's actions have caused significant commercial damage to Plaintiffs, and that Walgreen's decision to distribute illegal products from Thailand is also irresponsible and potentially harmful to the public.

These contentions are factors to be considered, none of which are exclusive or required.

Specifically, if you find that Plaintiffs have proved a likelihood of confusion or actual confusion, and also have proved bad faith, then you should return a verdict in favor of Plaintiffs on this claim.

If, however, you find that Plaintiffs have not established actual confusion or a likelihood of confusion, or that they have not proved bad faith on the part of Walgreens, then you should return a verdict in favor of Walgreens.

To prove its claims under New York law, Plaintiff must do so by a preponderance of the evidence, which means you must be persuaded by the evidence that the claim is more probably true than not true.

AUTHORITY:        Fed Express Corp. v. Fed Espresso Inc., 201 F.3d 168, 174-75 (2d Cir. 2000); TCPIP Holding Co. v. Haar Communs. Inc., 2004 U.S. Dist. LEXIS 13543, at *18 (S.D.N.Y. July 19, 2004); Philip Morris USA Inc. v. Felizardo, 2004 U.S. Dist. LEXIS 11154 (S.D.N.Y. June 18, 2004).

## PLAINTIFFS' PROPOSED JURY INSTRUCTION 47
## NEW YORK GENERAL BUSINESS LAW 360-1

Plaintiffs claim that Walgreen's use of unauthorized imitations of Plaintiffs' trade dress for their soft-spout no-spill cup and packaging, no-spill drinking cup, causes injury to the business reputation of their cups. To prove injury to business reputation under New York state law, Plaintiffs must show by a preponderance of the evidence that Plaintiffs own a distinctive trade dress and that Walgreen's use of an unauthorized imitation of that trade dress is likely to dilute the quality of the dress by either "blurring" or "tarnishing" the dress.

Blurring of the mark could occur if Walgreen used the unauthorized imitation of Plaintiffs' trade dress to identify its goods, raising the possibility that Plaintiffs' trade dress will lose its ability to serve as a unique identifier of Plaintiffs' goods.

To find whether blurring is likely, you should consider: (a) the similarity of the trade dress used by Plaintiffs and Walgreens; (b) the similarity of the products covered by the trade dress; (c) the sophistication of the consumers buying the products; (d) the existence of a predatory intent on the part of Walgreens; (e) any "renown" or fame of Plaintiffs' trade dress; and (f) any "renown" or fame of the trade dress used by Walgreens.

Tarnishment could occur if Walgreen has used the trade dress to identify products of poor quality, or to portray its products or Plaintiffs' products in an unsavory or unwholesome context, thus causing the public to associate a lack of quality or a lack of prestige with Plaintiffs' products.

AUTHORITY:       N.Y. Gen. Bus. L. § 360-l; <u>Lyons Partnership, L.P. v. D&L Amusement & Entertainment, Inc.</u>, 2010 U.S. Dist. LEXIS 28571 at *23-24 (E.D.N.Y. Mar. 2, 2010); <u>L & L Wings, Inc. v. Marco-Destin, Inc.</u>, 676 F. Supp. 2d 179, 189-90 (S.D.N.Y. 2009).

## VI.   DAMAGES

48.   Damages—Proof

49.   Trademark and Unfair Competition Damages – Profits (15 U.S.C. § 1117(a))

50.   Punitive Damages for Unfair Competition

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 48**
**DAMAGES—PROOF**

It is the duty of the Court to instruct you about the measure of damages. The fact that I have instructed you regarding damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case.

Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of Plaintiffs or Walgreens.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

AUTHORITY:     Ninth Circuit Manual of Model Jury Instructions, Civil (2007), Instructions No. 5.1, 15.25, 15.26; Uniform Jury Instructions For Patent Cases in the United States District Court for the District of Delaware, March, 1993, Instruction 6.13

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 49**
**DAMAGES FOR LOST PROFITS - FEDERAL TRADEMARK (15 U.S.C. § 1117(a))**
**AND UNFAIR COMPETITION UNDER NEW YORK LAW**

If you find for the Plaintiffs on either their claims of federal trademark infringement under the Lanham Act or their claim for unfair competition under New York law, then you can award Plaintiffs:

(1)  Any profits earned by Walgreen that are attributable to the infringement, which the plaintiff proves by a preponderance of the evidence; or,

(2)  Any lost profits of Plaintiffs due to Walgreen's infringement.

Profits are determined by deducting expenses from gross revenue.

In claiming Walgreen's profits, Plaintiff is required only to prove Walgreen's gross revenue.  Gross revenue is the money Walgreen received from sales of the accused products.

It is Walgreen's burden to prove any expenses that it argues should be deducted in determining its profits.  If it does not meet its burden then its expenses should not be deducted.

AUTHORITY:       Ninth Circuit Manual of Model Jury Instructions, Civil (2007), instruction 15.26; Federal Jury Instructions of the Seventh Circuit (2009), instruction 13.6.4. Damages for unfair competition:  *24/7 Records v. Sony Music Entertainment, Inc.*, 566 F.Supp.2d 305, 320 (2d. Cir. 2008); *Am. Safety Table Co. v. Schreiber,* 415 F.2d 373, 381 (2d Cir. 1969); *Suburban Graphics Supply Corp. v. Nagle,* 5 A.D.3d 663, 666, 774 N.Y.S.2d 160 (2d Dep't 2004); *Hertz Corp. v. Avis, Inc.,* 106 A.D.2d 246, 251, 485 N.Y.S.2d 51 (1st Dep't 1985).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION 50**
**PUNITIVE DAMAGES**

If you find for the Plaintiffs on their claim for unfair competition under New York law you must consider whether or not to award punitive damages to the plaintiff.

Initially, I want to advise you that the purposes of punitive damages are different from the purposes of compensatory damages. Compensatory damages are intended to compensate the plaintiff for the actual injury or loss the plaintiff suffered as a result of the defendant's misconduct. In contrast, punitive damages are intended to punish a wrongdoer and to deter the wrongdoer from similar wrongful conduct in the future. Punitive damages are designed to require the wrongdoer to pay an amount of money that is sufficient to punish the defendant for particular conduct and to deter that defendant from misconduct in the future. Punitive damages are also designed to serve as an example to discourage anyone else from committing similar acts.

You may award punitive damages if you find that Plaintiffs have proved by a preponderance of the evidence that Walgreen acted intentionally or knowingly, or in bad faith.

If you decide to award punitive damages, then you should determine the appropriate amount for the award in view of Walgreen's conduct.

AUTHORITY: *Getty Petroleum Corp. v. Island Transp. Corp.,* 878 F.2d 650, 657 (2nd Cir. 1989); *24/7 Records v. Sony Music Entertainment, Inc.*, 566 F.Supp.2d 305, 320 (2d. Cir. 2008); *Am. Safety Table Co. v. Schreiber,* 415 F.2d 373, 381 (2d Cir. 1969); *Suburban Graphics Supply Corp. v. Nagle,* 5 A.D.3d 663, 666, 774 N.Y.S.2d 160 (2d Dep't 2004); *Hertz Corp. v. Avis, Inc.,* 106 A.D.2d 246, 251, 485 N.Y.S.2d 51 (1st Dep't 1985); *Rose v. Brown & Williamson Tobacco Corp.,* 809 N.Y.S.2d. 784, 709 (N.Y. Sup. Ct. 2005).

Dated: September ___, 2010

GOLDBERG COHEN LLP

_____

Morris E. Cohen (MC-4620)
Lee A. Goldberg (LG-9423)
1350 Avenue of the Americas, Suite 425
New York, NY 10036
Tel: (646) 380-2086
Fax: (646)
MorrisC@pczlaw.com
LeeG@pczlaw.com

Of Counsel:
Joe D. Guerriero (Bar No. 06391)
Luv n' care, Ltd.
3030 Aurora Avenue
Monroe, Louisiana 71201
318-338-3603 (phone)
318-388-5892 (fax)
joed@luvncare.com

Attorneys for Plaintiffs